FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

# United States District Court
# Eastern District of New York

MAR 22 2021

2021 ... 2... PM 2:25

LONG ISLAND OFFICE

| | |
|---|---|
| Roger Rowe | 2:19-cv-07278-JMA-AYS |
| Plaintiff(s) | |

**-v-**
Cenlar FSB,
CitiMortgage, Inc.
Defendant(s)

**FIRST AMENDED
COMPLAINT**
Jury trial requested

**RECEIVED**

MAR 2 3 2021

EDNY PRO SE OFFICE

## I. PRELIMINARY STATEMENT

1. This Complaint is filed for compensatory damages under UCC § 3-419 the Truth in Lending Act, 15 U.S.C. § 1601 (hereinafter called "TILA") to enforce the plaintiff's right relative to Defendant(s) breach of contract, breach of fiduciary duty and conversion of Plaintiff's property. .

## II. JURISDICTION AND VENUE

2. Jurisdiction is conferred on this Court as a matter of Federal Question of Law by 15 U.S.C. § 1640(e), 15 U.S.C. § 1641(g) and 28 U.S.C. §§ 1331, 1337. The Court has authority to issue a declaratory judgment by virtue of 28 U.S.C. § 2201.

3. This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

Page **1** of **32**

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events and omissions giving rise to this Complaint occurred within the district.

### III. PARTIES

5. The Plaintiff, Roger Rowe, is a natural person, residing at 20 Spruce rd Amityville NY, 11701; phone # 631-767-6537 ; email rroweny@gmail.com

6. Defendant (New Creditor), Cenlar FSB, is a mortgage subservicing company engaged in the business of residential mortgage loan services, as well as central loan administration, and reporting services. Cenlar FSB operates in the United States at 425 Phillips Blvd Ewing, NJ 08618; phone 866-677-8807.

7. Defendant (Assignee),  CitiMortgage, Inc, is a mortgage company engaged in the business of residential mortgage loan services. CitiMortgage operates in the United States at 399 Park Ave, New York, NY 10022

8. At all times relevant hereto, the Defendant(s) New Creditor and assignee, in the ordinary course of its business, regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments.

### IV. FACTUAL ALLEGATIONS

9. On November 7, 2002 Plaintiff entered into a credit transaction with Citibank, .N.A a non party to this action (see Exhibit B)

10. On or about July 12, 2019, Defendant Cenlar FSB, informed Plaintiff that his original Citibank, N.A loan was currently owned by Federal National Mortgage Administration (FNMA) a non party to this action located at Mid Town Center 1100 15th Street NW Washington, DC 20005.

11. A true copy of the July 12, 2019 letter evidencing Defendant Cenlar's statements is attached hereto, marked PLAINTIFF'S EXHIBIT A, and by this reference is incorporated herein.

12. As part of this consumer credit transaction, Citibank, N.A. retained a security interest in a collateral debt obligation for 20 Spruce rd Amityville, NY 11701 which is Plaintiff's home.

13. The security interest was not created to finance the acquisition or initial construction of Plaintiff's home.

14. A true and accurate copy of the mortgage evidencing Citibank's security interest in the amount of $157,500.00 is attached hereto, marked PLAINTIFF'S EXHIBIT B, and by this reference is incorporated herein.

15. On or about July 12, 2019 Plaintiff was notified that Defendant Cenlar was assigned servicing rights which is the rights to collect the debt obligation in question (see Exhibit F page 1 to 5).

16. Both Defendant Cenlar FSB and CitiMortgage failed disclose or provide notice of mortgage transfer or right of rescission as required under 15 U.S.C.

1641(g) (particularly the location of the place where transfer of ownership of the debt is recorded).

17. Defendant failed to respond properly to Plaintiff's notice of rescission (see Exhibit C). As such Plaintiff commenced this action against Defendant Cenlar on December 30, 2019.

18. In response to my complaint Defendant Cenlar filed a Rule 12(b)(6) motion which included matters outside the pleadings thus converting their Rule 12 motion to a summary judgment motion.

19. Plaintiff objected to Defendants Rule 12 motion which included matters outside the pleading. The matters outside the pleadings were not supported by admissible evidence nor did it include an affidavit made on personal knowledge.

20. Plaintiff know submits this amended complaint Pursuant to Rule 15(b)(1) and Rule 15(c)(C). The amendment includes objections to Defendant Cenlar's contention that Plaintiff is in default as well as the addition of Defendant CitiMortgage.

21. Plaintiff includes CitiMortgage in this action based on Defendants Cenlar's allegation that they are a sub servicer for CitiMortgage. As such based on the information provided Plaintiff believes that CitiMortgage is the current assignee of Plaintiff's mortgage.

22. Plaintiff entered into a credit transaction with Citibank on November 7, 2002. However the party Plaintiff pledged collateral to made available through a securitization transaction without Plaintiff's knowledge or consent and purportedly negotiated the security evidenced by the Note/Mortgage lien which Plaintiff pledged to Citibank, N.A. exclusively and was apparently used to secure these receivables in this transaction as well.

23. Pursuant to UCC § 3-404 any unauthorized signature is wholly inoperative as to that of the person whose name is signed unless he ratifies it or is precluded from denying it. As such Citibank N.A. is negligent as it relates to altering and producing an unauthorized signature.

24. By executing an unauthorized signature Citibank altered the instrument discharging Plaintiff from any liability.

25. Pursuant to UCC § 3-406 Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business.

26. Not only was Citibank N.A. negligent as it relates to the production of an unauthorized signature. Citibank N.A. altered the instrument when it made material

changes to the contract. UCC § 3-407(a) indicates that an alteration by the holder which is both fraudulent and material discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense. As such Plaintiff asserts the following cause of action against Defendants.

## V. FIRST CAUSE OF ACTION RIGHT OF RESCISSION CONVERSION TRUTH IN LENDING ACT, 15 U.S.C. § 1601 et seq.

27. Plaintiff incorporates the allegations in Paragraphs 9 thru 26 above with the same force and effect as if herein set forth.

28. This consumer credit transaction was subject to the Plaintiff's right of rescission as described by 15 U.S.C. § 1635 and Regulation Z § 1026.23 (12 C.F.R. § 1026.23 [formerly § 226.23]).

29. Plaintiff is a consumer within the meaning of 15 U.S.C. §1602(i) [§ 1602(h) prior to Dodd-Frank amendments] and Regulation Z §1026.2(a)(11) [formerly § 226.2(a)(11)].

30. In the course of this consumer credit transaction, Defendant Creditor (Cenlar) and Defendant Assigner (CitiMortgage) violated 15 U.S.C. § 1635(a) and Regulation Z § 1026.23(b) [formerly § 226.23(b)] by failing to deliver to the Plaintiff two copies of a notice of the right to rescind that:

a. Identified the transaction.

b. Clearly and conspicuously disclosed the security interest in the Plaintiff's home.

c. Clearly and conspicuously disclosed the Plaintiff's right to rescind the transaction.

d. Clearly and conspicuously disclosed how to exercise the right to rescind the transaction, with a form for that purpose, designating the address of the Defendant Creditor's place of business.

e. Clearly and conspicuously disclosed the effects of rescission.

f. Clearly and conspicuously disclosed the date the rescission period expired.

31. The Defendants failed to provide a mortgage transfer disclosure. Pursuant to § 1026.39.

32. Defendants failure to deliver notice pursuant to § 1026.23 extended the start of Plaintiff's rescission period to three years for the time the notice of rescission was sent to Defendant .

33. On October 21, 2019, Plaintiff exercised his right to rescind Defendants security interest in the property known as 20 Spruce rd Amityville, NY 11701. A true and accurate copy of that notice of rescission is attached hereto, marked PLAINTIFF'S EXHIBIT C, and by this reference is incorporated herein.

34. More than 20 calendar days have passed since the Defendants received copies of the Plaintiff's notice of rescission.

35. The Defendants have failed to take any action necessary or appropriate to reflect the termination of any security interest created under the transaction,

including the security interest described in Regulation Z § 1026.23(d)(2) [formerly § 226.23(d)(2)].

36. The Defendants have failed to return to the Plaintiff any money or property given by the Plaintiff to anyone, including the Defendants, as required by 15 U.S.C. § 1635(b) and Regulation Z § 1026.23(d)(2) [formerly § 226.23(d)(2)].

37. As a result of the aforesaid violations of the Act and Regulation Z, pursuant to 15 U.S.C. §§ 1635(a), 1640(a), and 1641(c), Defendant Cenlar and CitiMortgage are liable to Plaintiff for:

a. Rescission of this transaction.

b. Termination of any security interest in Plaintiff's property created under the transaction.

c. Return of any money or property given by the Plaintiff to anyone, including the Defendants, in connection with this transaction.

d. Statutory damages pursuant to 15 U.S.C. § 1640 of $4,000 for the disclosure violations.

e. Statutory damages of $4,000 for Defendants' failure to respond properly to Plaintiff's rescission notice.

f. Forfeiture of return of loan proceeds.

g. Actual damages in an amount to be determined at trial.

h. Reasonable costs of this action including reasonable attorney fee.

i. Award such other further relief as the Court deems just and proper.

CONVERSION

38. Defendant Cenlar's failure to return the security instrument on demand resulted in an act of conversion.

39. Pursuant to UCC § 3-419(1) conversion accurse when (a) "a drawee to whom it is delivered for acceptance refuses to return it on demand," (b) "any person to whom it is delivered for payment refuses on demand either to pay or to return it," or (c) "it is paid on a forged indorsement." N.Y. U.C.C. § 3-419(1), 3-419(1)(a) – 3-419(1)(c); *see* N.Y. U.C.C. § 3-102(1)(e); *id.* § 3-104 (defining "negotiable instrument").

40. The term forgery is included in the meaning of unauthorized signature. Pursuant to UCC § 1-201(41) General Definitions "Unauthorized signature" means a signature made without actual, implied, or apparent authority. The term includes a forgery.

41. Despite knowledge of the forged signature and Plaintiff's October 21, 2019 demand for the return of the instrument, Defendant Cenlar nor CitiMortgage have attempted to returned Plaintiff's property.

42. As such UCC § 3-419(2) states that In an action against a drawee under subsection (1) the measure of the drawee's liability is the face amount of the

instrument. In any other action under subsection (1) the measure of liability is presumed to be the face amount of the instrument.

43. Here the face of the instruments dated November 7, 2002 is $119,893.44 and the instrument dated October 23, 1989 is $134,400.00, Total for both instruments is $254,293.44 (see Exhibit F page 6 & 8).

44. Given the subrogative and severable nature of the related contracts and agreements. Both CitiMortgage and Cenlar are liable severly for the original creditors ("Citibank") act of conversion.

CENLAR CONVERSION LIABILITY RELATIVE TO CITIBANK ACTIONS

45. As the purchaser of the debt obligation (see Exhibit F Notice of Service Transfer page 1 to 5) Cenlar is liable to Plaintiff for Citibank's conversion of Plaintiff's property. Pursuant to UCC § 3-419(1) conversion accurse when (a) a drawee to whom it is delivered for acceptance refuses to return it on demand, (b) any person to whom it is delivered for payment refuses on demand either to pay or to return it, or (c) it is paid on a forged indorsement.

46. Here the face of the Note proves the instrument was forged and altered. Pursuant to UCC § 3-407 any alteration of an instrument is material which changes the contract of any party thereto in any respect, including any such change in (a) the number of relations of the parties (b) an incomplete instrument, by completing it otherwise than as authorized (c) the writing as signed, by adding to it or by removing any part of it.

47. In this instance the alteration changed (a) the number of parties to the contract (b) was an incomplete and unauthorized instrument (c) the writing removed Plaintiff's liability with the use of the term "without recourse".

48. Blacks Law defines the term "without recourse" as the inability to obtain a judgment against, or reimbursement from, a defaulting or opposing party. This notation indicates a lack of means or legal right. As such the Note provided notice to Cenlar of its inability to enforce.

49. Moreover UCC § 3-407(2)(a) states that alteration by the holder which is both fraudulent and material discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense.

50. At no time did Plaintiff assent or was precluded from asserting a defense. As such Defendant Cenlar is liable to Plaintiff for the face value of the instruments dated November 7, 2002 of $119,893.44 and for the face value of the instrument dated October 23, 1989 of $134,400.00, Total for both instruments $254,293.44 (see Exhibit F page 6 & 8).

51. In addition to the liabilities under UCC § 3-419, the Plaintiff is entitled to statutory damages under TILA. 15 U.S.C. 1641(d)(2)(B) allows (i) the amount of all remaining indebtedness $105,093.00 (see Exhibit A) (ii) the total amount paid by the consumer in connection with the transaction. $186,969.42 principle and interest and $7,634.37 closing cost Total paid $194,603.79.

52. Total State and Federal conversion damage claim based on Citibank's forged signature $ 553,990.23

CITIMORTGAGE CONVERSION LIABILITY RELATIVE TO CITIBANK ACTIONS

53.  As the assignee of the debt obligation (see Exhibit F Notice of Service Transfer) CitiMortgage is liable for Citibank's conversion of Plaintiff property. Pursuant to UCC § 3-419(1) conversion accurse when (a) a drawee to whom it is delivered for acceptance refuses to return it on demand, (b) any person to whom it is delivered for payment refuses on demand either to pay or to return it, or (c) it is paid on a forged indorsement.

54. Here the face of the Note proves the instrument was forged and altered. Pursuant to UCC § 3-407 any alteration of an instrument is material which changes the contract of any party thereto in any respect, including any such change in (a) the number of relations of the parties (b) an incomplete instrument, by completing it otherwise than as authorized (c) the writing as signed, by adding to it or by removing any part of it.

55. The alteration changed (a) the number and relationships of parties to the contract (b) was an incomplete and unauthorized instrument (c) the writing removed Plaintiff's liability with the use of the term "without recourse".

56. Blacks Law defines the term "without recourse" as the inability to obtain a judgment against, or reimbursement from, a defaulting or opposing party. This

notation indicates a lack of means or legal right. As such the Note provided notice to CitiMortgage of its inability to enforce this instrument.

57. Moreover UCC § 3-407(2)(a) states that alteration by the holder which is both fraudulent and material discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense.

58. At no time did Plaintiff assent or was precluded from asserting a defense. As such Defendant CitiMortgage is liable to Plaintiff for the face value of the instruments dated November 7, 2002 for $119,893.44 and for the face value of the instrument dated October 23, 1989 for $134,400.00, Total for both instruments $254,293.44 (see Exhibit F page 6 & 8).

59. In addition to the liabilities under UCC § 3-419, the Plaintiff is entitled to statutory damages under TILA. 15 U.S.C. 1641(d)(2)(B) allows (i) the amount of all remaining indebtedness $105,093.00 (see Exhibit A) (ii) the total amount paid by the consumer in connection with the transaction. $186,969.42 principle and interest and $7,634.37 closing cost Total paid $194,603.79.

60. Total State and Federal conversion damages $ 553,990.23

## VI. SECOND CAUSE OF ACTION BREACH OF CONTRACT& BREACH OF FIDUCIARY DUTY

61 Under New York law, to establish a prima facie case for breach of contract, a plaintiff must show (1) existence of a contract, (2) plaintiff's performance there under, (3) defendant's breach of that contract, and (4) resulting damages. E.g., U.S.

Bank Nat'l Ass'n v. Lieberman, 98 A.D.3d 422, 423, 950 N.Y.S.2d 127, 129 (1st Dep't 2012); Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co., 375 F.3d 168, 177 (2d Cir. 2004).

62. The existence of the Note and Mortgage between Plaintiff and Citibank N.A. is prima facie evidence of a contract between the parties (see Exhibit F page 6 & 8).

63. The Plaintiff performed under the terms of the agreement and as such the Plaintiff had no liability to pay the instrument and is entitled to recourse on the instrument against such payment.

64. As an accommodation party Plaintiff is not liable to the party accommodated (see UCC § 3-415(5) An accommodation party is not liable to the party accommodated, and if he pays the instrument has a right of recourse on the instrument against such party).

65. Citibank N.A. breached the contract when they negligently altered the contract by means of an unauthorized signature which resulted in the sale of Plaintiff mortgage obligation. Citibank N.A. did not get Plaintiff's authorization to sale Plaintiff's collateral or associated debt obligation.

66. Citibank N.A. was not authorize to transfer Plaintiff's title. Pursuant to UCC § 9-203 a security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral.

67. UCC § 9-203(b)(2) indicates that a security interest is enforceable against the

debtor and third parties with respect to collateral only if the debtor has the rights in the collateral or the power to transfer rights in the collateral to secured party.

68. Plaintiff did not authorize Citibank N.A. to transfer his property and as such Citibank N.A. breached the contract when they negligently altered the contract by changing the number and relationships of the parties. As evident by the indorsement on the Note, Citibank N.A. materially changed the contract when it added CitiMortgage and Cenlar as a party's (see Exhibit F)

69. Pursuant to UCC § 3-415(5). An accommodation party is not liable to the party accommodated, and if he pays the instrument has a right of recourse on the instrument against such party. As such Plaintiff has a right of recourse to recover all cost incurred on this instrument.

70. On or around March 15, 2019 CitiMortgage and Cenlar informed Plaintiff that they where holders of Plaintiff's mortgage and note evidenced by (Exhibit F). As such Plaintiff is well within the statute of limitation to bring this breach of contract action. New York law provides a six year statute of limitation of a breach of contract claim therefore Plaintiff claim is timely.

71. Citibank was negligent when they altered and forged Plaintiff's signature. UCC § 3-406 states that Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in

due course.

72. Moreover as an "accommodation party" the Plaintiff is not liable to the party accommodated, and if he pays the instrument has a right of recourse on the instrument against such party.

73. 15 U.S.C. 1641(d)(1) allows any person who purchases or is otherwise assigned a mortgage referred to in section 1602(aa) of this title shall be subject to all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage, unless the purchaser or assignee demonstrates, by a preponderance of the evidence, that a reasonable person exercising ordinary due diligence, could not determine, based on the documentation required by this subchapter, the itemization of the amount financed, and other disclosure of disbursements that the mortgage was a mortgage referred to in section 1602(aa) of this title.

74. Based on the face of the mortgage and note (see Exhibit F) as well as the mortgage documents in Exhibit L, Exhibit M and Exhibit N the Defendants had knowledge that this loan was that of a mortgage referred to in section 1602(aa).

CENLAR LIABILITY FOR CITIBANK BREACH OF CONTRACT

75. Cenlar is liable for amount paid by Plaintiff $186,969.42 principle and interest and $7,634.37 closing cost Total $194,603.79.

76. In addition to damages that are the natural and probable consequence of the breach, Plaintiff is entitled to statutory damages under TILA. 15 U.S.C. 1641(d)(2)(B) allows (i) the amount of all remaining indebtedness $105,093.00 (see Exhibit A) (ii) the total amount paid by the consumer in connection with the transaction. $186,969.42 principle and interest and $7,634.37 closing cost Total paid $194,603.79.

77. As such Cenlar is liable for actual damages resulting from cost incurred for money paid to Citibank the "accommodated party" by Plaintiff the "accommodation party". Pursuant to UCC § 3-415(5) Defendant Cenlar is liable for actual cost and Federal damages allowed under 15 U.S.C. 1641(d)(2)(B); Total damages $ 494,300.58.

CITIMORTGAGE   LIABILITY   FOR   CITIBANK   BREACH   OF CONTRACT

78. CitiMortgage is liable for amount paid by Plaintiff $186,969.42 principle and interest and $7,634.37 closing cost Total $194,603.79.

79. In addition to damages that are the natural and probable consequence of the breach, Plaintiff is entitled to statutory damages under TILA. 15 U.S.C. 1641(d)(2)(B) allows (i) the amount of all remaining indebtedness $105,093.00 (see Exhibit A) (ii) the total amount paid by the consumer in connection with the

transaction. $186,969.42 principle and interest and $7,634.37 closing cost Total paid $194,603.79.

80. As such CitiMortgage is liable for actual damages resulting from cost incurred for money paid to Citibank the "accommodated party" by Plaintiff the "accommodation party". Pursuant to UCC § 3-415(5) Defendant CitiMortgage is liable for actual cost and Federal damages allowed under 15 U.S.C. 1641(d)(2)(B); Total damages $ 494,300.58.

Breach of Fiduciary Duty

81. The contract between the Defendant and the Plaintiff is that of a bailment. A contract of bailment exists when a person turns over an article of property for a particular purpose or merely for safekeeping to another person who accepts the property with the understanding that it will be returned or kept until reclaimed or otherwise disposed of in accordance with the understanding of the parties.

82. Parties to a bailment contract are called the bailor and bailee. The bailor is the party who surrenders the property and the bailee is the party who receives the property. For a bailment contract to exist the bailee must be given physical possession and control over the property. The bailee must know that the property has been delivered to him/her and he/she must have an intention, express or implied from the circumstances, to exercise control over the property.

83. The contract of bailment may be expressly agreed upon, in writing or verbally,

or it may be implied from the circumstances of the transaction and the conduct of the parties.

84. The standard of care for the safety of the property that must be exercised by the bailee, the person who has received the property, depends upon the purpose of the bailment, namely, whether it is for the benefit of the bailee alone, or the bailor alone, or for their mutual benefit.

85. In this case the parties agree that plaintiff delivered possession of (collateral as identified in the Note as 20 Spruce rd Amityville, NY 11701) to defendant for (the refinancing of a home loan described under 1602(aa)) and defendant agreed to return the property (December 1, 2032). Therefore there is no dispute as to the existence of the bailment contract.

86. As bailee, Citibank did not exercise that degree of care for the safety of the property as was required by law and that as a proximate resulted in damages relative to the unauthorized signature of Plaintiffs name.

87. Pursuant to 15 U.S.C. § 1641(d)(1) Any person who purchases or is otherwise assigned a mortgage referred to in section 1602(aa) of this title shall be subject to all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage, unless the purchaser or assignee demonstrates, by a preponderance of the evidence, that a reasonable person exercising ordinary due diligence, could not determine, based on the

documentation required by this subchapter, the itemization of the amount financed, and other disclosure of disbursements that the mortgage was a mortgage referred to in section 1602(aa) of this title.

88. Moreover UCC § 3-419(1)(c) states that "an instrument is converted when it is paid on a forged indorsement".

89. In this instance Citibank failed to exercise ordinary care. As a bailment with mutual benefit a bailee is liable for damage to the property or loss of the property if that damage or loss results from the baill's negligence.

90. Thus a bailee is liable to the bailor for loss or damage to the property if the bailee has failed to exercise reasonable care for the safety of the property which came into the bailee's possession. Reasonable care means such care for the safety of the property as a person of ordinary prudence would exercise in the same or similar circumstances.

91. A bailee in possession and control of an instrument is liable for damages as a result for its failure of duty of care. In this instance Citibank without Plaintiff's knowledge or authorization altered the instrument when they transferred rights to title of the debt obligation.

92. Pursuant to UCC § 3-407 an "Alteration" means Any alteration of an instrument is material which changes the contract of any party thereto in any respect, including any such change in.

93. Here Citibank added additional parties to the agreement as well as changed the terms of the agreement when it altered the instrument by transferring it with a "Without recourse" indoresement (see Exhibit F page 7 & 10).

94. As a bailee Citibank was prohibited from creating an impairment against Plaintiff's property and was required to exercise ordinary care in the handling of Plaintiff's property.

95. Pursuant to UCC § 3-406 Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business.

CITIMORTGAGE LIABILITY FOR CITIBANK BREACH OF FIDUCIARY DUTY

96. In this instance CitiMortgae is liable for all losses associated with Citibank's negligence and failure to exercise ordinary care when it altered the instrument and forged Plaintiff's signature.

97. As a result of Citibank's actions Plaintiff loss $194,603.79 in principle and interest payments and closing cost.

98. Defendant is also liable for damages under 15 U.S.C. 1641(d)(2)(B) (i) the

amount of the remaining indebtedness of $105,093.00 as shown Cenlars payoff statement (see Exhibit E) (ii) the total amount paid by the consumer in connection with the transaction, The consumer paid $194,603.79 in principle and interest payments and closing cost.

99. CitiMortgage is liable to Plaintiff for damages related to money paid of $194,603.79. CitiMortgage if also liable to Plaintiff for statutory damages allowed under 15 U.S.C. 1641(d)(2)(B) $299,696.79; Total damages $ 494,300.58

CENLAR LIABILITY FOR CITIBANK BREACH OF FIDUCIARY DUTY

100. Cenlar is liable for all losses associated with Citibank's negligence and failure to exercise ordinary care when it altered the instrument and forged Plaintiff's signature.

101. As a result of Citibank's actions Plaintiff loss $194,603.79 in principle and interest payment and closing cost.

102. Defendant Cenlar is also liable for damages under 15 U.S.C. 1641(d)(2)(B) (i) the amount of the remaining indebtedness of $105,093.00 as shown Cenlars payoff statement (see Exhibit E) (ii) the total amount paid by the consumer in connection with the transaction, The consumer paid $194,603.79 in principle and interest payments and closing cost.

103. Cenlar is liable to Plaintiff for damages related to money paid $194,603.79. Cenlar if also liable to Plaintiff for statutory damages allowed under

15 U.S.C. 1641(d)(2)(B) $299,696.79; Total damages $ 494,300.58.

## VII. THIRD CAUSE OF ACTION VIOLATION OF FDCPA

104. "Congress enacted the FDCPA 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" Vincent v. The Money Store, 736 F.3d 88, 96 (2d Cir. 2013) (quoting 15 U.S.C. § 1692(e)); see also Kropelnicki v. Siegel, 290 F.3d 118, 127 (2d Cir. 2002) (noting that the purpose of the FDCPA is "to protect consumers from deceptive or harassing actions taken by debt collectors"). Under the FDCPA, "any debt collector who fails to comply with any provision of [§ 1692] with respect to any person is liable to such person[.]" 15 U.S.C. § 1692k(a). The act "imposes civil liability on 'debt collector[s]' for certain prohibited debt collection practices." Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 573, 130 S. Ct. 1605, 1606, 176 L. Ed. 2d 519 (2010).

105. In order to successfully state a claim under the FDCPA, "(1) the plaintiff must be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the debt is considered a 'debt collector,' and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements." Schuh v.

Druckman & Sinel, L.L.P., 751 F. Supp. 2d, 542, 548 (S.D.N.Y. 2010) (internal citations omitted); accord Polanco v. NCO Portfolio Mgmt., Inc., 132 F. Supp. 3d 567, 578 (S.D.N.Y. 2015) (same). Here it is clear that Cenlar either acting in its own capacity or acting on behalf of FNMA has violated 15 U.S.C. § 1692e.

106. The Plaintiff falsely represented itself in this action as FNMA, rather than its "true name," such an action is a violation of 15 U.S.C. § 1692e, 1692e(2)(A), 1692e(10) and 1692e(14). "Each of these sections make it unlawful to make certain false representations in connection with the collection of a debt." Bleich v. Revenue Maximization Grp., Inc., 233 F. Supp. 2d 496, 498 (E.D.N.Y. 2002).

107. As previously stated, Section 1692e generally prevents the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Within Section 1692e is a non-exhaustive list of practices that violate the section. Pifko v. CCB Credit Servs., Inc., No. 09-cv-3057, 2010 WL 2771832, at *4 (E.D.N.Y. July 7, 2010). Section 1692e(14) prohibits the use of anything but the "true name" of the debt collector. 15 U.S.C. § 1692e(14). Section 1692e(2)(A) makes it unlawful to falsely represent "the character, amount or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Lastly, Section 1692e(10) prohibits a debt collector from using any "false representation or deceptive means to collect or attempt to collect any debt[.]" 15

U.S.C. § 1692e(10).

108. Here it is clear that Defendant willfully made false claims as to the character, type and status of the debt. A copy of Defendants payoff statement is attached hereto, marked PLAINTIFF'S EXHIBIT E.

109. Section 803(6) of the FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

110. Section 803(6) goes on to say "the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." In other words, if a creditor collects its own debts but uses a different name that suggests it's a third-party debt collector, the statute views the company as a debt collector subject to the FDCPA.

111. Here it is evident by the notice of servicing transfer and the payment coupon included in the notice that Cenlar was collecting a debt in its own name (see Exhibit F). 15 U.S.C. 1692(a) indicates that any creditor "who in the process of collecting his own debt , uses any name other than its own which would indicate

that a third person is collecting or attempting to collect such debt" is a debt collector.

112. Defendant Cenlar is liable to Plaintiff for violations of FDCPA. Pursuant to 15 U.S.C. 1692k(1) and (2) Cenlar is liable for actual damages incurred by Plaintiff. i.e. court cost and time spent as well as any such additional cost the court may allow up to $1,000.00.

113. Cenlar is liable to Plaintiff for 160hr @ $200 = $32,000.00 of time preparing legal documents for this case.

## VIII. FORTH CAUSE OF ACTION AIDING AND ABETTING

114. CitiMortgage and Cenlar aided and abetted Citibank in forgery and the alteration of Plaintiff's note.

115. A plaintiff alleging an aiding-and-abetting fraud claim must allege the existence of the underlying fraud, actual knowledge, and substantial assistance.

116. Here the underlying fraud is the forged signature noted on the face of the Note.

117. Pursuant to UCC § 1-201 "Unauthorized signature" means a signature made without actual, implied, or apparent authority.   The term includes a forgery.

118. UCC § 3-419(1)(c) also states that an instrument is converted when it is paid on a forged indorsement. As such the primary tortfeasor "Citibank" committed the act of conversion when it forged Plaintiff's signature.

119. The face of the Note give notice of such forged indorsement. UCC § 3-414 states Unless the indorsement otherwise specifies (as by such words as "without recourse") every indorser engages that upon dishonor and any necessary notice of dishonor and protest he will pay the instrument according to its tenor at the time of his indorsement to the holder or to any subsequent indorser who takes it up, even though the indorser who takes it up was not obligated to do so.

120. Here the indorsement was clearly marked with the term "without recourse". The term without recourse as defined by Blacks Law means "Inability to obtain a judgment against, or reimbursement from, a defaulting or opposing party. This notation indicates a lack of means or legal right".

121. It is apparent that CitiMortgage and Cenlar had actual knowledge of the underlying conversion by the primary tortfeasor. In Intel Corporation Investment Policy Committee v. Sulyma, The Supreme Court held unanimously (J. Alito) that "actual knowledge" means " when a person actually is aware of the relevant facts, not when he should be."

122. Aiding and abetting conversion requires the existence of a conversion by the primary tortfeasor, actual knowledge, and substantial assistance. A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession.

123. Cenlar and CitiMortgage refuse to return Plaintiff's property on demand (see Exhibit C). The Defendants refusal along with the collection of Plaintiff's payment is evidence of Cenlar and CitiMortgage giving substantial assistance to Citibank relative to the conversion of Plaintiff's property.

124. Cenlar and CitiMortgage actions clearly substantial assisted Citibank. A person substantially assist when (1) a defendant(s) affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed, and (2) the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated.

125. Both CitiMortgage and Cenlar collected payments from Plaintiff (see Exhibit G). The collection of monthly payments is evidence of active involvement.

126. CitiMortgage and Cenlar's action caused harm in which the primary liability is predicated on. As such CitiMortgage and Cenlar is liable for aiding and abetting the conversion of Plaintiff's property.

CITIMORTGAGE LIABILITY FOR AIDING AND ABETTING

127. Defendant CitiMortgage is liable to Plaintiff for the face value of Note # 1 of $134,400.00 and Note # 2 of $119,893.44 total $254,293.44

128. CitiMortgage is also liable for damages under 15 U.S.C. 1641(d)(2)(B) (i) the amount of the remaining indebtedness of $105,093.00 as shown Cenlars payoff statement (see Exhibit E) (ii) the total amount paid by the consumer in

connection with the transaction, The consumer paid $194,603.79 in principle and interest payments and closing cost.

129. As such CitiMortgage is liable to Plaintiff for statutory damages equaling the face value of any instrument paid under a forged signature $254,293.44 (see UCC § 3-419(c)). the liability for an instrument paid under forged indorsement is the face amount of the instrument. CitiMortgage if also liable to Plaintiff for statutory damages allowed under 15 U.S.C. 1641(d)(2)(B) $299,696.79; Total damages $ 553,990.23

CENLAR LIABILITY FOR AIDING AND ABETTING

130. As indicated in UCC § 3-419(2) Defendant Cenlar is liable to Plaintiff for the face value of Note # 1 of $134,400.00 and Note # 2 of $119,893.44 total $254,293.44

133. Cenlar is also liable for damages under 15 U.S.C. 1641(d)(2)(B) (i) the amount of the remaining indebtedness of $105,093.00 as shown Cenlars payoff statement (see Exhibit E) (ii) the total amount paid by the consumer in connection with the transaction, The consumer paid $194,603.79 in principle and interest payments and closing cost.  Total damage under TILA $299,696.79

134. Cenlar is liable to Plaintiff for statutory damages equaling the face value of any instrument paid under a forged signature $254,293.44 (see UCC § 3-419(c)). the liability for an instrument paid under forged indorsement is the face

amount of the instrument. Cenlar if also liable to Plaintiff for statutory damages allowed under 15 U.S.C. 1641(d)(2)(B) $299,696.79; Total damages $ 553,990.23.

## IX. PRAYER FOR RELIEF

**WHEREFORE**, it is respectfully prayed that this Court:

1. Assume jurisdiction of this case;

2. Declare the security interest in Plaintiff's home void;

3. Rescind the transaction of to Cenlar.

4. Order Defendants to take all action necessary to terminate any security interest in Plaintiff's property created under the transaction and that the Court declare all such security interests void, including but not limited to the mortgage related to the transaction of CitiMortgage and Cenlar.

5. Order the return to the Plaintiff of any money or property given by the Plaintiff to anyone, including the Defendants, in connection with the transaction;

6. Enjoin Defendants during the pendency of this action, and permanently thereafter, from instituting, prosecuting, or maintaining foreclosure proceedings on the Plaintiff's property, from recording any deeds or mortgages regarding the property or from otherwise taking any steps to deprive Plaintiff of ownership of that property;

7. Award the Plaintiff statutory damages for Citibanks conversion of Plaintiff's property. Liability assessed to CitiMortgage of $553,990.23 and liability assessed to Cenlar of $553,990.23.

8. Award the Plaintiff statutory damages for Citibank's Breach of contract liability assessed to CitiMortgage of $494,300.58 and liability assessed to Cenlar of $494,300.58.9. Award the Plaintiff statutory damages for Citibank's breach of fiduciary duty. Liability assessed to CitiMortgage $494,300.58 and liability assessed to Cenlar $494,300.58.

10. Order that, because the Defendants failed to respond to the Plaintiff's notice of rescission, the Plaintiff has no duty to tender, but in the alternative, if tender is required, determine the amount of the tender obligation in light of all of the Plaintiff's claims, and order the Defendants to accept tender on reasonable terms and over a reasonable period of time;

11. Award actual damages and punitive damages in an amount to be established at trial;

11. Award damages for aiding and abetteing conversion cost as a result of Citibank's actions $553,990.23 and cost as a result of Cenlars actions $553,990.23.

12.

13. Award statutory damages related to FDCPA 15 U.S.C. § 1692 $32,000 to Plaintiff's time spent and statutory damage of $1,000.00.

14. Award such other and further relief as the Court deems just and proper.

## IX. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11. I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

March 22, 2021

Roger Rowe
Pro Se
20 Spruce rd
Amityville, NY 11701
Tel: (631) 767-6537
rroweny@gmail.com

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Eastern District of New York

Roger Rowe

)
)
)
)
)
)

_____
Plaintiff(s)

v.

Cenlar FSB

)
)
)
)
)
)

Civil Action No

_____
Defendant(s)

AZRACK, J.

## SUMMONS IN A CIVIL ACTION

SHIELDS, M.J.

To: *(Defendant's name and address)*

Cenlar FSB
425 Phillips Blvd Ewing, NJ 08618

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Roger Rowe
20 Spruce rd
Amityville NY 11701

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

DOUGLAS C. PALMER
*CLERK OF COURT*

Date: December 30, 2019

_____
*Signature of Clerk or Deputy Clerk*

RECEIVED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E D N Y

★ DEC 30 2019 ★

LONG ISLAND OFFICE

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

Roger Rowe

      Plaintiff(s)

   -v-

Cenlar FSB

      Defendant(s)

_____ cv _____

## COMPLAINT
Jury trial requested

AZRACK, J.

SHIELDS M.J.

RECEIVED
DEC 30 2019
EDNY PRO SE OFFICE

## I. PRELIMINARY STATEMENT

1. This Complaint is filed under the Truth in Lending Act, 15 U.S.C. § 1601 (hereinafter called "Act") to enforce the plaintiff's right to rescind a consumer credit transaction, to void the Defendant's security interest in the Plaintiff's home, and to recover statutory damages, reasonable attorney's fees and costs by reason of the Defendant's violations of the Act and Regulation Z, 12 C.F.R. § 1026 [formerly § 226] (hereinafter called "Regulation Z"). Plaintiff also seeks damages for Defendant's violations of 12 U.S. § 504 and 12 U.S. § 505, FDCPA 15 U.S.C. § 1692, NY GBS § 349.

## II. JURISDICTION AND VENUE

2. Jurisdiction is conferred on this Court as a matter of Federal Question of Law by 15 U.S.C. § 1640(e) and 28 U.S.C. §§ 1331, 1337. The Defendant's has violated Regulation Z, 12 C.F.R. § 1026, 12 U.S. § 504 and 12 U.S. § 505, FDCPA 15 U.S.C. § 1692 The Court has authority to issue a declaratory judgment by virtue of 28 U.S.C. § 2201.

3. This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events and omissions giving rise to this Complaint occurred within the district.

### III. PARTIES

5. The Plaintiff, Roger Rowe, is a natural person, residing at 20 Spruce rd Amityville NY, 11701; phone # 631-767-6537 ; email rroweny@gmail.com

6. Defendant Creditor, Cenlar FSB, is a mortgage subservicing company engaged in the business of residential mortgage loan services, as well as central loan administration, and reporting services. Cenlar FSB operates in the United States at 425 Phillips Blvd Ewing, NJ 08618; phone 866-677-8807.

7. Defendant Assigner, Cenlar FSB, is a mortgage subservicing company engaged in the business of residential mortgage loan services, as well as central loan administration, and reporting services. Cenlar FSB operates in the United States at 425 Phillips Blvd Ewing, NJ 08618; phone 866-677-8807.

8. At all times relevant hereto, the Defendant Creditor, in the ordinary course of its business, regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments.

## IV. FACTUAL ALLEGATIONS

9. On or about July 12, 2019, Defendant Cenlar FSB, informed Plaintiff that his original CitiMortgage loan was currently owned by Federal National Mortgage Administration (FNMA) located at Mid Town Center 1100 15th Street NW Washington, DC 20005.

10. A true copy of the July 12, 2019 letter evidencing Defendants statements is attached hereto, marked PLAINTIFF'S EXHIBIT A, and by this reference is incorporated herein.

11. As part of this consumer credit transaction, the Defendant retained a security interest in a collateral debt obligation for 20 Spruce rd Amityville, NY 11701 which is Plaintiff's home.

12. The security interest was not created to finance the acquisition or initial construction of Plaintiff's home.

13. A true and accurate copy of the mortgage evidencing the Defendant's security interest in the amount of $157,500.00 is attached hereto, marked PLAINTIFF'S EXHIBIT B, and by this reference is incorporated herein.

14. On or about July 12, 2019 Plaintiff was notified that Defendant was assigned the obligation in question.

15. Defendant Cenlar FSB failed disclose or provide notice of mortgage transfer or right of rescission.

16. Defendant failed to respond properly to Plaintiff's notice of rescission.

## V. FIRST CAUSE OF ACTION
## TRUTH IN LENDING ACT, 15 U.S.C. § 1601 et seq.

17. Plaintiff incorporates the allegations in Paragraphs 9 thru 16 above with the same force and effect as if herein set forth.

18. This consumer credit transaction was subject to the Plaintiff's right of rescission as described by 15 U.S.C. § 1635 and Regulation Z § 1026.23 (12 C.F.R. § 1026.23 [formerly § 226.23]).

19. Plaintiff is a consumer within the meaning of 15 U.S.C. §1602(i) [§ 1602(h) prior to Dodd-Frank amendments] and Regulation Z §1026.2(a)(11) [formerly § 226.2(a)(11)].

20. In the course of this consumer credit transaction, Defendant Creditor and Defendant Assigner violated 15 U.S.C. § 1635(a) and Regulation Z § 1026.23(b) [formerly § 226.23(b)] by failing to deliver to the Plaintiff two copies of a notice of the right to rescind that:

a. Identified the transaction.

b. Clearly and conspicuously disclosed the security interest in the Plaintiff's home.

c. Clearly and conspicuously disclosed the Plaintiff's right to rescind the transaction.

d. Clearly and conspicuously disclosed how to exercise the right to rescind the transaction, with a form for that purpose, designating the address of the Defendant Creditor's place of business.

e. Clearly and conspicuously disclosed the effects of rescission.

f. Clearly and conspicuously disclosed the date the rescission period expired.

21. The Defendants failed to provide a mortgage transfer disclosure. Pursuant to § 1026.39.

22. Defendants failure to deliver notice pursuant to § 1026.23 extended the start of Plaintiff's rescission period to three years for the time the notice of rescission was sent to Defendant .

23. On October 21, 2019, Plaintiff exercised his right to rescind Defendants security interest in the property known as 20 Spruce rd Amityville, NY 11701.  A true and accurate copy of that notice of rescission is attached hereto, marked PLAINTIFF'S EXHIBIT C, and by this reference is incorporated herein.

24. More than 20 calendar days have passed since the Defendants received copies of the Plaintiff's notice of rescission.

25. The Defendants have failed to take any action necessary or appropriate to reflect the termination of any security interest created under the transaction, including the security interest described in Regulation Z § 1026.23(d)(2) [formerly § 226.23(d)(2)].

26. The Defendants have failed to return to the Plaintiff any money or property given by the Plaintiff to anyone, including the Defendants, as required by 15 U.S.C. § 1635(b) and Regulation Z § 1026.23(d)(2) [formerly § 226.23(d)(2)].

27. As a result of the aforesaid violations of the Act and Regulation Z, pursuant to 15 U.S.C. §§ 1635(a), 1640(a), and 1641(c), Defendants are liable to Plaintiff for:

a. Rescission of this transaction.

b. Termination of any security interest in Plaintiff's property created under the transaction.

c. Return of any money or property given by the Plaintiff to anyone, including the Defendants, in connection with this transaction.

d. Statutory damages pursuant to 15 U.S.C. § 1640 of $4,000 for the disclosure violations.

e. Statutory damages of $4,000 for Defendants' failure to respond properly to Plaintiff's rescission notice.

f. Forfeiture of return of loan proceeds.

g. Actual damages in an amount to be determined at trial.

h. Reasonable costs of this action including reasonable attorney fee.

i. Award such other further relief as the Court deems just and proper.

## VI. SECOND CAUSE OF ACTION FALSE ENTRY
## IN BOOK, REPORT, OR STATEMENT OF SUCH BANK

28. Both 18 U.S.C. § 1005 and § 1006 prohibit the making of false entries in any book, report, or statement with the intent to defraud the institution or other persons or to deceive any officer of the bank, examiner or agent appointed to examine the institution. Title 12 Banks and Banking Chapter 3 Section § 503 Liability of directors and officers of member banks as well as Section § 504 and § 505 Civil money penalty. The violations covered under 12 U.S. § 503 are reflected under the provisions of sections 217, 218, 219, 220, 655, 1005, 1014, 1906 or 1909 of title 18. Not only are the directors and officers personally liable for said violation, 12 U.S. § 504 and 12 U.S. § 505, holds the member bank liable for civil penalties as well.

29. The elements related to making false bank statements are (1) making a false entry, (2) with intent to defraud or deceive. A false entry includes any entry on the books of the bank which is intentionally made to represent what is not true or does not exist. See Agnew v. United States, 165 U.S. 36, 52 (1897). Any entry in which that which has been done by the officers or agents of the bank is correctly set forth in detail is not a false entry. See Coffin v. United States, 156 U.S. 432 (1895). If ostensible borrowers are not liable to the bank on their notes, an entry on the bank's books showing liability could be a false entry under the holding and rationale of United States v. Darby, 289 U.S. 224 (1933).

30. Defendant Cenlar made false claims to Credit Reporting Agencies (CRA) relative to a $107,239.00 liability. A true and accurate copy of Plaintiff's Credit Report is attached hereto, marked PLAINTIFF'S EXHIBIT D, and by this reference is incorporated herein.

31. Defendant Cenlar claims that he is a sub servicer of CitiMortgage however Cenlar added a new trade line to Plaintiff's credit report. The added trade line is proof that Cenlar is acting on its own behalf as a debt collector and not as a sub servicer for CitiMortgage.

32. CitiMortgage Inc, the original creditor indicates an original balance of $157,500.00 for an account opened in November 2002. The comment section related to this trade line indicates "Transfer to another lender or claim purchased".

33. Defendant Cenlar false claims as to a balance of $107,239.00 is a clear a violation of Title 12 Banks and Banking Chapter 3 Section § 503 Liability of directors and officers of member banks as well as Section § 504 and § 505 Civil money penalty.

34. If Defendant Cenlar is acting as a sub servicer to CitiMortgage Inc., the debt would remains with and Cenlar would be prohibited from adding a trade line to Plaintiff's credit report. As such Cenlar's reporting to the CRA's is inaccurate and is in violation Fair Credit Reporting Act (FCRA).

35. If Defendant Cenlar obtained the debt by "transfer or claimed purchased"

Cenlars statement of being a sub servicer to CitiMortgage Inc, would be false. Such a false statement is further proof of Cenlar's intent to defraud and deceive Plaintiff.

## VII. THIRD CAUSE OF ACTION VIOLATION OF FDCPA

36. "Congress enacted the FDCPA 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" Vincent v. The Money Store, 736 F.3d 88, 96 (2d Cir. 2013) (quoting 15 U.S.C. § 1692(e)); see also Kropelnicki v. Siegel, 290 F.3d 118, 127 (2d Cir. 2002) (noting that the purpose of the FDCPA is "to protect consumers from deceptive or harassing actions taken by debt collectors"). Under the FDCPA, "any debt collector who fails to comply with any provision of [§ 1692] with respect to any person is liable to such person[.]" 15 U.S.C. § 1692k(a). The act "imposes civil liability on 'debt collector[s]' for certain prohibited debt collection practices." Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 573, 130 S. Ct. 1605, 1606, 176 L. Ed. 2d 519 (2010).

37. In order to successfully state a claim under the FDCPA, "(1) the plaintiff must be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the

debt is considered a 'debt collector,' and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements." Schuh v. Druckman & Sinel, L.L.P., 751 F. Supp. 2d, 542, 548 (S.D.N.Y. 2010) (internal citations omitted); accord Polanco v. NCO Portfolio Mgmt., Inc., 132 F. Supp. 3d 567, 578 (S.D.N.Y. 2015) (same). Here it is clear that Cenlar either acting in its own capacity or acting on behalf of FNMA has violated 15 U.S.C. § 1692e.

38. The Plaintiff falsely represented itself in this action as FNMA, rather than its "true name," such an action is a violation of 15 U.S.C. § 1692e, 1692e(2)(A), 1692e(10) and 1692e(14). "Each of these sections make it unlawful to make certain false representations in connection with the collection of a debt." Bleich v. Revenue Maximization Grp., Inc., 233 F. Supp. 2d 496, 498 (E.D.N.Y. 2002).

39. As previously stated, Section 1692e generally prevents the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Within Section 1692e is a non-exhaustive list of practices that violate the section. Pifko v. CCB Credit Servs., Inc., No. 09-cv-3057, 2010 WL 2771832, at *4 (E.D.N.Y. July 7, 2010). Section 1692e(14) prohibits the use of anything but the "true name" of the debt collector. 15 U.S.C. § 1692e(14). Section 1692e(2)(A) makes it unlawful to falsely represent "the character, amount or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Lastly, Section 1692e(10)

prohibits a debt collector from using any "false representation or deceptive means to collect or attempt to collect any debt[.]" 15 U.S.C. § 1692e(10).

40. Here it is clear that Defendant willfully made false claims as to the character, type and status of the debt. A copy of Defendants payoff statement is attached hereto, marked PLAINTIFF'S EXHIBIT E.

41. Plaintiff cannot be entitled to collect this debt being that this debt is an executory contract which under section § 365 of the bankruptcy code prohibits the assignment of an executory contract (see Nonassignment Act, 41 U.S.C. § 15. Section 365(e)(1) of the Bankruptcy Code).

## VIII. PRAYER FOR RELIEF

**WHEREFORE**, it is respectfully prayed that this Court:

1. Assume jurisdiction of this case;

2. Declare the security interest in Plaintiff's home void;

3. Rescind the transaction of to Cenlar.

4. Order Defendants to take all action necessary to terminate any security interest in Plaintiff's property created under the transaction and that the Court declare all such security interests void, including but not limited to the mortgage related to the transaction of CitiMortgage and Cenlar.

5. Order the return to the Plaintiff of any money or property given by the Plaintiff to anyone, including the Defendants, in connection with the transaction;

6. Enjoin Defendants during the pendency of this action, and permanently thereafter, from instituting, prosecuting, or maintaining foreclosure proceedings on the Plaintiff's property, from recording any deeds or mortgages regarding the property or from otherwise taking any steps to deprive Plaintiff of ownership of that property;

7. Award the Plaintiff statutory damages for the disclosure violations, in the amount of twice the finance charge in connection with this transaction, but not less than $200 or more than $4,000 as provided under 15 U.S.C. § 1640(a);25

8. Award the Plaintiff statutory damages for Defendant's failure to respond properly to the Plaintiff's rescission notice, in the amount of twice the finance charge in connection with this transaction, but not less than $400 or more than $4,000 as provided under 15 U.S.C. § 1640(a);

9. Order that, because the Defendants failed to respond to the Plaintiff's notice of rescission, the Plaintiff has no duty to tender, but in the alternative, if tender is required, determine the amount of the tender obligation in light of all of the Plaintiff's claims, and order the Defendants to accept tender on reasonable terms and over a reasonable period of time;

10. Award actual damages in an amount to be established at trial;

11. Award the Plaintiff costs and a reasonable attorney fee as provided under 15 U.S.C. § 1640(a);

12. Award statutory damages pursuant to§ 504 and § 505 Civil money penalty.

13. Award statutory damages related to FDCPA 15 U.S.C. § 1692

14. Award such other and further relief as the Court deems just and proper.

## IX. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11. I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

December 30, 2019

Roger Rowe
Pro Se
20 Spruce rd
Amityville, NY 11701
Tel: (631) 767-6537
rroweny@gmail.com

# EXHIBIT A



July 12, 2019


Ines Rowe-Bryan
Roger Rowe
20 Spruce Road
Amityville, NY  11701

Re      Loan number   4770947259

Dear Borrower:

We are in receipt of your Qualified Written Request and your request to validate the debt related to the above-referenced loan ("the Loan"), which is dated June 27, 2019. This was received in our offices on June 28, 2019.

The Loan was originated by CitiBank, N.A dba CitiMortgage, Inc. and is currently owned by Federal National Mortgage Administration (FNMA) located at MidTown Center 1100 15th Street NW Washington, DC 20005. CitiMortgage, Inc., located at 1000 Technology Drive O'Fallon, MO 63368, is the servicer of the Loan.  Cenlar, FSB subservices the loan on behalf of CitiMortgage. Inc. effective April 1, 2019

On March 15, 2019 the enclosed Notice of Servicing Transfer was mailed, which explained that the loan servicing would be transferred to Cenlar, FSB from CitiMortgage, Inc., effective April 1, 2019

The Loan is due for the June 1, 2019 installment and the following payments are in arrears:

| | | |
|---|---|---|
| Two payments, June 2019- July 2019 @ $1,697.60 | = | $3395.20 |
| The following amounts are due and owing | | |
| Accrued late charges | = | $18.89 |

With respect to the questions raised in your correspondence, we enclose the following:
- Copies of the Note and Mortgage agreements you signed at closing, along with the Consolidation, Extension, and Modification Agreement dated November 7, 2001. These documents were all executed by Ines Rowe and Roger Rowe, obligating both parties to the loan agreement.
- Loan payment history and transaction codes key list as well as an itemized breakdown above
- Please refer to the payment history to obtain how the amounts owed have been calculated.
- Please refer to the above referenced Note as evidence of the obligation of amounts owed
- Our records show no evidence of any judgments entered in relation to this debt
- The original creditor as stated above is CitiBank, N A

Ines Rowe-Bryan
July 12, 2019
Page 2

Additionally we show no record of this loan having been paid in full at any time in the past. If you have evidence or proof of this, please forward this to our Research department at:

Attention: Research Department
PO Box 77404
Ewing, NJ 08628
Fax: 609-538-4005

Should you require additional assistance please contact us at 866-677-8807

Sincerely

*James Bauer*

James Bauer
Executive Resolution Analyst

Enclosures

# EXHIBIT B

| Number of pages | | | | RECORDED |
|---|---|---|---|---|
| **TORRENS** | | | | SUFFOLK COUNTY |
| Serial # _____ | | | | M00000728 |
| Certificate # _____ | | | | P 423 |
| Prior Ctf. # _____ | | | | CT130126 |
| Deed / Mortgage Instrument | | Deed / Mortgage Tax Stamp | | Recording / Filing Stamps |

| **FEES** | | | | | |
|---|---|---|---|---|---|
| Page / Filing Fee | _____ | | | Mortgage Amt 119,843 | |
| Handling | _____ | | | 1 Basic Tax | _____ |
| TP-584 | _____ | | | 2 Additional Tax | _____ |
| Notation | _____ | | | Sub Total | _____ |
| EA-52 17 (County) | Sub Total _____ | | | Spec./Assit Or | |
| EA-5217 (State) | _____ | | | Spec /Add | _____ |
| R.P.T.S.A | _____ | | | TOT MTG. TAX 1174 | |
| Comm. of Ed | 5.00 | | | Dual Town ___ Dual County ___ Held for Apportionment | |
| Affidavit | _____ | | | Transfer Tax | _____ |
| Certified Copy | _____ | | | Mansion Tax | _____ |
| Reg. Copy | _____ | | | The property covered by this mortgage is or will be improved by a one or two family dwelling only | |
| Other | Sub Total _____ | | | YES ___ or NO ___ | |
| | GRAND TOTAL _____ | | | If NO, see appropriate tax clause on page # ___ of this instrument | |

| | Real Property Tax Service Agency Verification | | | | **Community Preservation Fund** | |
|---|---|---|---|---|---|---|
| | Dist | Section | Block | Lot | Consideration Amount $ _____ | |
| | 0112 | 124.00 | 03.00 | 021.000 | CPF Tax Due $ _____ | |
| Date | | | | | Improved | _____ |
| Initials | | | | | Vacant Land | _____ |

Satisfactions/Discharges/Releases List Property Owners Mailing Address
**RECORD & RETURN TO:**

Citibank, N.A.
P.O. Box 9206
Mail Station 81026
Farmington Hills, MI 48333-9206

| TD | _____ |
| TD | _____ |
| TD | _____ |

| | **Title Company Information** |
|---|---|
| Co. Name | CROSS COUNTY ABSTRACT, INC. |
| Title # | CCA 176605 |

## Suffolk County Recording & Endorsement Page

This page forms part of the attached _Mortgage_ made by
(SPECIFY TYPE OF INSTRUMENT)

_____ The premises herein is situated in
SUFFOLK COUNTY, NEW YORK

TO

In the Township of _Babylon_

_Citibank_

In the VILLAGE or HAMLET of _Copiague_

BOXES 5 THRU 9 MUST BE TYPED OR PRINTED IN BLACK INK ONLY PRIOR TO RECORDING OR FILING

Page 1

Recordation Requested by:
Citibank, N.A.
8333 Ridgepoint Drive
Irving, TX  75063

When Recorded Mail to:
CitiMortgage, Inc.
Attn: Document Processing
P O  Box 790021
St. Louis, MO  63179-0021
Send Tax Notices to:
Citibank, N.A.
15851 Clayton Road
MS 309
Ballwin, MO  63011

MT A 1174.

A   2000360738  INES ROWE-BRYAN

[Space Above This Line For Recording Data]

Application No. 002000360738

# MORTGAGE

## WORDS USED OFTEN IN THIS DOCUMENT

(A) "Security Instrument." This document, which is dated November 7, 2002                will be called the "Security Instrument "

(B) "Borrower."
INES ROWE-BRYAN AND ANNA ROWE, AS JOINT TENANTS whose address is 20 SPRUCE RD, AMITYVILLE, NY  11701-1019

sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "Lender."
Citibank, N.A.
will be called "Lender." Lender is a corporation or association which exists under the laws of the United States
Lender's address is 399 Park Avenue, New York, NY  10043

(D) "Note." The note signed by Borrower and dated November 7, 2002                , will be called the "Note " The Note shows that I owe Lender One Hundred Nineteen Thousand Eight Hundred Ninety Three & 44/100
Dollars (U.S. $  119,893.44                ) plus interest
I have promised to pay this debt in monthly payments and to pay the debt in full by  December 1, 2032
(E) "Property." The property that is described below in the section titled "Description of the Property." will be called the "Property "
(F) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured "

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument  This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to.
(A) Pay all the amounts that I owe Lender as stated in the Note
(B) Pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 of this Security Instrument to protect the value of the Property and Lender's rights in the Property  and
(C) Keep all of my other promises and agreements under this Security Instrument

*Premises herein Improved by a 1-2 Family Dwelling*

NEW YORK  Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT             Form 3033 9/90
159005NY - 12/13/2000[002000360738]             Page 1 of 11             Initials

*Transferred to the County Clerk under Deed Liber 12038 p688*

Page 2

DESCRIPTION OF THE PROPERTY
I give Lender rights in the Property described in (A) through (G) below:
(A) The Property which is located at  20 Spruce Rd

_____
(Street)

Amityville                                              . New York 11701-1019                      This Property is in

_____
(City)                                                                          [Zip Code,

SUFFOLK                                                              County. It has the following legal description:
See Attached Legal Description

(B) All buildings and other improvements that are located on the Property described in subparagraph (A) of this section;
(C) All rights in other property that I have as owner of the Property described in subparagraph (A) of this section. These rights
are known as "easements and appurtenances attached to the Property";
(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in
subparagraph (A) of this section.
(E) All fixtures that are now or in the future will be on the Property described in subparagraphs (A) through (E) of this section;
(F) All of the rights and property described in subparagraphs (B) through (E) of this section that I acquire in the future; and
(G) All replacements of or additions to the Property described in subparagraphs (B) through (F) of this section.

BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND
OWNERSHIP OF THE PROPERTY
I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and
(C) there are no outstanding claims or charges against the Property, except for those which are of public record

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers
because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will
defend my ownership of the Property against any claims of such rights.

PLAIN LANGUAGE SECURITY INSTRUMENT
This Security Instrument contains promises and agreements that are used in real property security instruments all over the
country  It also contains other promises and agreements that vary  to a limited extent  in different parts of the country  My
promises and agreements are stated in "plain language."

159005NY - 12/13/2000[002000360738]                 Page 2 of 11                    Form 3033 10/91
                                                                                    Initials: _____

Page 3

COVENANTS

I promise and I agree with Lender as follows:

1. BORROWER'S PROMISE TO PAY
I will pay to Lender on time principal and interest due under the Note and any prepayment and late charges due under the Note

2. MONTHLY PAYMENTS FOR TAXES AND INSURANCE
(A) Borrower's Obligations
I will pay to Lender all amounts necessary to pay for taxes, assessments, water frontage charges and other similar charges sewer rents, leasehold payments or ground rents (if any), hazard or property insurance covering the Property, and flood insurance (if any). If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, (i) I also will pay to Lender all amounts necessary to pay for mortgage insurance, and (ii) If, under Paragraph 8 below, instead of paying for mortgage insurance I am required to pay Lender an amount equal to the cost of mortgage insurance, I will pay this amount to Lender. I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless the law requires otherwise. I will make these payments on the same day that my monthly payments of principal and interest are due under the Note.

My payments under this Paragraph 2 will be for the items listed in (i) through (vi) below, which are called "Escrow Items":
(i) The estimated yearly taxes, assessments, water frontage charges and other similar charges, and sewer rents on the Property which under the law may be superior to this Security Instrument as a lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "lien";
(ii) The estimated yearly leasehold payments or ground rents on the Property (if any);
(iii) The estimated yearly premium for hazard or property insurance covering the Property;
(iv) The estimated yearly premium for flood insurance covering the Property (if any);
(v) The estimated yearly premium for mortgage insurance (if any), and
(vi) The estimated yearly amount I may be required to pay Lender under Paragraph 8 below instead of the payment of the estimated yearly premium for mortgage insurance (if any).

Lender will estimate from time to time the amount I will have to pay for Escrow Items by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless the law requires Lender to use another method for determining the amount I am to pay. The amounts that I pay to Lender for Escrow Items under this Paragraph 2 will be called the "Funds." The Funds are pledged as additional security for all Sums Secured

The law puts limits on the total amount of Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender for a "federally related mortgage loan" could require me to place in an "escrow account" under the federal law called the "Real Estate Settlement Procedures Act of 1974," as that law may be amended from time to time. If there is another law that imposes a lower limit on the total amount of Funds Lender can collect and hold, Lender will be limited to the lower amount.

(B) Lender's Obligations
Lender will keep the Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Funds. Except as described in this Paragraph 2, Lender will use the Funds to pay the Escrow Items. Lender will give to me without charge an annual accounting of the Funds. That accounting must show all additions to and deductions from the Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Funds, for using the Funds to pay Escrow Items, for making a yearly analysis of my payment of Funds or for receiving, verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Funds and if the law permits Lender to make such a charge. Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless the law does not permit Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Funds unless either (i) Lender and I agree in writing, at the time I sign this Security Instrument, that Lender will pay interest on the Funds, or (ii) the law requires Lender to pay interest on the Funds.

Form 3033 10/91
Initials

Page 4

(C) Adjustments to the Funds

Under the law, there is a limit on the amount of Funds Lender may hold. If the amount of Funds held by Lender exceeds this limit, then the law requires Lender to account to me in a special manner for the excess amount of Funds. There will be an excess amount if, at any time, the amount of Funds which Lender is holding or keeping is greater than the amount of Funds Lender is allowed to hold under the law.

If, at any time, Lender has not received enough Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items in full. Lender will determine the number of monthly payments I have in which to pay that additional amount, but the number of payments will not be more than twelve.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Funds that are then being held by Lender. If, under Paragraph 21 below, Lender either acquires or sells the Property, then before the acquisition or sale, Lender will use any Funds which Lender is holding at the time of the acquisition or sale to reduce the Sums Secured.

3. APPLICATION OF BORROWER'S PAYMENTS

Unless the law requires otherwise, Lender will apply each of my payments under the Note and under Paragraphs 1 and 2 above in the following order and for the following purposes:
First, to pay any prepayment charges due under the Note.
Next, to pay the amounts due to Lender under Paragraph 2 above.
Next, to pay interest due.
Next, to pay principal due, and
Last, to pay any late charges due under the Note.

4. BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS

I will pay all taxes, assessments, water frontage charges and other similar charges, sewer rents, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make payments due under any lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will do this either by making the payments to Lender that are described in Paragraph 2 above or, if I am not required to make payments under Paragraph 2, by making the payments on time to the person owed them. (In this Security Instrument, the word "person" means any person, organization, governmental authority or other party.) If I make direct payments, then promptly after making any of those payments I will give Lender a receipt which shows that I have done so. If I make payment to Lender under Paragraph 2, I will give Lender all notices or bills that I receive for the amounts due under this Paragraph 4.

I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give Borrower a notice identifying the superior lien. Borrower shall pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. BORROWER'S OBLIGATION TO MAINTAIN HAZARD INSURANCE OR PROPERTY INSURANCE

I will obtain hazard or property insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage, including floods and flooding. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company, but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. If I do not maintain the insurance coverage described above, Lender may obtain insurance coverage to protect Lender's rights in the Property in accordance with Paragraph 7 below.

All of the insurance policies and renewals of those policies must include what is known as a "standard mortgage clause" to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

Form 3033  10/01
Initials _____

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "proceeds." The proceeds will be used to repair or to restore the damaged Property unless: (A) it is not economically feasible to make the repairs or restoration; or (B) the use of the proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (C) Lender and I have agreed in writing not to use the proceeds for that purpose. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the proceeds will be used to reduce the amount that I owe to Lender under the Note and under this Security Instrument. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the proceeds. Lender may use the proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes.

If Lender acquires the Property under Paragraph 21 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold.

**6. BORROWER'S OBLIGATIONS TO OCCUPY THE PROPERTY, TO MAINTAIN AND PROTECT THE PROPERTY, AND TO FULFILL ANY LEASE OBLIGATIONS; BORROWER'S LOAN APPLICATION**
(A) Borrower's Obligations to Occupy the Property
I will occupy the Property and use the Property as my principal residence within sixty days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

(B) Borrower's Obligations to Maintain and Protect the Property
I will keep the Property in good repair. I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate.

I will be "in default" under this Security Instrument if I fail to keep any promise or agreement made in this Security Instrument. I also will be in default under this Security Instrument if any civil or criminal action or proceeding for "forfeiture" (that is, a legal action or proceeding to require the Property, or any part of the Property, to be given up) is begun and Lender determines, in good faith, that this action or proceeding could result in a court ruling (i) that would require forfeiture of the Property or (ii) that would materially impair the lien of this Security Instrument or Lender's rights in the Property. I may correct the default by obtaining a court ruling that dismisses the legal action or proceeding, if Lender determines, in good faith, that this court ruling prevents forfeiture of my interests in the Property and also prevents any material impairment of (i) the lien created by this Security Instrument or (ii) Lender's rights in the Property. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Paragraph 18 below, even if Lender has required immediate payment in full.

(C) Borrower's Obligations to Fulfill Any Lease Obligations
If I do not own but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

(D) Borrower's Loan Application
If, during the application process for the loan that I promise to pay under the Note, I made false or inaccurate statements to Lender about information important to Lender in determining my eligibility for the loan, Lender will treat my actions as a default under this Security Instrument. False or inaccurate statements about information important to Lender would include a

misrepresentation of my intentions to occupy the Property as a principal residence. This is just one example of a false or inaccurate statement of important information. Also, if during the loan application process I failed to provide Lender with information important to Lender in determining my eligibility for the loan, Lender will treat this as a default under this Security Instrument.

## 7. LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY

If (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or forfeiture, or to enforce laws or regulations), Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this Paragraph 7, Lender does not have to do so.

I will pay to Lender any amounts, with interest, which Lender spends under this Paragraph 7. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will also pay interest on those amounts at the Note rate. Interest on each amount will begin on the date that the amount is spent by Lender. However, Lender and I may agree in writing to terms of payment that are different from those in this paragraph. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

## 8. MORTGAGE INSURANCE

If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, I will pay the premiums for the mortgage insurance. If, for any reason, the mortgage insurance coverage lapses or ceases to be in effect, I will pay the premiums for substantially equivalent mortgage insurance coverage. However, the cost of this mortgage insurance coverage must be substantially equivalent to the cost to me of the previous mortgage insurance coverage, and the alternate mortgage insurer must be approved by Lender.

If substantially equivalent mortgage insurance coverage is not available, Lender will establish a "loss reserve" as a substitute for the mortgage insurance coverage. I will pay to Lender each month an amount equal to one-twelfth of the yearly mortgage insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the mortgage insurance would have covered. Lender may choose to no longer require loss reserve payments, if mortgage insurance coverage again becomes available and is obtained. The mortgage insurance coverage must be in the amount and for the period of time required by Lender. The Lender must approve the insurance company providing the coverage.

I will pay the mortgage insurance premiums, or the loss reserve payments, until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law. Lender may require me to pay the premiums, or the loss reserve payments, in the manner described in Paragraph 2 above.

## 9. LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter on and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

## 10. AGREEMENTS ABOUT CONDEMNATION OF THE PROPERTY

A taking of property by any governmental authority by eminent domain is known as "condemnation." I give to Lender my right: (A) to proceeds of all awards or claims for damages resulting from condemnation or other governmental taking of the Property; and (B) to proceeds from a sale of the Property that is made to avoid condemnation. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me.

Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, and the fair market value of the Property immediately before the taking either is equal to, or greater than, the amount of the Sums Secured immediately before the taking, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by a fraction. That fraction is as follows: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

Page 7

Unless Lender and I agree otherwise in writing or unless the law requires otherwise, if only a part of the Property is taken, and the fair market value of the Property immediately before the taking is less than the amount of the Sums Secured immediately before the taking, the proceeds will be used to reduce the Sums Secured

If I abandon the Property or if I do not answer within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes

11 CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS
(A) Borrower's Obligations
Lender may allow a person who takes over my rights and obligations to delay or to change the amount of the monthly payments of principal and interest due under the Note or under this Security Instrument. Even if Lender does this, however, that person and I will both still be fully obligated under the Note and under this Security Instrument

Lender may allow those delays or changes for a person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a person for not fulfilling obligations under the Note or under this Security Instrument, even if Lender is requested to do so

(B) Lender's Rights
Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 21 below to demand that I make immediate payment in full of the amount that I owe to Lender under the Note and under this Security Instrument

12 OBLIGATIONS OF BORROWER AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS
Any person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument

If more than one person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note. (A) that person is signing this Security Instrument only to give that person's rights in the Property to Lender under the terms of this Security Instrument, and (B) that person is not personally obligated to pay the Sums Secured; and (C) that person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights or to modify or make any accommodations with regard to the terms of this Security Instrument or the Note without that person's consent

13 LOAN CHARGES
If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits. (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note

14 NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT
Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at the address stated in the section above titled "Description of the Property." A notice will be given to me at a different address if I give Lender a notice of my

Form 3033 10/91
Initials _____

CS9005NY - 12/13/2000;002003660738          Page 7 of 11

different address. Any notice that must be given to Lender under this Security Instrument will be given by mailing it to Lender's address stated in subparagraph (C) of the section above titled "Words Used Often In This Document." A notice will be mailed to Lender at a different address if Lender gives me a notice of the different address. A notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

**15. LAW THAT GOVERNS THIS SECURITY INSTRUMENT**
This Security Instrument is governed by federal law and the law that applies in the place where the Property is located. If any term of this Security Instrument or of the Note conflicts with the law, all other terms of this Security Instrument and of the Note will still remain in effect if they can be given effect without the conflicting term. This means that any terms of this Security Instrument and of the Note which conflict with the law can be separated from the remaining terms, and the remaining terms will still be enforced.

**16. BORROWER'S COPY**
I will be given one conformed copy of the Note and of this Security Instrument.

**17. AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**
Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may require immediate payment in full if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person. However, Lender shall not require immediate payment in full if this is prohibited by federal law on the date of this Security Instrument.

If Lender requires immediate payment in full under this Paragraph 17, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**18. BORROWER'S RIGHT TO HAVE LENDER'S ENFORCEMENT OF THIS SECURITY INSTRUMENT DISCONTINUED**
Even if Lender has required immediate payment in full, I may have the right to have enforcement of this Security Instrument discontinued. I will have this right at any time before sale of the Property under any power of sale granted by this Security Instrument or at any time before a judgment has been entered enforcing this Security Instrument if I meet the following conditions:
(A) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if immediate payment in full had never been required; and
(B) I correct my failure to keep any of my other promises or agreements made in this Security Instrument; and
(C) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees; and
(D) I do whatever Lender reasonably requires to assure that Lender's rights in the Property, Lender's rights under this Security Instrument, and my obligations under the Note and under this Security Instrument continue unchanged.

If I fulfill all of the conditions in this Paragraph 18, then the Note and this Security Instrument will remain in full effect as if immediate payment in full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required immediate payment in full under Paragraph 17 above.

**19. NOTE HOLDER'S RIGHT TO SELL THE NOTE OR AN INTEREST IN THE NOTE, BORROWER'S RIGHT TO NOTICE OF CHANGE OF LOAN SERVICER**
The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I may not receive any prior notice of these sales.

The entity that collects my monthly payments due under the Note and this Security Instrument is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note; there also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. The law requires that I be given written notice of any change of the Loan Servicer. The written notice must be given in the manner required under Paragraph 14 above and under applicable law. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by the law.

Form 3033 10/01
Initials _GLL_ _J.E.B_

**20  CONTINUATION OF BORROWER'S OBLIGATIONS TO MAINTAIN AND PROTECT THE PROPERTY**

The federal laws and the laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection are called "Environmental Laws." I will not do anything affecting the Property that violates Environmental Laws, and I will not allow anyone else to do so.

Environmental Laws classify certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Paragraph 20. These are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Laws and the substances considered hazardous for purposes of this Paragraph 20 are called "Hazardous Substances."

I will not permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property, and I will not allow anyone else to do so. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. However, I may permit the presence on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property, and I may use or store these small quantities on the Property. In addition, unless the law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable (that is, not easily crumbled by hand pressure)."

If I know of any investigation, claim, demand, lawsuit or other action by the government or by a private party involving the Property and any Hazardous Substance or Environmental Laws, I will promptly notify the Lender in writing. If the government notifies me (or I otherwise learn) that it is necessary to remove a Hazardous Substance affecting the Property or to take other remedial actions, I will promptly take all necessary remedial actions as required by Environmental Laws.

**21  LENDER'S RIGHTS IF BORROWER FAILS TO KEEP PROMISES AND AGREEMENTS**

Except as provided in Paragraph 17 above, if all of the conditions stated in subparagraphs (A), (B) and (C) of this Paragraph 21 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "immediate payment in full."

If Lender requires immediate payment in full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another person may acquire the Property. This is known as "foreclosure and sale." In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require immediate payment in full under this Paragraph 21 only if all of the following conditions are met:
   (A) I fail to keep any promise or agreement made in this Security Instrument, including the promises to pay when due the Sums Secured
   (B) Lender sends to me, in the manner described in Paragraph 14 above, a notice that states
      (i) The promise or agreement that I failed to keep;
      (ii) The action that I must take to correct that default;
      (iii) A date by which I must correct the default. That date must be at least 30 days from the date on which the notice is given;
      (iv) That if I do not correct the default by the date stated in the notice, Lender may require immediate payment in full, and Lender or another person may acquire the Property by means of foreclosure and sale;
      (v) That if I meet the conditions stated in Paragraph 18 above, I will have the right to have Lender's enforcement of this Security Instrument discontinued and to have the Note and this Security Instrument remain fully effective as if immediate payment in full had never been required; and
      (vi) That I have the right in any lawsuit for foreclosure and sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have
   (C) I do not correct the default stated in the notice from Lender by the date stated in that notice

Page 10

**22. LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT**
When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will not be required to pay Lender for the discharge, but I will pay all costs of recording the discharge in the proper official records.

**23. AGREEMENTS ABOUT NEW YORK LIEN LAW**
I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that if, on the date this Security Instrument is recorded, construction or other work on any building or other improvement located on the Property has not been completed for at least four months, I will: (A) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a "trust fund", and (B) use those amounts to pay for that construction or work before I use them for any other purpose. The fact that I am holding those amounts as a "trust fund" means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Paragraph 23.

**24. RIDERS TO THIS SECURITY INSTRUMENT**
If one or more riders are signed by Borrower and recorded together with this Security Instrument, the promises and agreements of each rider are incorporated as a part of this Security Instrument. [Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☒ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ V A Rider | ☒ Other(s) [specify] | |
| | Schedule "A" | |

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 10 of this Security Instrument and in any rider(s) signed by me and recorded with it.

Witnesses:

_____                    _Ines Rowe Bryan_____(Seal)
                                              INES ROWE BRYAN              -Borrower

_____                    _Anna Rowe_____(Seal)
                                              ANNA ROWE                    -Borrower

**UNIFORM ACKNOWLEDGMENT**
(For use on Documents being Acknowledged Inside of New York State)

STATE OF NEW YORK

COUNTY OF SUFFOLK

} SS

On the ___7TH___ day of ___NOVEMBER___ in the year ___2002___ before me, the undersigned, a ~~Notary Public in and for said State~~, personally appeared ___INES ROWE-BRYAN AND ANNA ROWE___ personally known to me or proved to me on the basis of satisfactory evidence to be the Individual (s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity (ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

**UNIFORM ACKNOWLEDGMENT**
(For use on Documents being Acknowledged Outside of New York State)

State  District of Columbia, Territory  Possession or Foreign Country )

} SS

On the _____ day of _____ in the year _____ before me, the undersigned  personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the Individual (s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity (ies), and that by his/her/their signature(s) on the instrument the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the

_____
(insert the city or other political subdivision and the state or country or other place the acknowledgment was taken)

_____
Signature and office of individual taking acknowledgment

Form 3033 10/91

Initials _____

Page 12

**Homeowner's Key Note**    453 878105    **CITICORP◆CITIBANK®**

October 23 , 19 89                    New York      ,    New York
                                       (CITY)              (STATE)

20 Spruce Road, North Amityville, New York 11701
(PROPERTY ADDRESS)

**1.  BORROWER'S PROMISE TO PAY**
   In return for a loan that I have received. I promise to pay U.S. $ 134,400.00          (this amount
is called "principal"), plus interest, to the order of Lender  The Lender is Citibank, N A
399 Park Avenue, New York, New York
I understand that the Lender may transfer this Note  The Lender or anyone who takes this Note by transfer
and who is entitled to receive payments under this Note is called the "Note Holder "

**2.  INTEREST**
   (A) Interest will be charged on unpaid principal until the full amount of principal has been paid  I will
pay interest at the yearly rate of   10.625   %
   The interest rate required by this Section 2 is the rate I will pay both before and after any default
described in Section 6(B) of this Note
   (B)   N A   If I have initialed the space to the left of this sub-paragraph, the interest I will be
charged under this Note is subject to the terms of a Buy Down/Subsidy Agreement dated the same date
as this Note and which is incorporated into this Note by reference to it

**3.  PAYMENTS**
   (A) Time and Place of Payments
   I will pay principal and interest by making payments every month
   I will make my monthly payments on the first day of each month beginning on December 1
19 89   I will make these payments every month until I have paid all of the principal and interest and
any other charges described below that I may owe under this Note. My monthly payments will be applied
to interest before principal If, on November 1     , 2004 , I still owe amounts under this Note.
I will pay those amounts in full on that date, which is called the "maturity date"
   I will make my monthly payments at CMI, 15851 Clayton Road,
Ballwin, MO 63011          , or at a different place if required by the Note Holder
   (B) Amount of Monthly Payments
   My monthly payments will be in the following amounts and according to the following schedule

| Number of Payments | Total Payment Amount |
|---|---|
| 1 | 1,507.33 |
| 11 | 1,190.00 |
| 12 | 1,190.13 |
| 12 | 1,279.39 |
| 12 | 1,375.34 |
| 12 | 1,478.49 |
| 12 | 1,589.38 |
| 12 | 1,708.56 |
| 95 | 1,749.92 |
| 1 | 1,749.11 |

| Monthly Payments Numbered | Borrower's Actual Monthly Payment |
|---|---|
| 1 | 1,424.43 |
| 2-12 | 1,107.10 |

Subsidy withdrawals as provided in Paragraph 2 will be applied only upon Citibank's receipt of Borrower's monthly payment. Interim interest billed in addition to the first monthly payment will be based on the Note interest rate and will not be subsidized.

4    Withdrawals from the Account will commence on the due date of the first monthly payment and will continue until such time as the Account is terminated

5    At the time the Account is fully depleted as provided in Paragraph 2 above, Borrower must then remit to Citibank the total principal and interest mortgage payment as provided for in the Note.

6.   Borrower's interest in the Account is to have the withdrawals applied to the current monthly payment due under the Note and no part thereof may be used to pay any delinquent payments due from Borrowers under Paragraph 3

7    If Citibank is collecting monthly escrow payments from the Borrowers for insurance, taxes or similar charges, this Agreement does not reduce or impact those escrow payments.

8    Citibank is the sole party authorized to withdraw from the Account, except as herein provided and no deposit beyond the initial deposit will be made to the Account

9    If Citibank's interest in the Borrower's Loan on the subject property is assigned, sold or transferred to any third party, Citibank has the option to unilaterally assign its rights and/or obligations under this Agreement to that party. In Citibank's discretion, this Agreement may be terminated upon such assignment and the remaining deposit funds released to Citibank from the escrow; provided the Borrower's monthly payment during the subsidy period will remain as provided in Paragraph 3 after termination

10   This Account will be terminated and all parties released from obligations hereunder upon the happening of any of the following events:
    a)   all monthly amounts being withdrawn as specified in Paragraph 2,
    b)   the Loan being prepaid in full prior to all monthly payments being withdrawn as specified in Paragraph 2;
    c)   the Security Instrument being foreclosed;
    d)   upon assignment of the Loan as provided in Paragraph 9 if so elected by Citibank

11   There are no other terms or agreements, expressed or implied, concerning the Account herein established

12   This Agreement shall be binding and inure to the benefit of the heirs, successors and assigns of the parties hereto; provided, however, Borrower(s) may not assign its rights and obligations under this Agreement without Citibank's written approval.

CITIBANK, N.A.

By: _____

_____ (Provider)     INES ROWE-BRYAN _____ (Borrower)

_____ (Provider)     ANNA ROWE _____ (Borrower)

_____ (Provider)     _____ (Borrower)

_____ (Provider)     _____ (Borrower)

Page 14

# NOTE

002000360738

| November 7, 2002 | Garden City | New York |
|---|---|---|
| [Date] | [City] | [State] |

20 Spruce Rd, Amityville, NY 11701-1019

[Property Address]

1   BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U S. $ 119,893.44          (this amount is called "principal"), plus interest, to the order of the Lender  The Lender is  Citibank, N.A.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder"

2   INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid  I will pay interest at a yearly rate of 6.000          %

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note

3   PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making payments every month

I will make my monthly payments on the  First          day of each month beginning on January 1 2003          I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note  My monthly payments will be applied to interest before principal. If, on December 01          ,2032          I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at  15851 Clayton Road, Ballwin, MO  63011

or at a different place if required by the Note Holder

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 718.82

4   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due  A payment of principal only is known as a "prepayment " When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes

5   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me  If a refund reduces principal, the reduction will be treated as a partial prepayment

6.   BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen          calendar days after the date it is due, I will pay a late charge to the Note Holder  The amount of the charge will be  2.000          %, of my overdue payment of principal and interest  I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that If I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address

Page 15

8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE
   If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9.   WAIVERS
   I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10.   UNIFORM SECURED NOTE
   This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

   Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

INES ROWE-BRYAN                                                   (Seal)
                                                                -Borrower

Roger Rowe                                                        (Seal)
                                                                -Borrower

Page 16



_____[Space Above This Line For Recording Data]_____

## CONSOLIDATION, EXTENSION AND MODIFICATION AGREEMENT

**WORDS USED OFTEN IN THIS DOCUMENT**
(A) "Agreement." This document, which is dated November 7, 2002,
and exhibits and riders attached to this document will be called the "Agreement."
(B) "Borrower." INES ROWE-BRYAN, Roger Rowe

will be called "Borrower" and sometimes "I" or "me." Borrower's address is 20 SPRUCE RD, AMITYVILLE, NY
11701-1019.

(C) "Lender." Citibank, N.A.
will be called "Lender" and sometimes "Note Holder." Lender is a corporation or association which exists under the
laws of the United States.              Lender's address is 399 Park Avenue, New York, NY 10043.

(D) "Mortgages." The mortgages, deeds of trust or other security instruments identified below and any additional
security instruments and related agreements identified in to this Agreement will be called the "Mortgages:"

(1) The Mortgage given by  INES ROWE-BRYAN AND ANNA ROWE
and dated  10-23-89        in favor of    CITIBANK, N.A.
securing the original principal amount of U.S. $ 134,400.00    . This Mortgage is *on a Fannie Mae/Freddie Mac
Security Instrument* and [was recorded on  1-17-90        in the  COUNTY CLERKS OFFICE
of  SUFFOLK COUNTY                State of    NEW YORK
at  SERIAL NO. 375462
[~~with~~ ~~documentargebxxxxxxxxx~~ ~~xxxxxxxxxx~~ ~~Xxxxxxxxxxxxxxxxxxxxxxxxx~~ At this date, the unpaid principal
balance secured by this mortgage is U.S $ 37,606.56                  [Strike if not applicable.]
(2) The Mortgage given by INES ROWE-BRYAN AND ANNA ROWE
and dated  11-7-02        in favor of    CITIBANK, N.A.
securing the original principal amount of U.S. $ 119,893.44
This Mortgage ~~xxxxxxxxxxxx~~ IS INTENDED TO BE    ~~xxxxx~~ RECORDED SIMULTANEOUSLY
of                                State of
at                                             At this date, the unpaid
principal balance secured by this mortgage is U.S $ 119,893.44           [Strike if not applicable.]
(3) The Mortgage given by
and dated              in favor of
securing the original principal amount of U.S. $
This Mortgage was recorded on              in the
of                                State of
at                                             At this date, the unpaid
principal balance secured by this mortgage is U.S $            [Strike if not applicable.]

(E) "Note Holder." Lender or anyone who succeeds to Lender's rights under the Agreement and who is entitled to
receive the payments I agree to make under this Agreement may be called the "Note Holder."
(F) "Notes." The Notes identified below and any additional Notes and related obligations identified in Exhibit A to
this Agreement will be called the "Notes."
(1) The Note secured by the Mortgage identified in Section (D)(1) above and dated   10-23-89
(2) The Note secured by the Mortgage identified in Section (D)(2) above and dated   11-7-02
(3) The Note secured by the Mortgage identified in Section (D)(3) above and dated

(G) "Property." The property which is described in the Mortgages(s) *and in Exhibit B to this agreement*, will be
called the "Property." [Strike italics if not applicable.] The Property is located at
20 Spruce Rd
                              [Street]

Amityville                     SUFFOLK                   NY 11701-1019
[City]                        [County]                 [State and Zip Code]

Page 17

I promise and I agree with Lender as follows:

**I. BORROWER'S AGREEMENT ABOUT OBLIGATIONS UNDER THE NOTES AND MORTGAGES**
I agree to take over all of the obligations under the Notes and Mortgages as consolidated and modified by this Agreement as Borrower. This means that I will keep all of the promises and agreements made in the Notes and Mortgages even if some other person made those promises and agreements before me. The total unpaid principal balance of the Notes is U.S. $ 157,500.00 . Of this amount, U.S. $ 119,893.44 was advanced to me (or for my account) immediately prior to this consolidation.

**II. AGREEMENT TO COMBINE NOTES AND MORTGAGES**
By signing this Agreement, Lender and I are combining into one set of rights and obligations all of the promises and agreements stated in the Notes and Mortgages including any earlier agreements which combined or extended rights and obligations under any of the Notes and Mortgages. This means that all of Lender's rights in the Property are combined so that under the law Lender has one mortgage and I have one loan obligation which I will pay as provided in this Agreement.

**III. THE CONSOLIDATED NOTE AND THE CONSOLIDATED MORTGAGE**
This combining of notes and mortgages is known as a "consolidation." The Notes together will be called the "Consolidated Note." The Mortgage together will be called the "Consolidated Mortgage." The Consolidated Mortgage secures the Consolidated Note and is a single lien upon the Property. I have no right to set-off or counterclaim or defense to the obligations of the Consolidated Note or the Consolidated Mortgage.

**IV. AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED NOTE**
Lender and I agree to change the terms of the Consolidated note. The new terms are:
1. Borrower's Promise to Pay Principal and Interest
I promise to pay the principal that has not yet been paid under the Consolidated Note, plus interest, to the order of Lender. That Principal amount is U.S. $ 157,500.00 . Interest will be charged on unpaid principal as provided in this Agreement beginning on the date of this Agreement until the full amount of principal has been paid.
2. Payments
(A) Time and Place of Payments
I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on January 1, 2003
I will make these payments every month until I have paid all of the principal and interest and any other charges that I may owe under this Agreement and the Consolidated Note. My monthly payments will be applied to interest before principal. If on December 1, 2032 I still owe amounts under this Agreement or the Consolidated Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at 15851 Clayton Road, Ballwin, MO  63011
or a different place if required by the Note Holder.
(B) Interest Rate
I will pay interest at a yearly rate of 6.000 %. The interest rate required by this Section 2 (B) is that rate I will pay both before and after any default described in Section 3(B) of this Consolidated Note. *An Adjustable Rate Rider is recorded with this Agreement as Exhibit C and is a term of this Agreement. The interest rate I will pay will change in accordance with that Rider.* [Strike italics if not applicable]
(C) Monthly Payments
Each of my payments will be in the amount of U.S. $ 944.29 . *An ☐ Adjustable Rate or ☐ Graduated Payment or _____ Rider is recorded with this Agreement as Exhibit C and is a term of this Agreement. My monthly payment may change in accordance with that Rider.* [Strike italics if not applicable]
3. Borrower's Failure to Pay as Required
(A) Late Charge for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of  15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 2.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.
(B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. I will also be in default if I do not keep my promises and agreements under this Agreement and the Consolidated Mortgage.
(C) Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.
(D) No Waiver by Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time
(E) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law  Those expenses include, for example, reasonable attorneys' fees.
4. Borrower's Right to Prepay
(A) Borrower's Right to Make Prepayments
I have the right to make payments of principal at any time before they are due.  A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.  I may make a full prepayment or partial prepayments without paying any prepayment charge.  The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note.  If I make a partial prepayment, there will be no changes the due dates or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

Form 3172 7/00
Initials _____

Page 18

(B) Cancellation of Other Prepayment Terms

Any terms contained in the Consolidated Note about my right to make prepayments which do not agree with this Section 4 are canceled by this Agreement. My right to make prepayments under the Consolidated Note is governed only by the terms contained in this Section 4.

5. Loan Charges

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Lender may choose to make this refund by reducing the principal I owe under this Consolidated Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

6. Giving of Notice

Any notice that must be given to me under this Consolidated Note will be given as provided in the Consolidated Mortgage.

7. Waivers

I and any other person who has obligations under this Consolidated Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

8. Unchanged Terms of Consolidated Note in Full Effect

All of the terms of the Consolidated Note that are not changed in this Agreement remain in full effect as if they were stated in this Agreement.

## V. AGREEMENTS ON TERMS OF THE CONSOLIDATED MORTGAGE

Lender and I agree to change the terms of the Consolidated Mortgage. The new terms of the Consolidated Mortgage and the security instrument terms that are set out in Exhibit D to this Agreement. However, the terms of the Consolidated Mortgage prior to this change that are not inconsistent with the security instrument terms set out in Exhibit D shall also continue in effect.

## VI. BORROWER'S INTEREST IN THE PROPERTY

I promise that I am the lawful owner occupying the Property. I promise that I am a lawful tenant occupying the Property. [Strike inapplicable sentence.]

## VII. WRITTEN TERMINATION OR CHANGE OF THIS AGREEMENT

This Agreement may not be terminated, changed, or amended except by a written agreement signed by the party whose rights or obligations are being changed by that agreement.

## VIII. OBLIGATIONS OF BORROWERS AND OF PERSONS TAKING OVER BORROWER'S OR LENDER'S RIGHTS OR OBLIGATIONS

If more than one person signs this Agreement as Borrower, each of us is fully and personally obligated to keep all of the Borrower's promises and obligations contained in this Agreement. The Note Holder may enforce its rights under this Agreement against each of us individually or against all of us together.

Lender and I agree that any person who takes over my rights or obligations under this Agreement will have all of my rights and will be obligated to keep all of my promises and agreements made in this Agreement. Similarly, any person who takes over Lender's rights or obligations under this Agreement will have all of Lender's rights and will be obligated to keep all of Lender's agreements in this Agreement

## IX.  ___CO-BORROWER ACKNOWLEDGEMENT

[X] Notwithstanding paragraph VI above, Lender acknowledges that  ROGER ROWE              does not own the Property but is fully obligated to repay the loan and to keep all of the promises and obligations contained in this Agreement. [Strike if not applicable.]

## X.  ___CO-OWNER ACKNOWLEDGEMENT

[ ] Notwithstanding paragraph VIII above  Lender acknowledges that _____ will not be personally liable for repayment of the loan but is signing below to grant a security interest in the Property.   [Strike if not applicable.]

By signing  this Agreement, Lender and I agree to all of the above.

| Citibank, N.A. | | | |
|---|---|---|---|
| | _____ Lender | _Ines Rowe Bryan_ | Borrower |
| | | INES ROWE-BRYAN | |
| By: _____ | | _____ | |
| | | Roger Rowe | Borrower |
| | | _____ | |
| | | | Borrower |
| | | _____ | |
| | | | Borrower |

RANDY DOTSON, VP
Business Service Center/Post Funding
CitiMortgage, Inc.
15851 Clayton Road
Ballwin, MO 63011
636-256-5797
Pers. #5077987

## UNIFORM ACKNOWLEDGMENT
(For use on Documents being Acknowledged Inside of New York State)

STATE OF NEW YORK )
) SS:
COUNTY OF   SUFFOLK )

On the   7TH   day of   NOVEMBER   in the year 2002   before me, the undersigned, a Notary Public in and for said State, personally appeared   INES ROWE-BRYAN & ROGER . ROWE   personally known to me or proved to me on the basis of satisfactory evidence to be the individual (s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity (ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

DAVID J. HENDERSON
Notary Public, State of New York
No. 33…25
Qualified in Suffolk County
Commission Expires Oct 31, 20 05

## UNIFORM ACKNOWLEDGMENT
(For use on Documents being Acknowledged Outside of New York State)

State, District of Columbia, Territory, Possession or Foreign Country )
) SS:
_St. of Mo._ )

On the   11th   day of   Nov   in the year 2002   before me, the undersigned, personally appeared   Marilyn Watson   personally known to me or proved to me on the basis of satisfactory evidence to be the individual (s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity (ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the _St. Louis Co._

(Insert the city or other political subdivision and the state or country or other place the acknowledgment was taken)

_____
Signature and office of individual taking acknowledgment

ARLENE C. HAYNES
Notary Public - Notary Seal
State of Missouri
St. Louis County
My Commission Expires Jul 15, 2003

## INSTRUCTIONS

The following instructions apply if this Agreement is used in consolidation, extension or modification of single family loan intended for possible sale to Fannie Mae or Freddie Mac---

(1) All notes, security instruments, the most recent consolidation agreement and related agreements that modify, consolidate or extend prior underlying obligations and which predate this Agreement must be listed in this Agreement or in an Exhibit to this Agreement.

(2) For sales of whole loans to Fannie Mae and Freddie Mac, the Seller/Lender must deliver the executed original of this Agreement and all exhibits to it (or a certified true copy from the recording clerk, if the original is not yet available), together with each original Note which is the original evidence of any part of Borrower's indebtedness set out in this Agreement.

(3) If new funds are advanced at the time of the consolidation and modification evidenced by this Agreement, the new obligation must be evidenced by a new note and new mortgage on the current Fannie Mae/Freddie Mac Single Family Uniform Instruments. This new loan will then become a part of the Consolidated Note and the Consolidated Mortgage. It is not necessary that the repayment terms of the new loan, as set out in the new note reflect the terms of the Consolidated Note; the applicable repayment terms for the total indebtedness are supplied by this Agreement (see Section IV).

(4) The dollar amount in the first blank in Section 1 and the dollar amount entered in the blank in Section IV (1) should be the same. The amount entered in the last blank in Section 1 should be completed with the dollar amount of the new loan, if any, made in connection with this consolidation. Enter a "zero" if no new loan was made in connection with this consolidation. Enter a "zero" if no new loan was made in connection with this consolidation.

(5) The repayment terms of the Consolidated note (e.g. the consolidated principal amount, the monthly principal and interest payment, the interest rate and provisions for any interest rate and monthly payment changes applicable to the consolidated obligation) are restated in this Agreement by completion of the appropriate blanks in Section IV. If the Consolidated Single Family loan has an adjustable interest rate (or other alternative mortgage loan provisions), the appropriate Fannie Mae or Freddie Mac Rider must be attached as Exhibit C to this Agreement and recorded together with it. The terms of the Consolidated Mortgage, as changed by this Agreement, must be the current version of the Uniform and Non-uniform Covenant from the security instrument for the appropriate jurisdiction, together with any applicable riders. These terms are supplied by means of Exhibits C (if any) and D to this Agreement.

Page 20

TITLE NO.

## EXHIBIT B

BLOCK    2                                    LOT  21

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of Babylon, County of Suffolk and State of New York, known and designated upon a certain map entitled, "Map of Breslau Garden Plots, part of Section No. 1 made by  J. Sammis Surveyor" and duly filed in the Office of the Clerk of Suffolk County, May 7, 1881 as Map No.72 as and by lots numbered Fifteen (15), Sixteen (16), Seventeen (17) and Eighteen (18) in Block No. Six (6).

BEGINNING at a point on the Southerly side of Spruce Road, distant 250.00 feet Easterly from the corner formed by the intersection of the Southerly side of Spruce Road and the  Easterly side of East Street;

RUNNING THENCE along the Southerly side of Spruce Road, North 86° 28' 40" East 100 feet;

THENCE South 3° 31' 20" East 100 feet;

THENCE South 86° 28' 40" West 100 feet;

THENCE North 3° 31' 20" West 100 feet to the Southerly side of Spruce Road, the point or place of BEGINNING.

# EXHIBIT D

That certain mortgage and rider of even date herewith between INES ROWE-BRYAN, Roger Rowe, the mortgagor and Citibank, N.A. the mortgagee, to be recorded simultaneously herewith.

## UNIFORM ACKNOWLEDGMENT
(For use on Documents being Acknowledged <u>Inside</u> of New York State)

STATE OF NEW YORK               )
                                        ) SS·

COUNTY OF  SUFFOLK           )

On the ___7TH___ day of __NOVEMBER__ in the year __2002__ before me, the undersigned, a Notary Public in and for said State, personally appeared __INES ROWE-BRYAN AND ROGER ROWE__ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that <u>he/she/they</u> executed the same in <u>his/her/their</u> capacity(ies), and that by <u>his/her/their</u> signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

DAVID J. ROSENBLUM
Notary Public, State of New York
No. 03....45
Qualified in Suffolk County
Commission Expires Oct 31, 20___

## UNIFORM ACKNOWLEDGMENT
(For use on Documents being Acknowledged <u>Outside</u> of New York State)

State, District of Columbia, Territory, Possession or Foreign Country  )
                                             ) SS:
_____)

On the _____ day of _____ in the year _____ before me, the undersigned, personally appeared _____. personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that <u>he/she/they</u> executed the same in <u>his/her/their</u> capacity(ies), and that by <u>his/her/their</u> signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the _____

*(insert the city or other political subdivision and the state or country or other place the acknowledgment was taken).*

_____
Signature and office of individual taking acknowledgment

# EXHIBIT C

James Bauer
Executive Resolution Analyst
PO Box 77404
Ewing, NJ 08628                    **Sent via Fax 609-718-2782 and CERTIFIED U.S. Mail**

October 21, 2019

RE: Account 4770947259.

# NOTICE RIGHT OF RESCISSION 12 CFR Part §1026.23 Right of rescission

This notice memorializes my formal rescission of loan number "4770947259. The right to rescission is related to the security interest Note and Mortgage referenced in you July 12, 2019 letter. I am exercising my legal right to rescind pursuant to the Federal Truth in Lending Act. 12 CFR Part § 1026.23.

§1026.23(a) states that

> (1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section. For purposes of this section, the addition to an existing obligation of a security interest in a consumer's principal dwelling is a transaction. The right of rescission applies only to the addition of the security interest and not the existing obligation. The creditor shall deliver the notice required by paragraph (b) of this section but need not deliver new material disclosures. Delivery of the required notice shall begin the rescission period.

The official interpretation of Paragraph 23(a)(1) states the following.

> A security interest arising from transaction.
> i. In order for the right of rescission to apply, the security interest must be retained as part of the credit transaction. For example:
> A. A security interest that is acquired by a contractor who is also extending the credit in the transaction.
> B. A mechanic's or materialman's lien that is retained by a subcontractor or supplier of the contractor-creditor, even when the latter has waived its own security interest in the consumer's home.
> This request is being made based on information

Based on Cenlar's July 12, 2019 letter Federal National Mortgage Administration (FNMA) currently owns my loan. If this is the case FNMA was and is required to provide a Mortgage transfer disclosure pursuant to § 1026.39. Based on the information provided FNMA does not

Page 1

meet the exceptions outlined under § 1026.39(e). That being said, based on your current claim of being a sub servicer to CitiMortgage, Inc as it relates to FNMA being the new owner of my loan. I present my Notice of Right of Rescission to you and remind you that you are obligated under § 1026.23(c) to delay creditor's performance. § 1026.23(c) states the following:

> Unless a consumer waives the right of rescission under paragraph (e) of this section, no money shall be disbursed other than in escrow, no services shall be performed and no materials delivered until the rescission period has expired and the creditor is reasonably satisfied that the consumer has not rescinded.

In addition to the delay in creditor's performance, be advised that § 1026.23(d) Effects of rescission gives rise to the security interest becoming void and the consumer shall not be liable for any amount including any finance charge. Furthermore pursuant to § 1026.23(d)(1) "Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest."

If you have any question please don't hesitate to contact me.

Sincerely

Roger Rowe
20 Spruce rd
Amityville, NY 11701
631-767-6537

Page 2

# FAX

To: James Bauer

Fax: 609-718-2782

Phone: 866-677-8807

Subject: Acct 4770947259

Comments

From:   Roger   Rowe

Fax: 631-608-2876

Phone: 631-767-6537

Date:           October 21.
                2019

Mr. James Bauer

Attached you will find my Notice Right of Rescission.

If you have any questions I could be reached at 631-767-6537.

Page 3

*************************
*** ACTIVITY REPORT ***
*************************

| ST. TIME | DESTINATION NUMBER | DESTINATION ID | NO. | MODE | | PGS. | RESULT | |
|---|---|---|---|---|---|---|---|---|
| *07/14 20:57 | 18888656260 | | 0126 | TRANSMIT | ECM | 1 | OK | 00'25 |
| *07/19 09:51 | 16095384005 | | 0127 | TRANSMIT | ECM | 1 | NG 1 | 00'52 |
| *07/19 09:54 | 16095384005 | | 0128 | TRANSMIT | ECM | 2 | NG 2 | 01'12 |
| *07/19 09:59 | 16095384005 | | 0129 | TRANSMIT | ECM | 2 | NG 2 | 01'12 |
| *07/19 10:09 | 16097182782 | | 0130 | TRANSMIT | ECM | 2 | OK | 00'50 |
| *07/19 10:12 | 16095384005 | | 0131 | TRANSMIT | ECM | 2 | NG 2 | 01'20 |
| *08/14 15:00 | 16095384005 | | 0132 | TRANSMIT | G3 | 0 | NG 0 | 00'45 |
| *08/14 15:28 | 6095384005 | | 0133 | TRANSMIT | ECM | 2 | NG 2 | 01'09 |
| *08/14 15:30 | 16097182782 | | 0134 | TRANSMIT | G3 | 3 | OK | 01'11 |
| *08/14 16:17 | 16095384011 | | 0135 | TRANSMIT | ECM | 2 | OK | 00'55 |
| *08/16 15:50 | 16095384011 | | 0136 | TRANSMIT | ECM | 3 | OK | 01'08 |
| *08/16 16:19 | 18434137133 | | 0137 | TRANSMIT | ECM | 3 | OK | 01'09 |
| *08/22 10:34 | | | 5310 | AUTO RX | ECM | 4 | OK | 02'08 |
| *08/31 10:06 | | | 5311 | AUTO RX | ECM | 4 | OK | 02'14 |
| *09/04 10:23 | | | 5312 | AUTO RX | ECM | 4 | OK | 02'08 |
| *09/04 14:25 | 16097182782 | | 0138 | TRANSMIT | ECM | 2 | OK | 00'42 |
| *10/02 15:21 | 15184741418 | | 0139 | TRANSMIT | ECM | 4 | OK | 01'24 |
| 10/03 10:15 | 518 474 8571 | | 5313 | AUTO RX | G3 | 1 | OK | 00'55 |
| 10/03 10:21 | 518 474 8571 | | 5314 | AUTO RX | G3 | 1 | OK | 00'51 |
| 10/21 03:50 | 16097182782 | | 0140 | TRANSMIT | ECM | 3 | OK | 01'03 |

Case 2:19-cv-07278-JMA-AYS Document 19 Filed 03/22/21 Page 77 of 152 PageID #: 630

James Bauer
Executive Resolution Analyst
PO Box 77404
Ewing, NJ 08628           **Sent via Fax 609-718-2782 and CERTIFIED U.S. Mail**

November 11, 2019

RE: **Account 4770947259.**
   **NOTICE RIGHT OF RESCISSION**
   **12 CFR Part §1026.23 Right of rescission**

Dear Mr. James Bauer

This letter is in response to your November 5, 2019 letter in which you provided copies of rights to cancel from the original lender Citi Mortgage. Please note I am also entitled to rescind from someone that becomes the owner of an existing mortgage loan whom acquired legal title to the debt obligation. As stated in my October 21, 2019 letter Federal National Mortgage Administration (FNMA) was required to provide a Mortgage transfer disclosure pursuant to § 1026.39.(a)(1) if FNMA was the new owner of the loan as described in your July 12, 2019 letter.

Nevertheless, the failure of FNMA to issues said notice does not terminate my rights to rescission pursuant to §1026.23(d)(1) **Termination of security interest.**

> Any security interest giving rise to the right of rescission becomes void when the consumer exercises the right of rescission. The security interest is automatically negated regardless of its status and whether or not it was recorded or perfected. Under § 1026.23(d)(2), however, the creditor must take any action necessary to reflect the fact that the security interest no longer exists.

As such FNMA and Cenlar is required to provide notice of mortgage transfer disclosure as well as a notice of consumers right to rescission relative to security interest arising from a transaction noted in § 1026.23 and 1. Furthermore the rescission period will not begin to run until delivery of rescission notice. As noted under § 1026.23(a) the right to rescission applies as follows:

**Addition of a security interest.** Under § 1026.23(a), the addition of a security interest in a consumer's principal dwelling to an existing obligation is rescindable even if the existing obligation is not satisfied and replaced by a new obligation, and even if the existing obligation was previously exempt under § 1026.3(b). The right of rescission applies only to the added security interest, however, and not to the original obligation. In those situations, only the § 1026.23(b) notice need be delivered, not new material disclosures; the rescission period will begin to run from the delivery of the notice.

Page 5

Furthermore a consumer may exercise its right to rescission pursuant to paragraph 23(a)(2) **Consumer's exercise of right.** The consumer must exercise the right of rescission in writing but not necessarily on the notice supplied under § 1026.23(b). Whatever the means of sending the notification of rescission - mail, telegram or other written means - the time period for the creditor's performance under § 1026.23(d)(2) does not begin to run until the notification has been received.

That being said a security interest to title of a debt obligation becomes void when the consumer exercises the right of rescission. At this point FNMA and Cenlar is willfully violating my right to rescission and as such has cause undue hardship. The failure to provide rescission is adversely effecting my ability to obtain financing, resulted in a negative impact on my credit report and caused emotional distress.

I hope that this letter clarified any misunderstanding you might of had regarding FNMA and Cenlars responsibility to provide me with the appropriate **mortgage transfer disclosure** and the requisite **notice of right to rescission**. Pursuant to § 1026.23(d)(3) I ask that you take whatever steps necessary to indicate this security instrument is terminated. Please note that time is of the essence and your 20 days from my rescission is about to expire. Please email to (rroweny@gmail.com) a confirmation of rescission which indicates the security instrument has been terminated.

If you have any question please don't hesitate to contact me.

Sincerely,

Roger Rowe
20 Spruce rd
Amityville, NY 11701
631-767-6537

# EXHIBIT D



Credit Report Prepared For:

# ROGER ROWE

Experian Report As Of: Dec 24, 2019

**Personal & Confidential**

12/29/2019                    https://usa.experian.com/#/print/experian/now

**ROGER ROWE - Experian**
Date of Report: Dec 24, 2019



## Account Summary

### My Accounts Summary

| | |
|---|---|
| Open Credit Cards | 3 |
| Open Retail Cards | 0 |
| Open Real Estate Loans | 1 |
| Open Installment Loans | 0 |
| Total Open Accounts | 4 |
| Accounts Ever Late | 2 |
| Collections Accounts | 0 |
| Average Account Age | 12 yrs |
| Oldest Account | 19 yrs 4 mos |

### My Overall Credit Usage

**76%**

| | |
|---|---|
| **Credit Debt** | $2,290 |
| **Total Credit** | $3,000 |

### My Debt Summary

| | |
|---|---|
| Credit and Retail Card Debt | $2,290 |
| Real Estate Debt | $107,239 |
| Installment Loans Debt | $0 |
| Collections Debt | $0 |
| Total Debt | $109,529 |

### My Hard Credit Inquiries

**16**

### My Public Records

**0**

*Summary*          Accounts          Collections          Inquiries          Public Records          Credit Score

ROGER ROWE - Experian
Date of Report: Dec 24, 2019



# Account Summary

### My Personal Information

**Name**
ROGER ROWE

**Also Known As**

**Birth Year**
1967

**Addresses**
20 SPRUCE RD
AMITYVILLE, NY 11701-1019

2 MORTELL CT
COPIAGUE, NY 11726-1000

116 MADISON AVE
AMITYVILLE, NY 11701-1830

**Employer(s)**
ICM GROUP

INTEGRATED CONSTRUCTION

**Personal Statement(s)**
No Statement(s) present at this time

*Summary*    *Accounts*    *Collections*    *Inquiries*    *Public Records*    *Credit Score*

Page 3

12/29/2019                                      https://usa.experian.com/#/print/experian/now

ROGER ROWE - Experian
Date of Report: Dec 24, 2019



# Open Accounts

**CAPITAL ONE BANK USA N**
**400344XXXXXX**

Open

| ACCOUNT DETAILS | | CREDIT USAGE |
|---|---|---|

**ACCOUNT DETAILS**

| | |
|---|---|
| Account Name | CAPITAL ONE BANK USA N |
| Account # | 400344XXXXXX |
| Original Creditor | - |
| Company Sold | - |
| Account Type | REVOLVING |
| Date Opened | Sep 2019 |
| Account Status! | Open |
| Payment Status | Current |
| Status Updated | Dec 2019 |
| Balance | $352 |
| Balance Updated | Dec 20, 2019 |
| Credit Limit | $500 |
| Monthly Payment | $25 |
| Past Due Amount | - |
| Highest Balance | $467 |
| Terms | Revolving |
| Responsibility | Individual |
| Your Statement | - |
| Comments | - |

**CREDIT USAGE**

**70%**

**High Credit Usage**
Keeping your account balances
as low as possible can have a
positive impact on your credit.

**CONTACT INFORMATION**

15000 CAPITAL ONE DR
RICHMOND, VA 23238
(800) 955-7070

**PAYMENT HISTORY**

**2019**

| Jan | Feb | Mar | Apr |
|---|---|---|---|
| | | | |

| May | Jun | Jul | Aug |
|---|---|---|---|
| | | | |

| Sep | Oct | Nov | Dec |
|---|---|---|---|
| | | | |

OK OK

*Summary*       *Accounts (Open)*       *Collections*       *Inquiries*       *Public Records*   *Credit Score*

ROGER ROWE - Experian
Date of Report: Dec 24, 2019



✔                                          **CAPITAL ONE BANK USA N**                                    Open
                                              **517805XXXXXX**

**ACCOUNT DETAILS**                                    **CREDIT USAGE**

| Account Name | CAPITAL ONE BANK USA N |
| Account # | 517805XXXXXX |
| Original Creditor | - |
| Company Sold | - |
| Account Type | REVOLVING |
| Date Opened | Aug 2018 |
| Account Status! | Open |
| Payment Status | Current |
| Status Updated | Dec 2019 |
| Balance | $189 |
| Balance Updated | Dec 7, 2019 |
| Credit Limit | $500 |
| Monthly Payment | $25 |
| Past Due Amount | - |
| Highest Balance | $491 |
| Terms | Revolving |
| Responsibility | Individual |
| Your Statement | - |
| Comments | - |

**38%**

Fair Credit Usage
Keeping your account balances
as low as possible can have a
positive impact on your credit.

**CONTACT INFORMATION**

15000 CAPITAL ONE DR
RICHMOND, VA 23238
(800) 955-7070

**PAYMENT HISTORY**

| **2019** | | | | **2018** | | | |
|---|---|---|---|---|---|---|---|
| Jan | Feb | Mar | Apr | Jan | Feb | Mar | Apr |
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| May | Jun | Jul | Aug | May | Jun | Jul | Aug |
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Sep | Oct | Nov | Dec | Sep | Oct | Nov | Dec |
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

[OK] OK

*Summary*     *Accounts (Open)*     *Collections*     *Inquiries*     *Public Records*     *Credit Score*

ROGER ROWE - Experian
Date of Report: Dec 24, 2019



⚠                                    **CENTRAL LOAN ADMIN & R**                                    Open
                                       300477XXXXXXX

**ACCOUNT DETAILS**                                  **CONTACT INFORMATION**

Account Name                    CENTRAL LOAN ADMIN & R    425 PHILLIPS BLVD
                                                          EWING, NJ 08618
Account #                            300477XXXXXXX        (609) 883-3900

Original Creditor                               -         **PAYMENT HISTORY**

Company Sold                                    -              **2019**
                                                         Jan Feb Mar Apr
Account Type                         REAL ESTATE         ☐  ☐  ☐  ☐
                                                         May Jun Jul Aug
Date Opened                            Nov 2002          ☐  ☐ 30 ☐
                                                         Sep Oct Nov Dec
Account Status!                            Open          90 ☐  ☐  ☐

Payment Status                   Past due 90 days
                                                         OK OK            30 30 Days Late
Status Updated                         Sep 2019
                                                         90 90 Days Late  ☐ Data Unavailable
Balance                               $107,239

Balance Updated                      Sep 3, 2019

Original Balance                      $157,500

Monthly Payment                         $1,697

Past Due Amount                         $5,149

Highest Balance                             -

Terms                                360 Months

Responsibility                      Joint Account

Your Statement                              -

Comments                                    -

*Summary*        *Accounts (Open)*        *Collections*        *Inquiries*        *Public Records*        *Credit Score*

Page 6

ROGER ROWE - Experian
Date of Report: Dec 24, 2019



✔

**TD BANK USA/TARGETCRED**
**511786XXXXXXXXXX**

Open

## ACCOUNT DETAILS

| | |
|---|---|
| Account Name | TD BANK USA/TARGETCRED |
| Account # | 511786XXXXXXXXXX |
| Original Creditor | - |
| Company Sold | - |
| Account Type | REVOLVING |
| Date Opened | Sep 2006 |
| Account Status! | Open |
| Payment Status | Current |
| Status Updated | Nov 2019 |
| Balance | $1,749 |
| Balance Updated | Nov 26, 2019 |
| Credit Limit | $2,000 |
| Monthly Payment | $55 |
| Past Due Amount | - |
| Highest Balance | $2,164 |
| Terms | Revolving |
| Responsibility | Authorized User |
| Your Statement | - |
| Comments | - |

### CREDIT USAGE

87%

**High Credit Usage**
Keeping your account balances
as low as possible can have a
positive impact on your credit.

### CONTACT INFORMATION

PO BOX 673
MINNEAPOLIS, MN 55440
(888) 755-5856

### PAYMENT HISTORY

**2019** Jan Feb Mar Apr / May Jun Jul Aug / Sep Oct Nov Dec
**2018** Jan Feb Mar Apr / May Jun Jul Aug / Sep Oct Nov Dec
**2017** Jan Feb Mar Apr / May Jun Jul Aug / Sep Oct Nov Dec

**2016** Jan Feb Mar Apr / May Jun Jul Aug / Sep Oct Nov Dec
**2015** Jan Feb Mar Apr / May Jun Jul Aug / Sep Oct Nov Dec
**2014** Jan Feb Mar Apr / May Jun Jul Aug / Sep Oct Nov Dec

**2013** Jan Feb Mar Apr / May Jun Jul Aug / Sep Oct Nov Dec
**2012** Jan Feb Mar Apr / May Jun Jul Aug / Sep Oct Nov Dec

OK OK

Summary     Accounts (Open)     Collections     Inquiries     Public Records     Credit Score

Case 2:19-cv-07278-JMA-AYS   Document 19   Filed 03/22/21   Page 88 of 152 PageID #: 641

12/29/2019                                          https://usa.experian.com/#/print/experian/now



# Closed Accounts

**CITIMORTGAGE INC**
**200036XXXX**                                                                                    Closed

**?**

## ACCOUNT DETAILS

| | |
|---|---|
| Account Name | CITIMORTGAGE INC |
| Account # | 200036XXXX |
| Original Creditor | - |
| Company Sold | - |
| Account Type | REAL ESTATE |
| Date Opened | Nov 2002 |
| Account Status! | Closed |
| Payment Status | Account transferred to another office |
| Status Updated | Apr 2019 |
| Balance | - |
| Balance Updated | Apr 30, 2019 |
| Original Balance | $157,500 |
| Monthly Payment | - |
| Past Due Amount | - |
| Highest Balance | - |
| Terms | 360 Months |
| Responsibility | Joint Account |
| Your Statement | - |
| Comments | Transferred to another lender or claim purchased |

## CONTACT INFORMATION

PO BOX 9438
GAITHERSBURG, MD 20898
(800) 283-7918

### PAYMENT HISTORY

| 2019 | 2018 | 2017 |
|---|---|---|
| Jan Feb Mar Apr | Jan Feb Mar Apr | Jan Feb Mar Apr |
| May Jun Jul Aug | May Jun Jul Aug | May Jun Jul Aug |
| Sep Oct Nov Dec | Sep Oct Nov Dec | Sep Oct Nov Dec |

| 2016 | 2015 | 2014 |
|---|---|---|
| Jan Feb Mar Apr | Jan Feb Mar Apr | Jan Feb Mar Apr |
| May Jun Jul Aug | May Jun Jul Aug | May Jun Jul Aug |
| Sep Oct Nov Dec | Sep Oct Nov Dec | Sep Oct Nov Dec |

| 2013 | 2012 |
|---|---|
| Jan Feb Mar Apr | Jan Feb Mar Apr |
| May Jun Jul Aug | May Jun Jul Aug |
| Sep Oct Nov Dec | Sep Oct Nov Dec |

OK OK

*Summary*          *Accounts (Closed)*          *Collections*          *Inquiries*          *Public Records*          *Credit Score*

12/29/2019                          https://usa.experian.com/#/print/experian/now

ROGER ROWE - Experian
Date of Report: Dec 24, 2019



**?**                                      JPMCB HL                                      Closed
                                      465002XXXXXXX

**ACCOUNT DETAILS**                                      **CONTACT INFORMATION**

Account Name                    JPMCB HL            **700 KANSAS LN**
                                                     **MONROE, LA 71203**
Account #                       465002XXXXXXX       **(800) 848-9136**

Original Creditor                          -         **PAYMENT HISTORY**

Company Sold                               -

Account Type                    REAL ESTATE

| | 2014 | | | | | 2013 | | | | | 2012 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Jan | Feb | Mar | Apr | | Jan | Feb | Mar | Apr | | Jan | Feb | Mar | Apr |
| | ☐ | ☐ | ☐ | ☐ | | ☐ | ☐ | ☐ | ☐ | | ☐ | ☐ | ☐ | ☐ |
| | May | Jun | Jul | Aug | | May | Jun | Jul | Aug | | May | Jun | Jul | Aug |
| | ☐ | 30 | ☐ | 30 | | ☐ | ☐ | ☐ | ☐ | | ☐ | ☐ | ☐ | ☐ |
| | Sep | Oct | Nov | Dec | | Sep | Oct | Nov | Dec | | Sep | Oct | Nov | Dec |
| | 60 | 90 | ☐ | ☐ | | ☐ | ☐ | ☐ | ☐ | | ☐ | ☐ | ☐ | ☐ |

Date Opened                     Mar 2006

Account Status!                     Closed

Payment Status            Account transferred to another office

| | 2011 | | | |
|---|---|---|---|---|
| | Jan | Feb | Mar | Apr |
| | ☐ | ☐ | ☐ | ☐ |
| | May | Jun | Jul | Aug |
| | ☐ | ☐ | ☐ | ☐ |
| | Sep | Oct | Nov | Dec |
| | ☐ | ☐ | ☐ | ☐ |

Status Updated                  Nov 2014

Balance                                    -

Balance                         Nov 1, 2014
Updated

Original Balance                        $0          | OK | OK | | 30 | 30 Days Late |

Monthly                                    -        | 60 | 60 Days Late | | 90 | 90 Days Late |
Payment

Past Due                                   -
Amount

Highest Balance                            -

Terms                             Unknown

Responsibility                    Individual

Your Statement       **CONSUMER STATEMENT** Y ITEM DISPUTED BY
                                CONSUMER

Comments                                   -

*Summary*        *Accounts (Closed)*        *Collections*        *Inquiries*        *Public Records*        *Credit Score*

Case 2:19-cv-07278-JMA-AYS Document 19 Filed 03/22/21 Page 90 of 152 PageID #: 643

**ROGER ROWE - Experian**
Date of Report: Dec 24, 2019



⚠

**SELECT PORTFOLIO SVCIN**
**277001XXXXXXX**                                                                                    Closed

| ACCOUNT DETAILS | | CONTACT INFORMATION |
|---|---|---|
| Account Name | SELECT PORTFOLIO SVCIN | PO BOX 65250 |
| Account # | 277001XXXXXXX | SALT LAKE CITY, UT 84165 |
| Original Creditor | - | BYMAILONLY |
| Company Sold | - | |
| Account Type | REAL ESTATE | |
| Date Opened | Mar 2006 | |
| Account Status! | Closed | |
| Payment Status | Foreclosure proceeding started | |
| Status Updated | Nov 2018 | |
| Balance | $352,753 | |
| Balance Updated | Nov 11, 2018 | |
| Original Balance | $250,000 | |
| Monthly Payment | $2,789 | |
| Past Due Amount | $138,006 | |
| Highest Balance | - | |
| Terms | 360 Months | |
| Responsibility | Individual | |
| Your Statement | **CONSUMER STATEMENT** Y ITEM DISPUTED BY CONSUMER | |
| Comments | Account was in dispute-now resolved-reported by subscriber | |
| | Account previously in dispute - now resolved, reported by data furnisher (To be used for FCRA or FCBA disputes) | |

**PAYMENT HISTORY**

**2018**

| Jan | Feb | Mar | Apr |
|---|---|---|---|
|  |  |  |  |
| **May** | **Jun** | **Jul** | **Aug** |
|  |  | 120 |  |
| **Sep** | **Oct** | **Nov** | **Dec** |
| 120 | 120 | N |  |

**2017**

| Jan | Feb | Mar | Apr |
|---|---|---|---|
|  |  |  |  |
| **May** | **Jun** | **Jul** | **Aug** |
|  |  |  |  |
| **Sep** | **Oct** | **Nov** | **Dec** |
|  |  |  |  |

**2016**

| Jan | Feb | Mar | Apr |
|---|---|---|---|
| 120 | 120 | 120 | 120 |
| **May** | **Jun** | **Jul** | **Aug** |
| 120 | 120 | 120 | 120 |
| **Sep** | **Oct** | **Nov** | **Dec** |
| 120 |  |  |  |

**2015**

| Jan | Feb | Mar | Apr |
|---|---|---|---|
| 120 | 120 | 120 | 120 |
| **May** | **Jun** | **Jul** | **Aug** |
| 120 | 120 | 120 | 120 |
| **Sep** | **Oct** | **Nov** | **Dec** |
| 120 | 120 | 120 | 120 |

**2014**

| Jan | Feb | Mar | Apr |
|---|---|---|---|
|  |  |  |  |
| **May** | **Jun** | **Jul** | **Aug** |
|  |  |  |  |
| **Sep** | **Oct** | **Nov** | **Dec** |
|  |  |  |  |

120 = 120+ Days Late    N = Negative    ☐ = Data Unavailable

*Summary*    *Accounts (Closed)*    *Collections*    *Inquiries*    *Public Records*    *Credit Score*

Page 10

ROGER ROWE - Experian
Date of Report: Dec 24, 2019



SYNCB/JCP
600889XXXXXX

Closed

## ACCOUNT DETAILS

| | |
|---|---|
| Account Name | SYNCB/JCP |
| Account # | 600889XXXXXX |
| Original Creditor | - |
| Company Sold | - |
| Account Type | REVOLVING |
| Date Opened | Aug 2000 |
| Account Status! | Closed |
| Payment Status | Paid satisfactorily |
| Status Updated | Feb 2012 |
| Balance | - |
| Balance Updated | Feb 17, 2012 |
| Credit Limit | $0 |
| Monthly Payment | - |
| Past Due Amount | - |
| Highest Balance | $154 |
| Terms | Revolving |
| Responsibility | Individual |
| Your Statement | - |
| Comments | |

## CREDIT USAGE

N/A

Unknown Credit Usage
Credit usage could not be
calculated for this account
because either the balance
and/or credit limit were not
reported.

### CONTACT INFORMATION

PO BOX 965007
ORLANDO, FL 32896
(800) 542-0800

### PAYMENT HISTORY

| | 2012 | | | | 2011 | | | | 2010 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Jan | Feb | Mar | Apr | Jan | Feb | Mar | Apr | Jan | Feb | Mar | Apr |
| | May | Jun | Jul | Aug | May | Jun | Jul | Aug | May | Jun | Jul | Aug |
| | Sep | Oct | Nov | Dec | Sep | Oct | Nov | Dec | Sep | Oct | Nov | Dec |

| | 2009 | | | | 2008 | | | | 2007 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Jan | Feb | Mar | Apr | Jan | Feb | Mar | Apr | Jan | Feb | Mar | Apr |
| | May | Jun | Jul | Aug | May | Jun | Jul | Aug | May | Jun | Jul | Aug |
| | Sep | Oct | Nov | Dec | Sep | Oct | Nov | Dec | Sep | Oct | Nov | Dec |

| | 2006 | | | | 2005 | | | |
|---|---|---|---|---|---|---|---|---|
| | Jan | Feb | Mar | Apr | Jan | Feb | Mar | Apr |
| | May | Jun | Jul | Aug | May | Jun | Jul | Aug |
| | Sep | Oct | Nov | Dec | Sep | Oct | Nov | Dec |

OK OK

*Summary*        *Accounts (Closed)*        *Collections*        *Inquiries*        *Public Records*        *Credit Score*

ROGER ROWE - Experian
Date of Report: Dec 24, 2019

**experian.**

## Collections

**No collection accounts**

12/29/2019                                          https://usa.experian.com/#/print/experian/now

ROGER ROWE - Experian
Date of Report: Dec 24, 2019



# Inquiries

### Q   CAP ONE NA

| | |
|---|---|
| Inquiry Date | Sep 6, 2019 |
| Removal Date | Sep 2021 |
| Business Type | Bank credit cards |
| Contact Information | PO BOX 30281<br>SALT LAKE CITY, UT 84130<br>(800) 227-4825 |

### Q   UNIVERSAL CREDIT SVCS-

| | |
|---|---|
| Inquiry Date | Jul 25, 2019 |
| Removal Date | Jul 2021 |
| Business Type | Mortgage reporters |
| Contact Information | 201 MARPLE AVE<br>CLIFTON HEIGHTS, PA 19018<br>(610) 284-1000 |

### Q   CREDIT PLUS

| | |
|---|---|
| Inquiry Date | Jul 18, 2019 |
| Removal Date | Jul 2021 |
| Business Type | Mortgage reporters |
| Contact Information | 31550 WINTERPLACE PKWY<br>SALISBURY, MD 21804<br>(410) 742-9551 |

### Q   MARK A KIRKKORSKY PC

| | |
|---|---|
| Inquiry Date | Jun 4, 2019 |
| Removal Date | Jun 2021 |
| Business Type | Collections attorney |
| Contact Information | 1119 W SOUTHERN AVE S-20<br>MESA, AZ 85210<br>(480) 551-2173 |

### Q   CREDIT PLUS

| | |
|---|---|
| Inquiry Date | Apr 30, 2019 |
| Removal Date | Apr 2021 |
| Business Type | Mortgage reporters |
| Contact Information | 31550 WINTERPLACE PKWY<br>SALISBURY, MD 21804<br>(410) 742-9551 |

### Q   CREDIT PLUS

| | |
|---|---|
| Inquiry Date | Mar 8, 2019 |
| Removal Date | Mar 2021 |
| Business Type | Mortgage reporters |
| Contact Information | 31550 WINTERPLACE PKWY<br>SALISBURY, MD 21804<br>(410) 742-9551 |

*Summary*      *Accounts*      *Collections*      *Inquiries*      *Public Records*   *Credit Score*

ROGER ROWE - Experian
Date of Report: Dec 24, 2019



### 🔍 EMS/CITIBANK

| | |
|---|---|
| Inquiry Date | Feb 28, 2019 |
| Removal Date | Feb 2021 |
| Business Type | Bank - mortgage department |
| Contact Information | 4300 WESTOWN PKWY STE 20<br>WEST DES MOINES, IA 50266<br>(800) 333-0037 |

### 🔍 JPMCB CARD

| | |
|---|---|
| Inquiry Date | Jan 4, 2019 |
| Removal Date | Jan 2021 |
| Business Type | Bank credit cards |
| Contact Information | PO BOX 15077<br>WILMINGTON, DE 19850<br>(800) 453-9719 |

### 🔍 EMS/CITIBANK

| | |
|---|---|
| Inquiry Date | Oct 23, 2018 |
| Removal Date | Oct 2020 |
| Business Type | Bank - mortgage department |
| Contact Information | 4300 WESTOWN PKWY STE 20<br>WEST DES MOINES, IA 50266<br>(800) 333-0037 |

### 🔍 CBNA

| | |
|---|---|
| Inquiry Date | Oct 22, 2018 |
| Removal Date | Oct 2020 |
| Business Type | Mortgage companies |
| Contact Information | 15851 CLAYTON RD # MS760<br>ELLISVILLE, MO 63011<br>BYMAILONLY |

### 🔍 MARK A KIRKKORSKY PC

| | |
|---|---|
| Inquiry Date | Sep 25, 2018 |
| Removal Date | Sep 2020 |
| Business Type | Collections attorney |
| Contact Information | 1119 W SOUTHERN AVE S-20<br>MESA, AZ 85210<br>(480) 551-2173 |

### 🔍 CAP ONE NA

| | |
|---|---|
| Inquiry Date | Aug 21, 2018 |
| Removal Date | Aug 2020 |
| Business Type | Bank credit cards |
| Contact Information | 4851 COX RD<br>RICHMOND, VA 23229 |

*Summary*     *Accounts*     *Collections*     *Inquiries*     *Public Records*     *Credit Score*

ROGER ROWE - Experian
Date of Report: Dec 24, 2019



### OLLO/TBOM/CWS

| | |
|---|---|
| Inquiry Date | Apr 1, 2018 |
| Removal Date | Apr 2020 |
| Business Type | Bank credit cards |
| Contact Information | PO BOX 9222 |
| | OLD BETHPAGE, NY 11804 |
| | (877) 494-0020 |

### CBNA/PRE02 UFC

| | |
|---|---|
| Inquiry Date | Jan 13, 2018 |
| Removal Date | Jan 2020 |
| Business Type | Bank credit cards |
| Contact Information | 5800 SOUTH CORPORATE PLA |
| | SIOUX FALLS, SD 57108 |
| | (605) 331-2626 |

### CAP ONE NA

| | |
|---|---|
| Inquiry Date | Jan 13, 2018 |
| Removal Date | Jan 2020 |
| Business Type | Bank credit cards |
| Contact Information | 4851 COX RD |
| | RICHMOND, VA 23229 |

### CITI CARDS CBNA

| | |
|---|---|
| Inquiry Date | Dec 4, 2017 |
| Removal Date | Dec 2019 |
| Business Type | Bank credit cards |
| Contact Information | PO BOX 6000 |
| | SIOUX FALLS, SD 57117 |
| | BYMAILONLY |

*Summary*     *Accounts*     *Collections*     *Inquiries*     *Public Records*     *Credit Score*

12/29/2019

**ROGER ROWE - Experian**
Date of Report: Dec 24, 2019

experian.

# Public Records

## No public records

Summary          Accounts          Collections          Inquiries          Public Records          Credit Score

**ROGER ROWE - Experian**
Date of Report: Dec 24, 2019



# Credit Score



## 609

300   FICO® SCORE6 Experian data 12/24/2019   850

**Learn More about FICO ®
Scores ▸**

Your score is below the average
score of U.S. consumers, though
many lenders will approve loans with
this score.

## What's helping your score?

### ✓ Long Credit History

You have an established credit history.

Your oldest account was opened
**19 Years, 4 Months ago**

FICO® Scores measure the age of the oldest account and the average age of all accounts being reported. Generally speaking, having a relatively long credit history and not opening many new accounts is reflective of lower risk.

FICO High Achievers ⑦ opened their oldest account 25 years ago, on average.

## What's hurting your score?

### ⊖ Serious Delinquency

You have a serious delinquency (60 days past due or greater) or derogatory indicator on your credit report.

Number of your accounts that were ever 60 days late or worse or have a derogatory indicator
**3 accounts**

The presence of a serious delinquency or derogatory indicator ⑦ is a highly correlated predictor of future payment risk. People with previous late payments are more likely to pay late in the future.

As these items age, they will have less impact on the FICO® Score.

Most late payments stay on your report for no more than seven years.

Virtually no FICO High Achievers ⑦ have a 60 days late payment or worse listed on their credit report.

### ⊖ High Credit Usage

You've made heavy use of your available revolving credit.

Ratio of your revolving balances to your credit limits
**54%**

The FICO® Score evaluates balances in relation to available credit on revolving accounts ⑦. The extent of a person's credit usage is one of the most important factors considered by a FICO® Score. People who keep their ratio of balances to credit limits lower are generally considered less

*Summary*     *Accounts*     *Collections*     *Inquiries*     *Public Records*     *Credit Score*

For FICO High Achievers ⑦, the average ratio of the revolving account balances to credit limits is less than 7%.

### ⊖ Few Accounts Paid On Time

You have few accounts that are in good standing.

•experian.

Number of your accounts currently being paid as agreed
2 accounts

Date of Report: Dec 24, 2019

The FI _____ nts showing on time payments. In your case this _____ e very
few accounts or you've missed payments recently on some of your accounts or have accounts with derogatory indicators @ reported.

## Credit Score

FICO High Achievers have an average of 6 accounts currently being paid as agreed.

You have no positive factors impacting your Score.

## What's hurting your score?

⊖ Bad Payment History

You have one or more accounts showing missed payments or derogatory indicators.

Number of your accounts with a missed payment or derogatory indicator
**3 accounts**

The presence of missed and late payments or derogatory indicators ⑦ on a credit report, including the number of late payments, how late they were and how recently they occurred, are correlated with future credit risk. Your FICO® Score was lowered due to the number of missed and late payments and/or accounts with derogatory indicators reported.

As the number of accounts with delinquency or derogatory indicators decreases, they have less impact on a FICO® Score.

About 98% of FICO High Achievers ⑦ have no missed payments at all. But of those who do, the missed payment happened nearly 4 years ago, on average.

*Summary*      *Accounts*      *Collections*      *Inquiries*      *Public Records*      *Credit Score*

12/29/2019 Case 2:19-cv-07278-JMA-AYS Document 19 Filed 03/22/21 Page 99 of 152 PageID #: 652
https://usa.experian.com/#/print/experian/now

ROGER ROWE - Experian
Date of Report: Dec 24, 2019

 experian.

# Disclaimer

**Disclaimer**

## About your FICO® Score 8 or other FICO Scores

Your FICO®Score 8 powered by Experian data is formulated using the information in your credit file at the time it is requested. Many but not all lenders use FICO® Score 8. In addition to the FICO® Score 8, we may offer and provide other base or industry-specific FICO® Scores (such as FICO® Auto Scores and FICO® Bankcard Scores). The other FICO® Scores made available are calculated from versions of the base and industry-specific FICO® Score models.

Base FICO® Scores (including the FICO® Score 8) range from 300 to 850. Industry-specific FICO® Scores range from 250-900. Higher scores represent a greater likelihood that you'll pay back your debts so you are viewed as being a lower credit risk to lenders. A lower FICO® Score indicates to lenders that you may be a higher credit risk. There are many scoring models used in the marketplace. The type of score used, and its associated risk levels, may vary from lender to lender. But regardless of what scoring model is used, they all have one purpose: to summarize your creditworthiness. Keep in mind that your score is just one factor used in the application process. Other factors, such as your annual salary and length of employment, may also be considered by lenders when you apply for a loan.

## What this means to you:

Credit scoring can help you understand your overall credit rating and help companies better understand how to serve you. Overall benefits of credit scoring have included faster credit approvals, reduction in human error and bias, consistency, and better terms and rates for American consumers through reduced costs and losses for lenders. Your lender or insurer may use a different FICO® Score than FICO® Score 8 or other base or industry-specific FICO Scores provided by us, or different scoring models to determine how you score.

# EXHIBIT E



PAYOFF STATEMENT AS OF August 22, 2019 ("Effective Date")

**IMPORTANT: Your payoff statement consists of multiple pages!**
**To ensure that your payoff transaction is processed efficiently, please read**
**the entire payoff statement and follow all instructions. Pay CLOSE ATTENTION**
**to the Wiring Instructions, as they are UNIQUE to this loan ONLY!**

Iles Rowe-Bryan
Roger Rowe
20 Spruce Rd
Amityville NY 11701

Property Address: 20 Spruce Rd
                  Amityville NY 11701-1019

Loan No.: 4770947259                Original Loan Date: 11-07-02
Original Loan Amount: $    157,500  Loan Type: Conventional
FHA/VA/MI No.:                      Investor No: KD3 001 1684647799

Statement forwarded to
6316180876                                        Invest1519

**NOTICE REGARDING BANKRUPTCY AND BANKRUPTCY DISCHARGE:** This statement is not an attempt to collect a debt that is subject to a pending bankruptcy or has been discharged as the result of a bankruptcy proceeding. This statement is being provided upon request and for informational purposes only.
**LOANS WITH MIP OR PMI PREMIUMS DUE:** If your payoff is not received prior to the first of the month, or if your payoff is received prior to the first but short of the amount due to pay off the loan prior to the first, you will be required to remit an additional monthly MIP or PMI premium.
**ATTENTION BORROWERS USING AUTOMATIC DRAFTING:** If your monthly payments are automatically withdrawn from your checking/savings account using our Payment Drafting Program (automatic drafting) you must instruct this office to discontinue automatic drafting at least fifteen (15) business days before the next scheduled withdrawal. For your convenience and self-service you can delete the auto draft by visiting our website or call the number provided. You may also send a written notice to: Drafting Department, PO Box 77407, Ewing, NJ 08628. Please allow extra time if mailing your request. Failure to comply may result in continued withdrawals.
**ATTENTION BORROWERS USING ONLINE BILL PAYMENT SERVICES:** If you authorize a third party bill Payment Service to remit your monthly payment, it is your responsibility to cancel this service. Failure to cancel the Bill Payment Service may result in additional withdrawals after your loan is paid off.

XP161 WO 009 SQL IAI 911

Page 1

Ines Rowe-Bryan
Roger Rowe
4770547209

Statement of amount necessary to pay loan in full on or before 09-22-19

Interest Rate: 6.00000%          Interest Paid to: 05-01-19
Next Payment Due Date: 06-01-19      Loan Type: Conventional

Present Principal Balance: $        105,600.00
Interest to 09-22-19:                 2,464.67

Subtotal of Amount Secured
by Security Instrument:      $      107,850.00

OTHER CHARGES
Accrued Late Charge:                   56.67
Recording Fee         :               450.50

Other Charges Sub Total:     $        507.17

Total Due:                   $      108,064.84

* Itemization of these amounts is available upon request. Please call
  1-855-839-6253 to request an itemization.

If funds are received after 09-22-19 include an additional amount of
$ 17.28 per Day. If the current month's payment or payoff is
not received within 16 days of the due date of the next payment,
a late charge in the amount of $ 18.80 in addition to the amount
shown above, must be remitted.

XP161-N1 017 SQP (P2-01)

**Page 2**

Ines Rowe-Bryan
Roger Rowe
4770947259

## LOAN PAYOFF INFORMATION

GENERAL INSTRUCTIONS AND CONDITIONS:

* ALL PAYOFF FIGURES PROVIDED ARE SUBJECT TO CLERICAL ERROR CORRECTION AND FINAL AUDIT.

   PAYMENT BY WIRE: ATTENTION: UNIQUE WIRING INSTRUCTIONS BELOW.

* Our preferred method of payoff remittance is by wire transfer.
* Funds should be wired to CENLAR FS PRINCETON, TRENTON, NJ
  ABA Nos: 231271365 Acct. No: 0694770947259
  Central Loan Administration & Reporting
* NOTE: If the above wiring instructions are not followed, it could result in additional accrued interest and delayed processing.
* The wire must include the borrower's name, loan number, and the notation ATTENTION: PAYOFF DEPARTMENT. A contact name and phone number of the originator of the wire should also be included.
* Conversions of these instructions into an ACH CREDIT will NOT be accepted.

PAYMENT BY CHECK:
* PERSONAL CHECKS WILL NOT BE ACCEPTED.
* ONLINE BILL PAYMENTS WILL NOT BE ACCEPTED.
* All checks should be made payable to
  Central Loan Administration & Reporting

Send to the following address: Payoff Department, 425 Phillips Boulevard, Ewing, NJ 08618. Include the borrower's name and loan number on the check. Also, include a contact name and telephone number.

REMITTANCE OF FUNDS:
Payoff remittances (wires or checks) received in our office after 2:00 p.m. ET will be processed the following business day. Payoffs are not posted on weekends and Holidays. Accrued interest will be added to the payoff for those days.

* Payoff funds must be remitted in the form of a wire, certified check, bank/cashier's check or attorney's trust check.
* Payoff remittances of less than the full payoff amount due will not be applied and interest will continue to accrue until the full amount is received. We will attempt to notify the sender of the amount of the shortage. If the shortage amount is not received within 48 hours of our initial receipt of the funds, the entire remittance may be returned.
* If we must reverse the receipt and application of payoff funds due to an error in the payoff request, a $XX.00 handling fee will be assessed.

* Please note the required payoff amount MAY CHANGE if a payment is returned, or if fees or advances occur on or after the Effective Date of this statement.

XP162 XC Rev. Aug (12-14)

Ilus Rowe-Bryan
Roger Rowe
4770647259

- You must pay all interest that accrues and/or fees that are assessed after the Effective Date
- In the event a previously applied payment is reversed due to a dishonored or returned item, there will be a charge not to exceed the amount permitted by law, and an updated Payoff Statement will be issued
- IN THE EVENT THE FUNDS RECEIVED ARE LESS THAN THE TOTAL AMOUNT DUE, ANY AVAILABLE ESCROW FUNDS WILL BE USED TO COVER THE SHORTAGE.

SINCE AMOUNTS MAY CHANGE, WE RECOMMEND YOU CONTACT OUR OFFICE TO VERIFY PAYOFF FIGURES PRIOR TO REMITTING FUNDS.

IF THE LOAN IS DELINQUENT, IN FORECLOSURE OR BANKRUPTCY, this office must be contacted at least 48 hours prior to payoff in order to allow us sufficient time to verify the current amount necessary to satisfy the loan

ESCROW ACCOUNTS & DISBURSEMENTS:
- If we collect escrow funds for payment of real estate taxes and hazard or flood insurance, we will continue to make required disbursements from the escrow account until our application of the payoff funds to the account. Once a loan is paid in full, no further disbursements will be made for escrowed items.
- CAUTION: If an escrow disbursement creates a shortage in the escrow account, and causes us to advance our funds, the amount of the advance will be added to the amount due and must be paid at time of payoff
- We will attempt to notify the sender of any payoff shortage created by escrow disbursements
- Following the payoff, we will conduct a final review of the escrow account. You will be notified if additional funds are due; otherwise any excess funds remaining in your escrow account, or funds received in excess of the payoff amount, will be processed and returned in accordance with the applicable state and federal laws

LATE CHARGES:
- Until a loan is paid in full, late charges will continue to accrue as permitted by law for any monthly payment that is due but not received by the late charge assessment date.

ADDITIONAL PAYOFF STATEMENTS:
- We will charge a fee, as permitted by law, for each additional payoff statement generated or for priority delivery of each statement. The amount of the fee varies by state and by loan type. Please contact us for the amount of the fee.

DOCUMENT CANCELLATION:
- Satisfaction documents will be sent directly to the recording office for cancellation of the mortgage.

MAILING ADDRESS CHANGE:
- Please provide the mailing address to which original loan documents and any escrow refund should be returned.

XF102 00 04 00 01 001

Page 4

# EXHIBIT F

          

Dear CitiMortgage Client(s):          CitiMortgage Account Number: 2000360738

When it comes to your mortgage, you want a simple, easy experience. From payments and insurance to escrow and year-end tax statements, you want access to important information when you want it, so you can get back to living your life with the full confidence your home loan is in good hands.

We are proud of the service we provide to mortgage customers. To continue this tradition, we have entered into an agreement with Cenlar FSB d/b/a Central Loan Administration & Reporting ("Cenlar FSB"), where CitiMortgage will utilize Cenlar FSB to perform various servicing functions. For decades, Cenlar FSB has specialized in caring for mortgage customers. Simply put, this is all they do, and they do it extraordinarily well.

**ACTION NEEDED**
**Beginning April 1, 2019, all mortgage payments should be made to Cenlar FSB directly. To reach Cenlar FSB, please call 1-855-839-6253 or go online at www.loanadministration.com.**

**Your new Cenlar FSB account number: 4770947259**

If you currently make your loan payments via EZPay, Equity Builder, Auto Deduct or BiWeekly Advantage, this service will continue automatically. If you do not currently use one of these plans to make your payments, we have enclosed an ACH authorization form for your convenience. If you would like to take advantage of automated payments please complete and return the authorization form using the mailing instructions provided or visit www.loanadministration.com. Although you will be receiving regular monthly statements from Cenlar FSB we have attached a temporary payment coupon that may be used to make your next payment. You may use this coupon should you wish to make a payment prior to receiving your monthly statement. Citibank checking or savings accountholders may continue to make payments through Citi Mobile or Online Banking.

After the transfer of your mortgage servicing, Cenlar FSB will be your new contact for all questions related to payments, escrow, insurance and other details of your mortgage account. The Notice of Servicing Transfer required by federal law is enclosed and includes contact information.

This transfer of servicing does not impact any other relationship(s) you may have with Citi, and your current Personal Banker, Relationship Manager, or Financial Advisor is still available to help you with all of your other banking needs. We are also happy to continue providing you with new home loan solutions, including refinances of your existing loans.

Thank you for continuing to allow Citi to serve your financial needs. We look forward to continuing this relationship for many years to come.

Sincerely,          Sincerely,

CitiMortgage, Inc.          Cenlar FSB

Enclosures

 ©2019 Citigroup Inc. All rights reserved. Citi, Citi and Arc Design and other marks used herein are service marks of Citigroup Inc. or its affiliates, used and registered throughout the world *Calls are randomly monitored and recorded to ensure quality service

BUS1008815.75265

Page 1

## NOTICE OF SERVICING TRANSFER

The servicing of your mortgage loan is being transferred effective April 1, 2019.  This means that after this date a new servicer will be collecting your mortgage loan payments from you.  Nothing else about your mortgage loan will change.

CitiMortgage, Inc. is now collecting your payments.  CitiMortgage, Inc. will stop accepting payments received from you after March 31, 2019.

Central Loan Administration & Reporting will collect your payments going forward.  Your new servicer will start accepting payments received from you on April 1, 2019.

**Send all payments due on or after April 1, 2019, to Central Loan Administration & Reporting at this address: Payment Processing Center P.O. Box 11733, Newark, NJ 07101-4733.**

If you have any questions for either your present servicer, CitiMortgage, Inc., or your new servicer, Central Loan Administration & Reporting, about your mortgage loan or this transfer, please contact them using the information below:

| Current Servicer: | New Servicer: |
|---|---|
| CitiMortgage, Inc. | Central Loan Administration & Reporting |
| Attention:  Customer Research Team | P.O. Box 77404 |
| P.O. Box 6243 | Ewing, NJ 08628 |
| Sioux Falls, SD 57117-6243 | 1-855-839-6253 |
| 1-800-283-7918* | |

**OPTIONAL INSURANCE - SOME WILL TRANSFER, SOME WILL NOT:**
Important note about insurance: If you have mortgage life or disability insurance or any other type of optional insurance, the transfer of servicing rights may affect your insurance in the following way: If your monthly payment includes a collection of premium for optional insurance with the following companies - Affinion Group/Benefit Consultants, Minnesota Life, NUFIC Insurance Company, ACE Financial, Securian Life/Northstar, Protective Life or Popular Insurance Company, Cenlar will collect the premium for your optional insurance product.  Please continue to remit the premium with your payment.  If your monthly payment includes a collection of premium for optional insurance with the following company, Assurant, you should do the following to maintain coverage: Contact your insurance provider to make arrangements for you to remit your insurance premium directly to the provider.

Important note about optional products: If you have other optional products, the transfer of servicing rights may affect your products in the following way:  The transfer of servicing is not affecting your optional products. The fees for your optional product will be collected by Central Loan Administration & Reporting as part of your mortgage payment.  You should do the following to maintain coverage: Continue to include your optional product fees as part of your mortgage payment.

**HOME AFFORDABLE MODIFICATION PROGRAM:**
If you previously accepted an offer for financial counseling under HAMP and have not completed your counseling sessions, you may continue to receive financial counseling with your existing counselor even after the loan is transferred.

Under Federal law, during the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer on or before its due date may not be treated by the new servicer as late, and a late fee may not be imposed on you.

CitiMortgage, Inc.                                                                 03/15/2019
Cenlar FSB

For New York Accounts Only:  You may file complaints about the servicing of your mortgage loan by CitiMortgage, Inc. with the New York State Department of Financial Services.  You may obtain further information from the New York State Department of Financial Services by calling the Department's Consumer Assistance Unit at 1-800-342-3736 or by visiting the Department's website at www.dfs.ny.gov.

BUS1008815.75265

## GENERAL TRANSFER FAQS

**Q: Why is my mortgage transferring?**
**A:** Cenlar will be servicing your loan on behalf of Citi.  The transfer of mortgage servicing is a common practice in today's mortgage industry. It simply means that going forward Cenlar FSB will manage your mortgage, including collecting payments, handling escrow transactions and providing you with high-quality customer service.  Citi will continue to originate loans.

**Q: Who is Cenlar FSB?**
**A:** For decades, Cenlar FSB has specialized in caring for mortgage customers.  Cenlar FSB is the nation's leading mortgage loan servicing provider and focuses exclusively on mortgage loan servicing. Cenlar FSB's commitment to customer satisfaction, teamwork and effective management continues to earn them the number one position among mortgage servicers.

**Q: How can I access my account information?**
**A:** You may enroll your account at Cenlar FSB's secured website, www.loanadministration.com after the servicing transfer is complete, which may take several days.

**Q: Will this impact my other Citi banking relationships in any way?**
**A:** No. All of your non-mortgage Citi relationships will remain exactly the same. Citi will also still be available to assist you with any future home lending needs, such as refinancing your mortgage or obtaining a new mortgage.

**Q: I am currently under the protection of the Servicemembers Civil Relief Act (SCRA).  What action do I need to take regarding this?**
**A:** All protections under SCRA will continue. Please notify Cenlar FSB of any change in your active duty status.

**Q: Will I receive Year-End Statements from CitiMortgage and Cenlar FSB?**
**A:** Yes. You will receive two Year-End Statements in 2020, one from CitiMortgage and one from Cenlar FSB, for activity that occurs in 2019.

**Q: What if I am selling, refinancing, or paying off my loan?**
**A:** Prior to the transfer date, please contact CitiMortgage for a payoff statement.  After the transfer date, payoff statements may be delayed.

## PAYMENT FAQS

**Q: When should I begin sending my payments to Cenlar FSB?**
**A:** You should immediately, upon the transfer of the servicing of your mortgage, begin making payments to Cenlar FSB. CitiMortgage will no longer accept payments at branches or ATMs.  For the first 90 days after the transfer date, any payments mailed to (or transmitted by a third party to) CitiMortgage will be forwarded to Cenlar FSB.  Forwarded payments may experience a delay in posting to your account.

**Q: My payment is automatically drafted by CitiMortgage, do I need to do anything?**
- If CitiMortgage is currently deducting payments from your checking or savings account on a recurring basis through EZPay, Equity Builder or Auto Deduct, **Cenlar FSB will continue this service.** Your payment information will be updated on the website, www.loanadministration.com, or on our automated phone system after the transfer has been completed.  It will not be necessary to make an additional payment during that time. Prior to the first draft, Cenlar (under the name of "Central Loan Adm") will complete a zero-dollar draft test to your bank account to ensure the information has been transferred correctly.
- The initial auto debit will be delayed until the transfer has been completed.  Future drafts will occur on the previously scheduled draft date (no late charge will be assessed due to this delay in the first draft).  If your automatic draft includes additional funds for escrow, this will be discontinued at Cenlar FSB.  Any additional funds you have authorized to draft for principal will continue.
- Any other automatic payment drafts, which may have been setup during phone conversations with Citi representatives, will not be transferred.  You will need to make new arrangements with Cenlar FSB.
- If your payment is initiated from your bank account by an online service or third party, please contact the company performing this service and provide them with your new Cenlar FSB account number and payment address listed in the enclosed Notice of Servicing Transfer.

**Q: My account is enrolled in The BiWeekly Advantage Plan® administered by FNC Insurance Agency (FNCIA). Will this program continue with Cenlar FSB?**
**A:** The program will continue. FNCIA will send you a separate letter with additional information.

**Q: How do I enroll in automatic payments with Cenlar FSB?**
**A:** Cenlar FSB offers a convenient service that automatically debits your payment each month from your checking or savings account.  You may enroll in this service by logging on to Cenlar FSB's website, www.loanadministration.com, and selecting the Auto Payment Draft option. You may also enroll in automatic payments by completing the enclosed Automatic Payment (ACH) Authorization form.

**Q: Can I still make a payment at a Citi branch or ATM?**
**A:** No. Effective upon the servicing transfer of your mortgage to Cenlar FSB, Citi will be unable to accept payments at our branches or ATMs.



# Automatic Payment (ACH) Authorization

We offer a convenient system that automatically debits your payment from your checking or savings account each month. To take advantage of this **FREE** service, simply complete this form and return to: **Drafting Department, PO Box 77421, Ewing, NJ 08628, Fax: (609) 718-1735, or Email to cenlar@loanadministration.com.** For faster processing, you can sign up for monthly Automatic Payments online at loanadministration.com.

I/We hereby authorize my/our lender, its successors, assigns, and subservicers to initiate a debit from my/our checking/savings account listed below for my/our recurring scheduled monthly loan payment. If the required payment changes for any reason, this authorization will be automatically amended to authorize the debit of an amount equal to the new required payment plus any optional additional principal that you indicate below.

Name: _____

Loan Number: _____

Bank Name: _____

ABA Routing Number: _____

Account Number: _____

Account Type (please check one): ☐ Checking   ☐ Savings

PAY TO THE ORDER OF:

MEMO

⑈ 1 2 3 4 5 6 7 8 9 ⑈    ⑈ 1 2 3 4 5 6 7 8 9 ⑈    ⑈ 1 2 3 4

**ABA Routing Number**    **Account Number**    **Check Number**

**Draft my payment monthly (please check one):**

☐ On the due date
☐ 1 day following due date
☐ 2 days following due date
☐ 3 days following due date
☐ 4 days following due date
☐ 5 days following due date
☐ 6 days following due date
☐ 7 days following due date
☐ 8 days following due date
☐ 9 days following due date

*Bi-weekly loans will always be drafted on the due date regardless of which option is selected.*

You will be notified of the month in which the first transfer will occur, and this notification will serve as a substitute of the photocopy of your authorization form. ***Please continue making payments by check or online through the website (loanadministration.com) until you are notified that this authorization has been processed.***

**Optional:** In addition to my/our regular payment, please deduct an additional $_____ *per debit* and apply to the principal. The authorization to initiate a debit from your account will remain in full force and effect until my/our lender receives written notice from you of its termination at least 15 business days prior to the next scheduled draft date, or in such manner and time frame as to afford my/our lender and its correspondent bank a reasonable opportunity to act upon it. Termination requests can be mailed, faxed, or emailed to: **Drafting Department, PO Box 77421, Ewing, NJ 08628 Fax: (609) 718-1735 Email: cenlar@loanadministration.com.**

Account Holder
Signature: _____   Date: _____

Joint Account Holder
Signature: _____   Date: _____

If you have questions regarding this program, please visit loanadministration.com or email **cenlar@loanadministration.com.**

29002072018

Please return this portion with your payment

MO

INES ROWE-BRYAN
20 SPRUCE RD
AMITYVILLE NY 11701-1019

Make Checks Payable To:



Account Number:
4770947259

Amount Enclosed  $_____

| | |
|---|---|
| Payment Amount | $_____ |
| Late Charge | $_____ |
| Additional Principal | $_____ |
| Additional Escrow | $_____ |
| Other Fees | $_____ |
| Total Amount paid | $_____ |

PAYMENT PROCESSING CENTER
PO BOX 11733
NEWARK, NJ 07101-4733

030000047709472590M000000000000000000000000000000000000000000000000

Page 5

# NOTE

002000360738

November 7, 2002                         Garden City                         New York
[Date]                                   [City]                              [State]

20 Spruce Rd, Amityville, NY 11701-1019

[Property Address]

**1.   BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 119,893.44        (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is Citibank, N.A.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 6.000            %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.   PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the First       day of each month beginning on January 1 2003            . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on December 01              ,2032          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at 15851 Clayton Road, Ballwin, MO 63011
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S $ 718.82

**4.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**6.   BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen       calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 2.000        % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

NEW YORK FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3633  10/91
3758NY (07/30/1999) (002000360738)                    Page 1 of 2                              Initials:

Page 6

8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9.   WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10.   UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____          _Ines Rowe-Bryan_____ (Seal)
                                          INES ROWE-BRYAN                -Borrower

_____          _____ (Seal)
                                          Roger Rowe                     -Borrower

Pay to the order of

without recourse on us Citibank, N.A.

_____
Juney L. Sims, Vice President
CitiMortgage, Inc.
Attorney in-fact for Citibank, N.A.

96060205
98239

| Homeowner's Key Note |  453 878105 | CITICORP●CITIBANK° |

453878105

October 23 , 19 89                    New York , New York
                                     (CITY)        (STATE)

20 Spruce Road, North Amityville, New York 11701
(PROPERTY ADDRESS)

**1.  BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $ 134,400.00              (this amount is called "principal"), plus interest, to the order of Lender. The Lender is Citibank, N.A. _____ 399 Park Avenue, New York, New York _____
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.  INTEREST**
(A) Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at the yearly rate of  10.625  %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.
(B)    N/A    If I have initialed the space to the left of this sub-paragraph, the interest I will be charged under this Note is subject to the terms of a Buy Down/Subsidy Agreement dated the same date as this Note and which is incorporated into this Note by reference to it.

**3.  PAYMENTS**
(A) Time and Place of Payments
I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on December 1      ,  19 89 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on November 1      , 2004 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."
I will make my monthly payments at CMI, 15851 Clayton Road,     Ballwin, MO 63011      , or at a different place if required by the Note Holder
(B) Amount of Monthly Payments
My monthly payments will be in the following amounts and according to the following schedule.

| Number of Payments | Total Payment Amount |
|---|---|
| 1 | 1,507.33 |
| 11 | 1,190.00 |
| 12 | 1,190.13 |
| 12 | 1,279.39 |
| 12 | 1,375.34 |
| 12 | 1,478.49 |
| 12 | 1,589.38 |
| 12 | 1,708.58 |
| 95 | 1,749.92 |
| 1 | 1,749.11 |

**4.  BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayment without paying any penalty. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates or in the amount of my monthly payments unless the Note Holder agrees in writing to those changes.

**5.  LOAN CHARGES**

If a law, which applies to this Loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**6.  BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be two (2%) percent of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment within fifteen (15) calendar days after the date it is due, I will be in default.

If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.

(C) No Waiver By Note Holder

Even if, at the time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time

(D) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees

**7.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the property address above or at a different address if I give the Note Holder notice of that different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

**8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay in full the amount owed  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note  The Note Holder may enforce its rights under this Note against each person individually or against all of us together  This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.  SECURITY INSTRUMENT**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Security Agreement (giving Note Holder a security interest in the shares of stock and proprietary lease described in said Agreement), Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the same day as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than thirty (30) days from the date the

item 359394 (N/TPL  803 (L) 02/01/89) Pag  50
PAGE 2 OF 3

CB0035
Version 1.0

Page 9

notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11. FIRST PAYMENT**
At the time that I make my first monthly payment, I will also pay the Note Holder interest on the unpaid principal for the period from the date of this Note to the end of the month in which this Note is signed.

**12. APPLICATION OF PAYMENTS**
All payments received by the Note Holder shall be applied, first, to payments made by the Note Holder to protect its lien under the Security Instrument, second, to pay unpaid late charges, third, on account of interest, and then, on account of principal.

**13. NEW YORK LAW**
This Note shall be governed by the laws of the State of New York and any applicable federal law. In the event of a conflict between any provision of this Note and any federal or New York State statute, law or regulation in effect as of the date of this Note, the statute, law or regulation shall control to the extent of such conflict and the provision contained in this Note shall be without effect. All other provisions of this Note will remain fully effective and enforceable.

*Refer to the Subsidy Account Agreement for information concerning your payment schedule during the subsidy period.*

**WITNESS:**

_Ines Rowe Bryan_
_____  (Borrower)
INES ROWE-BRYAN

_Anna Rowe_
_____  (Borrower)
ANNA ROWE

_Anna Rowe_
_____  (Borrower)

_____  (Borrower)


STATE OF NEW YORK)
COUNTY OF QUEENS )


On this 23rd day of October 1989 before me personally came INES ROWE-BRYAN and ANNA ROWE to me known and known to me to be the individuals described in and who executed the foregoing instrument and they duly acknowledged to me that they executed the same.

_Michele Dobbs_
NOTARY PUBLIC

MICHELE DOBBS
NOTARY PUBLIC, State of New York
No. 41-4901301
Qualified in Queens County
Commission Expires Sept. 6, 19___

PAY TO THE ORDER OF
**FEDERAL HOME LOAN MORTGAGE CORPORATION**
DATE: 12-13-89
WITHOUT RECOURSE ON US
CITIBANK, N.A.

_Kelly Woodring_
KELLY WOODRING, ASSISTANT SECRETARY
ATTORNEY-IN-FACT FOR
CITIBANK, N.A.

Pay to the order of

without recourse on us Citibank, N.A.

_Janet L. Sims_
Janet L. Sims, Vice President
CitiMortgage, Inc.
Attorney-in-fact for Citibank, N.A.

Item 359794 (NTPL 607 (L) 02/01/89) Pkg. 50
PAGE 3 OF 3

CB0056
Version 1.0

Page 10

# EXHIBIT G

## Previous Loan History - All Transactions

### 300 · CENTRAL LOAN ADMINISTRATION & REPORTING

**Loan Number:** 4770947259                                                                 **Borrower Name:** ROWE-BRYAN,INES

| Transaction Date | 03/30/2019 | 03/12/2019 | 02/11/2019 | 01/15/2019 | 12/29/2018 | 12/18/2018 | 12/10/2018 |
|---|---|---|---|---|---|---|---|
| Sequence Number | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Segment Number | | | | | | | |
| Due Date | 03/01/2019 | 03/01/2019 | 02/01/2019 | 01/01/2019 | 12/01/2018 | 12/01/2018 | 12/01/2018 |
| Transaction Type/Code | 1 60 | 1 73 | 1 72 | 1 73 | 1 60 | 3 13 | 1 73 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Transaction Amount | $15.49 | $1,697.60 | $1,697.60 | $1,697.60 | $26.15 | ($4,745.77) | $1,697.60 |
| Principal Paid Amt. | $0.00 | $412.60 | $410.55 | $408.51 | $0.00 | $0.00 | $406.48 |
| Principal Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Interest Paid | $0.00 | $531.69 | $533.74 | $535.78 | $0.00 | $0.00 | $537.81 |
| Escrow Paid | $15.49 | $753.31 | $753.31 | $753.31 | $26.15 | ($4,745.77) | $753.31 |
| Escrow Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| A&H Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Restricted Escrow Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Replacement Reserve Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Code | | | | | | | |
| Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Description | | | | | | | |
| Misc. Paid Reason Code | | | | | | | |
| Miscellaneous Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Description | | | | | | | |
| HUD Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Mort Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3rd Party Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Esc. or Corp. Adv. Disb. Payee | | | | | | | |
| Payee Description | | | | | | | |
| Check Number | | | | | | | |
| Current Payment Due | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Corporate Adv. Tran. Desc. | | | | | | | |
| Corporate Adv. Payee Code | | | | | | | |
| Corporate Adv. Tran. Reason | | | | | | | |
| Effective Date | 03/30/2019 | 03/12/2019 | 02/11/2019 | 01/15/2019 | 12/29/2018 | 12/18/2018 | 12/08/2018 |
| Nonrecoverable Corp. Adv Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Prior Due Date | | | | | | | |
| Credit Card Description 1 | | | | | | | |
| Credit Card Description 2 | | | | | | | |

## Previous Loan History - All Transactions
### 300 - CENTRAL LOAN ADMINISTRATION & REPORTING

Loan Number: 4770947259

Borrower Name: ROWE-BRYAN,INES

| Transaction Date | 11/09/2018 | 11/05/2018 | 11/05/2018 | 10/02/2018 | 09/29/2018 | 09/03/2018 | 08/07/2018 |
|---|---|---|---|---|---|---|---|
| Sequence Number | 1 | 2 | 1 | 1 | 1 | 1 | 1 |
| Segment Number | | | | | | | |
| Due Date | 11/01/2018 | 10/01/2018 | 10/01/2018 | 10/01/2018 | 09/01/2018 | 09/01/2018 | 08/01/2018 |
| Transaction Type/Code | 1 73 | 7 66 | 7 66 | 1 73 | 1 60 | 1 73 | 1 73 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Transaction Amount | $1,697.60 | ($5,284.67) | $5,284 67 | $1,697.60 | $18.59 | $1,697.60 | $1,692.00 |
| Principal Paid Amt. | $404.45 | $0 00 | $0 00 | $402.44 | $0 00 | $400.44 | $398 45 |
| Principal Balance | $0 00 | $0 00 | $0 00 | $0.00 | $0 00 | $0.00 | $0.00 |
| Interest Paid | $539.84 | $0 00 | $0 00 | $541.85 | $0 00 | $543.85 | $545.84 |
| Escrow Paid | $753.31 | ($5,284 67) | $5,284.67 | $753.31 | $18.59 | $753.31 | $747 71 |
| Escrow Balance | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| A&H Insurance | $0 00 | $0 00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Insurance | $0 00 | $0 00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Restricted Escrow Amt. | $0 00 | $0 00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Replacement Reserve Amt. | $0 00 | $0 00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Code | | | | | | | |
| Fee Amount | $0 00 | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Description | | | | | | | |
| Misc. Paid Reason Code | | | | | | | |
| Miscellaneous Paid | $0.00 | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Amount | $0.00 | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Balance | $0.00 | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Description | | | | | | | |
| HUD Amount | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Fee Amount | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Mort Rec. Corp. Adv. Amt. | $0.00 | ($5,284.67) | $5,284.67 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3rd Party Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Esc. or Corp. Adv. Disb. Payee | | | | | | | |
| Payee Description | | CONV CORP ADV | CONV CORP ADV | | | | |
| Check Number | | | | | | | |
| Current Payment Due | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Corporate Adv. Tran. Desc. | | BAL TRAN - CONV | BAL TRAN - CONV | | | | |
| Corporate Adv. Payee Code | | 16R00 | 16R00 | | | | |
| Corporate Adv. Tran. Reason | | CDBT | CDBT | | | | |
| Effective Date | 11/09/2018 | 10/01/2018 | 10/01/2018 | 10/02/2018 | 09/29/2018 | 09/01/2018 | 08/07/2018 |
| Nonrecoverable Corp. Adv Amt. | $0.00 | $0 00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Prior Due Date | | | | | | | |
| Credit Card Description 1 | | | | | | | |
| Credit Card Description 2 | | | | | | | |

### Previous Loan History - All Transactions
300 · CENTRAL LOAN ADMINISTRATION & REPORTING

Loan Number: 4770947259　　　　　　　　　　　　　　　　　　　　Borrower Name: ROWE-BRYAN,INES

| Transaction Date | 07/04/2018 | 06/30/2018 | 06/05/2018 | 05/15/2018 | 05/03/2018 | 04/05/2018 | 03/31/2018 |
|---|---|---|---|---|---|---|---|
| Sequence Number | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Segment Number | | | | | | | |
| Due Date | 07/01/2018 | 06/01/2018 | 06/01/2018 | 05/01/2018 | 05/01/2018 | 04/01/2018 | 03/01/2018 |
| Transaction Type/Code | 1  73 | 1  60 | 1  73 | 3  13 | 1  73 | 1  73 | 1  60 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Transaction Amount | $1,692.00 | $17.96 | $1,692.00 | ($4,517.37) | $1,692.00 | $1,692.00 | $18.23 |
| Principal Paid Amt. | $396.47 | $0.00 | $394.49 | $0.00 | $392.53 | $390.58 | $0.00 |
| Principal Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Interest Paid | $547.82 | $0.00 | $549.80 | $0.00 | $551.76 | $553.71 | $0.00 |
| Escrow Paid | $747.71 | $17.96 | $747.71 | ($4,517.37) | $747.71 | $747.71 | $18.23 |
| Escrow Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| A&H Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Restricted Escrow Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Replacement Reserve Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Code | | | | | | | |
| Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Description | | | | | | | |
| Misc. Paid Reason Code | | | | | | | |
| Miscellaneous Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Description | | | | | | | |
| HUD Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Mort Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3rd Party Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Esc. or Corp. Adv. Disb. Payee | | | | | | | |
| Payee Description | | | | | | | |
| Check Number | | | | | | | |
| Current Payment Due | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Corporate Adv. Tran. Desc. | | | | | | | |
| Corporate Adv. Payee Code | | | | | | | |
| Corporate Adv. Tran. Reason | | | | | | | |
| Effective Date | 07/03/2018 | 06/30/2018 | 06/05/2018 | 05/15/2018 | 05/03/2018 | 04/05/2018 | 03/31/2018 |
| Nonrecoverable Corp. Adv Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Prior Due Date | | | | | | | |
| Credit Card Description 1 | | | | | | | |
| Credit Card Description 2 | | | | | | | |

## Previous Loan History - All Transactions
### 300 - CENTRAL LOAN ADMINISTRATION & REPORTING

Loan Number: 4770947259                                                                 Borrower Name: ROWE-BRYAN,INES

| Transaction Date | 03/05/2018 | 02/05/2018 | 01/04/2018 | 12/29/2017 | 12/27/2017 | 12/05/2017 | 11/05/2017 |
|---|---|---|---|---|---|---|---|
| Sequence Number | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Segment Number | | | | | | | |
| Due Date | 03/01/2018 | 02/01/2018 | 01/01/2018 | 12/01/2017 | 12/01/2017 | 12/01/2017 | 11/01/2017 |
| Transaction Type/Code | 1 73 | 1 73 | 1 73 | 1 60 | 3 13 | 1 73 | 1 73 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Transaction Amount | $1,692.00 | $1,692.00 | $1,692.00 | $28.52 | ($4,517.38) | $1,692.00 | $1,692.00 |
| Principal Paid Amt. | $388.63 | $386.70 | $384.78 | $0.00 | $0.00 | $382.86 | $380.96 |
| Principal Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Interest Paid | $555.66 | $557.59 | $559.51 | $0.00 | $0.00 | $561.43 | $563.33 |
| Escrow Paid | $747.71 | $747.71 | $747.71 | $28.52 | ($4,517.38) | $747.71 | $747.71 |
| Escrow Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| A&H Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Restricted Escrow Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Replacement Reserve Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Code | | | | | | | |
| Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Description | | | | | | | |
| Misc. Paid Reason Code | | | | | | | |
| Miscellaneous Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Description | | | | | | | |
| HUD Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Mort. Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3rd Party Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Esc. or Corp. Adv. Disb. Payee | | | | | | | |
| Payee Description | | | | | | | |
| Check Number | | | | | | | |
| Current Payment Due | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Corporate Adv. Tran. Desc. | | | | | | | |
| Corporate Adv. Payee Code | | | | | | | |
| Corporate Adv. Tran. Reason | | | | | | | |
| Effective Date | 03/03/2018 | 02/03/2018 | 01/04/2018 | 12/29/2017 | 12/27/2017 | 12/05/2017 | 11/04/2017 |
| Nonrecoverable Corp. Adv Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Prior Due Date | | | | | | | |
| Credit Card Description 1 | | | | | | | |
| Credit Card Description 2 | | | | | | | |

## Previous Loan History - All Transactions
### 300 - CENTRAL LOAN ADMINISTRATION & REPORTING

Loan Number: 4770947259

Borrower Name: ROWE-BRYAN,INES

| Transaction Date | 10/06/2017 | 10/06/2017 | 10/06/2017 | 09/30/2017 | 09/06/2017 | 08/04/2017 | 07/20/2017 |
|---|---|---|---|---|---|---|---|
| Sequence Number | 3 | 2 | 1 | 1 | 1 | 1 | 1 |
| Segment Number | | | | | | | |
| Due Date | 10/01/2017 | 10/01/2017 | 10/01/2017 | 09/01/2017 | 09/01/2017 | 08/01/2017 | 07/01/2017 |
| Transaction Type/Code | 1 73 | 1 32 | 1 70 | 1 60 | 1 73 | 1 73 | 3 7 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Transaction Amount | $1,692.00 | $18 88 | $18.88 | $18.42 | $1,692.00 | $1,714.50 | ($191.49) |
| Principal Paid Amt. | $379.06 | $0 00 | $0.00 | $0.00 | $377.18 | $375.30 | $0.00 |
| Principal Balance | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Interest Paid | $565.23 | $0.00 | $0.00 | $0.00 | $567 11 | $568.99 | $0.00 |
| Escrow Paid | $747 71 | $0 00 | $0.00 | $18.42 | $747.71 | $770.21 | ($191 49) |
| Escrow Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| A&H Insurance | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Insurance | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Restricted Escrow Amt. | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Replacement Reserve Amt. | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Code | | | | | | | |
| Fee Amount | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0 00 |
| Fee Description | | | | | | | |
| Misc. Paid Reason Code | | | | | | | |
| Miscellaneous Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Amount | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Balance | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Description | | | | | | | |
| HUD Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Fee Amount | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Mort Rec. Corp. Adv. Amt. | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3rd Party Rec. Corp. Adv. Amt. | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Esc. or Corp. Adv. Disb. Payee | | | | | | | |
| Payee Description | | | | | | | |
| Check Number | | | | | | | |
| Current Payment Due | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Corporate Adv. Tran. Desc. | | | | | | | |
| Corporate Adv. Payee Code | | | | | | | |
| Corporate Adv. Tran. Reason | | | | | | | |
| Effective Date | 10/06/2017 | 10/06/2017 | 10/06/2017 | 09/30/2017 | 09/06/2017 | 08/04/2017 | 07/20/2017 |
| Nonrecoverable Corp. Adv Amt. | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Prior Due Date | | | | | | | |
| Credit Card Description 1 | | | | | | | |
| Credit Card Description 2 | | | | | | | |

## Previous Loan History - All Transactions
### 300 - CENTRAL LOAN ADMINISTRATION & REPORTING

Loan Number: 4770947259

Borrower Name: ROWE-BRYAN,INES

| Transaction Date | 07/06/2017 | 07/01/2017 | 06/06/2017 | 05/16/2017 | 05/05/2017 | 04/05/2017 | 04/01/2017 |
|---|---|---|---|---|---|---|---|
| Sequence Number | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Segment Number | | | | | | | |
| Due Date | 07/01/2017 | 06/01/2017 | 06/01/2017 | 05/01/2017 | 05/01/2017 | 04/01/2017 | 03/01/2017 |
| Transaction Type/Code | 1  73 | 1  60 | 1  73 | 3  13 | 1  73 | 1  73 | 1  60 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Transaction Amount | $1,714.50 | $18.50 | $1,714.50 | ($4,486.26) | $1,714.50 | $1,714.50 | $17.78 |
| Principal Paid Amt. | $373.43 | $0.00 | $371.58 | $0.00 | $369.73 | $367.89 | $0.00 |
| Principal Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Interest Paid | $570.86 | $0.00 | $572.71 | $0.00 | $574.56 | $576.40 | $0.00 |
| Escrow Paid | $770.21 | $18.50 | $770.21 | ($4,486.26) | $770.21 | $770.21 | $17.78 |
| Escrow Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| A&H Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Restricted Escrow Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Replacement Reserve Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Code | | | | | | | |
| Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Description | | | | | | | |
| Misc. Paid Reason Code | | | | | | | |
| Miscellaneous Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Description | | | | | | | |
| HUD Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Mort Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3rd Party Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Esc. or Corp. Adv. Disb. Payee | | | | | | | |
| Payee Description | | | | | | | |
| Check Number | | | | | | | |
| Current Payment Due | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Corporate Adv. Tran. Desc. | | | | | | | |
| Corporate Adv. Payee Code | | | | | | | |
| Corporate Adv. Tran. Reason | | | | | | | |
| Effective Date | 07/06/2017 | 07/01/2017 | 06/06/2017 | 05/16/2017 | 05/05/2017 | 04/05/2017 | 04/01/2017 |
| Nonrecoverable Corp. Adv Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Prior Due Date | | | | | | | |
| Credit Card Description 1 | | | | | | | |
| Credit Card Description 2 | | | | | | | |

## Previous Loan History - All Transactions
### 300 - CENTRAL LOAN ADMINISTRATION & REPORTING

Loan Number: 4770947259

Borrower Name: ROWE-BRYAN,INES

| Transaction Date | 03/03/2017 | 02/14/2017 | 01/04/2017 | 12/30/2016 | 12/21/2016 | 12/06/2016 | 11/22/2016 |
|---|---|---|---|---|---|---|---|
| Sequence Number | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Segment Number | | | | | | | |
| Due Date | 03/01/2017 | 02/01/2017 | 01/01/2017 | 12/01/2016 | 12/01/2016 | 12/01/2016 | 11/01/2016 |
| Transaction Type/Code | 1  73 | 1  73 | 1  73 | 1  60 | 3  13 | 1  73 | 1  73 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Transaction Amount | $1,714.50 | $1,714.50 | $1,714.50 | $25.69 | ($4,486.27) | $1,714.50 | $1,714.50 |
| Principal Paid Amt. | $366.06 | $364.24 | $362.42 | $0.00 | $0.00 | $360.62 | $358.83 |
| Principal Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Interest Paid | $578.23 | $580.05 | $581.87 | $0.00 | $0.00 | $583.67 | $585.46 |
| Escrow Paid | $770.21 | $770.21 | $770.21 | $25.69 | ($4,486.27) | $770.21 | $770.21 |
| Escrow Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| A&H Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Restricted Escrow Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Replacement Reserve Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Code | | | | | | | |
| Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Description | | | | | | | |
| Misc. Paid Reason Code | | | | | | | |
| Miscellaneous Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Description | | | | | | | |
| HUD Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Mort Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3rd Party Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Esc. or Corp. Adv. Disb. Payee | | | | | | | |
| Payee Description | | | | | | | |
| Check Number | | | | | | | |
| Current Payment Due | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Corporate Adv. Tran. Desc. | | | | | | | |
| Corporate Adv. Payee Code | | | | | | | |
| Corporate Adv. Tran. Reason | | | | | | | |
| Effective Date | 03/03/2017 | 02/14/2017 | 01/04/2017 | 12/30/2016 | 12/21/2016 | 12/06/2016 | 11/22/2016 |
| Nonrecoverable Corp. Adv Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Prior Due Date | | | | | | | |
| Credit Card Description 1 | | | | | | | |
| Credit Card Description 2 | | | | | | | |

## Previous Loan History - All Transactions
### 300 - CENTRAL LOAN ADMINISTRATION & REPORTING

Loan Number: 4770947259                                    Borrower Name: ROWE-BRYAN,INES

| Transaction Date | 11/17/2016 | 11/17/2016 | 10/10/2016 | 10/01/2016 | 09/07/2016 | 08/12/2016 | 07/09/2016 |
|---|---|---|---|---|---|---|---|
| Sequence Number | 2 | 1 | 1 | 1 | 1 | 1 | 1 |
| Segment Number | | | | | | | |
| Due Date | 10/01/2016 | 10/01/2016 | 10/01/2016 | 09/01/2016 | 09/01/2016 | 08/01/2016 | 07/01/2016 |
| Transaction Type/Code | 1 32 | 1 52 | 1 73 | 1 60 | 1 73 | 1 73 | 1 73 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Transaction Amount | ($18.88) | ($18.88) | $1,714.50 | $17.04 | $1,714.50 | $1,682.77 | $1,682.77 |
| Principal Paid Amt. | $0.00 | $0.00 | $357.04 | $0.00 | $355.27 | $353.50 | $351.74 |
| Principal Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Interest Paid | $0.00 | $0.00 | $587.25 | $0.00 | $589.02 | $590.79 | $592.55 |
| Escrow Paid | $0.00 | $0.00 | $770.21 | $17.04 | $770.21 | $738.48 | $738.48 |
| Escrow Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| A&H Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Restricted Escrow Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Replacement Reserve Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Code | | 1 | | | | | |
| Fee Amount | $0.00 | $18.88 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Description | | LATE CHARGE | | | | | |
| Misc. Paid Reason Code | | | | | | | |
| Miscellaneous Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Description | | | | | | | |
| HUD Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Mort Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3rd Party Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Esc. or Corp. Adv. Disb. Payee | | | | | | | |
| Payee Description | | | | | | | |
| Check Number | | | | | | | |
| Current Payment Due | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Corporate Adv. Tran. Desc. | | | | | | | |
| Corporate Adv. Payee Code | | | | | | | |
| Corporate Adv. Tran. Reason | | | | | | | |
| Effective Date | 11/17/2016 | 11/17/2016 | 10/08/2016 | 10/01/2016 | 09/07/2016 | 08/12/2016 | 07/09/2016 |
| Nonrecoverable Corp. Adv Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Prior Due Date | | | | | | | |
| Credit Card Description 1 | | | | | | | |
| Credit Card Description 2 | | | | | | | |

## Previous Loan History - All Transactions
### 300 - CENTRAL LOAN ADMINISTRATION & REPORTING

Loan Number: 4770947259             Borrower Name: ROWE-BRYAN,INES

| Transaction Date | 07/01/2016 | 06/06/2016 | 05/16/2016 | 05/06/2016 | 04/05/2016 | 04/01/2016 | 03/04/2016 |
|---|---|---|---|---|---|---|---|
| Sequence Number | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Segment Number | | | | | | | |
| Due Date | 06/01/2016 | 06/01/2016 | 05/01/2016 | 05/01/2016 | 04/01/2016 | 03/01/2016 | 03/01/2016 |
| Transaction Type/Code | 1  60 | 1  73 | 3  13 | 1  73 | 1  73 | 1  60 | 1  73 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Transaction Amount | $17 40 | $1,682.77 | ($4,525.99) | $1,682.77 | $1,682.77 | $17.83 | $1,682.77 |
| Principal Paid Amt. | $0.00 | $349 99 | $0.00 | $348.25 | $346.52 | $0.00 | $344.79 |
| Principal Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Interest Paid | $0.00 | $594.30 | $0.00 | $596.04 | $597.77 | $0.00 | $599 50 |
| Escrow Paid | $17 40 | $738.48 | ($4,525 99) | $738 48 | $738.48 | $17.83 | $738.48 |
| Escrow Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| A&H Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Restricted Escrow Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Replacement Reserve Amt. | $0 00 | $0 00 | $0 00 | $0 00 | $0 00 | $0 00 | $0 00 |
| Fee Code | | | | | | | |
| Fee Amount | $0 00 | $0 00 | $0 00 | $0.00 | $0.00 | $0 00 | $0.00 |
| Fee Description | | | | | | | |
| Misc. Paid Reason Code | | | | | | | |
| Miscellaneous Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Description | | | | | | | |
| HUD Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Mort Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3rd Party Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Esc. or Corp. Adv. Disb. Payee | | | | | | | |
| Payee Description | | | | | | | |
| Check Number | | | | | | | |
| Current Payment Due | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Corporate Adv. Tran. Desc. | | | | | | | |
| Corporate Adv. Payee Code | | | | | | | |
| Corporate Adv. Tran. Reason | | | | | | | |
| Effective Date | 07/01/2016 | 06/04/2016 | 05/16/2016 | 05/06/2016 | 04/05/2016 | 04/01/2016 | 03/04/2016 |
| Nonrecoverable Corp. Adv Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Prior Due Date | | | | | | | |
| Credit Card Description 1 | | | | | | | |
| Credit Card Description 2 | | | | | | | |

## Previous Loan History - All Transactions
### 300 - CENTRAL LOAN ADMINISTRATION & REPORTING

Loan Number: 4770947259

Borrower Name: ROWE-BRYAN,INES

| Transaction Date | 02/05/2016 | 01/04/2016 | 12/31/2015 | 12/16/2015 | 12/04/2015 | 11/05/2015 | 10/06/2015 |
|---|---|---|---|---|---|---|---|
| Sequence Number | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Segment Number | | | | | | | |
| Due Date | 02/01/2016 | 01/01/2016 | 12/01/2015 | 12/01/2015 | 12/01/2015 | 11/01/2015 | 10/01/2015 |
| Transaction Type/Code | 1 73 | 1 73 | 1 60 | 3 13 | 1 73 | 1 73 | 1 73 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Transaction Amount | $1,682.77 | $1,682.77 | $25.42 | ($4,525.99) | $1,682 77 | $1,682 77 | $1,682 77 |
| Principal Paid Amt. | $343.08 | $341.37 | $0.00 | $0.00 | $339.67 | $337.98 | $336.30 |
| Principal Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Interest Paid | $601 21 | $602.92 | $0.00 | $0.00 | $604.62 | $606.31 | $607.99 |
| Escrow Paid | $738.48 | $738.48 | $25.42 | ($4,525.99) | $738.48 | $738.48 | $738.48 |
| Escrow Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| A&H Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Restricted Escrow Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Replacement Reserve Amt. | $0 00 | $0 00 | $0 00 | $0 00 | $0.00 | $0.00 | $0.00 |
| Fee Code | | | | | | | |
| Fee Amount | $0 00 | $0 00 | $0 00 | $0 00 | $0.00 | $0.00 | $0 00 |
| Fee Description | | | | | | | |
| Misc. Paid Reason Code | | | | | | | |
| Miscellaneous Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0 00 |
| Suspense Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Description | | | | | | | |
| HUD Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Mort Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3rd Party Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Esc. or Corp. Adv. Disb. Payee | | | | | | | |
| Payee Description | | | | | | | |
| Check Number | | | | | | | |
| Current Payment Due | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0 00 |
| Corporate Adv. Tran. Desc. | | | | | | | |
| Corporate Adv. Payee Code | | | | | | | |
| Corporate Adv. Tran. Reason | | | | | | | |
| Effective Date | 02/05/2016 | 01/02/2016 | 12/31/2015 | 12/16/2015 | 12/04/2015 | 11/05/2015 | 10/06/2015 |
| Nonrecoverable Corp. Adv Amt. | $0.00 | $0.00 | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 |
| Prior Due Date | | | | | | | |
| Credit Card Description 1 | | | | | | | |
| Credit Card Description 2 | | | | | | | |

## Previous Loan History - All Transactions

### 300 - CENTRAL LOAN ADMINISTRATION & REPORTING

**Loan Number:** 4770947259　　　　　　　　　　　　　　**Borrower Name:** ROWE-BRYAN,INES

| Transaction Date | 10/01/2015 | 09/04/2015 | 08/06/2015 | 07/20/2015 | 07/03/2015 | 07/01/2015 | 06/05/2015 |
|---|---|---|---|---|---|---|---|
| Sequence Number | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Segment Number | | | | | | | |
| Due Date | 09/01/2015 | 09/01/2015 | 08/01/2015 | 07/01/2015 | 07/01/2015 | 06/01/2015 | 06/01/2015 |
| Transaction Type/Code | 1 60 | 1 73 | 1 73 | 3 7 | 1 73 | 1 60 | 1 73 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Transaction Amount | $18.19 | $1,682.77 | $1,727.68 | ($67.39) | $1,727.68 | $16.96 | $1,727.68 |
| Principal Paid Amt. | $0.00 | $334.63 | $332.96 | $0.00 | $331.30 | $0.00 | $329.66 |
| Principal Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Interest Paid | $0.00 | $609.66 | $611.33 | $0.00 | $612.99 | $0.00 | $614.63 |
| Escrow Paid | $18.19 | $738.48 | $783.39 | ($67.39) | $783.39 | $16.96 | $783.39 |
| Escrow Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| A&H Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Restricted Escrow Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Replacement Reserve Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Code | | | | | | | |
| Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Description | | | | | | | |
| Misc. Paid Reason Code | | | | | | | |
| Miscellaneous Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Description | | | | | | | |
| HUD Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Mort Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3rd Party Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Esc. or Corp. Adv. Disb. Payee | | | | | | | |
| Payee Description | | | | | | | |
| Check Number | | | | | | | |
| Current Payment Due | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Corporate Adv. Tran. Desc. | | | | | | | |
| Corporate Adv. Payee Code | | | | | | | |
| Corporate Adv. Tran. Reason | | | | | | | |
| Effective Date | 10/01/2015 | 09/04/2015 | 08/06/2015 | 07/20/2015 | 07/02/2015 | 07/01/2015 | 06/05/2015 |
| Nonrecoverable Corp. Adv Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Prior Due Date | | | | | | | |
| Credit Card Description 1 | | | | | | | |
| Credit Card Description 2 | | | | | | | |

## Previous Loan History - All Transactions
### 300 · CENTRAL LOAN ADMINISTRATION & REPORTING

Loan Number: 4770947259                                    Borrower Name: ROWE-BRYAN,INES

| Transaction Date | 05/14/2015 | 05/05/2015 | 04/03/2015 | 04/01/2015 | 03/05/2015 | 02/05/2015 | 01/13/2015 |
|---|---|---|---|---|---|---|---|
| Sequence Number | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Segment Number | | | | | | | |
| Due Date | 05/01/2015 | 05/01/2015 | 04/01/2015 | 03/01/2015 | 03/01/2015 | 02/01/2015 | 01/01/2015 |
| Transaction Type/Code | 3 13 | 1 73 | 1 73 | 1 60 | 1 73 | 1 73 | 1 73 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Transaction Amount | ($4,430 89) | $1,727 68 | $1,727 68 | $16.19 | $1,727 68 | $1,727 68 | $1,727 68 |
| Principal Paid Amt. | $0.00 | $328.02 | $326.38 | $0.00 | $324.76 | $323.14 | $321.54 |
| Principal Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0 00 |
| Interest Paid | $0.00 | $616 27 | $617 91 | $0.00 | $619.53 | $621.15 | $622.75 |
| Escrow Paid | ($4,430 89) | $783 39 | $783 39 | $16.19 | $783.39 | $783.39 | $783.39 |
| Escrow Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| A&H Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Restricted Escrow Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Replacement Reserve Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Code | | | | | | | |
| Fee Amount | $0 00 | $0.00 | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 |
| Fee Description | | | | | | | |
| Misc. Paid Reason Code | | | | | | | |
| Miscellaneous Paid | $0.00 | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Amount | $0.00 | $0 00 | $0 00 | $0.00 | $0 00 | $0.00 | $0 00 |
| Suspense Balance | $0.00 | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Description | | | | | | | |
| HUD Amount | $0.00 | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Mort Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3rd Party Rec. Corp. Adv. Amt. | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0 00 |
| Esc. or Corp. Adv. Disb. Payee | | | | | | | |
| Payee Description | | | | | | | |
| Check Number | | | | | | | |
| Current Payment Due | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Corporate Adv. Tran. Desc. | | | | | | | |
| Corporate Adv. Payee Code | | | | | | | |
| Corporate Adv. Tran. Reason | | | | | | | |
| Effective Date | 05/14/2015 | 05/05/2015 | 04/03/2015 | 04/01/2015 | 03/05/2015 | 02/05/2015 | 01/13/2015 |
| Nonrecoverable Corp. Adv Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Prior Due Date | | | | | | | |
| Credit Card Description 1 | | | | | | | |
| Credit Card Description 2 | | | | | | | |

## Previous Loan History - All Transactions
### 300 - CENTRAL LOAN ADMINISTRATION & REPORTING

Loan Number: 4770947259

Borrower Name: ROWE-BRYAN,INES

| Transaction Date | 12/31/2014 | 12/23/2014 | 12/05/2014 | 11/04/2014 | 10/03/2014 | 10/01/2014 | 09/05/2014 |
|---|---|---|---|---|---|---|---|
| Sequence Number | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Segment Number | | | | | | | |
| Due Date | 12/01/2014 | 12/01/2014 | 12/01/2014 | 11/01/2014 | 10/01/2014 | 09/01/2014 | 09/01/2014 |
| Transaction Type/Code | 1 60 | 3 13 | 1 73 | 1 73 | 1 73 | 1 60 | 1 73 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Transaction Amount | $25.22 | ($4,430.90) | $1,727.68 | $1,727.68 | $1,727.68 | $15.41 | $1,727.68 |
| Principal Paid Amt. | $0.00 | $0.00 | $319.94 | $318.35 | $316.76 | $0.00 | $315.19 |
| Principal Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Interest Paid | $0.00 | $0.00 | $624.35 | $625.94 | $627.53 | $0.00 | $629.10 |
| Escrow Paid | $25.22 | ($4,430.90) | $783.39 | $783.39 | $783.39 | $15.41 | $783.39 |
| Escrow Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| A&H Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Restricted Escrow Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Replacement Reserve Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Code | | | | | | | |
| Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Description | | | | | | | |
| Misc. Paid Reason Code | | | | | | | |
| Miscellaneous Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Description | | | | | | | |
| HUD Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Mort Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3rd Party Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Esc. or Corp. Adv. Disb. Payee | | | | | | | |
| Payee Description | | | | | | | |
| Check Number | | | | | | | |
| Current Payment Due | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Corporate Adv. Tran. Desc. | | | | | | | |
| Corporate Adv. Payee Code | | | | | | | |
| Corporate Adv. Tran. Reason | | | | | | | |
| Effective Date | 12/31/2014 | 12/23/2014 | 12/05/2014 | 11/04/2014 | 10/03/2014 | 10/01/2014 | 09/05/2014 |
| Nonrecoverable Corp. Adv Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Prior Due Date | | | | | | | |
| Credit Card Description 1 | | | | | | | |
| Credit Card Description 2 | | | | | | | |

## Previous Loan History - All Transactions
### 300 - CENTRAL LOAN ADMINISTRATION & REPORTING

**Loan Number:** 4770947259                                                    **Borrower Name:** ROWE-BRYAN,INES

| Transaction Date | 08/06/2014 | 07/03/2014 | 07/01/2014 | 06/05/2014 | 05/16/2014 | 05/05/2014 | 04/04/2014 |
|---|---|---|---|---|---|---|---|
| Sequence Number | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Segment Number | | | | | | | |
| Due Date | 08/01/2014 | 07/01/2014 | 06/01/2014 | 06/01/2014 | 05/01/2014 | 05/01/2014 | 04/01/2014 |
| Transaction Type/Code | 1  73 | 1  73 | 1  60 | 1  73 | 3  13 | 1  73 | 1  73 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Transaction Amount | $1,700.81 | $1,700.81 | $14.85 | $1,700.81 | ($4,428.68) | $1,700.81 | $1,700.81 |
| Principal Paid Amt. | $313.62 | $312.06 | $0.00 | $310.51 | $0.00 | $308.96 | $307.42 |
| Principal Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Interest Paid | $630.67 | $632.23 | $0.00 | $633.78 | $0.00 | $635.33 | $636.87 |
| Escrow Paid | $756.52 | $756.52 | $14.85 | $756.52 | ($4,428.68) | $756.52 | $756.52 |
| Escrow Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| A&H Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Restricted Escrow Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Replacement Reserve Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Code | | | | | | | |
| Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Description | | | | | | | |
| Misc. Paid Reason Code | | | | | | | |
| Miscellaneous Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Description | | | | | | | |
| HUD Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Mort Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3rd Party Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Esc. or Corp. Adv. Disb. Payee | | | | | | | |
| Payee Description | | | | | | | |
| Check Number | | | | | | | |
| Current Payment Due | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Corporate Adv. Tran. Desc. | | | | | | | |
| Corporate Adv. Payee Code | | | | | | | |
| Corporate Adv. Tran. Reason | | | | | | | |
| Effective Date | 08/06/2014 | 07/03/2014 | 07/01/2014 | 06/05/2014 | 05/16/2014 | 05/03/2014 | 04/04/2014 |
| Nonrecoverable Corp. Adv Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Prior Due Date | | | | | | | |
| Credit Card Description 1 | | | | | | | |
| Credit Card Description 2 | | | | | | | |

## Previous Loan History - All Transactions
### 300 - CENTRAL LOAN ADMINISTRATION & REPORTING

Loan Number: 4770947259     Borrower Name: ROWE-BRYAN,INES

| Transaction Date | 04/01/2014 | 03/06/2014 | 02/06/2014 | 01/06/2014 |
|---|---|---|---|---|
| Sequence Number | 1 | 1 | 1 | 1 |
| Segment Number | | | | |
| Due Date | 03/01/2014 | 03/01/2014 | 02/01/2014 | 01/01/2014 |
| Transaction Type/Code | 1  60 | 1  73 | 1  73 | 1  73 |
| Hi Type | 1 | 1 | 1 | 1 |
| Transaction Amount | $14 30 | $1,700.81 | $1,700.81 | $1,700.81 |
| Principal Paid Amt. | $0.00 | $305.89 | $304.37 | $302.86 |
| Principal Balance | $0.00 | $0.00 | $0.00 | $0.00 |
| Interest Paid | $0.00 | $638.40 | $639.92 | $641.43 |
| Escrow Paid | $14.30 | $756.52 | $756.52 | $756.52 |
| Escrow Balance | $0.00 | $0.00 | $0.00 | $0.00 |
| A&H Insurance | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Insurance | $0.00 | $0.00 | $0.00 | $0.00 |
| Restricted Escrow Amt. | $0.00 | $0.00 | $0.00 | $0.00 |
| Replacement Reserve Amt. | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Code | | | | |
| Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Description | | | | |
| Misc. Paid Reason Code | | | | |
| Miscellaneous Paid | $0 00 | $0.00 | $0 00 | $0.00 |
| Suspense Amount | $0 00 | $0.00 | $0.00 | $0.00 |
| Suspense Balance | $0 00 | $0.00 | $0.00 | $0.00 |
| Suspense Description | | | | |
| HUD Amount | $0 00 | $0.00 | $0 00 | $0.00 |
| HUD Fee Amount | $0 00 | $0.00 | $0 00 | $0.00 |
| Mort Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 |
| 3rd Party Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 |
| Esc. or Corp. Adv. Disb. Payee | | | | |
| Payee Description | | | | |
| Check Number | | | | |
| Current Payment Due | $0.00 | $0.00 | $0.00 | $0.00 |
| Corporate Adv. Tran. Desc. | | | | |
| Corporate Adv. Payee Code | | | | |
| Corporate Adv. Tran. Reason | | | | |
| Effective Date | 04/01/2014 | 03/06/2014 | 02/06/2014 | 01/04/2014 |
| Nonrecoverable Corp. Adv Amt. | $0 00 | $0.00 | $0.00 | $0 00 |
| Prior Due Date | | | | |
| Credit Card Description 1 | | | | |
| Credit Card Description 2 | | | | |

# EXHIBIT H

002000360738                                                                    07/19/2002

# LOAN SERVICING APPLICATION DISCLOSURE

Thank you for applying for a mortgage loan. This disclosure will provide you with information about the servicing of mortgage loans. We want you to know that our current business practice is to retain all servicing within the CitiGroup family. CitiMortgage, Inc. (CMI) is the servicing affiliate for Citibank, N.A., Citibank (New York State), Citibank (Nevada) N.A., and Citibank, Federal Savings Bank as well as the servicer of its own new or refinanced mortgage loans. In the past we have assigned, sold or transferred the servicing of mortgage loans we originated to other servicers. For all the loans that we make in the 12-month period after your loan is funded, we estimate that the chances we will transfer the servicing of those loans to a servicer other than CitiMortgage, Inc., or any one of its affiliates, are between 0 to 25%. This is our best estimate and is not binding, as business conditions or other circumstances may affect our future transferring decisions.

## TRANSFER PRACTICES AND REQUIREMENTS

We are providing this disclosure to you because RESPA gives you certain rights relating to the servicing of your new or refinanced mortgage loan. "Servicing" refers to collecting your principal, interest and escrow account payments. If for some reason your loan servicer changes, there are certain procedures which must be followed. This statement generally explains those procedures.

Since CMI is the servicing affiliate for your originator, (Citibank or CMI), you will be notified at settlement that CitiMortgage, Inc. will be the servicer of your mortgage loan. If for any reason we were to assign, sell or transfer the servicing of your loan to another servicer, we will notify you in writing at least 15 days before the date of the transfer. This written notice will contain the effective date of the transfer of the servicing, and the name, address, and toll-free or collect call telephone numbers of a person or department for both your present servicer and your new servicer to answer your questions about the transfer of servicing. The new loan servicer is also required to send you written notice of the transfer within 15 days after the date of the transfer. In the case of a new or refinanced mortgage loan, a notice of prospective transfer may be provided to you at loan settlement to satisfy these notice requirements. During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

There are exceptional situations in which the law allows a delay in notification to be submitted not more than 30 days after the transfer. These limited circumstances will apply if the servicer of your loan is fired for cause, is in bankruptcy proceedings, or is involved in a conservatorship or receivership initiated by a Federal Agency. If any of these exceptions occur, you will be notified according to the conditions outlined by RESPA.

## IF YOU NEED HELP WITH SERVICING ISSUES

There may be a time when you have an issue with your servicing. If you do, just send a "qualified written request" to your loan servicer. A "qualified written request" is a letter, other than your notation on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request. Your servicer must provide you with a written acknowledgment within 20 business days of receipt of your request. Not later than 60 business days after receiving your request, your servicer must provide you with a written clarification regarding any dispute, and if appropriate, make corrections to your account. During this 60-day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request.

## ACKNOWLEDGMENT OF MORTGAGE LOAN APPLICANT

I/We have read this loan servicing application disclosure form, and understand its contents, as evidenced by my/our signature(s) below.

INES ROWE BRYAN                                    Roger Rowe
_____                    _____

_____                    _____

DATE
_____

MB-1380  Rev.  3/2000    Page 1 of 1
CFI  Version citi 1.0.1.33  05/31/2002

# EXHIBIT I

Cenlar
PO Box 77423
Ewing, NJ 08628

June 27, 2019

RE: Account 4770947259.

It appears that Cenlar is claiming payment for a previously paid in full loan.

In accordance with the Fair Debt Collection Practices Act formally known as and codified under 15 U.S.C. These duties call for a reasonable examination of the consumer dispute by the CRA and the furnisher (see 15 U.S.C. §§ 1681i(a)(1)(A), 1681s-2(b)). As well as 15 USCA §§ 1692(a-p), I am asking for, and you are required to provide me with the following information:

    a) Why do I owe the money?
    b) How this amount has been calculated in a way I can understand.
    c) Copies of the papers where I agreed to pay what the furnisher is saying I owe.
    d) (if applicable) a copy of the judgment.
    e) The name of the original creditor.

In addition to the information requested above I ask that your agency immediately stop its dissemination of false and defamatory statements. If said actions does not cease immediately, I would be force to commence a lawsuit against Cenlar. Keep in mind that FCRA specifically bars defamation, invasion of privacy, and negligence claims that concern the reporting of information from being brought against any CRA, any user of a consumer report, or any furnisher of reported information, except for false information furnished with malice or willfully intended to injure the consumer (15 U.S.C. § 1681h(e); see, for example, Thornton v. Equifax, Inc., 619 F.2d 700, 703 (8th Cir. 1980)). After being place on notice of said false and defamatory information Cenlar will surely be acting with malice and willful intent to injure if it continues its current activities.

That being said this letter is a Qualified Written Request and your firm must respond accordingly. If appropriate response is not received, I will have no choice but to proceed with all legal remedies available to me.

Sincerely,

Roger Rowe
20 Spruce rd
Amityville, NY 11701

1

# EXHIBIT J



August 2, 2019

Ines Rowe-Bryan
Roger Rowe
20 Spruce Road
Amityville, NY  11701

Re:    Loan number:  4770947259

Dear Borrower:

We are in receipt of your Qualified Written Request and your request to validate the debt related to the above-referenced loan ("the Loan"), which was received in our office on July 19, 2019 and on July 23, 2019.

Your correspondences were regarding our dispute of obligation to the above referenced mortgage loan debt. The correspondences were reviewed, and found to be substantially similar to a previous complaint received on June 28, 2019. A detailed review of the loan origination and closing documents was performed. On July 12, 2019, a response was sent to the address of record along with supporting documentation, which is enclosed. We stand by our prior response and reiterate that Cenlar FSB subservices the Loan on behalf of CitiMortgage, Inc. as previously indicated.

Regarding your concerns with receiving acknowledgement letters: please find the enclosed three acknowledgment letters sent July 10, 2019, July 19, 2019, and July 24, 2019 for the three correspondences we have reviewed.

As stated in the previous response, we show no record of this loan having been paid in full. Please be advised that the Loan has not been satisfied and we consider your letter to be of no legal effect. We will continue to service the Loan in accordance with its terms. We do not waive any of our rights or any of your obligations under the Note. You are responsible to continue making your loan payments.

As a servicer, we are bound by contract with investors to report to the credit repositories. The Fair Credit Reporting Act (FCRA) requires that if we report, it must be accurate. We are therefore unable to waive or revise our present reporting. We would also like to confirm the complaints filed have no bearing on the servicing transfer of the Loan. Transfers of servicing are common in the mortgage banking industry and transpire regardless of the status of the Loans included in the transfer.

Under Federal law, during the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer on or before its due date may not be treated by the new servicer as late, and a late fee may not be imposed on you. After this 60-day period, late fees were assessed on June 17, 2019, and July 17, 2019 of $18.89 each and are due and owing since monthly installments were not received.

---

1

Ines Rowe-Bryan
August 2, 2019
Page 2

As stated in our prior response, if you have evidence or proof of satisfaction of this debt, please forward this to our Research department at:

Attention: Research Department
PO Box 77404
Ewing, NJ 08628
Fax: 609-538-4005

As of today's date, your loan remains due for the June 2019 installment and all subsequent payments. Should you require additional assistance please contact us at 866-677-8807.

Sincerely,

*James Bauer*

James Bauer
Executive Resolution Analyst

Enclosures



August 19, 2019

Ines Rowe-Bryan
Roger Rowe
20 Spruce Road
Amityville, NY  11701

Re:     Loan number:  4770947259

Dear Ines Rowe-Bryan and Roger Rowe:

We are in receipt of your Qualified Written Request and your request to Cease and Desist from any further contact or collection activity related to the above-referenced loan ("the Loan"), which was received in our office on August 7, 2019 and on August 16, 2019.

Your correspondences were regarding our dispute of obligation to the above referenced mortgage loan debt. The correspondences were reviewed, and found to be substantially similar to a previous complaints received on June 28, 2019, July 19, 2019, and July 23, 2019. On July 12, 2019, and August 2, 2019. The enclosed responses were sent to the address of record along with supporting documentation. We stand by our prior responses and reiterate that Cenlar FSB subservices the Loan on behalf of CitiMortgage, Inc. as previously indicated. We have processed your cease and desist request at this time.

Our review of the loan determined that no servicing errors occurred related to the servicing of your loan.   You have a right to receive a copy of the documentation we relied upon to reach this conclusion. For your convenience, the documentation is enclosed. We feel we have addressed in full all of your concerns raised, and we will no longer respond to any similar correspondence received.

As of today's date, your loan remains due for the June 2019 installment and all subsequent payments. Should you require additional assistance, or wish to dispute the outcome of our review, please contact us in writing at: Cenlar, FSB, PO Box 77423, Ewing, New Jersey 08628. Alternatively, we may be reached by telephone at 866-677-8807.

Sincerely,

*James Bauer*

James Bauer
Executive Resolution Analyst

Enclosures

3

# EXHIBIT K

Case 2:19-cv-07278-JMA-AYS Document 19 Filed 03/22/21 Page 141 of 152 PageID #: 694

# U.S. DEPARTMENT OF THE TREASURY

## Resource Center

## Daily Treasury Yield Curve Rates

Get updates to this content.

**XML** These data are also available in XML format by clicking on the XML icon.
**XSD** The schema for the XML is available in XSD format by clicking on the XSD icon.

If you are having trouble viewing the above XML in your browser, click here.

To access interest rate data in the legacy XML format and the corresponding XSD schema, click here.

Select type of Interest Rate Data
Daily Treasury Yield Curve Rates ▼ Go

Select Time Period
2002 ▼ Go

| Date | 1 Mo | 2 Mo | 3 Mo | 6 Mo | 1 Yr | 2 Yr | 3 Yr | 5 Yr | 7 Yr | 10 Yr | 20 Yr | 30 Yr |
|------|------|------|------|------|------|------|------|------|------|-------|-------|-------|
| 01/02/02 | 1.73 | N/A | 1.74 | 1.85 | 2.28 | 3.22 | 3.75 | 4.52 | 4.97 | 5.20 | 5.86 | 5.56 |
| 01/03/02 | 1.73 | N/A | 1.73 | 1.82 | 2.24 | 3.19 | 3.71 | 4.48 | 4.93 | 5.16 | 5.83 | 5.54 |
| 01/04/02 | 1.72 | N/A | 1.72 | 1.82 | 2.25 | 3.19 | 3.72 | 4.50 | 4.97 | 5.18 | 5.87 | 5.57 |
| 01/07/02 | 1.70 | N/A | 1.68 | 1.77 | 2.19 | 3.08 | 3.61 | 4.39 | 4.86 | 5.09 | 5.76 | 5.49 |
| 01/08/02 | 1.70 | N/A | 1.68 | 1.77 | 2.19 | 3.07 | 3.60 | 4.39 | 4.86 | 5.10 | 5.77 | 5.51 |
| 01/09/02 | 1.68 | N/A | 1.68 | 1.77 | 2.17 | 3.03 | 3.57 | 4.38 | 4.86 | 5.10 | 5.76 | 5.51 |
| 01/10/02 | 1.66 | N/A | 1.68 | 1.75 | 2.10 | 2.94 | 3.46 | 4.27 | 4.74 | 5.00 | 5.64 | 5.42 |
| 01/11/02 | 1.62 | N/A | 1.58 | 1.62 | 1.98 | 2.76 | 3.28 | 4.14 | 4.65 | 4.92 | 5.60 | 5.37 |
| 01/14/02 | 1.62 | N/A | 1.58 | 1.63 | 2.00 | 2.79 | 3.32 | 4.15 | 4.64 | 4.91 | 5.62 | 5.38 |
| 01/15/02 | 1.64 | N/A | 1.60 | 1.63 | 1.99 | 2.79 | 3.32 | 4.14 | 4.62 | 4.88 | 5.56 | 5.34 |
| 01/16/02 | 1.62 | N/A | 1.61 | 1.65 | 2.01 | 2.84 | 3.36 | 4.16 | 4.62 | 4.88 | 5.58 | 5.36 |
| 01/17/02 | 1.60 | N/A | 1.64 | 1.73 | 2.09 | 2.96 | 3.49 | 4.28 | 4.73 | 4.98 | 5.65 | 5.41 |
| 01/18/02 | 1.59 | N/A | 1.62 | 1.71 | 2.08 | 2.91 | 3.43 | 4.23 | 4.69 | 4.94 | 5.59 | 5.36 |
| 01/22/02 | 1.67 | N/A | 1.70 | 1.77 | 2.11 | 2.97 | 3.48 | 4.27 | 4.72 | 4.96 | 5.62 | 5.39 |
| 01/23/02 | 1.70 | N/A | 1.71 | 1.78 | 2.15 | 3.07 | 3.58 | 4.36 | 4.81 | 5.05 | 5.73 | 5.48 |
| 01/24/02 | 1.69 | N/A | 1.72 | 1.82 | 2.22 | 3.15 | 3.67 | 4.40 | 4.82 | 5.07 | 5.71 | 5.47 |
| 01/25/02 | 1.69 | N/A | 1.72 | 1.83 | 2.25 | 3.17 | 3.71 | 4.46 | 4.86 | 5.10 | 5.72 | 5.47 |
| 01/28/02 | 1.71 | N/A | 1.76 | 1.88 | 2.28 | 3.19 | 3.73 | 4.48 | 4.88 | 5.12 | 5.72 | 5.47 |
| 01/29/02 | 1.72 | N/A | 1.72 | 1.84 | 2.23 | 3.05 | 3.59 | 4.35 | 4.76 | 5.02 | 5.63 | 5.40 |
| 01/30/02 | 1.70 | N/A | 1.75 | 1.86 | 2.23 | 3.06 | 3.61 | 4.37 | 4.77 | 5.02 | 5.64 | 5.41 |
| 01/31/02 | 1.69 | N/A | 1.76 | 1.89 | 2.29 | 3.16 | 3.70 | 4.42 | 4.82 | 5.07 | 5.68 | 5.44 |
| 02/01/02 | 1.69 | N/A | 1.76 | 1.87 | 2.22 | 3.08 | 3.62 | 4.37 | 4.78 | 5.02 | 5.63 | 5.40 |
| 02/04/02 | 1.70 | N/A | 1.77 | 1.87 | 2.19 | 2.99 | 3.52 | 4.29 | 4.69 | 4.94 | 5.57 | 5.35 |
| 02/05/02 | 1.74 | N/A | 1.76 | 1.86 | 2.22 | 2.99 | 3.53 | 4.29 | 4.66 | 4.92 | 5.56 | 5.35 |
| 02/06/02 | 1.73 | N/A | 1.74 | 1.84 | 2.20 | 2.98 | 3.51 | 4.30 | 4.71 | 4.92 | 5.61 | 5.38 |
| 02/07/02 | 1.71 | N/A | 1.73 | 1.83 | 2.20 | 2.99 | 3.54 | 4.33 | 4.73 | 4.93 | 5.64 | 5.42 |
| 02/08/02 | 1.69 | N/A | 1.73 | 1.82 | 2.16 | 2.95 | 3.48 | 4.28 | 4.69 | 4.90 | 5.60 | 5.39 |
| 02/11/02 | 1.73 | N/A | 1.75 | 1.86 | 2.21 | 2.95 | 3.49 | 4.29 | 4.70 | 4.91 | 5.63 | 5.41 |
| 02/12/02 | 1.76 | N/A | 1.75 | 1.87 | 2.26 | 3.04 | 3.58 | 4.36 | 4.76 | 4.97 | 5.69 | 5.45 |
| 02/13/02 | 1.75 | N/A | 1.76 | 1.87 | 2.27 | 3.09 | 3.63 | 4.40 | 4.80 | 5.01 | 5.72 | 5.47 |
| 02/14/02 | 1.75 | N/A | 1.75 | 1.86 | 2.26 | 3.07 | 3.59 | 4.35 | 4.76 | 4.95 | 5.64 | 5.42 |
| 02/15/02 | 1.72 | N/A | 1.74 | 1.84 | 2.20 | 2.97 | 3.50 | 4.27 | 4.66 | 4.86 | 5.58 | 5.37 |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02/19/02 | 1.73 | N/A | 1.76 | 1.87 | 2.23 | 2.98 | 3.52 | 4.28 | 4.71 | 4.88 | 5.61 | N/A |
| 02/20/02 | 1.75 | N/A | 1.76 | 1.87 | 2.24 | 3.00 | 3.53 | 4.28 | 4.71 | 4.88 | 5.60 | N/A |
| 02/21/02 | 1.76 | N/A | 1.76 | 1.87 | 2.25 | 3.00 | 3.52 | 4.27 | 4.72 | 4.88 | 5.58 | N/A |
| 02/22/02 | 1.75 | N/A | 1.76 | 1.86 | 2.22 | 2.97 | 3.48 | 4.23 | 4.67 | 4.84 | 5.55 | N/A |
| 02/25/02 | 1.76 | N/A | 1.77 | 1.89 | 2.26 | 3.01 | 3.53 | 4.26 | 4.69 | 4.86 | 5.56 | N/A |
| 02/26/02 | 1.78 | N/A | 1.77 | 1.91 | 2.31 | 3.08 | 3.61 | 4.33 | 4.77 | 4.93 | 5.63 | N/A |
| 02/27/02 | 1.77 | N/A | 1.77 | 1.88 | 2.27 | 3.09 | 3.56 | 4.22 | 4.67 | 4.84 | 5.56 | N/A |
| 02/28/02 | 1.76 | N/A | 1.79 | 1.87 | 2.25 | 3.06 | 3.64 | 4.27 | 4.70 | 4.88 | 5.61 | N/A |
| 03/01/02 | 1.78 | N/A | 1.77 | 1.91 | 2.33 | 3.18 | 3.73 | 4.43 | 4.82 | 4.98 | 5.70 | N/A |
| 03/04/02 | 1.77 | N/A | 1.81 | 1.94 | 2.36 | 3.24 | 3.75 | 4.43 | 4.86 | 5.02 | 5.71 | N/A |
| 03/05/02 | 1.78 | N/A | 1.80 | 1.93 | 2.36 | 3.25 | 3.77 | 4.44 | 4.86 | 5.02 | 5.70 | N/A |
| 03/06/02 | 1.77 | N/A | 1.78 | 1.92 | 2.34 | 3.26 | 3.77 | 4.45 | 4.89 | 5.06 | 5.74 | N/A |
| 03/07/02 | 1.77 | N/A | 1.78 | 1.96 | 2.43 | 3.36 | 3.95 | 4.65 | 5.07 | 5.22 | 5.88 | N/A |
| 03/08/02 | 1.77 | N/A | 1.81 | 2.05 | 2.57 | 3.60 | 4.21 | 4.77 | 5.17 | 5.33 | 5.95 | N/A |
| 03/11/02 | 1.80 | N/A | 1.86 | 2.08 | 2.59 | 3.59 | 4.17 | 4.77 | 5.18 | 5.33 | 5.96 | N/A |
| 03/12/02 | 1.82 | N/A | 1.84 | 2.06 | 2.57 | 3.56 | 4.14 | 4.75 | 5.17 | 5.32 | 5.96 | N/A |
| 03/13/02 | 1.80 | N/A | 1.82 | 2.02 | 2.52 | 3.49 | 4.06 | 4.69 | 5.11 | 5.28 | 5.95 | N/A |
| 03/14/02 | 1.79 | N/A | 1.86 | 2.06 | 2.59 | 3.63 | 4.20 | 4.83 | 5.24 | 5.40 | 6.05 | N/A |
| 03/15/02 | 1.79 | N/A | 1.86 | 2.09 | 2.61 | 3.63 | 4.23 | 4.80 | 5.20 | 5.35 | 5.98 | N/A |
| 03/18/02 | 1.77 | N/A | 1.88 | 2.14 | 2.65 | 3.67 | 4.27 | 4.79 | 5.17 | 5.32 | 5.95 | N/A |
| 03/19/02 | 1.81 | N/A | 1.85 | 2.10 | 2.61 | 3.64 | 4.26 | 4.78 | 5.18 | 5.33 | 5.96 | N/A |
| 03/20/02 | 1.79 | N/A | 1.84 | 2.12 | 2.66 | 3.71 | 4.30 | 4.87 | 5.25 | 5.40 | 6.04 | N/A |
| 03/21/02 | 1.78 | N/A | 1.84 | 2.12 | 2.66 | 3.73 | 4.39 | 4.88 | 5.26 | 5.39 | 6.02 | N/A |
| 03/22/02 | 1.78 | N/A | 1.84 | 2.13 | 2.70 | 3.77 | 4.40 | 4.90 | 5.28 | 5.40 | 6.04 | N/A |
| 03/25/02 | 1.78 | N/A | 1.85 | 2.16 | 2.75 | 3.78 | 4.38 | 4.92 | 5.28 | 5.41 | 6.03 | N/A |
| 03/26/02 | 1.82 | N/A | 1.81 | 2.12 | 2.69 | 3.68 | 4.27 | 4.85 | 5.23 | 5.35 | 5.96 | N/A |
| 03/27/02 | 1.77 | N/A | 1.81 | 2.10 | 2.65 | 3.66 | 4.28 | 4.85 | 5.22 | 5.35 | 5.96 | N/A |
| 03/28/02 | 1.76 | N/A | 1.79 | 2.12 | 2.70 | 3.72 | 4.31 | 4.91 | 5.29 | 5.42 | 6.03 | N/A |
| 04/01/02 | 1.79 | N/A | 1.79 | 2.16 | 2.76 | 3.74 | 4.29 | 4.93 | 5.29 | 5.44 | 6.04 | N/A |
| 04/02/02 | 1.79 | N/A | 1.80 | 2.12 | 2.68 | 3.63 | 4.21 | 4.84 | 5.21 | 5.36 | 5.96 | N/A |
| 04/03/02 | 1.77 | N/A | 1.79 | 2.08 | 2.61 | 3.55 | 4.14 | 4.76 | 5.13 | 5.30 | 5.92 | N/A |
| 04/04/02 | 1.77 | N/A | 1.78 | 2.07 | 2.61 | 3.57 | 4.16 | 4.76 | 5.12 | 5.28 | 5.89 | N/A |
| 04/05/02 | 1.76 | N/A | 1.76 | 2.03 | 2.54 | 3.49 | 4.10 | 4.68 | 5.04 | 5.22 | 5.84 | N/A |
| 04/08/02 | 1.76 | N/A | 1.75 | 2.02 | 2.61 | 3.51 | 4.03 | 4.70 | 5.07 | 5.25 | 5.89 | N/A |
| 04/09/02 | 1.73 | N/A | 1.73 | 2.02 | 2.55 | 3.48 | 4.06 | 4.67 | 5.03 | 5.22 | 5.84 | N/A |
| 04/10/02 | 1.72 | N/A | 1.71 | 1.98 | 2.52 | 3.48 | 4.08 | 4.68 | 5.05 | 5.24 | 5.88 | N/A |
| 04/11/02 | 1.72 | N/A | 1.72 | 1.97 | 2.51 | 3.47 | 4.07 | 4.66 | 5.03 | 5.22 | 5.85 | N/A |
| 04/12/02 | 1.71 | N/A | 1.71 | 1.96 | 2.44 | 3.41 | 4.01 | 4.60 | 4.99 | 5.18 | 5.81 | N/A |
| 04/15/02 | 1.71 | N/A | 1.72 | 1.96 | 2.44 | 3.38 | 3.99 | 4.57 | 4.95 | 5.15 | 5.78 | N/A |
| 04/16/02 | 1.71 | N/A | 1.74 | 1.97 | 2.46 | 3.43 | 4.02 | 4.62 | 5.00 | 5.20 | 5.83 | N/A |
| 04/17/02 | 1.71 | N/A | 1.73 | 1.92 | 2.43 | 3.41 | 3.99 | 4.64 | 5.03 | 5.24 | 5.90 | N/A |
| 04/18/02 | 1.70 | N/A | 1.72 | 1.91 | 2.40 | 3.38 | 3.97 | 4.64 | 5.02 | 5.23 | 5.88 | N/A |
| 04/19/02 | 1.69 | N/A | 1.73 | 1.91 | 2.39 | 3.36 | 3.95 | 4.62 | 5.00 | 5.21 | 5.85 | N/A |
| 04/22/02 | 1.67 | N/A | 1.72 | 1.92 | 2.41 | 3.37 | 3.94 | 4.62 | 4.98 | 5.19 | 5.85 | N/A |
| 04/23/02 | 1.68 | N/A | 1.73 | 1.92 | 2.41 | 3.39 | 3.96 | 4.62 | 4.98 | 5.18 | 5.83 | N/A |
| 04/24/02 | 1.67 | N/A | 1.72 | 1.89 | 2.35 | 3.28 | 3.87 | 4.53 | 4.90 | 5.11 | 5.77 | N/A |
| 04/25/02 | 1.68 | N/A | 1.74 | 1.90 | 2.33 | 3.25 | 3.83 | 4.52 | 4.89 | 5.10 | 5.77 | N/A |
| 04/26/02 | 1.68 | N/A | 1.75 | 1.90 | 2.31 | 3.22 | 3.80 | 4.49 | 4.86 | 5.08 | 5.73 | N/A |
| 04/29/02 | 1.73 | N/A | 1.78 | 1.93 | 2.36 | 3.26 | 3.85 | 4.55 | 4.91 | 5.13 | 5.77 | N/A |

Page 2

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 04/30/02 | 1.77 | N/A | 1.77 | 1.91 | 2.35 | 3.24 | 3.83 | 4.53 | 4.88 | 5.11 | 5.74 | N/A |
| 05/01/02 | 1.76 | N/A | 1.77 | 1.91 | 2.33 | 3.21 | 3.78 | 4.49 | 4.86 | 5.08 | 5.71 | N/A |
| 05/02/02 | 1.74 | N/A | 1.77 | 1.92 | 2.35 | 3.25 | 3.83 | 4.54 | 4.91 | 5.13 | 5.74 | N/A |
| 05/03/02 | 1.73 | N/A | 1.76 | 1.88 | 2.28 | 3.17 | 3.75 | 4.48 | 4.85 | 5.08 | 5.70 | N/A |
| 05/06/02 | 1.74 | N/A | 1.78 | 1.90 | 2.30 | 3.19 | 3.77 | 4.50 | 4.87 | 5.10 | 5.71 | N/A |
| 05/07/02 | 1.77 | N/A | 1.76 | 1.86 | 2.27 | 3.14 | 3.67 | 4.43 | 4.85 | 5.09 | 5.71 | N/A |
| 05/08/02 | 1.76 | N/A | 1.76 | 1.91 | 2.37 | 3.32 | 3.87 | 4.58 | 4.99 | 5.24 | 5.84 | N/A |
| 05/09/02 | 1.74 | N/A | 1.77 | 1.90 | 2.33 | 3.27 | 3.80 | 4.53 | 4.96 | 5.20 | 5.80 | N/A |
| 05/10/02 | 1.73 | N/A | 1.77 | 1.88 | 2.27 | 3.19 | 3.71 | 4.46 | 4.89 | 5.15 | 5.77 | N/A |
| 05/13/02 | 1.77 | N/A | 1.79 | 1.92 | 2.36 | 3.28 | 3.81 | 4.54 | 4.98 | 5.23 | 5.86 | N/A |
| 05/14/02 | 1.78 | N/A | 1.78 | 1.95 | 2.43 | 3.40 | 3.94 | 4.64 | 5.06 | 5.32 | 5.94 | N/A |
| 05/15/02 | 1.76 | N/A | 1.76 | 1.93 | 2.41 | 3.37 | 3.90 | 4.59 | 5.02 | 5.28 | 5.92 | N/A |
| 05/16/02 | 1.74 | N/A | 1.75 | 1.90 | 2.35 | 3.28 | 3.81 | 4.52 | 4.94 | 5.20 | 5.87 | N/A |
| 05/17/02 | 1.73 | N/A | 1.76 | 1.95 | 2.45 | 3.41 | 3.95 | 4.60 | 5.01 | 5.27 | 5.94 | N/A |
| 05/20/02 | 1.73 | N/A | 1.77 | 1.94 | 2.41 | 3.33 | 3.87 | 4.53 | 4.94 | 5.21 | 5.88 | N/A |
| 05/21/02 | 1.73 | N/A | 1.75 | 1.92 | 2.38 | 3.28 | 3.82 | 4.49 | 4.90 | 5.18 | 5.84 | N/A |
| 05/22/02 | 1.72 | N/A | 1.74 | 1.90 | 2.34 | 3.23 | 3.75 | 4.43 | 4.85 | 5.13 | 5.80 | N/A |
| 05/23/02 | 1.73 | N/A | 1.74 | 1.91 | 2.38 | 3.28 | 3.80 | 4.46 | 4.87 | 5.16 | 5.83 | N/A |
| 05/24/02 | 1.71 | N/A | 1.74 | 1.91 | 2.37 | 3.28 | 3.81 | 4.47 | 4.88 | 5.16 | 5.83 | N/A |
| 05/28/02 | 1.73 | N/A | 1.77 | 1.94 | 2.41 | 3.30 | 3.82 | 4.46 | 4.87 | 5.16 | 5.83 | N/A |
| 05/29/02 | 1.73 | N/A | 1.75 | 1.91 | 2.35 | 3.24 | 3.76 | 4.41 | 4.81 | 5.11 | 5.79 | N/A |
| 05/30/02 | 1.73 | N/A | 1.75 | 1.90 | 2.31 | 3.17 | 3.69 | 4.36 | 4.74 | 5.06 | 5.74 | N/A |
| 05/31/02 | 1.72 | N/A | 1.74 | 1.91 | 2.34 | 3.22 | 3.73 | 4.37 | 4.77 | 5.08 | 5.77 | N/A |
| 06/03/02 | 1.72 | N/A | 1.77 | 1.93 | 2.35 | 3.19 | 3.72 | 4.36 | 4.75 | 5.06 | 5.76 | N/A |
| 06/04/02 | 1.73 | N/A | 1.76 | 1.90 | 2.31 | 3.13 | 3.64 | 4.31 | 4.72 | 5.04 | 5.75 | N/A |
| 06/05/02 | 1.75 | N/A | 1.75 | 1.90 | 2.33 | 3.16 | 3.68 | 4.35 | 4.76 | 5.08 | 5.79 | N/A |
| 06/06/02 | 1.74 | N/A | 1.74 | 1.88 | 2.30 | 3.13 | 3.63 | 4.30 | 4.72 | 5.04 | 5.75 | N/A |
| 06/07/02 | 1.74 | N/A | 1.74 | 1.89 | 2.31 | 3.16 | 3.67 | 4.36 | 4.78 | 5.10 | 5.81 | N/A |
| 06/10/02 | 1.75 | N/A | 1.76 | 1.89 | 2.30 | 3.15 | 3.66 | 4.34 | 4.75 | 5.07 | 5.76 | N/A |
| 06/11/02 | 1.75 | N/A | 1.75 | 1.87 | 2.27 | 3.09 | 3.59 | 4.29 | 4.69 | 5.02 | 5.71 | N/A |
| 06/12/02 | 1.74 | N/A | 1.74 | 1.85 | 2.25 | 3.05 | 3.55 | 4.24 | 4.65 | 4.98 | 5.68 | N/A |
| 06/13/02 | 1.71 | N/A | 1.72 | 1.82 | 2.20 | 3.00 | 3.50 | 4.20 | 4.61 | 4.94 | 5.65 | N/A |
| 06/14/02 | 1.71 | N/A | 1.71 | 1.80 | 2.16 | 2.92 | 3.40 | 4.10 | 4.51 | 4.83 | 5.54 | N/A |
| 06/17/02 | 1.70 | N/A | 1.74 | 1.85 | 2.20 | 2.96 | 3.44 | 4.14 | 4.57 | 4.89 | 5.61 | N/A |
| 06/18/02 | 1.70 | N/A | 1.73 | 1.82 | 2.16 | 2.93 | 3.41 | 4.13 | 4.55 | 4.88 | 5.60 | N/A |
| 06/19/02 | 1.69 | N/A | 1.71 | 1.77 | 2.07 | 2.81 | 3.28 | 4.01 | 4.43 | 4.76 | 5.51 | N/A |
| 06/20/02 | 1.68 | N/A | 1.73 | 1.81 | 2.12 | 2.93 | 3.40 | 4.11 | 4.53 | 4.85 | 5.59 | N/A |
| 06/21/02 | 1.68 | N/A | 1.72 | 1.79 | 2.09 | 2.88 | 3.35 | 4.06 | 4.47 | 4.79 | 5.54 | N/A |
| 06/24/02 | 1.66 | N/A | 1.74 | 1.82 | 2.15 | 2.93 | 3.41 | 4.13 | 4.55 | 4.87 | 5.60 | N/A |
| 06/25/02 | 1.74 | N/A | 1.73 | 1.81 | 2.16 | 2.92 | 3.41 | 4.13 | 4.55 | 4.88 | 5.62 | N/A |
| 06/26/02 | 1.72 | N/A | 1.70 | 1.74 | 2.05 | 2.77 | 3.25 | 3.99 | 4.40 | 4.75 | 5.53 | N/A |
| 06/27/02 | 1.70 | N/A | 1.70 | 1.76 | 2.09 | 2.85 | 3.34 | 4.08 | 4.51 | 4.84 | 5.63 | N/A |
| 06/28/02 | 1.69 | N/A | 1.70 | 1.75 | 2.06 | 2.90 | 3.37 | 4.09 | 4.52 | 4.86 | 5.65 | N/A |
| 07/01/02 | 1.71 | N/A | 1.72 | 1.78 | 2.09 | 2.88 | 3.35 | 4.08 | 4.54 | 4.85 | 5.64 | N/A |
| 07/02/02 | 1.72 | N/A | 1.72 | 1.76 | 2.04 | 2.78 | 3.24 | 3.99 | 4.45 | 4.77 | 5.56 | N/A |
| 07/03/02 | 1.71 | N/A | 1.72 | 1.74 | 2.02 | 2.78 | 3.25 | 4.00 | 4.47 | 4.78 | 5.57 | N/A |
| 07/05/02 | 1.71 | N/A | 1.72 | 1.77 | 2.08 | 2.90 | 3.38 | 4.13 | 4.60 | 4.90 | 5.67 | N/A |
| 07/08/02 | 1.73 | N/A | 1.73 | 1.78 | 2.08 | 2.84 | 3.32 | 4.07 | 4.53 | 4.84 | 5.63 | N/A |
| 07/09/02 | 1.72 | N/A | 1.72 | 1.75 | 2.01 | 2.74 | 3.21 | 3.98 | 4.47 | 4.78 | 5.57 | N/A |

| 07/10/02 | 1.73 | N/A | 1.72 | 1.74 | 1.97 | 2.61 | 3.07 | 3.85 | 4.33 | 4.66 | 5.48 | N/A |
| 07/11/02 | 1.72 | N/A | 1.72 | 1.74 | 1.95 | 2.61 | 3.07 | 3.86 | 4.33 | 4.66 | 5.47 | N/A |
| 07/12/02 | 1.71 | N/A | 1.71 | 1.74 | 1.97 | 2.56 | 3.02 | 3.82 | 4.30 | 4.63 | 5.45 | N/A |
| 07/15/02 | 1.71 | N/A | 1.72 | 1.73 | 1.97 | 2.55 | 3.04 | 3.85 | 4.33 | 4.66 | 5.49 | N/A |
| 07/16/02 | 1.74 | N/A | 1.72 | 1.75 | 1.99 | 2.66 | 3.14 | 3.93 | 4.42 | 4.75 | 5.58 | N/A |
| 07/17/02 | 1.72 | N/A | 1.72 | 1.75 | 1.99 | 2.63 | 3.10 | 3.89 | 4.36 | 4.71 | 5.54 | N/A |
| 07/18/02 | 1.72 | N/A | 1.72 | 1.74 | 1.95 | 2.55 | 3.01 | 3.82 | 4.29 | 4.66 | 5.52 | N/A |
| 07/19/02 | 1.71 | N/A | 1.71 | 1.73 | 1.94 | 2.48 | 2.94 | 3.76 | 4.25 | 4.61 | 5.47 | N/A |
| 07/22/02 | 1.71 | N/A | 1.70 | 1.73 | 1.94 | 2.40 | 2.83 | 3.65 | 4.15 | 4.51 | 5.40 | N/A |
| 07/23/02 | 1.73 | N/A | 1.70 | 1.71 | 1.91 | 2.34 | 2.76 | 3.59 | 4.11 | 4.47 | 5.39 | N/A |
| 07/24/02 | 1.70 | N/A | 1.69 | 1.70 | 1.89 | 2.38 | 2.81 | 3.60 | 4.13 | 4.49 | 5.42 | N/A |
| 07/25/02 | 1.71 | N/A | 1.70 | 1.69 | 1.86 | 2.28 | 2.69 | 3.51 | 4.05 | 4.43 | 5.39 | N/A |
| 07/26/02 | 1.71 | N/A | 1.69 | 1.68 | 1.80 | 2.20 | 2.62 | 3.46 | 4.03 | 4.43 | 5.42 | N/A |
| 07/29/02 | 1.73 | N/A | 1.72 | 1.74 | 1.93 | 2.41 | 2.84 | 3.68 | 4.22 | 4.62 | 5.54 | N/A |
| 07/30/02 | 1.73 | N/A | 1.72 | 1.75 | 1.96 | 2.44 | 2.88 | 3.71 | 4.24 | 4.65 | 5.54 | N/A |
| 07/31/02 | 1.73 | N/A | 1.71 | 1.70 | 1.80 | 2.23 | 2.67 | 3.53 | 4.09 | 4.51 | 5.41 | N/A |
| 08/01/02 | 1.70 | N/A | 1.68 | 1.66 | 1.75 | 2.15 | 2.60 | 3.46 | 4.04 | 4.47 | 5.41 | N/A |
| 08/02/02 | 1.66 | N/A | 1.63 | 1.59 | 1.65 | 1.99 | 2.43 | 3.27 | 3.88 | 4.33 | 5.29 | N/A |
| 08/05/02 | 1.68 | N/A | 1.64 | 1.59 | 1.68 | 1.93 | 2.34 | 3.21 | 3.83 | 4.29 | 5.26 | N/A |
| 08/06/02 | 1.71 | N/A | 1.65 | 1.60 | 1.69 | 2.11 | 2.53 | 3.36 | 3.98 | 4.42 | 5.35 | N/A |
| 08/07/02 | 1.66 | N/A | 1.59 | 1.55 | 1.64 | 1.98 | 2.40 | 3.24 | 3.89 | 4.35 | 5.31 | N/A |
| 08/08/02 | 1.67 | N/A | 1.62 | 1.59 | 1.68 | 2.10 | 2.52 | 3.35 | 3.96 | 4.40 | 5.34 | N/A |
| 08/09/02 | 1.66 | N/A | 1.62 | 1.59 | 1.68 | 2.10 | 2.49 | 3.28 | 3.85 | 4.27 | 5.22 | N/A |
| 08/12/02 | 1.68 | N/A | 1.68 | 1.64 | 1.75 | 2.10 | 2.48 | 3.24 | 3.81 | 4.22 | 5.16 | N/A |
| 08/13/02 | 1.68 | N/A | 1.63 | 1.58 | 1.70 | 2.00 | 2.37 | 3.15 | 3.72 | 4.12 | 5.09 | N/A |
| 08/14/02 | 1.68 | N/A | 1.64 | 1.61 | 1.77 | 2.12 | 2.47 | 3.19 | 3.74 | 4.06 | 5.03 | N/A |
| 08/15/02 | 1.66 | N/A | 1.62 | 1.63 | 1.78 | 2.22 | 2.58 | 3.28 | 3.85 | 4.17 | 5.12 | N/A |
| 08/16/02 | 1.66 | N/A | 1.62 | 1.65 | 1.82 | 2.28 | 2.67 | 3.41 | 3.99 | 4.32 | 5.24 | N/A |
| 08/19/02 | 1.67 | N/A | 1.67 | 1.68 | 1.86 | 2.25 | 2.64 | 3.40 | 3.97 | 4.29 | 5.21 | N/A |
| 08/20/02 | 1.69 | N/A | 1.62 | 1.64 | 1.77 | 2.12 | 2.50 | 3.25 | 3.84 | 4.17 | 5.12 | N/A |
| 08/21/02 | 1.68 | N/A | 1.63 | 1.65 | 1.77 | 2.12 | 2.51 | 3.28 | 3.85 | 4.20 | 5.14 | N/A |
| 08/22/02 | 1.66 | N/A | 1.65 | 1.68 | 1.85 | 2.22 | 2.61 | 3.37 | 3.95 | 4.30 | 5.22 | N/A |
| 08/23/02 | 1.66 | N/A | 1.65 | 1.67 | 1.80 | 2.19 | 2.56 | 3.31 | 3.88 | 4.25 | 5.15 | N/A |
| 08/26/02 | 1.68 | N/A | 1.68 | 1.69 | 1.79 | 2.19 | 2.56 | 3.29 | 3.85 | 4.22 | 5.12 | N/A |
| 08/27/02 | 1.69 | N/A | 1.68 | 1.71 | 1.89 | 2.26 | 2.63 | 3.37 | 3.93 | 4.29 | 5.20 | N/A |
| 08/28/02 | 1.71 | N/A | 1.67 | 1.69 | 1.85 | 2.23 | 2.59 | 3.31 | 3.86 | 4.22 | 5.14 | N/A |
| 08/29/02 | 1.71 | N/A | 1.68 | 1.66 | 1.75 | 2.14 | 2.51 | 3.24 | 3.80 | 4.16 | 5.08 | N/A |
| 08/30/02 | 1.70 | N/A | 1.69 | 1.67 | 1.74 | 2.14 | 2.50 | 3.22 | 3.78 | 4.14 | 5.06 | N/A |
| 09/03/02 | 1.69 | N/A | 1.64 | 1.62 | 1.71 | 2.01 | 2.36 | 3.04 | 3.63 | 3.98 | 4.92 | N/A |
| 09/04/02 | 1.69 | N/A | 1.63 | 1.60 | 1.69 | 2.02 | 2.35 | 3.02 | 3.58 | 3.96 | 4.91 | N/A |
| 09/05/02 | 1.66 | N/A | 1.61 | 1.58 | 1.66 | 1.95 | 2.29 | 2.95 | 3.52 | 3.91 | 4.88 | N/A |
| 09/06/02 | 1.68 | N/A | 1.66 | 1.66 | 1.75 | 2.08 | 2.42 | 3.10 | 3.66 | 4.05 | 5.00 | N/A |
| 09/09/02 | 1.70 | N/A | 1.69 | 1.69 | 1.77 | 2.13 | 2.46 | 3.11 | 3.66 | 4.05 | 4.99 | N/A |
| 09/10/02 | 1.72 | N/A | 1.68 | 1.68 | 1.77 | 2.12 | 2.44 | 3.08 | 3.63 | 4.00 | 4.96 | N/A |
| 09/11/02 | 1.71 | N/A | 1.69 | 1.69 | 1.84 | 2.18 | 2.51 | 3.15 | 3.71 | 4.07 | 5.01 | N/A |
| 09/12/02 | 1.70 | N/A | 1.69 | 1.68 | 1.79 | 2.12 | 2.44 | 3.07 | 3.61 | 3.98 | 4.93 | N/A |
| 09/13/02 | 1.68 | N/A | 1.69 | 1.68 | 1.74 | 2.07 | 2.38 | 3.00 | 3.55 | 3.92 | 4.87 | N/A |
| 09/16/02 | 1.69 | N/A | 1.71 | 1.69 | 1.78 | 2.07 | 2.38 | 3.00 | 3.53 | 3.90 | 4.85 | N/A |
| 09/17/02 | 1.70 | N/A | 1.70 | 1.69 | 1.77 | 2.06 | 2.36 | 2.97 | 3.49 | 3.87 | 4.83 | N/A |

| 09/18/02 | 1.70 | N/A | 1.68 | 1.68 | 1.75 | 2.04 | 2.35 | 2.96 | 3.50 | 3.86 | 4.85 | N/A |
| 09/19/02 | 1.64 | N/A | 1.65 | 1.64 | 1.68 | 1.93 | 2.24 | 2.87 | 3.42 | 3.79 | 4.80 | N/A |
| 09/20/02 | 1.64 | N/A | 1.65 | 1.64 | 1.68 | 1.94 | 2.25 | 2.86 | 3.42 | 3.79 | 4.82 | N/A |
| 09/23/02 | 1.65 | N/A | 1.65 | 1.62 | 1.68 | 1.93 | 2.21 | 2.76 | 3.32 | 3.70 | 4.75 | N/A |
| 09/24/02 | 1.68 | N/A | 1.65 | 1.61 | 1.68 | 1.93 | 2.20 | 2.76 | 3.31 | 3.69 | 4.74 | N/A |
| 09/25/02 | 1.67 | N/A | 1.66 | 1.63 | 1.73 | 2.00 | 2.28 | 2.83 | 3.40 | 3.77 | 4.83 | N/A |
| 09/26/02 | 1.66 | N/A | 1.65 | 1.61 | 1.68 | 1.97 | 2.27 | 2.86 | 3.42 | 3.79 | 4.85 | N/A |
| 09/27/02 | 1.63 | N/A | 1.63 | 1.57 | 1.62 | 1.82 | 2.13 | 2.74 | 3.31 | 3.69 | 4.78 | N/A |
| 09/30/02 | 1.60 | N/A | 1.57 | 1.51 | 1.53 | 1.72 | 2.02 | 2.63 | 3.25 | 3.63 | 4.75 | N/A |
| 10/01/02 | 1.63 | N/A | 1.59 | 1.54 | 1.56 | 1.80 | 2.11 | 2.75 | 3.34 | 3.72 | 4.81 | N/A |
| 10/02/02 | 1.61 | N/A | 1.58 | 1.52 | 1.53 | 1.75 | 2.07 | 2.74 | 3.33 | 3.71 | 4.78 | N/A |
| 10/03/02 | 1.58 | N/A | 1.57 | 1.51 | 1.53 | 1.75 | 2.08 | 2.74 | 3.33 | 3.70 | 4.79 | N/A |
| 10/04/02 | 1.60 | N/A | 1.61 | 1.56 | 1.58 | 1.78 | 2.09 | 2.73 | 3.31 | 3.69 | 4.77 | N/A |
| 10/07/02 | 1.61 | N/A | 1.63 | 1.57 | 1.59 | 1.77 | 2.07 | 2.67 | 3.27 | 3.64 | 4.75 | N/A |
| 10/08/02 | 1.62 | N/A | 1.61 | 1.57 | 1.60 | 1.80 | 2.10 | 2.70 | 3.29 | 3.65 | 4.75 | N/A |
| 10/09/02 | 1.60 | N/A | 1.57 | 1.53 | 1.55 | 1.72 | 2.03 | 2.65 | 3.24 | 3.61 | 4.72 | N/A |
| 10/10/02 | 1.59 | N/A | 1.58 | 1.56 | 1.60 | 1.75 | 2.06 | 2.68 | 3.30 | 3.68 | 4.78 | N/A |
| 10/11/02 | 1.59 | N/A | 1.58 | 1.58 | 1.63 | 1.85 | 2.17 | 2.83 | 3.45 | 3.83 | 4.91 | N/A |
| 10/15/02 | 1.66 | N/A | 1.68 | 1.69 | 1.79 | 2.08 | 2.42 | 3.11 | 3.70 | 4.07 | 5.09 | N/A |
| 10/16/02 | 1.66 | N/A | 1.66 | 1.67 | 1.74 | 2.02 | 2.38 | 3.11 | 3.68 | 4.06 | 5.10 | N/A |
| 10/17/02 | 1.66 | N/A | 1.67 | 1.69 | 1.78 | 2.10 | 2.47 | 3.20 | 3.77 | 4.16 | 5.18 | N/A |
| 10/18/02 | 1.66 | N/A | 1.67 | 1.68 | 1.77 | 2.09 | 2.45 | 3.17 | 3.73 | 4.14 | 5.17 | N/A |
| 10/21/02 | 1.69 | N/A | 1.71 | 1.72 | 1.86 | 2.23 | 2.58 | 3.28 | 3.83 | 4.24 | 5.23 | N/A |
| 10/22/02 | 1.71 | N/A | 1.69 | 1.71 | 1.85 | 2.21 | 2.57 | 3.29 | 3.85 | 4.27 | 5.26 | N/A |
| 10/23/02 | 1.68 | N/A | 1.68 | 1.69 | 1.84 | 2.20 | 2.55 | 3.26 | 3.82 | 4.26 | 5.26 | N/A |
| 10/24/02 | 1.64 | N/A | 1.65 | 1.66 | 1.73 | 2.09 | 2.45 | 3.18 | 3.74 | 4.16 | 5.20 | N/A |
| 10/25/02 | 1.63 | N/A | 1.64 | 1.62 | 1.69 | 1.98 | 2.35 | 3.10 | 3.69 | 4.12 | 5.16 | N/A |
| 10/28/02 | 1.59 | N/A | 1.59 | 1.55 | 1.60 | 1.88 | 2.26 | 3.03 | 3.65 | 4.10 | 5.15 | N/A |
| 10/29/02 | 1.58 | N/A | 1.51 | 1.46 | 1.53 | 1.79 | 2.15 | 2.89 | 3.51 | 3.97 | 5.05 | N/A |
| 10/30/02 | 1.56 | N/A | 1.51 | 1.46 | 1.49 | 1.74 | 2.12 | 2.87 | 3.53 | 3.99 | 5.07 | N/A |
| 10/31/02 | 1.48 | N/A | 1.44 | 1.43 | 1.46 | 1.68 | 2.05 | 2.81 | 3.45 | 3.93 | 5.03 | N/A |
| 11/01/02 | 1.44 | N/A | 1.43 | 1.42 | 1.46 | 1.76 | 2.14 | 2.92 | 3.54 | 4.01 | 5.07 | N/A |
| 11/04/02 | 1.44 | N/A | 1.43 | 1.43 | 1.48 | 1.79 | 2.19 | 3.00 | 3.59 | 4.07 | 5.11 | N/A |
| 11/05/02 | 1.44 | N/A | 1.42 | 1.41 | 1.48 | 1.82 | 2.21 | 3.00 | 3.62 | 4.10 | 5.13 | N/A |
| 11/06/02 | 1.24 | N/A | 1.23 | 1.26 | 1.46 | 1.87 | 2.26 | 3.01 | 3.62 | 4.09 | 5.12 | N/A |
| 11/07/02 | 1.20 | N/A | 1.22 | 1.27 | 1.46 | 1.86 | 2.20 | 2.86 | 3.46 | 3.88 | 4.94 | N/A |
| 11/08/02 | 1.19 | N/A | 1.22 | 1.26 | 1.43 | 1.87 | 2.21 | 2.87 | 3.44 | 3.85 | 4.87 | N/A |
| 11/12/02 | 1.20 | N/A | 1.22 | 1.26 | 1.44 | 1.79 | 2.14 | 2.83 | 3.42 | 3.84 | 4.87 | N/A |
| 11/13/02 | 1.22 | N/A | 1.21 | 1.25 | 1.42 | 1.76 | 2.11 | 2.82 | 3.40 | 3.84 | 4.86 | N/A |
| 11/14/02 | 1.22 | N/A | 1.22 | 1.27 | 1.48 | 1.89 | 2.28 | 3.01 | 3.60 | 4.03 | 5.01 | N/A |
| 11/15/02 | 1.23 | N/A | 1.22 | 1.28 | 1.49 | 1.91 | 2.30 | 3.05 | 3.63 | 4.05 | 5.02 | N/A |
| 11/18/02 | 1.24 | N/A | 1.23 | 1.27 | 1.48 | 1.91 | 2.30 | 3.04 | 3.61 | 4.02 | 4.98 | N/A |
| 11/19/02 | 1.23 | N/A | 1.21 | 1.27 | 1.49 | 1.91 | 2.30 | 3.02 | 3.58 | 3.99 | 4.94 | N/A |
| 11/20/02 | 1.22 | N/A | 1.22 | 1.27 | 1.50 | 1.98 | 2.39 | 3.13 | 3.72 | 4.08 | 5.04 | N/A |
| 11/21/02 | 1.23 | N/A | 1.22 | 1.27 | 1.52 | 2.05 | 2.46 | 3.20 | 3.80 | 4.14 | 5.10 | N/A |
| 11/22/02 | 1.23 | N/A | 1.23 | 1.29 | 1.54 | 2.10 | 2.52 | 3.26 | 3.84 | 4.18 | 5.12 | N/A |
| 11/25/02 | 1.24 | N/A | 1.24 | 1.30 | 1.56 | 2.09 | 2.51 | 3.26 | 3.85 | 4.19 | 5.13 | N/A |
| 11/26/02 | 1.27 | N/A | 1.22 | 1.28 | 1.51 | 1.97 | 2.38 | 3.14 | 3.71 | 4.08 | 5.03 | N/A |
| 11/27/02 | 1.28 | N/A | 1.23 | 1.30 | 1.58 | 2.13 | 2.58 | 3.34 | 3.93 | 4.26 | 5.23 | N/A |

**Page 5**

| 11/29/02 | 1.25 | N/A | 1.22 | 1.30 | 1.56 | 2.08 | 2.51 | 3.28 | 3.88 | 4.22 | 5.18 | N/A |
| 12/02/02 | 1.26 | N/A | 1.24 | 1.31 | 1.56 | 2.07 | 2.51 | 3.31 | 3.89 | 4.22 | 5.17 | N/A |
| 12/03/02 | 1.23 | N/A | 1.23 | 1.31 | 1.57 | 2.08 | 2.53 | 3.33 | 3.92 | 4.24 | 5.18 | N/A |
| 12/04/02 | 1.23 | N/A | 1.22 | 1.29 | 1.53 | 2.02 | 2.45 | 3.25 | 3.85 | 4.18 | 5.14 | N/A |
| 12/05/02 | 1.23 | N/A | 1.22 | 1.28 | 1.50 | 1.97 | 2.39 | 3.19 | 3.79 | 4.13 | 5.09 | N/A |
| 12/06/02 | 1.23 | N/A | 1.21 | 1.27 | 1.47 | 1.89 | 2.31 | 3.13 | 3.73 | 4.09 | 5.08 | N/A |
| 12/09/02 | 1.24 | N/A | 1.23 | 1.28 | 1.48 | 1.88 | 2.28 | 3.08 | 3.68 | 4.06 | 5.05 | N/A |
| 12/10/02 | 1.23 | N/A | 1.21 | 1.27 | 1.48 | 1.90 | 2.30 | 3.07 | 3.67 | 4.06 | 5.02 | N/A |
| 12/11/02 | 1.23 | N/A | 1.21 | 1.26 | 1.46 | 1.85 | 2.24 | 3.02 | 3.61 | 4.01 | 4.97 | N/A |
| 12/12/02 | 1.20 | N/A | 1.21 | 1.27 | 1.46 | 1.85 | 2.25 | 3.03 | 3.62 | 4.01 | 4.97 | N/A |
| 12/13/02 | 1.20 | N/A | 1.21 | 1.28 | 1.47 | 1.87 | 2.27 | 3.08 | 3.68 | 4.07 | 5.03 | N/A |
| 12/16/02 | 1.20 | N/A | 1.23 | 1.29 | 1.50 | 1.94 | 2.35 | 3.14 | 3.75 | 4.15 | 5.11 | N/A |
| 12/17/02 | 1.22 | N/A | 1.22 | 1.27 | 1.48 | 1.89 | 2.30 | 3.11 | 3.71 | 4.13 | 5.11 | N/A |
| 12/18/02 | 1.20 | N/A | 1.21 | 1.26 | 1.43 | 1.81 | 2.21 | 3.03 | 3.63 | 4.06 | 5.05 | N/A |
| 12/19/02 | 1.19 | N/A | 1.21 | 1.24 | 1.37 | 1.74 | 2.13 | 2.91 | 3.52 | 3.96 | 4.97 | N/A |
| 12/20/02 | 1.18 | N/A | 1.21 | 1.25 | 1.39 | 1.76 | 2.15 | 2.93 | 3.53 | 3.97 | 4.97 | N/A |
| 12/23/02 | 1.15 | N/A | 1.19 | 1.26 | 1.43 | 1.79 | 2.17 | 2.95 | 3.54 | 3.98 | 4.98 | N/A |
| 12/24/02 | 1.17 | N/A | 1.19 | 1.26 | 1.42 | 1.73 | 2.10 | 2.92 | 3.51 | 3.95 | 4.93 | N/A |
| 12/26/02 | 1.14 | N/A | 1.18 | 1.27 | 1.41 | 1.70 | 2.08 | 2.89 | 3.47 | 3.93 | 4.91 | N/A |
| 12/27/02 | 1.07 | N/A | 1.16 | 1.23 | 1.36 | 1.60 | 1.97 | 2.79 | 3.36 | 3.83 | 4.83 | N/A |
| 12/30/02 | 1.15 | N/A | 1.22 | 1.24 | 1.36 | 1.61 | 1.95 | 2.76 | 3.34 | 3.82 | 4.82 | N/A |
| 12/31/02 | 1.20 | N/A | 1.22 | 1.23 | 1.32 | 1.61 | 1.99 | 2.78 | 3.36 | 3.83 | 4.83 | N/A |

* The 2-month constant maturity series begins on October 16, 2018, with the first auction of the 8-week Treasury bill.

30-year Treasury constant maturity series was discontinued on February 18, 2002 and reintroduced on February 9, 2006. From February 18, 2002 to February 8, 2006, Treasury published alternatives to a 30-year rate. See Long-Term Average Rate for more information.

Treasury discontinued the 20-year constant maturity series at the end of calendar year 1986 and reinstated that series on October 1, 1993. As a result, there are no 20-year rates available for the time period January 1, 1987 through September 30, 1993.

**Treasury Yield Curve Rates:** These rates are commonly referred to as "Constant Maturity Treasury" rates, or CMTs. Yields are interpolated by the Treasury from the daily yield curve. This curve, which relates the yield on a security to its time to maturity is based on the closing market bid yields on actively traded Treasury securities in the over-the-counter market. These market yields are calculated from composites of indicative, bid-side market quotations (not actual transactions) obtained by the Federal Reserve Bank of New York at or near 3:30 PM each trading day. The CMT yield values are read from the yield curve at fixed maturities, currently 1, 2, 3 and 6 months and 1, 2, 3, 5, 7, 10, 20, and 30 years. This method provides a yield for a 10 year maturity, for example, even if no outstanding security has exactly 10 years remaining to maturity.

**Treasury Yield Curve Methodology:** The Treasury yield curve is estimated daily using a cubic spline model. Inputs to the model are primarily indicative bid-side yields for on-the-run Treasury securities. Treasury reserves the option to make changes to the yield curve as appropriate and in its sole discretion. See our Treasury Yield Curve Methodology page for details.

**Negative Yields and Nominal Constant Maturity Treasury Series Rates (CMTs):** At times, financial market conditions, in conjunction with extraordinary low levels of interest rates, may result in negative yields for some Treasury securities trading in the secondary market. Negative yields for Treasury securities most often reflect highly technical factors in Treasury markets related to the cash and repurchase agreement markets, and are at times unrelated to the time value of money.

At such times, Treasury will restrict the use of negative input yields for securities used in deriving interest rates for the Treasury nominal Constant Maturity Treasury series (CMTs). Any CMT input points with negative yields will be reset to zero percent prior to use as inputs in the CMT derivation. This decision is consistent with Treasury not accepting negative yields in Treasury nominal security auctions.

In addition, given that CMTs are used in many statutorily and regulatory determined loan and credit programs as well as for setting interest rates on non-marketable government securities, establishing a floor of zero more accurately reflects borrowing costs related to various programs.

For more information regarding these statistics contact the Office of Debt Management by email at debt.management@do.treas.gov.

For other Public Debt information contact (202) 504-3550

# EXHIBIT L

# TRUTH IN LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Applicant: INES ROWE-BRYAN
Roger Rowe
20 SPRUCE RD
AMITYVILLE, NY 11701-1019

Lender: Citibank, N.A.
399 Park Avenue
New York, NY 10043

Loan No: 002000360738

Property: 20 Spruce Rd
Amityville, NY 11701-1019

Type of Loan: Conventional
Date: November 7, 2002
Disclosure Type: Final

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 6.247 % | $ 187,004.34 | $ 152,942.16 | $ 339,946.50 |

REPAYMENT: See Payment Schedule below.

PAYMENT SCHEDULE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE |
|---|---|---|---|---|---|
| 359 | 944.29 | Monthly beginning 01/01/2003 | | | |
| 1 | 946.39 | Monthly beginning 12/01/2032 | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

DEMAND FEATURE: [X] This loan does not have a Demand Feature.   [ ] This loan has a Demand Feature as follows:

REQUIRED DEPOSIT: [ ] The annual percentage rate does not take into account your required deposit.

VARIABLE RATE FEATURE: [ ] This Loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier.

SECURITY: You are giving a security interest in the property located at    20 Spruce Rd
Amityville, NY 11701-1019

ASSUMPTION: Someone buying this property [X] cannot assume the remainder of the mortgage on the original terms.
[ ] may assume, subject to conditions, the remainder of the mortgage on the original terms.

NON-FILING INSURANCE: $ N/A

PROPERTY INSURANCE: [X] Homeowner's insurance, or fire and extended coverage, is a required condition of this loan. Also, if the property securing this loan is located in a flood hazard area, you will be required to obtain flood insurance. Borrower may purchase this insurance from any insurance company acceptable to lender.

LATE CHARGES: If a payment is more than 15 days late, you will be charged a late charge of    2.000% of the payment.

PREPAYMENT: If you pay off your loan early, you
[ ] may [X] will not   have to pay a prepayment penalty.
[ ] may [X] will not   have to pay a minimum finance charge.
[ ] may [X] will not   be entitled to a refund of part of the finance charge.

See your contract documents for any additional information about non-payment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

| | |
|---|---|
| _____ BORROWER/DATE | _Ines Rowe Bryan_  11-7-02 INES ROWE-BRYAN   BORROWER/DATE |
| _____ BORROWER/DATE | _Roger R_  11-7-02 Roger Rowe   BORROWER/DATE |

159003 - 07/22/2002 [002000360738]
LASER PRO. Reg. U.S. Pat. & T.M.Off., Version citu 2.0.0.74 10/28/2002 (c) 2002 Concentrex Incorporated. All Rights Reserved.

# EXHIBIT M

# GOOD FAITH ESTIMATE OF SETTLEMENT COSTS

Applicant: INES ROWE-BRYAN
Roger Rowe
20 SPRUCE RD
AMITYVILLE, NY 11701-1019

Lender: Citibank, N.A.
399 Park Avenue
New York, NY 10043

Application No: 002000360738

Property: 20 Spruce Rd
Amityville, NY 11701-1019

Loan Type: Conventional
Date: 07/19/2002
Mortgage Amount: $ 157,500.00
Estimated Interest Rate: 6.250%

The information provided below reflects estimates of the charges which you are likely to incur at settlement of your loan. The fees listed are estimates - the actual charges may be more or less. Your transaction may not involve a fee for every item listed.
The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 or HUD-1A Settlement Statement which you will be receiving at settlement. The HUD-1 or HUD-1A Settlement Statement will show you the actual cost for items paid at settlement. Items marked "(p.o.c.)" were or will be paid outside the closing, they are shown here for information purposes and are not included in the totals.

| Description of Settlement Charges | BUYER | LENDER |
|---|---|---|
| 0801. Loan Origination Fee ( 1.000%) | 1,575.00 | |
| 0802. Total Discount ( 0.625%) | 984.38 | |
| 0802A. Standard Discount Points (S984.38) | | |
| 0808. Processing Fee | 250.00 | |
| 0809. Tax Service Fee | 89.00 | |
| 0810. Freight Fee | 27.00 | |
| 0811. Document Preparation Fee | 100.00 | |
| 0812. Application Fee (p.o.c. 400.00) | | |
| 0814. Flood Certification | 22.00 | |
| 0901. Interim Interest 30 days @ $26.97 per day | 809.10 | |
| 1004. County Property Tax Escrow 2 payments @ $540.28 per payment | 1,080.56 | |
| 1015. Aggregate Escrow Account Adjustment | -270.14 | |
| 1107. Attorney Fees | 625.00 | |
| 1108. Title Insurance | 799.83 | |
| 1111. Title Insurance Endorsements | 75.00 | |
| 1120. Municipal Search | 200.00 | |
| 1201. Recording Fees | 150.00 | |
| 1202. City/County Tax/Stamps | 847.50 | |
| 1205. MECA Filing Fees | 125.00 | |
| 1211. Lender Paid Mortgage Tax | | 282.50 |
| Total | $ 7,489.23 | $ 282.50 |

GFECX - 03/01/2002  (002000360738)

Page 1

# EXHIBIT N

# citimortgage ℠

07/19/2002

Ines Rowe-Bryan, Roger Rowe
20 Spruce Rd
Amityville, NY 11701-1019

RE:  Loan Number: 002000360738
     Anticipated Settlement Date:  September 16, 2002

Dear Ines Rowe-Bryan and  Roger Rowe:

Per our discussion, in addition to the information provided on your Good Faith Estimate of Settlement Costs and the Truth-In-Lending Statement, the following is an estimate of your required Cash To Close and Estimated Payment:

| ESTIMATED CASH TO CLOSE - REFINANCE | |
|---|---|
| Purchase (if applicable) | $ 0.00 |
| Alterations, improv, repairs | 0.00 |
| Land (Acquired Separately) | |
| Refi (incl. debts to be paid off) | 44,506.00 |
| Estimated Total Fees | 7,889.23 |
| PMI, MIP, Funding Fee | 0.00 |
| Discount (if Borr will  pay) | 0.00 |
| Total Costs | 52,395.23 |
| Subordinate/other financing | 0.00 |
| Seller paid closing costs | 0.00 |
| Other credits | 0.00 |
| Loan Amt (excl. PMI & MIP) | 157,500.00 |
| PMI, MIP & Fund. Fee Fin. | 0.00 |
| Total Loan Amt | 157,500.00 |
| Cash from/to Borr | $ -105,104.77 |

| ESTIMATED PAYMENT | |
|---|---|
| P&I Payment | $ 969.75 |
| Taxes | 540.28 |
| Hazard Ins. | 0.00 |
| Mortgage Ins. | 0.00 |
| Assn. Dues | 0.00 |
| Other Fee | 0.00 |
| Total Payment | $ 1,510.03 |

Thank you for your interest in Citibank. If we can be of further assistance, please call John Morrison at 1-866-559-9735.

MB2504  1/2000
Version citi 1.0.1.33  05/31/2002