UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

Roger Rowe

          Plaintiff(s)                                      2:19-cv-07278-JMA-AYS

       -v-

Cenlar FSB

          Defendant(s)

_____

**MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANT'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(6)**

1

I. BACKGROUND                                                                1

II. LEGAL STANDARD                                                           2

III. TILA DISCLOSURE VIOLATION                                               4

    1.   RIGHT OF RESCISSION AS TO CERTAIN TRANSACTION        4

    2.   RIGHTS TO RESCISSION                                  8

    3.   NOTICE OF MORTGAGE TRANSFER                           9

    4.   REQUIREMENTS FOR CERTAIN MORTGAGE                     10

    5.   PARTIAL INTEREST                                      11

IV. DAMAGES RELATED TO TILA VIOLATIONS                                       17

V. NEW YORK BANKING LAW HIGH-COST LOAN VIOLATION                             23

VI. FDCPA VIOLATION                                                          24

CONLUSION                                                                    25

## Cases

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)    2

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)    2

Bleich v. Revenue Maximization Grp., Inc., 233 F. Supp. 2d 496, 498 (E.D.N.Y. 2002)    25

Cf. Astoria Fed. Sav. & Loan Assn. v. Solimino, 501 U. S. 104, 108–109 (1991)    9

Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007)    3

Flemister v. Citibank, 2012 WL 6675273, (C.D. Cal. Dec. 20, 2012)    17

Fowler v. U.S. Bank,  F. Supp. 2d, 2014 WL 850527, (S.D. Tex. Mar. 4, 2014)    17

Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)    3

Jesinoski et ux. v. Countrywide Home Loans Inc., et al., 574 U.S. 259 2015    9

Lynn M. Lopucki, The Death of Liability, 106 Yale L.J. 1, 23-30 (1996)    5

Miguel v. Country Funding Corp., 309 F.3d 1161, 1163 (9th Cir. 2002)    8

Net Com Data Corp. of New York v. Brunetti, 2010 N.Y. Misc. LEXIS 1436 (Sup. Ct. Nassau Co.
   2/4/10) (Driscoll, J.)    3

Olivera v. Am. Home Mortg. Servicing, Inc., 689 F. Supp. 2d 1218 (N.D. Cal. 2010)    11

Pezhman v. City of New York, 29 A.D.3d 164, 168, 812 N.Y.S.2d 14, 18 (1st Dep't 2006)    3

Polanco v. NCO Portfolio Mgmt., Inc., 132 F. Supp. 3d 567, 578 (S.D.N.Y. 2015)    24

Schuh v. Druckman & Sinel, L.L.P., 751 F. Supp. 2d, 542, 548 (S.D.N.Y. 2010)    24

Turner v. Beneficial Corp., 242 F.3d 1023, 1028 (11th Cir. 2001) (en banc)    4

Washington v. James, 782 F.2d 1134, 1138 (2nd Cir. 1986)    3

Williams v. Public Fin. Corp., 598 F.2d 349, 356 (5th Cir. 1979)    4

3

Williams v. Public Finance Corp. 598 F.2d 349 (1979)                        17

**Statutes**

§ 1602(h)                                                                  7, 18

§ 1635                                                                   passim

§ 1635(a)                                                                   1, 4

§ 1639                                                                   passim

§ 1640(a)(2)(iv)                                                            23

§ 1640(e)                                                                    4

§ 1641                                                                   passim

§ 1641(a)                                                                  7, 10

§ 1641(g)(1)                                                                1, 9

§1635(b)                                                                     9

12 U.S. § 504                                                                2

12 U.S. § 505                                                                2

15 U.S.C. § 1601(a)                                                          3

15 U.S.C. § 1602(f)                                                         18

15 U.S.C. § 1602(g)                                                         15

15 U.S.C. § 1611                                                             3

15 U.S.C. § 1635                                                         passim

15 U.S.C. § 1639(a)(1)(B)                                                   18

15 U.S.C. § 1640                                                           4, 8

15 U.S.C. § 1640(a)(2)(A)(iv)    4

15 U.S.C. § 1692    2

15 U.S.C. § 1692e    25

15 USC Chapter 41 Subchapter I Part B    5

1692e(10)    25

1692e(14)    25

1692e(2)(A)    25

Belini v. Wash. Mut. Bank, 412 F.3d 17, 25 (1st Cir. 2005)    6

Fed R Civ 12(b) (6)    2

Fed. R. Civ. P. 8(a)    2

NY GBS § 349    2

UCC § 3-301    15

**Regulations**

12 C.F.R. § 1026    1

12 CFR Part § 1026.2(a)(25)(6)    16

12 CFR Part 1026    7, 8, 10, 11

12 CFR Part 1026.2    8

12 CFR Part 1026.39    7, 10, 11

12 U.S.C. § 2605(i)(2)    15

12 U.S.C. § 2605(i)(3)    15

# I. BACKGROUND

Plaintiff Roger Rowe filed a three-count Complaint (Doc. No. 2) against defendant, Cenlar FSB in this District Court. Plaintiff allege that he executed a real estate mortgage with nonparty Citibank, on November 7, 2002, and that Federal National Mortgage Administration (FNMA) was the current owner of the first mortgage lien and that as of April 1, 2019 Cenlar FSB was assigned, transferred or sold security interest in Plaintiff's mortgage(s). Plaintiff further alleges that Cenlar failed to provide adequate disclosures and the disclosures provided are generally misleading, incomplete, inaccurate and ambiguous. Plaintiff claimed that Defendant failed to provide a notice of mortgage transfer as required by the Truth in Lending Act, 15 U.S.C. (TILA).

As a new creditor, § 1641(g)(1) requires Defendant to provide a disclosure of the sale of a mortgage loan " not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer,"

The Plaintiff also alleges that Defendant failed to rescind the loan pursuant to 15 U.S.C. § 1635. Under 15 U.S.C. § 1635 the Plaintiff has the right to rescind a consumer credit transaction and void the Defendant's security interest in the Plaintiff's home, and to recover statutory damages, reasonable attorney's fees and costs by reason of the Defendant's violations of the Act and Regulation Z, 12 C.F.R. § 1026 [formerly § 226] (hereinafter called "Regulation Z"). § 1635(a) requires a creditor to disclose clearly and conspicuously an obligor's right to rescind. Defendant

1

failed to provide the request disclosures and or the disclosures provided were incomplete, inaccurate and ambiguous.

Plaintiff also seeks damages for Defendant's violations of 12 U.S. § 504 and 12 U.S. § 505, FDCPA 15 U.S.C. § 1692, NY GBS § 349. Plaintiff alleges that the Defendant made statements when they claimed $107,239.00 was owed to various credit reporting agencies (CRA). Plaintiff's own payment history shows a principal balance of zero as of March 30, 2019 see (Exhibit G). Plaintiff also alleges that Defendant inaccurately stated the character, status and amount of the debt obligation. The actions noted were willful, deceptive and a violation of NY GBS § 349.

Defendants also violated BNK 6-l when the lender exceeded one or more of the thresholds as defined in paragraph (g) of this subdivision. Defendants violated BNK 6-l(m) Financing of points and fees.   In making a high-cost home loan, a lender shall not, directly or indirectly, finance any points and fees as defined in paragraph (f) of subdivision one of this section, in an amount that exceeds three percent of the principal amount of the loan. As well as BNK 6-l(q)  No points and fees when a lender refinances its own high-cost home loan with a new high-cost home loan. A lender shall not charge a borrower points and fees in connection with a high-cost home loan if the proceeds of the high-cost home loan are used to refinance an existing high-cost home loan held by the lender or an affiliate of the lender.

## II. LEGAL STANDARD

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Fed R Civ 12(b) (6) motion to dismiss does not need detailed factual allegations, a

plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.". Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss.". When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

When a plaintiff is pro se, the Court must apply a liberal reading to the complaint and hold pro se litigants to a less stringent pleading standard. Pezhman v. City of New York, 29 A.D.3d 164, 168, 812 N.Y.S.2d 14, 18 (1st Dep't 2006) (a "pro se complaint should be construed liberally in favor of the pleader). Net Com Data Corp. of New York v. Brunetti, 2010 N.Y. Misc. LEXIS 1436 (Sup. Ct. Nassau Co. 2/4/10) (Driscoll, J.) (answer stating that defendant "does not waive any right to challenge jurisdiction . . . at any point during this proceeding even upon final determination" is "precisely the sort of drafting leniency the law permits for a pro se litigant"). Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007) ( pro se pleadings "however in artfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers").

3

Washington v. James, 782 F.2d 1134, 1138 (2nd Cir. 1986) (complaint not to be dismissed unless "frivolous on its face or wholly unsubstantial").

### III. TILA DISCLOSURE VIOLATION

TILA is a consumer protection statute that seeks to "avoid the uninformed use of credit" through the "meaningful disclosure of credit terms," thereby enabling consumers to become informed about the cost of credit. 15 U.S.C. § 1601(a). Besides imposing criminal liability, TILA creates a private cause of action for actual and statutory damages for certain disclosure violations. 15 U.S.C. § 1611 (criminal liability), 1640(a)1 (civil liability).

TILA's remedial scheme was designed to deter and prevent disclosure violations by creditors. See Williams v. Public Fin. Corp., 598 F.2d 349, 356 (5th Cir. 1979). Rather than relying solely on government enforcement efforts, Congress deliberately provided consumers that right to privately enforce TILA's disclosure requirements. Thus, for example, TILA entitles consumers to collect statutory damage awards, even when they suffered no actual damages. Under TILA a consumer has more protection against deceptive creditors than is provided by non statutory law.

**1.     RIGHT OF RESCISSION AS TO CERTAIN TRANSACTION**

TILA's extended right of rescission also encourages consumers to police lender conduct. Rescission is uniquely important and central to TILA's deterrent scheme because it serves a function not replicated by other TILA remedies.

Recovery of actual damages under TILA generally requires proof of detrimental reliance, a difficult showing for consumers to establish see, e.g., Turner v. Beneficial Corp., 242 F.3d 1023, 1028 (11th Cir. 2001) (en banc). Although statutory damages are available without proof of reliance, TILA caps statutory damages awards to only $4,000 for credit transactions secured by a

4

consumer's home—a relatively low amount that limits consumer incentives to enforce TILA. See 15 U.S.C. § 1640(a)(2)(A)(iv).

TILA requires damage claims be brought within 3 year of a creditor's violation of any provisions under § 1635 and subsection (f) or (g) of § 1641.  TILA also allows an obligor to bring an action before the end of the 3 years period for violations of section § 1639., see § 1640(e). In this instance Defendant violated § 1635(a) when they failed to provide notice of the April 1, 2019 credit transaction. As such Plaintiff brought this action when Defendant failed to return money and property following Plaintiffs October 21, 2019 notice of rescission.

§ 1635(a) gives an obligor the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or delivery of the information and rescission forms required under 15 USC Chapter 41 Subchapter I Part B. The Defendant failed to clearly and conspicuously disclose Plaintiff's right to rescission which extends Plaintiff right to rescind until Defendant provide clear and conspicuous disclosures or the 3 year statute expiration.

Defendant obtained interest in Plaintiff's loan on April 1, 2019 as evidenced in the joint Notice of Servicing Transfer (see Exhibit F). The Defendant failed to provide Plaintiff with notice of his right to rescission. The Plaintiff failure to provide rescission forms extended Plaintiff's right to rescind until Defendant provides appropriate disclosure forms or 3 years after consummation. As such Plaintiff right to rescission is not time barred. The Defendant obtained the debt obligation on April 1, 2019 which gives Plaintiff until April 1, 2022 to commence an action against Defendant.   Rescission is particularly important as a means for deterring TILA violations. Because many mortgage loans are sold on the secondary market or securitized, effectively absolving the loans from consumer damages claims. TILA attempts to inform the consumer of a

5

transfer of their mortgage loan or any security interest in said loan. TILA is structured to hold Assignees liable for original creditor's violations that are apparent on the face of loan disclosure statements.

Indeed, one of the very purposes of securitization is to insulate parties from responsibility for the liability producing conduct of the original lender by taking advantage of assignee liability limitations. See, e.g., Lynn M. Lopucki, The Death of Liability, 106 Yale L.J. 1, 23-30 (1996). Congress specified, however, that consumers may exercise TILA rescission rights "against any assignee," 15 U.S.C. § 1641(c), thus ensuring that rescission would remain as a deterrent even if a mortgage loan is sold or securitized. The potential for rescission also gives the secondary mortgage market strong incentives to police loan originators to prevent threshold TILA violations.

The accessibility of TILA's rescission remedy to consumers was enacted to make rescission a private, out of court process and give the consumer the power to incentivize due diligence on the part of lenders. See, e.g., Belini v. Wash. Mut. Bank, 412 F.3d 17, 25 (1st Cir. 2005). In the course of this consumer credit transaction,  Defendant's CitiMortgage and Cenlar committed among other violations; violated 15 U.S.C. § 1635(a) and Regulation Z § 1026.23(b) [formerly § 226.23(b)] by failing to deliver to the Plaintiff two copies of a notice of the right to rescind that:

a. Identified the transaction.

b. Clearly and conspicuously disclosed the security interest in the Plaintiff's home.

c. Clearly and conspicuously disclosed the Plaintiff's right to rescind the transaction.

d. Clearly and conspicuously disclosed the effects of rescission.

e. Clearly and conspicuously disclosed the date the rescission period expired.

The Truth in Lending Act provides rescission as a remedy for obligors subject to lender loan disclosure violations. Under 15 U.S.C. §1635(a), the right is available until midnight of the third day after closing or after delivery of the lending documents and rescission forms required under TILA; at the latest, the right expires after three years. Unlike common law rescission, where tender is required, the obligor need only notify the creditor of rescission and it is automatically effectuated under TILA.

The Defendant's contention that Plaintiff's TILA claim is somehow "Time - Barred" is a misrepresentation of the law. On April 1, 2019 the Defendant was part of a credit sale relative to Plaintiffs mortgage. § 1602(h) refers to credit sales as any sale in which the seller is a creditor. The term includes any contract in the form of a bailment or lease if the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the property and services involved and it is agreed that the bailee or lessee will become, or for no other or a nominal consideration has the option to become, the owner of the property upon full compliance with his obligations under the contract.

As the new creditor the Defendant was required to provide various disclosures to the person who is obligated on the consumer credit transaction see § 1639(a)(1)(B). The disclosure were to have conspicuous type size noting the following. "If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan.".

The disclosure provided by Defendant's as Exhibit 1 is immaterial due to the fact that said credit transaction is not related to the subject matter of this litigation. Defendants claim that the Notice of Servicing Transfer somehow provided sufficient notice is patently false. It is apparent

7

on the face of the Notice of Servicing Transfer that it fails to meet the requirements of a Notice of Mortgage Transfer pursuant to § 1641(g) and 12 CFR Part 1026.39. Under § 1641(a) a violation apparent on the face of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter.

In this instance it is apparent on the face of the Notice of Servicing Transfer that the notice is incomplete, inaccurate and ambiguous. The notice fails to provide information related to § 1641(g)(D) the location of the place where transfer of ownership of the debt is recorded. The disclosure does not include § 1639(a)(1)(B) language stating "If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan.".

## 2.    RIGHTS TO RESCISSION

Under TILA, a borrower has two remedies for a loan disclosure violation: civil damages and rescission. 15 U.S.C. § 1640, 1635. With regard to rescission, TILA provides that borrowers have until midnight of the third business day following the consummation of a loan transaction to rescind the transaction. 15 U.S.C. § 1635(a). A borrower's right of rescission is extended from three days to three years if the lender (1) fails to provide notice of the borrower's right of rescission or (2) fails to make a material disclosure. See Miguel v. Country Funding Corp., 309 F.3d 1161, 1163 (9th Cir. 2002) (citing 15 U.S.C. § 1635(f) and 12 C.F.R. § 226.23(a)(3)). Here, Plaintiffs seek rescission and damages for the Defendants failure to provide adequate disclosure.

(Regulation Z) 12 CFR Part 1026.2 Definitions and Rules of Construction 2(a)(11)(2)-

8

Rescission rules**.** For purposes of rescission under §§ 1026.15 and 1026.23, a consumer includes any natural person whose ownership interest in his or her principal dwelling is subject to the risk of loss. Thus, if a security interest is taken in A's ownership interest in a house and that house is A's principal dwelling, A is a consumer for purposes of rescission, even if A is not liable, either primarily or secondarily, on the underlying consumer credit transaction. An ownership interest does not include, for example, leaseholds or inchoate rights, such as dower.

In Jesinoski et ux. v. Countrywide Home Loans Inc., et al., 574 U.S. 259 2015 Justice Scalia opinion noted that "Nothing in our jurisprudence, and no tool of statutory interpretation, requires that a congressional Act must be construed as implementing its closest common-law analogue. Cf. Astoria Fed. Sav. & Loan Assn. v. Solimino, 501 U. S. 104, 108–109 (1991). The clear import of §1635(a) is that a borrower need only provide written notice to a lender in order to exercise his right to rescind. To the extent §1635(b) alters the traditional process for unwinding such a unilaterally rescinded transaction, this is simply a case in which statutory law modifies common-law practice."

As such Plaintiff is only required to provide written notice of rescission to exercise his right to rescind. The Defendants failure to return money given and reflect the termination of any security interest in Plaintiff's home is a direct violation of  §1635(b). As such the Plaintiff is entitled to rescission and statutory damages as proscribed under TILA.

## 3.     NOTICE OF MORTGAGE TRANSFER

Defendant's contention that their March 15, 2019 Notice of Service Transfer satisfied their notice provisions required under 15 U.S.C. § 1641(g)(1) is incorrect. The provisions under 15 U.S.C. § 1641(g)(1) relates to the transfer or assignment of mortgage not the transfer of servicing.

9

15 U.S.C. § 1641(g)(1) states that a creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including-

(A) the identity, address, telephone number of the new creditor;

(B) the date of transfer;

(C) how to reach an agent or party having authority to act on behalf of the new creditor;

(D) the location of the place where transfer of ownership of the debt is recorded; and

(E) any other relevant information regarding the new creditor.

Even if the court were to consider the notice of service transfer as a combined disclosure permitted under 12 CFR Part 1026.39(b)(1), said disclosure would be inadequate, incomplete, misleading and ambiguous therefore the Notice of Service Transfer is inadequate and would be in violation of 15 U.S.C. § 1641(a). The statute requires a violation to be apparent on the face of a disclosure statement includes but not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter. Here the Notice of Servicing Transfer is incomplete and therefore a violation of 15 U.S.C. § 1641(a).

**4.    REQUIREMENTS FOR CERTAIN MORTGAGE**

Based on 15 U.S.C. § 1641 and (Regulation Z) 12 CFR Part 1026 the Defendant failed to provide adequate notice of mortgage transfer with disclosure relative to a rescission notice which requires a general statement "Your home is the security for the new transaction". Pursuant to 15 U.S.C. § 1639(a)(1)(B), a creditor shall provide a statement in conspicuous type size that they can lose their home. Furthermore Cenlar failed to provide information as to where transfer of ownership of the debt to the covered person is or may be recorded in public records, or,

10

alternatively, that the transfer of ownership has not been recorded in public records at the time the disclosure is provided.

(Regulation Z) 12 CFR Part 1026.39 requires disclosures of mortgage transfer when a covered person obtains ownership of an existing mortgage. Paragraph 39(a)(1) of 12 CFR Part 1026.39 defines a covered person as Covered persons.-The disclosure requirements of this section apply to any "covered person" that becomes the legal owner of an existing mortgage loan, whether through a purchase, or other transfer or assignment, regardless of whether the person also meets the definition of a "creditor" in Regulation Z. The fact that a person purchases or acquires mortgage loans and provides the disclosures under this section does not by itself make that person a "creditor" as defined in the regulation.

## 5.    PARTIAL INTEREST

Transfer or assignment to servicer other than for administrative convenience. A loan servicer could be liable under TILA where borrowers sufficiently alleged that servicer was also owner of obligation at issue under 15 USCS § 1641(f)(1). Olivera v. Am. Home Mortg. Servicing, Inc., 689 F. Supp. 2d 1218 (N.D. Cal. 2010).

In this instance Cenlar became a covered person when they obtained partial interest in Plaintiff's loan. Paragraph 39(a)(2)(i) of 12 CFR Part 1026.39 defines a covered person to include a person whom obtained Partial interest. A person may become a covered person by acquiring a partial interest in the mortgage loan. If the original creditor transfers a partial interest in the loan to one or more persons, all such transferees are covered persons under this section.

Pursuant to Paragraph 39(c)(3)(1) of 12 CFR Part 1026.39 the acquisition of partial interest of a loan and the change in agent or party authorized to receive notice and resolve issues

11

concerning the consumer's payments is a covered person and requires the new creditor to provide a disclosure. Paragraph 39(c)(3)(1) Acquisition of partial interests states. This exception applies if the covered person acquires only a partial interest in the loan, and there is no change in the agent or person authorized to receive notice of the right to rescind and resolve issues concerning the consumer's payments. If, as a result of the transfer of a partial interest in the loan, a different agent or party is authorized to receive notice of the right to rescind and resolve issues concerning the consumer's payments, the disclosures under this section must be provided.

The examples indicated under Paragraph 39(c)(3)(2)(iii) confirms Cenlars status as a covered person which required Cenlar to provide a mortgage transfer disclosure as well as the requisite notice of rescission with a conspicuous type size indicating "You could lose your home". The example given in Paragraph 39(c)(3)(2)(iii) provides examples that state "The original creditor transfers fifty percent of its interest in the loan to covered person A and also authorizes party X as its agent to receive notice of the right to rescind and resolve issues concerning the consumer's payments on the loan. Since there is a change in an agent or party authorized to receive notice of the right to rescind and resolve issues concerning the consumer's payments, person A is required to provide the disclosures under this section. Person A then transfers all of its interest in the loan to covered person B. Person B is not required to provide the disclosures under this section if the original creditor retains a partial interest in the loan and party X retains the same authority.

Based on the information provided in Defendant July 12, 2019 response to Plaintiff's Qualified Written Request (QWR) Defendant appears to suggest that multiple covered persons have interest in Plaintiff's loan.  Paragraph 39(c)(1)(2) Transfer of partial interests indicates that "A covered person that subsequently transfers a partial interest in the loan is required to provide

12

the disclosures required by this section if the covered person retains a partial interest in the loan on the 30th calendar day after it acquired the loan, unless an exception in § 1026.39(c) applies. For example, if covered person A acquires the loan on March 15 and subsequently transfers fifty percent of its interest in the loan to covered person B on April 1, person A is required to provide the disclosures under this section if it retains a partial interest in the loan on April 14. Person B in this example must also provide the disclosures required under this section unless an exception in § 1026.39(c) applies. Either person A or person B could provide the disclosure on behalf of both of them if the disclosure satisfies the timing and content requirements applicable to each of them. In this example, a single disclosure for both covered persons would have to be provided on or before April 14 to satisfy the timing requirements for person A's acquisition of the loan on March 15. See comment 39(b)(4)-1 regarding a single disclosure for multiple transfers". Based on Defendant's statement, CitiMortgage is a covered person and is also required to provide a notice of mortgage transfer and relevant disclosures.

It is clear from the face of the "Notice of Servicing Transfer" that the original creditor nor the new creditor disclosed where transfer of ownership of the debt to a covered person (new servicer) is or may be recorded in public records, or, alternatively, that the transfer of ownership has not been recorded in the public records at the time the disclosure is provided as required by 15 U.S.C. § 1641(g)(D). The disclosure was also required to have in conspicuous type "You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan" see 15 U.S.C. § 1639(a)(1)(B).

The Defendant is a new creditor and a covered person as described under 15 U.S.C. § 1602 Definitions and rules of construction and 12 CFR Part § 1026.39 Mortgage transfer disclosures

13

respectively. A "covered person" means any person, as defined in § 1026.2(a)(22), that becomes the owner of an existing mortgage loan by acquiring legal title to the debt obligation, whether through a purchase, assignment or other transfer, and who acquires more than one mortgage loan in any twelve-month period. For purposes of this section, a servicer of a mortgage loan shall not be treated as the owner of the obligation if the servicer holds title to the loan, or title is assigned to the servicer, solely for the administrative convenience of the servicer in servicing the obligation. In this instance the Defendant became a covered person when they acquired security interest in Defendants mortgage.

Pursuant to § 1026.39(c)(3) a covered person is not required to provide a disclosure if the covered person acquires only a partial interest in the loan and the party authorized to receive the consumer's notice of the right to rescind and resolve issues concerning the consumer's payments on the loan does not change as a result of the transfer of the partial interest. Here the party authorized to resolve issues concerning the payments of the loan changed which required notification of Defendants acquisition of the debt obligation related to Plaintiff's mortgage see Exhibit F joint correspondence from previous creditor and Defendant. Paragraph 6 of the correspondence clearly indicates a change in party authorized to resolve issues and other details concerning the loan. However the disclosure failed to identify the location of the place where transfer of ownership of the debt is recorded or include conspicuous type size stating "You could lose your home, and any money you have put into it, if you do not meet your obligation under the loan".

The Notice of Servicing Transfer further confirms a transfer of ownership of the debt obligation from one servicer to another servicer. The term servicer is defined as the person

14

responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan). The key term here is " including the person who makes or holds a loan if such person also services the loan" In this instance the loan was transferred from a servicer who was also the holder of the debt obligation to a servicer who currently holds the debt obligation. Defendants partial ownership is evident by the change in loan number, name of payee and address of payee. Furthermore UCC § 3-301 Rights of a Holder indicates "The holder of an instrument whether or not he is the owner may transfer or negotiate it and, except as otherwise provided in Section 3-603 on payment or satisfaction, discharge it or enforce payment in his own name." In this instance the Defendant is not only servicing the loan as described in 12 U.S.C. § 2605(i)(3) but is also the servicer 12 U.S.C. § 2605(i)(2) and is enforcing payment in his own name.

The Defendant is also a creditor as defined under 15 U.S.C. § 1602(g) The term "creditor" refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement. Notwithstanding the preceding sentence, in the case of an open-end credit plan involving a credit card, the card issuer and any person who honors the credit card and offers a discount which is a finance charge are creditors. For the purpose of the requirements imposed under part D of this subchapter and sections 1637(a)(5), 1637(a)(6), 1637(a)(7), 1637(b)(1), 1637(b)(2), 1637(b)(3), 1637(b)(8), and 1637(b)(10) of this title, the term "creditor" shall also include card issuers whether or not the amount due is payable by agreement in more than four installments or the payment of a

15

finance charge is or may be required, and the Bureau shall, by regulation, apply these requirements to such card issuers, to the extent appropriate, even though the requirements are by their terms applicable only to creditors offering open-end credit plans. Any person who originates 2 or more mortgages referred to in subsection (aa) in any 12-month period or any person who originates 1 or more such mortgages through a mortgage broker shall be considered to be a creditor for purposes of this subchapter. The term "creditor" includes a private educational lender (as that term is defined in section 1650 of this title) for purposes of this subchapter.

Nevertheless 12 CFR Part § 1026.2(a)(25)(6) Security Interest, Specificity of disclosure. A creditor need not separately disclose multiple security interests that it may hold in the same collateral. The creditor need only disclose that the transaction is secured by the collateral, even when security interests from prior transactions remain of record and a new security interest is taken in connection with the transaction. In disclosing the fact that the transaction is secured by the collateral, the creditor also need not disclose how the security interest arose. For example, in a closed-end credit transaction, a rescission notice need not specifically state that a new security interest is "acquired" or an existing security interest is "retained" in the transaction. The acquisition or retention of a security interest in the consumer's principal dwelling instead may be disclosed in a rescission notice with a general statement such as the following: "Your home is the security for the new transaction." Here the previous creditor was required to disclose "Your home is the security for the new transaction". The failure of such disclosure is apparent on the face of the Notice of Servicing Transfer and therefore Defendants violated TILA in relation to the April 1, 2019 credit transaction.

It is clear from the statutory language that Congress intended for mortgage loans sold or

otherwise transferred or assigned to a third party to be held liable as "creditors" for their violations of 15 U.S.C. § 1641(g). See Fowler v. U.S. Bank,  F. Supp. 2d, 2014 WL 850527, (S.D. Tex. Mar. 4, 2014); Flemister v. Citibank, 2012 WL 6675273, (C.D. Cal. Dec. 20, 2012) (finding "Congress broadened the definition of 'creditor' in [TILA] through the passage of § 1641(g)" to include new owners or assignees of debt; even if trustee for securitized loans not liable as owner of debt, still liable as assignee).

BNK 6-l violation provided Plaintiff with a rescission type effect. BNK 6-l states that "In any action by an assignee to enforce a loan against a borrower in default more than sixty days or in foreclosure, a borrower may assert any claims in recoupment and defenses to payment under the provisions of this section and with respect to the loan, without time limitations, that the borrower could assert against the original lender of the loan".

BNK 6-l provides that "Any person found by a preponderance of the evidence to have violated this section shall be liable to the borrower for the following statutory damages as follows (i) all of the interest, earned or unearned, points and fees, and closing costs charged on the loan shall be forfeited and any amounts paid shall be refunded".

As such both Defendant should be penalized for violation New York banking laws. The law provides that each Defendants is responsible for their own violation.  As such both Defendants are subject to statutory damages required plus the return of all monies paid. Defendant is also subject to actual damages in excess of amount paid, statutory damages and punitive damages.

### IV. DAMAGES RELATED TO TILA VIOLATIONS

The purpose of making creditors civilly liable is to force disclosure of various transactions and afford borrowers more control over their credit and the terms related to those credit

transactions. The purpose of affording a borrower the right of rescission is broader; not only is it designed to compel disclosure, but it also serves to blunt unscrupulous sales tactics by giving homeowners a means to unburden themselves of security interests exacted by such tactics. See Williams v. Public Finance Corp. 598 F.2d 349 (1979). In addition to damages, TILA also grants consumers rescission rights when they enter into credit transactions that pledge their "principal dwelling" as security.

15 U.S.C. § 1635(a). Creditors are responsible for "clearly and conspicuously" disclosing a consumer's right to rescind and for providing "appropriate [rescission] forms" to the consumer. In this instance the Defendant is a creditor who grants credit to the Plaintiff see 15 U.S.C. § 1602(f) The term "credit" means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment. Defendant Cenlar obtained legal title of Plaintiff's debt obligation as of April 1, 2019 as evidence by information provided in the Notice of Servicing Transfer. Pursuant to 15 U.S.C. § 1639(a)(1) the creditor shall provide disclosure in a conspicuous type with the verbiage noted in 15 U.S.C. § 1639(a)(1)(B) "If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan.". Here neither creditor CitiMortgage (transferer) nor the New creditor Cenlar (transferee) provide such verbiage in its disclosure of the credit transfer (credit sale). 15 U.S.C. § 1602(h) defines "credit sale" refers to any sale in which the seller is a creditor. The term includes any contract in the form of a bailment or lease if the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the property and services involved and it is agreed that the bailee or lessee will become, or for no other or a nominal consideration has the option to become, the owner of the

18

property upon full compliance with his obligations under the contract. As such both the original and new creditor was required to disclose the transfer of mortgage. The face of the disclosure clearly shows that the creditors both old and new failed to conspicuously disclose the obligors right to rescind or inform obligor that pursuant to 15 U.S.C. § 1639(a)(1)(B) "If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan.".

TILA allows for a creditor whom commits a single violation of the Act to be penalizing twice for violating two separate laws. Secondly, the statute allows for multiple remedies. § 1640(g) and § 1639(g) are mutually exclusive remedies in traditional common law and contract law. Congress did not imply that the Section 1640 remedy should defer to a related remedy in the same Act for the same violation, Congress instead inferred that additional relief can be sought under a different title. As such Plaintiff is entitled to damages even if it relates to the violation of two separate laws.

As a result of the aforesaid violations of the Act and Regulation Z, pursuant to 15 U.S.C. §§ 1635(a), 1640(a), and 1641(c), Defendants is liable to Plaintiff for:

a. Rescission of this transaction. Pursuant to 15 U.S.C. § 1635(a) the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later. Here the Defendant failed to provide the requisite disclosures. The March 15, 2019 Notice of Servicing Transfer does not include the required disclosure and or notice of right to rescind. By statute Plaintiff has up to three year after the date of the April 1, 2019 consummation

19

of the debt obligation sale of Plaintiff's mortgage as such Plaintiff is entitled to rescind said transaction until April 1, 2022 if appropriate disclosures were never provided.

b. Termination of any security interest in Plaintiff's property created under the transaction. Pursuant to 15 U.S.C. § 1635(b) when an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. The statutory requirement of TILA provides that a consumer can exercise his rights to rescind the contract without first tendering the consideration that he received. Nevertheless even if the court were to require proof of obligors ability to tender payment to creditor open satisfaction of creditors obligation the obligor would easily be in a position to pay the creditor $157,000.00 from the $244,115.08 principle and interest paid to prior creditor which is due from the new creditor.

c. Return of any money or property given by the Plaintiff to anyone, including the Defendants, in connection with this transaction. Pursuant to 15 U.S.C. § 1635(b)  Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. As such Defendant is required to return approximately $244,115.08 paid against a $349,115.08 principle and interest loan with a balance of $105,000.00 remaining.

20

d. Statutory damages of $4,000 for each creditor relative to rescission disclosure violation § 1635. As a creditor Defendant failed to provide the requisite disclosure notice relative to the obligors right to rescind. The Defendant is also responsible for prior creditors violation evident on the face of the disclosure. In this instance the disclosure was incomplete, inaccurate and ambiguous on its face. Plaintiff is therefore entitled to a statutory award of $8,000.00 in damages.

e. Statutory damages of $4,000 for Notice of Mortgage Transfer violation § 1641(f). As a creditor Defendant failed to provide the requisite disclosure notice relative to the notice of mortgage transfer. The Defendant is also responsible for prior creditors violations evident on the face of the disclosure. In this instance the disclosure provided by the prior and new creditor was incomplete, inaccurate and ambiguous on its face. Plaintiff is therefore is entitled to a statutory award of $8,000.00 in damages.

f. Statutory damages of $4,000 for Notice of Mortgage Transfer violation § 1641(g). As a creditor Defendant failed to provide the requisite disclosure notice relative to the notice of mortgage transfer. Pursuant to § 1641(g) not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer. The Defendant failed to provide the location of the place where transfer of ownership of the debt is recorded. The Defendant is liable for statutory damages of $4,000.00 for said failure.

g. Statutory damages of $4,000 for Defendants' failure to respond properly to Plaintiff's October 21, 2019 rescission notice and Plaintiff's November 11, 2019 follow up rescission notice pursuant to § 1641(g). Defendant is also liable for statutory damages for failure to rescind transaction pursuant to § 1641(c) which states that any consumer who has the right to rescind a transaction

21

under section 1635 of this title may rescind the transaction as against any assignee of the obligation. That fact that the Defendant failed to provide notice of the transfer of the debt obligation with in the 30 day period allotted under § 1641(g) triggers Plaintiff's right to rescind the April 1, 2019 credit sale.

h. Forfeiture of return of loan proceeds pursuant to § 1635(b). Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The creditors failure to perform its obligation renders the return of the property impracticable and therefore forfeiture of obligors tender is appropriate.

i. Actual damages (court fees and other cost of action)in an amount to be determined at trial cost of action § 1640 Civil Liability, § 1635, § 1641(f) and § 1641(g).

New action court cost $400.00

Paper and office supplies $850.00

Hours spent preparing complaint and motion 320 hr @ $200 = $64,000.00

Lost revenue could not work on construction projects 320 hr @ $200 = $64,000.00

j. Double the finance charge $374,008.68 § 1640(a)(2)(i). in the case of an individual action twice the amount of any finance charge in connection with the transaction (see Exhibit L finance charge).

22

k. Statutory damage in the amount of $4,000.00 pursuant to § 1640(a)(2)(iv) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $400 or greater than $4,000.

l. All finances charges and fees paid by the consumer.  Pursuant to § 1640(a)(4) in the case of a failure to comply with any requirement under section 1639 of this title, paragraph (1) or (2) of section 1639b(c) of this title, or section 1639c(a) of this title, an amount equal to the sum of all finance charges and fees paid by the consumer, unless the creditor demonstrates that the failure to comply is not material. The sum of all finance charges is approximately $142,822.32.

m. Award such other further relief as the Court deems just and proper.

### V. NEW YORK BANKING LAW HIGH-COST LOAN VIOLATION

BNK 6-l and BNK 6-m mirrors TILA violations. Pursuant to BNK 6-l "any person found by a preponderance of the evidence to have violated this section shall be liable to the borrower for the following actual damages, including consequential and incidental damages; and statutory damages as follows (i) all of the interest, earned or unearned, points and fees, and closing costs charged on the loan shall be forfeited and any amounts paid shall be refunded; except that this element of statutory damages shall not be awarded for violations of:"

BNK 6-m(13) provides a Defense to foreclosure.  In any action by a lender or assignee to enforce a loan against a borrower in default more than sixty days or in foreclosure, a borrower may assert as a defense, any violation of this section.

Damages for said violation are covered in BNK 6-m(9), (10) and (11) where a consumer is entitled to damages BNK 6-m(9) Damages.  Any person found by a preponderance of the evidence to have violated this section shall be liable to the borrower of a subprime home loan for

23

actual damages. BNK 6-m(10) Attorneys fees. A court may also award reasonable attorneys' fees to a prevailing borrower in a foreclosure action. BNK 6-m(11) Equitable relief. A borrower may be granted injunctive, declaratory and such other equitable relief as the court deems appropriate in an action to enforce compliance with this section.

As such Plaintiff is entitled to damages for violations related to BNK 6-l(m) and (q) as well as Defendant's violation of BNK 6-m(e) and (l).

## VI. FDCPA VIOLATION

Under the FDCPA, "any debt collector who fails to comply with any provision of [§ 1692] with respect to any person is liable to such person[.]" 15 U.S.C. § 1692k(a). The act "imposes civil liability on 'debt collector[s]' for certain prohibited debt collection practices." Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 573, 130 S. Ct. 1605, 1606, 176 L. Ed. 2d 519 (2010).

In order to successfully state a claim under the FDCPA, "(1) the plaintiff must be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the debt is considered a 'debt collector,' and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements." Schuh v. Druckman & Sinel, L.L.P., 751 F. Supp. 2d, 542, 548 (S.D.N.Y. 2010) (internal citations omitted); accord Polanco v. NCO Portfolio Mgmt., Inc., 132 F. Supp. 3d 567, 578 (S.D.N.Y. 2015) (same). Here the Plaintiff is a consumer and the Defendant Cenlar is acting in its own capacity as well as acting on behalf of FNMA and is attempting to collect a debt in a name other than its own as such violating 15 U.S.C. § 1692e.

24

The Defendant falsely represented itself in this action giving the appearance of a third person collecting a debt, rather than its "true name," such an action is a violation of 15 U.S.C. § 1692e, 1692e(2)(A), 1692e(10) and 1692e(14). "Each of these sections make it unlawful to make certain false representations in connection with the collection of a debt." Bleich v. Revenue Maximization Grp., Inc., 233 F. Supp. 2d 496, 498 (E.D.N.Y. 2002).

Section 803(6) of the FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

Creditors who collect their own debts may see that definition and stop reading. Big mistake – because Section 803(6) goes on to say "the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." In other words, if a creditor collects its own debts but uses a different name that suggests it's a third-party debt collector, the statute views the company as a debt collector subject to the FDCPA.

## CONLUSION

For the reasons cited in this Memorandum and in the attached Affidavit of Roger Rowe, I ask the court to dismiss Defendant's motion with prejudice and grant Plaintiff summary judgment pursuant to Fed. R. 56(e)(4) and Fed. R. 56(f)(1).

The Defendant failed to properly support their affirmative defense that Plaintiff was in default of his loan. Defendant cannot be in default of a loan in which Defendant Citibank promised the subsequent holder the he (Citibank) would pay if Plaintiff failed to pay.

Defendant provided no evidence in admissible form to support his claim that Plaintiff is in default. The Defendant failed to provide affidavits from someone with personal knowledge. Moreover in order to support a motion for summary judgment the Defendant was required to submit a statement of undisputed fact. This court has long held that failure to submit a statement of undisputed facts as prescribed under Local Rule 56.1 is grounds for dismissal. Moreover, Defendant failed to provide notice to pro se litigant as prescribed under Local Rule 56.2.

This court has consistently ruled that a party moving for summary judgment under Rule 56 must submit a "separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Antwi v. Health & Human Sys. (Ctrs.) F.E.G.S., 13-CV-835, 2014 WL 4548619, at *4 (S.D.N.Y. Sept. 15,2014) (Ramos, J.) (denying pro se plaintiff's motion seeking summary judgment for failing to comply with Local Rule56.1).  In this instance the moving party

As such Plaintiff respectively ask this court to grant Plaintiff's claim in its entirety.

July 26, 2021

Roger Rowe
Pro Se
20 Spruce rd
Amityville, NY 11701
Tel: (631) 767-6537
rroweny@gmail.com

26