UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

*FILED*

2022 JAN 10  PM 4: 32

CLERK
U.S. DISTRICT COURT
E.D.N.Y.

The Honorable Joan M. Azrack

Case No. 2:19-cv-07278-JMA-AYS

---

ROGER ROWE
    Plaintiff(s)
  -v-
CENLAR FSB, CITIMORTGAGE, INC
    Defendant(s)

MOTION FOR RELIEF FROM JUDGMENT,
NEW TRIAL AND IN THE ALTERNATIVE
AMEND FINDINGS Pursuant to FED R.
52(a)(6), 52(b), 59(a)(1)(B), 59(a)(2),
60(1), 60(3) and 60(6)

---

PLEASE TAKE NOTICE that upon the annexed affirmation and Memorandum of Roger Rowe

sworn to or affirmed on the 10th day of January 2022 and open the complaint herein, Defendant

will move this Court, Hon. Joan M. Azrack U.S.D.J., in room 920, Long Island Courthouse, 100

Federal Plaza Central Islip, NY 11722 on motion pursuant to Federal Rule of Civil Procedure

52(b), 59(a)(1)(B), 59(a)(2), 60(1), 60(3) and 60(6).

Signed this 10th day of January, 2022 .

Roger Rowe
Pro Se
20 Spruce rd
Amityville, NY 11701
Tel: (631) 767-6537
rroweny@gmail.com

To: Lijue T. Philip
   *Attorney for the Plaintiff*
   *Cenlar FSB & CitiMortgage*
   100 Park Avenue, Suite 2000
   Tel: (212) 812-4124
   lphilip@stradley.com

1

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

ROGER ROWE
          Plaintiff(s)                                        2:19-cv-07278-JMA-AYS

     -v-

CENLAR FSB, CITIMORTGAGE, INC
          Defendant(s)

## AFFIRMATION/DECLARATION
## MOTION FOR RELIEF FROM JUDGMENT, NEW TRIAL AND IN THE ALTERNATIVE AMEND FINDINGS PURSUANT TO FED. R CIV. P. 52(a)(6), 52(b), 59(a)(1)(B), 59(a)(2), 60(1), 60(3) and 60(6)

I, Roger Rowe, declare under penalty of perjury that the following facts are made on personal knowledge and are true and correct as required by Rule.

## PRELIMINARY STATEMENT

Plaintiff brings this motion for relief from judgment and to amend the finding of the Courts December 22, 2021 decision and order and the December 29, 2021 judgement or in the alternate commence a new trial or hearing (*See* Exhibit A Rule 12(b) motion package).

Although the Court granted Defendants its motion to dismiss, the Court rendered a favorable determined which under controlling law would defeat the December 29, 2021 judgment. Pursuant to Rule 52(c) the Court may enter partial judgment against the party on a claim or defense that, under the controlling law, can maintained or defeated only with favorable finding on the issue. In this instance the Court erred when it dismissed Plaintiff's Federal claims despite affirming that Defendants had no legal right to collect on the note or mortgage.

The record clearly shows that the issues upon which the judgment was rendered is not supported by fact and conclusions of law, as required by Rule 52(a). Pursuant to Rule 52(a)(6), a ruling shall be set aside if it is clearly erroneous. In this instance the Courts December 29, 2021

1

judgment is clearly erroneous and belies the Courts findings that the Plaintiff's "loan was not transferred or assigned to the Defendants" [sic] Dkt No. 25 page 7. If Plaintiff's loan was not transferred or assigned to Defendants, any action to enforce the loan would be barred as a matter of law. Plaintiff's TILA, RESPA and FDCPA claim are all based on Defendant's misrepresentation in fact enforce the loan. Once the Court affirmed Defendants had not legal right to collect on the "Note" the Court should have found Defendants liable for all claims under the complaint.

TILA and RESPA was enacted to empower and protect consumers from various predatory lending practices and punish unscrupulous lenders, creditors, assignee's and transferee's from engaging in deceptive and deceiving activities. Congress also provides a consumer with protections under FDCPA, which was enacted to prevent unfair and deceptive debt collections practices. Under TILA, RESPA and FDCPA, a consumer has a private right to commence an action against creditors, lenders and their assignee's or transferee's.

The record clearly shows Defendant's violated various TILA, RESPA and FDCPA statutes in connection to the November 7, 2002 and April 1, 2019 credit transaction. The evidence presented to the Court proves (1) the existence of the transaction, (2) payments against the transaction and (3) the rights to recourse against the instrument in relation to the transaction. TILA, RESPA and FDCPA streamlines applicable contract, real estate, bailment, surety, tort and banking laws so that the average consumer can readily identify infractions without understand the branches of philosophy concerning the law and the principles that lead courts to make the decisions they do.

Defendant's failure to establish his rights to enforce the loan provides further evidence of Defendant's breach of contract, breach of fiduciary duty, conversion, FDCPA and adding and abetting claim. Although some of Plaintiff's claims may appear to be duplicative or mislabeled, Plaintiff is entitled to summary judgment as a matter of law which would only leave the

determination of Plaintiff's damages claims. Absent the right to enforce the note and mortgage Defendants, undoubtedly misrepresented the characteristics, type, status and their rights to collect the debt. Defendant CitiMortgage fraudulently collected payment from Plaintiff for over 17 years which is a violation of Federal Law. As such Plaintiff is entitled to summary judgment and damages related to all claims cited in the complaint.

## STATEMENT OF FACTS & FACTUAL BACKGROUND

1. On November 7, 2002 Plaintiff entered into a $157,500.00 credit transaction with Citibank, N.A a non-party to this action (see Ex. B to the Comp).

2. On or about July 12, 2019, Defendant Cenlar FSB, informed Plaintiff that his original Citibank, N.A loan was currently owned by Federal National Mortgage Administration (FNMA) a non-party to this action located at MidTown Center 1100 15th Street NW Washington, DC 20005) (see Ex. A to the Comp).

3. As part of the alleged transfer of ownership relative to the November 7, 2002 consumer credit transaction, Citibank, N.A. retained a security interest in a collateral debt obligation for 20 Spruce rd Amityville, NY 11701 which is Plaintiff's home (see Ex. A to the Comp page 19)[1].

4. The security interest in the November 7, 2002 credit transaction was not created to finance the acquisition or initial construction of Plaintiff's home.

5. On or about July 12, 2019 Plaintiff was notified that Defendant CitiMortgage transferred servicing to Cenlar and that Cenlar was the New Servicer (see Ex. F to the Comp page 2)[2].

---

[1] The indorsements on the face of the November 7, 2002 contract identifies the parties with privity to enforce said contract. In contract law, privity is a doctrine that imposes rights and obligations to parties of a contract and restricts non-contractual parties from enforcing the contract.

[2] Cenlar obtained both servicing and servicer rights as distinguished under USC § 2605.

6.  As defined by 12 CFR Part 1024(Regulation X) a "Servicer" means a person responsible for the servicing of a federally related mortgage loan (including the person who makes or holds such loan if such person also services the loan). As evidenced on the face of the "NOTICE OF SERVICING TRANSFER" CitiMortgage transferred both the servicing rights the rights as a holder[3].

7.  As prescribed under UCC § 3-301 "The holder of an instrument whether or not he is the owner may transfer or negotiate it and, except as otherwise provided in Section 3-603 on payment or satisfaction, discharge it or enforce payment in his own name". Here Cenlar is a holder of the instrument and is accepting payment in his own name (see Ex. F to the Comp page 5).

8.  Defendant's Cenlar FSB and CitiMortgage failed to disclose or provide notice of mortgage transfer or right of rescission as required under 15 U.S.C. 1641(g) (particularly the location of the place where transfer of ownership of the debt is recorded).

9.  Defendant's failed to respond properly to Plaintiff's notice of rescission (see Ex. C to the Comp). The rights to rescind was established as a means to settle TILA violation out of court. However if a creditor, assignee or transferee is found to have violated any of TILA's statutes the consumer is entitled to commence an action for damages.

10. In response to my complaint Defendant Cenlar filed a Rule 12(b)(6) motion which included matters outside the pleadings thus converting their Rule 12 motion to a summary judgment motion (see ECF Doc. 11).

11. Cenlar failed to provide a separate statement of undisputed facts as required under Local Rule 56.1 which is grounds for dismissal of their summary judgment motion.

---

[3] Cenlar is more than a mere servicer. Cenlar is also a holder with the rights to collect payment in his own name even though he don't have the rights to enforce title or payment.

12. Cenlar failed to provide Notice to Pro Se Litigant as required under Local Rule 56.2 which is grounds for dismissal of their summary judgment motion.

13. Plaintiff objected to Defendants Rule 12 motion which included matters outside the pleading. The matters outside the pleadings were not supported by admissible evidence nor did it include an affidavit made on personal knowledge[4].

14. Defendant Cenlar's claim that Plaintiff defaulted under the terms of the Loan on or about June 1, 2019 [sic] (see ECF Doc. 11-2 page 2) is inadmissible hearsay and is not supported by affidavit made on personal knowledge.

15. Moreover BNK 6-l(11) states that "Upon a judicial finding that a high-cost home loan violates any provision of this section, whether such violation is raised as an affirmative claim or as a defense, the loan transaction may be rescinded. Such remedy of rescission shall be available as a defense without time limitation". Here Plaintiff's asserts an affirmative claim and defenses against Defendants for violations of BNK 6-l. TILA also provides similar defenses and claims see § 1635(i).

16. Furthermore, in any action by an assignee to enforce a loan against a borrower in default more than sixty days or in foreclosure, a borrower may assert any claims in recoupment and defenses to payment under the provisions of this section and with respect to the loan, without time limitations, that the borrower could assert against the original lender of the loan. Here Plaintiff asserts his defenses to payment as it relates to Defendant's violation of BNK 6-l. TILA also provides similar defenses and claims see § 1635(i).

---

[4] Defendant claimed that Plaintiff was in default but provided no evidence supporting his statement.

17. Plaintiff submitted and amended complaint Pursuant to Rule 15(b)(1) and Rule 15(c)(C). The amendment included objections to Defendant Cenlar's contention that Plaintiff is in default as well as the inclusion of Defendant CitiMortgage (the Master Servicer).

18. Plaintiff includes CitiMortgage in this action based on the Notice of Servicing Transfer and the transfer of the rights to collect the debt to the new servicer Cenlar. Based on the joint notice provided by Defendants CitiMortgage and Cenlar. CitiMortgage is the assignee of the mortgage debt obligation who in turn transferred the mortgage debt obligation to Cenlar. Evidence of the assignment can be seen in the CitiMortgage indorsement (see Ex. F to the Comp page 7& 10) which is evidenced by the CitiMortgage conditional and qualified indorsement in blank and evidence by the Notice of Servicing Transfer (see Ex. F to the Comp page 2).

19. The November 7, 2002 credit transaction between Plaintiff and Citibank involved the refinancing of a high-cost mortgage. The face of the October 23, 1989 Note shows a 10.625% interest rate (see Ex. B to the Comp page 8). As such the consolidated loan is considered a high-cost loan[5].

20. A "High-cost home loan" means a home loan in which the terms of the loan exceed one or more of the thresholds as defined in paragraph (g) of BNK 6-l. As noted in BNK 6-l(g)(i) "For a first lien mortgage loan, the annual percentage rate of the home loan at consummation of the transaction exceeded eight percentage points over the yield on the treasury securities having comparable periods of maturity to the loan maturity measured as of the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the lender. In this instance the delta between the

---

[5] The violation is on the face of the disclosure which makes any assignee or transferee liable to rescission and relief under section 1640.

first lien interest rate of 10.625 and the December 16, 2002 treasury yield of 1.5 is 9.125 (see Ex. K to the Comp page 6). As such the loan exceeded the 8% threshold.

21. The total points and fees also exceed five percent of the total loan amount of a loan fifty thousand dollars or more. The November 7, 2002 contract, consolidated the balance on the first lien of $37,606.56 and the second lien of $119,893.44 for a total of $157,500.00 (**see** Ex. B to the Comp page 17).

22. As indicated on the face of the "Anticipated Settlement" dated September 16, 2002 (**see** Ex. N to the Comp). Plaintiff paid 33.266% in closing cost. Pursuant to BNK 6-l(2)(q) No points and fees when a lender refinances its own high-cost home loan with a new high-cost home loan. A lender shall not charge a borrower points and fees in connection with a high-cost home loan if the proceeds of the high-cost home loan are used to refinance an existing high-cost home loan held by the lender or an affiliate of the lender. Here the lender refinanced his own high-cost home loan which was held by its affiliate CitiMortgage (see Ex. H to the Comp)[6].

23. As such Defendant's, are liable to Plaintiff for actual damages, including consequential, incidental damages and statutory damages as follows (i) all of the interest, earned or unearned, points and fees, and closing costs charged on the loan shall be forfeited and any amounts paid shall be refunded (see BNK 6-l(7)) and § 1641(d)(2). In addition, Plaintiff is entitled to rescission.

24. Nevertheless, the party Plaintiff pledged collateral to made available through a securitization transaction without Plaintiff's knowledge or consent and purportedly negotiated the security evidenced by the Note/Mortgage lien which Plaintiff pledged to

---

[6] This is a violation of both Federal (TILA) and State (BNK 6l & m).

Citibank, N.A. exclusively and said pleaded document was apparently used to secure these receivables in this transaction as well.

25. Pursuant to UCC § 3-404 any unauthorized signature is wholly inoperative as to that of the person whose name is signed unless he ratifies it or is precluded from denying it. As such Citibank N.A. and CitiMortgage ("the indorser") is negligent as it relates to altering and producing an unauthorized signature (see Ex. F to the Comp page 7 & 10).

26. Pursuant to UCC § 3-406 Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business.

27. Not only was CitiMortgage negligent as it relates to the production of an unauthorized signature. Both CitiMortgage and Citibank N.A. altered the instrument when it made material changes to the contract. UCC § 3-407(a) indicates that an alteration by the holder which is both fraudulent and material discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense. As defined by UCC §1-201 an "Unauthorized signature means a signature made without actual, implied, or apparent authority. The term includes a forgery" as such Defendant CitiMortgage forged Plaintiff's signature discharging Plaintiff from any liability.

28. Moreover UCC § 3-802 states that "Unless otherwise agreed where an instrument is taken for an underlying obligation the obligation is pro tanto discharged if a bank is drawer, maker or acceptor of the instrument and there is no recourse on the instrument against the underlying obligor".

29. In this instance the indorser is a bank and the instrument has no recourse on it as evidenced by the words "without recourse" (see Ex. F to the Comp page 7 & 10).

30. As such Plaintiff is not in default and was in fact discharged form his obligation when the holder CitiMortgage intentionally cancelled the instrument by indorsing the instrument with the words "without recourse". (see Ex F. to the Comp)

31. As a third party answerable to Plaintiff if he is sued under Article 3 Citibank NA and CitiRetail Services LLC is placed on notice as prescribed under UCC 3-803 and must come and defend Plaintiff[7].

32. As indicated in Defendant's disclosure statement (see ECF Doc. 21) Citibank, NA and Citi Retail Services LLC holds ownership in CitiMortgage and is liable for their actions. Moreover, the fact that Citibank charged Plaintiff closing cost on a refinance in which a lender and it affiliates are holder is a clear violation of § 1605 and BNK 6-l(q) and as such is liable to damages under § 1641 and BNK 6-l[8].

33. Defendants mislead the Court to believe that it was just a mere servicer when in fact the Defendants where credit/assigners and credit/purchasers as evidenced by the "Notice of Servicing Transfer" See Ex F. to the Comp. The face of the Note with the qualified indorsement in blank affirms CitiMortgage prior ownership in the loan.

34. The Court erred as a matter of law when it granted summary judgment based on hearsay evidence. Defendants failed to provide affidavits from a person with personal knowledge. Although an attorney affirmation can qualify as an affidavit, the attorney must have personal knowledge for his affirmation to have any probative value.

---

[7] Although CitiBank and Retail Services were placed on notice neither responded to or appeared.
[8] This is also a TILA violation (see 1605(e)).

35. Rule 56(c) and Local Rule 56.1 requires a statement of material fact be followed by citation to evidence which would be admissible. Here Defendants failed to provide admissible evidence (affidavits from a person with personal knowledge) comparative to disclosure and non-disclosure related claims or defenses[9].

36. The Court erred when it determined that Plaintiff's TILA claim related to the November 7, 2002 credit transaction was time barred. Although the rescission in equity may be time barred rescission as a penalty related to other claims which a consumer can assert against the original creditor remains see § 1641.

37. The Court erred when it failed to opine on Plaintiff's TILA claims related to the April 1, 2019 credit transaction. TILA allows a consumer to file an action within one year against a creditor/assignee or a creditor/purchaser as well as the right to rescind any credit transaction within the prescribed time period.

38. The Court erred when it failed to observe Plaintiff's rescission claim against the March 15, 2019 "credit sale". § 1641(d) states that "(Any consumer… may rescind the transaction as against any assignee of the obligation"). The statement "the transaction as against any assignee" relates to the March 15, 2019 credit sale which is a consumer credit transaction as defined under § 1602.

39. The Court erred as a matter of law when it failed to admit Plaintiffs uncontroverted statements of material fact and granted Defendant's motion for summary judgment; despite Defendant's failure annex a statement of fact to his motion and specifically controvert corresponding numbered paragraphs of Plaintiff's statement of facts.

---

[9] 1641(d)(1) states that "Any person who purchases or is otherwise assigned a mortgage referred to in section 1602(aa) [1] of this title shall be subject to all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage".

40. Plaintiff was denied due process when the Court failed to administer the proceeding according to Federal Rules of Civil Proceedings. Nowhere in the record shows Defendants providing a separate statement of fact see Exhibit A Rule 12 motion package.

41. Although the Court determined that loan was never assigned or transferred to the Defendants. The Court erroneously granted Defendant's motion to dismiss see Exhibit A Rule 12 motion package.

42. Based on Rule 52(a)(6) the finding of facts should be set aside when the finding is clearly erroneous. In this instance the fact Defendant failed to prove it had a legal right to collect on the note should have precluded the granting of its motion to dismiss Dkt No 25 page 7.

43. Pursuant to Rule 8(b)(6) Defendants, admitted to the allegation in the pleadings when it failed to respond to Plaintiff's statement of facts see Exhibit A Rule 12 motion package. However, despite Defendant's admittance the Court granted Defendant's motion.

## ARGUMENTS

**RULE 52**

44. In light of the Court finding that Plaintiff loan was not assigned or transferred to Defendants, Plaintiff ask the Court to amend its finding and conclusion pursuant to Rule 52(b) where the question is based on the sufficiency of the evidence to support the dismissal of Plaintiff's complaint.

45. The evidence presented by the Defendants is inadmissible hearsay and does not controvert the undisputed fact in front the Court which as a matter of law requires judgment in favor of the Plaintiff.

46. Plaintiff also request the modification of its judgment to reflect the favorable ruling that Defendants were not the holder of the mortgage or note at the commencement of the action and therefore, is not entitled to enforce the note or mortgage Dkt No 25 page 7.

47. The Courts determination that Defendants were not the assignee nor transferee of the note and mortgage also proves that defendants misrepresented the existence of a debt and their right to collect the debt and as such is liable for FDCPA violations and all claim in the complaint.

48. The fact that the Plaintiff was neither the holder of the note or mortgage but collected payments for over 17 years is evidence of Plaintiff's breach of contract, breach of fiduciary duty, conversion and adding and abetting claim referenced in the complaint. Given the Courts determination the Judgment should be modified to reflect Plaintiff's award.

**RULE 59**

49. In light of the Courts favorable decision and Plaintiff's belief that the face of the evidence supports all his claims there is actually no need for a new trial or hearing. However, as a procedural measure Plaintiff request a new trial or hearing in the alternative if the Court should deny his motion to amend or alter.

50. The Courts finding that Defendants were not assignee's or transferee's of the mortgage or note precludes Defendants from enforcing the note or mortgage as a matter of law. As such the only remaining issue is for the Court to calculate Plaintiff's award.

**RULE 60**

51. A Rule 60(b)(1) claim of "mistake." provides in relevant part that a court may relieve a party from final judgment or order. Although most motions to declare a judgment void rest on claims that the court lacked jurisdiction over the parties, the subject matter, or both, a

judgment is equally void if a court with jurisdiction has "acted in a manner inconsistent with due process of law. In this instance Plaintiff believe that his due process rights were infringed upon. Nevertheless, In light of the favorable ruling it appears that the judicial process would cure any deprivation or infraction related to equal treatment under the law or due process.

52.  Based on the record it is clear that the Defendant's and counsel submitted evidence which they know was false. Despite being informed of their false statements, Defendant's and counsel failed to correct or cease disseminating their falsities. Rule 60(b)(3) provides a vehicle in which a litigant can pursue relative to intrinsic or extrinsic fraud, misrepresentation and other misconduct from the opposing party. However, in light of the favorable ruling the Court may not see the need to investigate this matter any further.

53. Plaintiff complaint was based on breach of contract, breach of fiduciary duty, conversion, adding and abetting and FDCPA claims. The fact that the Court determined that Defendants were never assigned or transferred Plaintiff's loan precludes Defendants as a matter of law from enforcing the note or mortgage. As stated previously if the Defendants never owner or held the mortgage or note the Defendants fraudulently took Plaintiff's property. Pursuant to UCC 3-415(5) if payment was made on the instrument the accommodation party is entitled to recourse on the instrument. As such the December 29, 2021 judgment must be modified to reflect the Courts findings.

## **CONCLUSION**

54. I respectfully ask the court to modify its December 22, 2021 Memorandum and Order and its December 29, 2021 judgment to reflect the record and the Courts findings that

Defendants were not holders of the mortgage or note at the commencement of the action and is not able to obtain a judgment against the note or mortgage as a matter as law.

55. The fact that Defendants were neither assignee's of transferee's of the loan affirms Plaintiff's claims of breach of contract, breach of fiduciary duty, conversion, FDCPA and adding and abetting. There is no doubt that Plaintiff paid CitiMortgage for over 17 years, and that CitiBank and CitiMortgage promised to pay the instrument and if payment was made on the instrument, Plaintiff was entitled to recourse on the instrument and as such Plaintiff is entitled to recover damages.

56. Furthermore, Defendant's predatory activities should not go unpunished. Defendants assigned and transferred Plaintiff's loan for their own benefit and charged him excessive fees while benefiting from the unauthorized uses of Plaintiff's collateral. As such this court should penalize Defendants to the maximum extent of the law.

Dated: January 10, 2022

Roger Rowe
Pro Se
20 Spruce rd
Amityville, NY 11701
Tel: (631) 767-6537
rroweny@gmail.com

14

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ROGER ROWE,

                    Plaintiff

        - v -                                    **Case No. 2:19-cv-07278 (JMA) (AYS)**

CENLAR FSB, CITIMORTGAGE, INC

                    Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS MOTION FOR
RELIEF FROM JUDGMENT, NEW TRIAL AND IN THE ALTERNATIVE
AMEND FINDINGS PURSUANT TO FED. R CIV. P. 52(a)(6), 52(b),
59(a)(1)(B), 59(a)(2), 60(1), 60(3) and 60(6)**

Roger Rowe
Pro Se
20 Spruce rd
Amityville, NY 11701
Tel: (631) 767-6537
rroweny@gmail.com

i

# Table of Contents

MOTION FOR RELIEF FROM JUDGMENT, NEW TRIAL AND IN THE ALTERNATIVE AMEND FINDINGS.................................................................................................. 1

I.     BACKGROUND AND PROCEDURAL HISTORY.......................................... 3

II.    STATEMENT OF FACTS ................................................................................. 5

III.   ADDITIONAL STATEMENT OF FACTS ...................................................... 5

IV.    LEGAL STANDARDS OF REVIEW .............................................................. 6
       A. Motion Pursuant to Rule 52(b) & Local Rule 6.3 ..................................... 6
       B. Motion for New Trial Rule 59 ................................................................... 7
       C. Motion for Relief form Judgment or Order Rule 60 .................................. 7

       D. Violation of Substantive and Procedural Due Process ............................... 8

V. AURGUMENT ..................................................................................................... 10
       1. Questioning the Evidentiary Support Rule 52(5) ...................................... 10
       2. Motion for New Trial Rule 59 .................................................................. 11
       3. Motion for Relief from Judgment Rule 60 ................................................ 11
       Rule 60(b)(1) ................................................................................................... 11
       Rule 60(b)(3) ................................................................................................... 13

VI. PLAINTIFF'S OBJECTION TO JUDGMENT .................................................. 14
       Plaintiff's TILA Claims Against Both Defendants ........................................ 14

1.     Damages Claim ................................................................................................. 16

2.     Rescission Claim .............................................................................................. 17

3.     Plaintiff's FDCPA Claim Against Cenlar ........................................................ 20

4.     State Law Claim ............................................................................................... 21

5.     Leave to Amend ............................................................................................... 22

       CONCLUSION ................................................................................................... 23

# Table of Authorities

## Cases

." *Bristol v. Schenk*, 14-CV-6647, 2017 WL 9485715 ................................................ 12

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ...................................... 10

*Antwi v. Health & Human Sys. (Ctrs.) F.E.G.S.*, 13-CV-835, 2014 WL 4548619, at *4 (S.D.N.Y. Sept. 15,2014) (Ramos, J.) .......................................................................... 12

Boddie v. Connecticut, 401 U.S. 371, 378 (1971) ...................................................... 9

citing Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 880 (2d Cir. 1996)) ................................................................................................... 9

*Deutsche Bank Natl. Trust Co. v Monica*, 131 AD3d 737, 739) ............................... 10

DeWeerth v. Baldinger, 38 F.3d 1266, 1272 (2d Cir. 1994) ..................................... 8

Fleming v. New York University, 865 F.2d 478, 484 (2d Cir. 1989)........................... 8

Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 39 (2d Cir.1989)..................... 7

Gervais v. O'Connell, Harris & Assoc., 297 F.Supp. 2d 435, 440 (D. Conn. 2003).............. 21

Hurd v. Fredenburgh, 984 F.3d 1075, 1087 (2d Cir. 2021)....................................... 8

In *Anthony v. Fein, Such & Crane, LLC*, 5:15-CV-0452 (DNH/TWD) (N.D.N.Y. Sep. 28, 2016) ........................................................................................................... 21

In *Davis v. Town of Hempstead*, 14-CV-903 (JMA)(GRB) (E.D.N.Y. Jan. 16, 2019) ........... 2, 12

*In re Health Mgmt. Sys. Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000))................. 6

In re Waugh, 367 B.R. 361, 367 (Bankr. E.D.N.Y. 2007) (quoting In re St. Stephen's 350 E. 116th St., 313 B.R. 161, 174 (Bankr. S.D.N.Y. 2004)) ............................................. 8

*Jackson v. Killian*, No. 08 Civ. 4386, 2010 WL 2103646, at *1 (S.D.N.Y. May 25, 2010) .......... 6

Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 576 (2010)............... 20

*Jesinoski v. Countrywide Home Loans, Inc.*, 574 U.S. 259 (2015) ............................. 1

Kaltenbach v. Richards, 464 F.3d 524, 529 (5th Cir. 2006) ..................................... 20

Kaluczky v. City of White Plains, 57 F.3d 202, 211 (2d Cir. 1995) .......................... 9

Kluge v. Fugazy, 145 A.D.2d 537, 536 N.Y.S.2d 92 (2d Dep't. 1988) ...................... 19

Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL-CIO v. Town Bd. of Huntington, 31 F.3d 1191, 1194 (2d Cir. 1994)........................................................................ 9

*Mallet v. Miller*, 438 F. Supp. 2d 276, 277 (S.D.N.Y. 2006) ..................................... 6

Mayberry v. Maroney, 529 F.2d 332, 337 (3d Cir. 1976) .......................................... 8

Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940)................................. 7

O'Brien v. Nat'l Property Analysts Partners, 739 F.Supp. 896, 900 (S.D.N.Y.1990);  12 Moore's Federal Practice §60.44[4] (3d ed.1997) ................................................................ 7

Parratt v. Taylor, 451 U.S. 527, 537 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986))............................................................................... 9

*PPO Industries v. AO.P. Svs.*, 235 AD2d 979 (3d Dep't 1997)................................. 10

Redd v. N.Y. Div. of Parole, 678 F.3d 166, 173–74 (2d Cir. 2012).......................... 10

Rivera-Powell v. N.Y.C. Bd. of Elections, 470 F.3d 458, 465 (2d Cir. 2006) (citing Hudson v. Palmer, 468 U.S. 517, 532 (1984) ........................................................................................... 9
Rule 56(c) ............................................................................................................................... 5
*Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) .............................................. 6
Southerland v. City of New York, 680 F.3d 127, 151 (2d Cir. 2012) ..................................... 8
Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003) ........................................................... 11
*Tri-State Loan Acquisitions III, LLC v Litkowski*, 172 AD3d 780, 782 ................................ 10
Washington v. Glucksberg, 521 U.S. 702, 720-21 (1997); Hurd, 984 F.3d at 1088 .................... 9
Woods v. Sieger, Ross & Aguire, LLC, No. 11 Civ. 5698 (JFK), 2012 WL 1811628 ............... 21

## Statutes

§ 1602(g)(2) ........................................................................................................................ 20
§ 1602(h) ............................................................................................................................. 18
§ 1602(i) .............................................................................................................................. 18
§ 1635(a) ............................................................................................................................. 18
§ 1640 ................................................................................................................................... 5
§ 1641 ............................................................................................................................. passim
§ 1641(c) ............................................................................................................................. 24
§ 1641(d) ........................................................................................................................ 2, 14
§ 1641(f)(1) ......................................................................................................................... 16
§ 1692 ................................................................................................................................. 20
§ 1692k(a) ........................................................................................................................... 21
§ 3-413 .......................................................................................................................... 15, 24
§ 3-802 ............................................................................................................................... 24
UCC § 3-104(b) .................................................................................................................. 15
UCC § 3-301 .................................................................................................................. 15, 16
UCC § 3-413(1) .................................................................................................................. 15
UCC § 3-415(5) .............................................................................................................. 2, 11
UCC § 3-416 ....................................................................................................................... 15
UCC § 3-802 .................................................................................................................. 15, 16

## Rules

Local Rule 56.1 ............................................................................................................. passim
Local Rule 56.1(c) ............................................................................................................ 2, 5
Rule 52(c) ........................................................................................................................... 22
Rule 56 ......................................................................................................................... 10, 14
Rule 56(e)(2) ...................................................................................................................... 23
Rule 56.1 ............................................................................................................. 2, 12, 22, 23
Rule 56.2 ............................................................................................................................ 22

**Regulations**

12 CFR Part 1024 (Regulation X)                                              18

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ROGER ROWE
Plaintiff

- v -

CENLAR FSB, CITIMORTGAGE, INC
Defendants.

Case No. 19-CV (JMA) (AYS)

---

## MOTION FOR RELIEF FROM JUDGMENT, NEW TRIAL AND IN THE ALTERNATIVE AMEND FINDINGS

I Roger Rowe (Plaintiff) in the above action file this memorandum in support of my motion for relief from this Court's December 29, 2021 Judgment (see ECF # 26) and Order dated December 22, 2021 (see ECF # 25). I ask the Court to amend its finding or in the alternative order a new trial relative to the granting of Defendant's Cenlar FSB and CitiMortgage, Inc., Federal Rule of Civil Procedure 12(b)(6) motion. Plaintiff request is based on Federal Rule of Civil Procedure 52(a)(6), 52(b), 59(a)(1)(B), 59(a)(2), 60(1), 60(3), 60(6) and the Courts violation of Plaintiff's substantive and procedural due process.

Rule 52 specifically allow a party to file a motion to amend the finding or make additional findings. The motion can also be accompanied by a motion for a new trial. The rule also allows the Court to set a side a finding based on clearly erroneous evidence or when a party questions the sufficiency of the evidence. In this instance the evidence provided is insufficient and fails to meet the substantial evidence threshold necessary to deny Plaintiff his statutory right to a judgment.

It is well settled that TILA provides a consumer with the right to commence an action against creditors or assigners related to a credit transaction in which a security interest will be retained in his property. As stated in *Jesinoski v. Countrywide Home Loans, Inc.*, 574 U.S. 259 (2015) "The Act contemplates various situations in which the question of a lender's compliance

1

with the Act's disclosure requirements may arise in a lawsuit". The Act also allows a consumer to bring an action for nondisclosure related violation (see § 1641(d)(2)(B).

Rule 59 permits the Court to take additional testimony, amend findings of facts and conclusions of law or make new ones and direct the entry of a new judgment. Here the facts are undisputed as Defendants admit to all allegations when they asserted their affirmative defenses. Local Rule 56.1(c) mandates the movant and opponent to annex a separate, short and concise statement of fact specifically controverting the oppositions statement. If a party fails to submit a controverting statement the opposing party's statement would be deemed admitted. Moreover, the Court failure to demand strict compliance with Local Rule 56.1 is a procedural defect entitling Plaintiff to a new hearing. Despite Defendants failure to comply with the requirements of Local Rule 56.1 and its prejudicial effects on Plaintiff's substantive and procedural rights to due process; the Court found Defendants were neither assignee's or transferee's of the loan which precludes Defendants from enforcing or collecting payment as a matter of law.

Rule 60 permits the Court to correct an oversite or omission whenever one is found in a judgment, order or other part of the record. The rule also provides relief for fraud (whether previously called intrinsic or extrinsic). In this instance the Court overlooked or inadvertently misunderstood Plaintiff's claims when it associated the claims to the November 7, 2002 credit transaction in lieu of the April 1, 2019 credit transaction. The record clearly indicates that existence of a contract and Plaintiff's right to recourse against the holder of said contract (UCC § 3-415(5). There is no doubt that Plaintiff was deprived his due process rights when the Court granted summary judgment without Defendants providing a separate statement of material facts. In *Davis v. Town of Hempstead*, 14-CV-903 (JMA)(GRB) (E.D.N.Y. Jan. 16, 2019) this Court has ruled that a litigant's failure to comply with Rule 56.1 mandate effectively concedes to the assertion

2

which are supported by the evidence cited. Moreover, the fact that the Court determined that Defendants were not assignee's nor transferee's precludes them from enforcing title or collecting payment as a matter of law.

As such Plaintiff respectfully ask the Court to modify its December 22, 2021 order and its December 29, 2021 judgment so that it accurately reflect his rights to title and property. Plaintiff also ask that the judgment includes damages sufficient to deter Defendants from violating TILA and other Federal Law's.

## I.    BACKGROUND AND PROCEDURAL HISTORY

On November 7, 2002, Plaintiff entered into a credit transaction evidenced by the note (the "Note") *See* Ex. F to Comp and mortgage (the "Mortgage") *See* Ex. B to Comp (collectively referred to as the "Loan") with Citibank N.A. ("CitiBank"). The Loan was to refinance a prior Citibank loan on Plaintiff's residential property. *See* Ex. F to Comp. CitiMortgage was servicer[1] of the loan *See* Ex H to Comp. As the holder of the servicing contract CitiMortgage is considered the Master servicer[2]. On April 1, 2019 CitiMortgage entered a credit sale contract agreement as ("Transferor servicer") and transferred servicing rights to Cenlar the ("Transferee servicer")[3]. *See* Ex. F to the Comp.

On July 12, 2019 Defendant Cenlar responded to Plaintiff's QWR stating that the loan was originated by CitiBank. N.A. dba CitiMortgage, Inc. and that the current owner of the loan is

---

[1] Servicer means a person responsible for the servicing of a federally related mortgage loan (including the person who makes or holds such loan if such person also services the loan), which is distinguished from Servicing which means receiving any scheduled periodic payments from a borrower pursuant to the terms of any federally related mortgage loan, including amounts for escrow accounts under section 10 of RESPA (12 U.S.C. 2609), and making the payments to the owner of the loan or other third parties of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the mortgage servicing loan documents or servicing contract.

[2] Master servicer means the owner of the right to perform servicing. A master servicer may perform the servicing itself or do so through a subservicer. *See* 12 CFR Part 1024(Regulation X).

[3] Transferee servicer means a servicer that obtains or will obtain the right to perform servicing pursuant to an agreement or understanding. *See* 12 CFR Part 1024(Regulation X).

FNMA. *See* Ex. A to the Comp. Defendant Cenlar also claimed that Plaintiff, defaulted under the terms of the Loan on or about June 1, 2019. *Id*. On October 21, 2019 Plaintiff sent Cenlar the new creditor and authorized representative a "Notice of Rescission" related to the April 1, 2019 credit transaction. *See* Ex. C to the Comp.

On December 30, 2019 Plaintiff commenced this action by filing this Complaint. *See* Dkt. No. 1. Plaintiff alleged a cause of action pursuant to the Truth in Lending Act ("TILA") to rescind the Loan and for damages; for damages for "False Entry in Book, Report, Or Statement of Such Bank"; and for damages pursuant to the Fair Debt Collection Practices Act ("FDCPA"). *Id*. After a pre-motion conference was held on March 5, 2020, Cenlar was permitted to move to dismiss the complaint, which the Court noted it may consider as a summary judgment motion upon review. Dkt. No. 10. On April 28, 2020, Cenlar moved to dismiss the complaint pursuant to Fed R. Civ. P. 12(b)(6) and to deny leave to amend. Dkt. No. 11. Plaintiff opposed this motion on or about May 31, 2020. Dkt No. 12. Cenlar filed a memorandum in further support of its motion on June 15, 2020. Dkt No. 13.

On August 6, 2020 Plaintiff filed a motion to amend complaint to include CitiMortgage and asserted additional allegations in support his existing causes of action (add causes of action for conversion, breach of contract, breach of fiduciary duty and "aiding and abetting"). On March 15, 2021 this Court granted Plaintiff's motion to amend his complaint. On March 22, 2021 Plaintiff filed his "First Amended Complaint" Dkt No. 19. On April 8, 2021 CitiMortgage filed its notice of appearance along with its corporate disclosure statement Dkt No. 20 and 21. On April 8, 2021 Defendants filed a motion for a pre motion conference Dkt No. 22. On April 15, 2021 Plaintiff filed his opposition to Defendants Rule 12(b)(6) motion.

On May 24, 2021 this Court denied Defendant's motion for a pre motion conference and directing Defendants to serve their motion to dismiss by June 24, 2021 and that Plaintiff shall serve his opposition by July 26, 2021 and the Defendant is to serve a reply and file the fully briefed motion by August 16, 2021 (see Exhibit A Rule 12(b) motion package).

## II.   STATEMENT OF FACTS[4]

## III.   ADDITIONAL STATEMENT OF FACTS

1.  Defendants mislead the Court to believe that it was just a mere servicer when in fact the Defendants where credit/assigners and credit/purchasers as evidenced by the "Notice of Servicing Transfer" See Ex F. to the Comp. The face of the Note with the qualified indorsement in blank affirms CitiMortgage prior ownership in the loan.

2.  The Court erred as a matter of law when it granted summary judgment based on hearsay evidence. Rule 56(c) and Local Rule 56.1 requires a statement of material fact be followed by citation to evidence which would be admissible. Here Defendants failed to provide admissible evidence (affidavits from a person with personal knowledge) comparative to disclosure and non-disclosure related claims or defenses[5].

3.  The Court erred when it determined that Plaintiff's TILA claim related to the November 7, 2002 credit transaction was time barred. Although the rescission may be time barred other claims my in fact lie under § 1640.

4.  The Court erred when it failed to opine on Plaintiff's TILA claims related to the April 1, 2019 credit transaction. TILA allows a person to file an action within one year against a

---

[4] Plaintiff incorporates Dkt No. 24-5 statement of fact. Defendants failed to provide a statement controverting these facts. Pursuant to Local Rule 56.1(c) statements required to be served are admitted if uncontroverted.

[5] 1641(d)(1) states that "Any person who purchases or is otherwise assigned a mortgage referred to in section 1602(aa) [1] of this title shall be subject to all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage".

creditor/assignee or a creditor/purchaser as well as the rescission of any credit transaction within the prescribed time period.

5. The Court erred as a matter of law when it failed to admit Plaintiffs uncontroverted statements of material fact and granting Defendant's motion for summary judgment despite Defendant's failure to specifically controvert corresponding numbered paragraphs of Plaintiff's statement of facts.

## IV. LEGAL STANDARDS OF REVIEW
### A. Motion Pursuant to Rule 52(b) & Local Rule 6.3

Motions for reconsideration are governed by Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, which states: Unless otherwise provided by statute or rule . . . a notice of motion for reconsideration or reargument of a court order determining a motion shall be served within fourteen (14) days after the entry of the court's determination of the original motion, or in the case of a court order resulting in a judgment, within fourteen (14) days after the entry of the judgment." *Jackson v. Killian*, No. 08 Civ. 4386, 2010 WL 2103646, at *1 (S.D.N.Y. May 25, 2010).

Reconsideration of a previous order is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources. *See Mallet v. Miller*, 438 F. Supp. 2d 276, 277 (S.D.N.Y. 2006) (quoting *In re Health Mgmt. Sys. Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). *See Mallet*, 438 F. Supp. 2d at 277 ("A motion for reconsideration under Local Rule 6.3

6

must demonstrate controlling law or factual matters put before the court on the underlying motion that the movant believes the court overlooked and that might reasonably be expected to alter the court's decision.

### B. Motion for New Trial Rule 59

Rule 59 allows the trial court to grant a new trial for any of the reasons for which new trials have traditionally been granted in actions at law in U.S. courts. Parties most commonly base their motions for a new trial on the verdict being against the weight of the evidence, the damages being excessive, or the trial court committing a prejudicial error of law see 11 WRIGHT ET AL., supra note 8, § 2805; *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940). New trials are also granted because the trial was not fair in light of newly discovered evidence or the misconduct of jurors, judges, or counsel. Also, Rule 59 permits the trial court to order, on its own initiative, a new trial "for any reason that would justify granting one on a party's motion." A U.S. district court has the power to weigh evidence and assess the credibility of witnesses, and it has discretion to grant a new trial if the verdict appears to the court to be against the weight of the evidence.

### C. Motion for Relief form Judgment or Order Rule 60

A Rule 60(b)(1) claim of "mistake." provides in relevant part that a court may relieve a party from final judgment or order. Although most motions to declare a judgment void rest on claims that the court lacked jurisdiction over the parties, the subject matter, or both, a judgment is equally void if a court with jurisdiction has "acted in a manner inconsistent with due process of law." *Fustok v. Conti Commodity Servs., Inc.*, 873 F.2d 38, 39 (2d Cir.1989) (citations omitted); *O'Brien v. Nat'l Property Analysts Partners*, 739 F. Supp. 896, 900 (S.D.N.Y.1990); 12 Moore's Federal Practice § 60.44[4] (3d ed.1997).

7

To prevail under Rule 60(b)(3), the movant must demonstrate by clear and convincing evidence that the order or judgment from which relief is sought was procured by fraud, misrepresentation or other misconduct. *Fleming v. New York University*, 865 F.2d 478, 484 (2d Cir. 1989) ("[A] Rule 60(b)(3) motion cannot be granted absent clear and convincing evidence of material misrepresentations and cannot serve as an attempt to relitigate the merits."). "To meet this high burden, the [movant] must do more than make 'conclusory allegations of fraud' and must show that the alleged fraud, misrepresentation, or other misconduct was 'material to the outcome.'" *In re Waugh*, 367 B.R. 361, 367 (Bankr. E.D.N.Y. 2007) (quoting *In re St. Stephen's 350 E. 116th St.*, 313 B.R. 161, 174 (Bankr. S.D.N.Y. 2004)).

Where a party seeks relief under Rule 60(b)(6) for reasons not covered by any of the other preceding five enumerated provisions under Rule 60(b), the burden of proof is no less exacting. The rule . . . "confers no standardless residual discretionary power to set aside judgments on mere second thought," and allows relief only under "extraordinary circumstances" that are "sufficient to overcome our overriding interest in the finality of judgments," *Mayberry v. Maroney*, 529 F.2d 332, 337 (3d Cir. 1976) (Gibbons, J. concurring), or "where the judgment may work an extreme and undue hardship." *DeWeerth v. Baldinger*, 38 F.3d 1266, 1272 (2d Cir. 1994).

### D. Violation of Substantive and Procedural Due Process

Substantive due process rights safeguard persons against the government's exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Southerland v. City of New York*, 680 F.3d 127, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). To analyze a claim under substantive due process, courts perform a two-step analysis. *Hurd v. Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir. 2021). "The first step in substantive due process analysis is to identify the constitutional right at stake." *Kaluczky v. City of White*

Plains, 57 F.3d 202, 211 (2d Cir. 1995). Not all rights are entitled to protection. Only rights that are fundamental or implicit in the concept of ordered liberty are accorded protection under substantive due process. See generally Washington v. Glucksberg, 521 U.S. 702, 720-21 (1997); Hurd, 984 F.3d at 1088.

To assert a violation of procedural due process rights, a plaintiff must "first identify a property right, second show that the [State] has deprived him of that right, and third show that the deprivation was effected without due process." Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL-CIO v. Town Bd. of Huntington, 31 F.3d 1191, 1194 (2d Cir. 1994) (citation omitted). Further, a plaintiff must prove that he or she was deprived of "'an opportunity . . . granted at a meaningful time and in a meaningful manner' for [a] hearing appropriate to the nature of the case." Boddie v. Connecticut, 401 U.S. 371, 378 (1971). The Supreme Court, however, distinguishes between (1) claims based on established state procedures, and (2) claims based on random, unauthorized acts by state employees. See Rivera-Powell v. N.Y.C. Bd. of Elections, 470 F.3d 458, 465 (2d Cir. 2006) (citing Hudson v. Palmer, 468 U.S. 517, 532 (1984); and Parratt v. Taylor, 451 U.S. 527, 537 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)). On the one hand, where a plaintiff alleges a deprivation pursuant to an established state procedure, "the state can predict when it will occur and is in the position to provide a pre deprivation hearing." Id. (citing Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 880 (2d Cir. 1996)). "Under those circumstances, 'the availability of post-deprivation procedures will not, ipso facto, satisfy due process.'" Id. (quoting Hellenic, 101 F.3d at 880). In contrast, when a plaintiff brings a procedural due process claim "[b]ased on random unauthorized acts by state employees," the state satisfies procedural due process requirements so

long as it provides a meaningful post-deprivation remedy.16 Id. (citing Hellenic, 101 F.3d at 880; and Hudson, 468 U.S. at 532).

## V. AURGUMENT

### 1. Questioning the Evidentiary Support Rule 52(5)

Rule 52(5) allows a party to question the sufficiency of the evidence relied on in support of the findings. In this instance the evidence does not support the fact pattern presented. Defendant's failed to establish its prima facie entitlement to judgment as a matter of law, as it failed to submit evidence demonstrating the Plaintiff's default in payment (see *Tri-State Loan Acquisitions III, LLC v Litkowski*, 172 AD3d 780, 782; *Deutsche Bank Natl. Trust Co. v Monica*, 131 AD3d 737, 739).

In support of its motion, inter alia, for summary judgment, the Defendant's relied on copies of the note and mortgage, and hearsay information from their counsel ("Lijue T. Philip"). It is settled law that an affidavit by an attorney who has no personal knowledge of the pertinent facts lacks probative value, *See PPO Industries v. AO.P. Svs.*, 235 AD.2d 979 (3d Dep't 1997). As such the evidence submitted by Defendants is inadmissible and summary judgment should have been denied.

Here the evidence provided is inconsistent and raises a genuine issue of material fact. Summary judgment is proper only where, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 173–74 (2d Cir. 2012). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material within the meaning of Rule 56 where it "might affect the

outcome of the suit under the governing law". In determining whether there are genuine disputes of material fact, the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (internal citations and quotations omitted).

In this instance the Court actually determined that Plaintiff's loan was never transferred or assigned to Defendant's *See* Dkt No. 25 page 7. As such Defendant's were estoppel from enforcing or collecting payment as a matter of law. The evidence in front the Court clearly shows Defendant's collected payments against the instrument and that if Plaintiff paid the instrument he would have a right of recourse against the instrument (UCC § 3-415(5)).

### 2. Motion for New Trial Rule 59

In the alternative Plaintiff request a new trial in light of Defendants failure to provide substantial evidence in support of its motion. This court has the power to weigh evidence and assess the credibility of witnesses, and it has discretion to grant a new trial if the verdict appears to the court to be against the weight of the evidence. Given the weight of the evidence i.e. the prominent notice on the face of the instrument informing Cenlar ("transferee") that the credit transaction is subject to all claims and defenses against the original lender and the lack of admissible evidence (hearsay), the Defendants were estoppel from obtaining summary judgment as a matter of law.

### 3. Motion for Relief from Judgment Rule 60

### Rule 60(b)(1)

Although most motions to declare a judgment void rest on claims that the court lacked jurisdiction over the parties, the subject matter, or both, a judgment is equally void if a court with jurisdiction has "acted in a manner inconsistent with due process of law. Here the Plaintiff was

denied the opportunity of a fair and evenhanded hearing. The Court failure to assure Defendants strict compliance with Rule 56.1 prohibited Plaintiff from addressing the facts of the case. The Court allowed the moving party to submit a defective motion absent the mandatory statement of fact. The Court then concluded that Plaintiff failed to correct deficiencies in his pleading See Dkt No. 25 page 10. However, the Court failed to compel Defendants to submit the mandated statement of material facts. Without relevant facts Plaintiff was not afforded the opportunity to address all the facts. The Courts action was bias showed favoritism to one part over the next.

In *Davis v. Town of Hempstead*, 14-CV-903 (JMA)(GRB) (E.D.N.Y. Jan. 16, 2019) this Court vehemently emphasized consequences of a litigant's failure to comply with Local Rule 56.1 when it stated "The requirement is strict; failure to submit a Rule 56.1 statement with a motion for summary judgment may result in the motion's denial". The Court also cited *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 417-18 (2d Cir. 2009).

Both the E.D.N.Y. and the S.D.N.Y., consistently ruled that failure to comply with the local rule 56.1 submission of a separate statement of fact is grounds for dismissal. The Courts have stated "Significantly, the requirement of filing a Rule 56.1 statement is not waived due to a litigant's pro se status." *Bristol v. Schenk*, 14-CV-6647, 2017 WL 9485715, at *4 (E.D.N.Y. July 31, 2017) (Tomlinson, Mag. J.) (collecting cases)., *report and recommendation adopted*, 14-CV-6647, 2017 WL 4277158 (E.D.N.Y. Sept. 25, 2017) (Bianco, J.). A party moving for summary judgment under Rule 56 must submit a "separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." *Antwi v. Health & Human Sys. (Ctrs.) F.E.G.S.*, 13-CV-835, 2014 WL 4548619, at *4 (S.D.N.Y. Sept. 15,2014) (Ramos, J.) (denying pro se plaintiff's motion seeking summary judgment for failing to comply with Local Rule56.1).

12

That being said, it seems that compliance with Local Rule 56.1 relates only to "pro se litigants". Given your Honors prior rulings, its apparent that I am not receiving equal protection under the laws of the United States. The constitution guarantees that no person or group will be denied the protection under the law that is enjoyed by similar persons or groups. In other words, a person similarly situated must be similarly treated. However, in this situation Plaintiff is clearly not being treated the same. Defendants clearly did not provide a statement of facts nor did they controvert Plaintiff's separate (numbered paragraph) statement of facts which under Antwi resulted in the dismissal of the motion for failure to annex a statement of material fact.

There is no rational basis or reason to allow a litigant to circumvent civil procedures or settled law. Although I am a non-attorney pro se litigant, I don't seek preferential treatment nor should I have to wonder, if a jurist is bias or obtuse. I would like to believe that your Honor and this Court is not bias towards me or any other pro se litigants. As a citizen of the United States of America and the great State of New York, I have faith in the Judicial system and the jurist entrusted in carrying out the business of the court. However, jurist are human and they sometimes overlook evidence and in some instances make mistakes. Rule 60 provides a pique-less mechanism to correct an oversite or error without initiating an appeal. Although it is difficult for some jurist to admit to an oversight or mistake in judgment a dedicated jurist who vowed to abide by the States Code of Conduct would respect and apply the law in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

**Rule 60(b)(3)**

Based on the record it is clear that the Defendant's and counsel submitted evidence which they know was false. Despite being informed of their false statements Defendant's and counsel failed to correct or cease with said misrepresentation. An attorney has a duty to correct false

13

statements of fact or law made to a tribunal or correct such false statement of fact or law see Rule 3.3 Candor Toward the Tribunal. In this instance counsels' action are sanctionable and should be treated with the same prosecutorial force as applied to Defendant for failure to comply with Rule 56. Here it is clear that Defendants committed fraud (whether previously called intrinsic or extrinsic) and intentionally misrepresented the fact which ultimately deprived Plaintiff of a fair hearing the opportunity to obtain affidavits, declarations or take discovery. Moreover, Defendants used the judicial system as a tool of injustice. As such the judgment against Plaintiff should be reversed and the claims against Defendant granted in its entirety.

## VI. PLAINTIFF'S OBJECTION TO JUDGMENT

### Plaintiff's TILA Claims Against Both Defendants

The Courts contention that Plaintiff merely alleges that defendants violated TILA and its implementing regulation, Regulation Z, by failing to provide adequate disclosures and seeks damages and rescission of the Loan (see FAC ¶¶ 28-35.) diminishes the breadth and depth of Defendants actions. It is important to point out that TILA provides damages for claims related to disclosures as well as all claims and defenses with respect to the mortgage that the consumer could assert against the creditor of the mortgage ( § 1641(d). Based on the determination December 12, 2021 "Memorandum and Order" Dot No. 25, the Court overlooked or misapprehended pertinent facts related to this case.

Although Defendants contend that TILA is inapplicable to them for neither is owner or assignee of the Loan, and that plaintiff's right to rescind is time-barred. (Defs. Br., ECF No. 24-1 at 7-9.). The Court should not agree with such an erroneous and illogical statement. It is settled law that "The holder of an instrument whether or not he is the owner may transfer or negotiate it and, except as otherwise provided in Section 3-603 on payment or satisfaction, discharge it or

14

enforce payment in his own name" (see UCC § 3-301). In this instance Defendants themselves proclaim to be the holder of the instrument with rights to collect. *See* Ex F. to the Comp, as such the equivalent to privity exist which holds Defendant's liable to any damage sustained by Plaintiff.

As described under § 1641(d), Plaintiff has a statutory right to damages against a holder ("assignee, transferee or purchaser") for all claims a consumer may have against the original creditor[6]. As described in the complaint and evident by his indorsement, Plaintiff signed as an accommodation party. Pursuant to UCC § 3-416 the addition of words to the signature of one of two or more makers or accepters creates a presumption that the signature is for the accommodation of the others.

Under UCC § 3-413(1) the maker or accepter of the instrument ("CitiMortgage") engages that he will pay the instrument according to its tenor at the time of his engagement or as completed pursuant to Section 3-115 on incomplete instrument. As evidenced by the qualified indorsement in blank, the instrument is incomplete and does not transfer ownership or title until complete. UCC § 3-104(b) states that "Any writing to be a negotiable instrument within this Article must… contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this Article" (emphasis added), as such the blank indorsement is conditional by default. Moreover, the qualified indorsement pro tanto discharges the obligor see (UCC § 3-802). Nevertheless, CitiBank and CitiMortgage promised to pay the instrument according to its tenor and they are therefore liable to Plaintiff for damages. TILA, also provides a statutory right of action against purchasers ("Cenlar") for accepting the debt obligation.

---

[6] The time to commence an action against an assignee is one year

### 1. Damages Claim

Plaintiff respectfully disagree with the Courts determination related to the dismissal of his complaint. The Courts contention that Defendants are merely servicer and subservicer is belied by the record. The face of the October 23, 1989 and the November 7, 2002 "Note" indicates the pro tanto discharge of all parties (UCC § 3-802). In addition, CitiMortgage qualified conditional indorsement in blank "Notes" evidence its prior ownership of Plaintiff's loan.

As the Court properly stated  "A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation." [sic] Dkt No. 25 page 5. (15 U.S.C. § 1641(f)(1)). Here, the qualified conditional blank indorsement on the note proves CitiMortgage was a prior ownership of the loan and depending on the turns of the transfer may still retain partial ownership of the debt obligation. Further proof of CitiMortgage ownership of the loan is evidenced by Cenlar's statement "The Loan was originated by Citibank. N.A. dba CitiMortgage, Inc and is Currently owned by Federal National Mortgage Administration" [sic} ¶ 2 of Cenlar's July 12, 2019 letter. In addition, the notice of transfer of mortgage servicing rights states that CitiMortgage transferred the mortgage servicing rights to Cenlar (Transferee servicer[7]). By accepting the transfer Cenlar is now the holder and owner of the debt obligation as prescribed under UCC § 3-301. As such Defendants are more than servicers and are liable to Plaintiff under TILA and RESPA.

In this instance both the principal ("CitiMortgage") and its agent ("Cenlar") is liable for their own action for failing to comply with federal statutes. Congress enacted TILA to deter assigners and purchasers from unconscionable activities which the average consumer would not detect. TILA was enacted to simplify a consumer's response to a predatory creditor/lender financial transaction. Without TILA a consumer would be faced with the daunting task of learning

---

[7] Transferee servicer means a servicer that obtains or will obtain the right to perform servicing pursuant to an agreement or understanding.

and understanding Contract, Surety, Real Estate, Bailment, Tort and Banking Law's in lieu of merely identifying an error related to pre-determined items in a disclosure.

As such the Court must ensure Defendant's compliance with TILA with the same enthusiasm as its focus on Plaintiff's acquisition of the loan and. Even if a consumer obtained a loan and failed to pay the loan, TILA provides a consumer with a cause of action as a defense, counterclaim or an original action if the lender is found to have violated TILA. The Courts discission appears to be partial, partisan and slanted in Defendant's favor. The Court cannot and should not enforce one part of a contract and consent or acquiesce to the violation of other parts of the contract. In this Instance Defendant's brazenly violated not only the terms of the contract but the statutory provisions enacted by Congress ("TILA").

The Court determined that Defendants was not the assignee or transferee of Plaintiff's loan. In order to enforce title or payment a litigant must provide evidence that he is a holder of the mortgage and note at the commencement of the action and proof of a default. In this instance action Defendant failed to provide evidence that he was the holder of the mortgage and note at the commencement of the action or that there was a default. As such Defendant's mortgage claim fails and Plaintiff is entitled to judgment on all claims as a matter of law.

**2. Rescission Claim**

The Court mistakenly asserts that the "March 15, 2019 notice of servicing transfer, demonstrates that his loan[8] was not transferred or assigned to defendants, but rather, the loan servicing rights were transferred from CitiMortgage to Cenlar as of April 1, 2019" [sic] Dkt No. 25 page 7, is belied by the face of the disclosure. The term servicer and servicing are distinctive terms and should not be viewed as synonymous. A "Servicer" may hold his own loan while

---

[8] The term loan is sometimes misinterpreted to include the "Note" when in fact it is merely the debt obligation.

"Servicing" is merely the act of performing certain function related to the loan. In this instance the face of the disclosure indicates a combination the "Notice of Servicing Transfer" and the transfer of service from the current servicer "CitiMortgage" to the new servicer "Cenlar"[9].

Moreover 12 CFR Part 1024 (Regulation X) defines Transferee servicer and Transferer servicer as:

> "Transferee servicer" means a servicer that obtains or will obtain the right to perform servicing pursuant to an agreement or understanding. "Transferor servicer" means a servicer, including a table-funding mortgage broker or dealer on a first- lien dealer loan, that transfers or will transfer the right to perform servicing pursuant to an agreement or understanding.

Here Citibank N.A. was the broker or dealer on the first-lien dealer loan and transferred the right to perform servicing to CitiMortgage *See* Ex H. to the Comp. The agreement transferred ownership of the loan to CitiMortgage (see term Master servicer[10] 1024.31).

15 U.S.C. § 1635(a) provides a statutory right to rescind "any consumer credit transaction". As defined under 15 U.S.C. § 1602(i) The adjective "consumer", used with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes.

In this instance Plaintiff is a consumer as defined under 15 U.S.C. 1602(i) which therefore affords him the right to rescind the March 15, 2019 "credit sale". A credit sale is defined under 15 U.S.C. § 1602(h) as "refers to any sale in which the seller is a creditor. The term includes any

---

[9] As noted on the face of the disclosure Cenlar is the new servicer. A new servicer obtains ownership of the debt obligation and has the rights of the holder who transferred it (UCC 3-301).
[10] The holder of a loan does not have to be the owner of the loan in order to transfer the loan (UCC 3-301).

18

contract in the form of a bailment or lease if the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the property and services involved and it is agreed that the bailee or lessee will become, or for no other or a nominal consideration has the option to become, the owner of the property upon full compliance with his obligations under the contract".

Here CitiMortgage is a creditor as evidenced by their own reporting to the credit reporting agency *See* Ex D. to the Comp, Moreover Cenlar admits that CitiBank N.A. dba CitiMortgage was the original lender *See* Ex A to the Comp. As such CitiMortgage ("creditor") was the seller of the March 15, 2019 consumer credit transaction. Therefore, Plaintiff has a statutory right to rescind the March 15, 2019 consumer credit transaction.

Defendant's claim that Plaintiff is currently in default of his loan and that Cenlar has rights to collect payment is patently false. Nevertheless, the Court has denied Defendant's mortgage claim when it stated "As discussed above, the documents attached to plaintiff's FAC, specifically, the March 15, 2019 notice of servicing transfer, demonstrate that his loan was not transferred or assigned to defendants, but rather, the loan servicing rights were transferred from CitiMortgage to Cenlar as of April 1, 2019. (See Ex. F.)" [sic] Dkt No. 25 page 7. Being that the Court determined the loan was not the transferee or assignee, Defendant's mortgage claim fails as a matter of law which precluded Cenlar from receive future payment.

In order to claim rights to the mortgage or the note Defendants must prove he has standing where it is the holder or assignee of both the subject mortgage and of the underlying note at the time the action is commenced). Kluge v. Fugazy, 145 A.D.2d 537, 536 N.Y.S.2d 92 (2d Dep't. 1988) (absent the transfer of the debt (the note), assignment of the mortgage is a nullity). As such

Plaintiff is entitled to a judgment precluding Defendant's from impeding, enforcing title or collecting payment.

### 3.  Plaintiff's FDCPA Claim Against Cenlar

Plaintiff sufficiently plead his FDCPA claim and provided substantial evidence in support of his claim. The March 15, 2019 consumer credit transaction provides sufficient evidence that Defendant is a new creditor. Pursuant to 15 U.S.C. § 1602(g)(2) The term "creditor" refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

The March 15, 2019 consumer credit transaction ("credit sale") is an agreement evidencing the indebtedness and security interest in Plaintiff's home. The Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., "imposes civil liability on 'debt collector[s]' for certain prohibited debt collection practices." Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 576 (2010). Kaltenbach v. Richards, 464 F.3d 524, 529 (5th Cir. 2006) (holding that entity satisfying the definition of "debt collector" falls under the FDCPA even if enforcing security interests). In this instance the disclosure provided was an attempt to mislead the consumer as to whether the transferee was the actual owner of the debt obligation or merely a servicing agent.

The record clearly shows Defendant Cenlar retaining partial interest in a security instrument secured by property which is used as the principal dwelling of the person to whom credit is extended. The record also shows that such interest arose by operation of law (UCC § 3-301). However, the debt obligation in question was pro tanto discharged as evident by the qualified

conditional indorsement in blank. Defendant Cenlar clearly misrepresented the status of Plaintiff's debt to the credit agencies and more alarming to this Court.

In *Anthony v. Fein, Such & Crane, LLC*, 5:15-CV-0452 (DNH/TWD) (N.D.N.Y. Sep. 28, 2016) The FDCPA provides that "any debt collector who fails to comply with any provisions of th[e] [Act] with respect to any person is liable to such person." 15 U.S.C. § 1692k(a). Successful plaintiffs may recover "actual damage[s]," plus costs and "a reasonable attorney's fee as determined by the court." Id. Emotional distress damages are among those recoverable as actual damages in cases alleging violation of the FDCPA. See Woods v. Sieger, Ross & Aguire, LLC, No. 11 Civ. 5698 (JFK), 2012 WL 1811628, at * 4, 2012 U.S. Dist. LEXIS 69972, at * 11- 12 (S.D.N.Y. May 18, 2012) (collecting cases) (finding $1,000 to fairly compensate Plaintiff who suffered feelings of fear, anxiety, panic, and nervousness, as well as stomach pains, sleep loss, and headaches," as a result of defendant's calls); Gervais v. O'Connell, Harris & Assoc., 297 F.Supp. 2d 435, 440 (D. Conn. 2003) (awarding $1,500 in emotional and mental distress damages).

Nevertheless, the Court has already determined that Defendants were neither an assignee or transferee hence Defendant's had no rights to claim the existence of the debt. That being said for 17 years CitiMortgage fraudulently claimed the existence of a debt and collected payment from Plaintiff. Such unconscionable behavior brings rise to TILA's statutory damages as well as punitive damages, emotional damages and actual damages. Defendants cannot be allowed to continue with such unscrupulous and depraved behavior so I plead to this Court to intervene immediately end such egregious acts.

**4. State Law Claim**

The Court improperly dismiss Plaintiff's breach of contract, breach of fiduciary, conversion and adding and abetting fraud claim. The ("State Law Claim") are actually part of

21

Plaintiff's 1641(d) and (e) TILA claims which provides a consumer with a one-year period to commence an action for damages against an assignee or purchaser.

Although the Court determined that Defendants were neither transferee's or assignee's (which precludes Defendant's from enforcing or claiming rights to title or collecting payment) the Courts failed to opine or enter a judgment against Defendant's mortgage default claim which under controlling law, can't be maintained without a favorable finding on that issue, see Rule 52(c). Being that the Court determined that Defendants were not transferee's or assignee's nor did Defendants provide admissible evidence authorizing then to enforce the terms of the loan, Defendants are required by law to return all the proceeds received (deposit, closing cost, principal and interest).

### 5. Leave to Amend

Although Plaintiff believes his claims are sufficiently plead and Defendants Motion is defective. I would ask the Court to compel a statement of material fact from Defendant so that I may controvert each statement with a corresponding statement of my own. It is difficult to address any alleged defects or properly address a pleading when the opposing party fails to provide the requisite statement of fact which the non-moving party needs to controvert.

Both Local Rule 56.1 and 56.2 mandate Defendant to serve certain documents on Plaintiff. Rule 56.1 states that "there shall be annexed to the notice a separate, short concise statement, in numbered paragraph, of the material facts as to which the moving party contends there is no genuine issue to be tried". Rule 56.2 states that "Any represented party moving for summary judgment against a party proceeding *pro se* shall serve and file as a separate document, together with the papers in support of the motion".

Based on your Honors decision in *Davis v. Town of Hempstead*, 14-CV-903 (JMA)(GRB) (E.D.N.Y. Jan. 16, 2019) it is evident that the Court understands the importance of strict compliance with Rule 56.1. Your Honor's failure to assure strict compliance with the rule threatens Plaintiff's equal protection under the law and his rights to due process.

Its' disheartening to hear the Court say that "plaintiff already had an opportunity to address the deficiencies in his original complaint that Cenlar identified in its motion to dismiss" [sic] Dkt No. 25 page 10. Defendant's failure to provide a statement of fact is the genesis of the deficient motion. Moreover, Defendant's failure to address Plaintiff's statement of facts should have resulted in the Court admitting all Plaintiff facts as truth (see Rule 56(e)(2)). A moving party's defective motion should not result in an unfavorable decision toward the non-moving party.

## CONCLUSION

There is no doubt that TILA requires certain disclosures with in three years of the consummation of any consumer credit transaction (operative words "any consumer credit transaction"). In this instance there are two consumer credit transaction related to Plaintiff's loan: the first is the November 7, 2002, the second is the April 1, 2019. An assignee/purchaser or transferee/purchaser is liable to the consumer for various violation on the face of the disclosure as determined under § 1640 or under § 1641. Moreover § 1641(d) allows a consumer to rescind a transaction as against any assignee of the obligation[11].

Under TILA a consumer has a private right of action against creditors, assignees and transferees in relation to any consumer credit transaction. The record shows that CitiMortgage and Cenlar entered a "credit sale" on March 15, 2019 and consummated said sale on April 1, 2019 See

---

[11] If the loan was entered in 2009 and the loan obligation is transferred each year thereafter until 2019, the consumer would have the right to rescind the transaction against the assignee of the 2019 transaction.

Ex. F to the Comp. As prescribed under 1635(a) Plaintiff has the right to rescind the April 1, 2019 consumer credit transaction as well as any relief under section 1640 of this title.

In addition, the record indicates that Defendant CitiMortgage was a prior owner of the Note evident by CitiMortgage's qualified indorsement in blank See Ex. F to the Comp, which would hold Defendants liable to all claims and defenses with respect to the mortgage that the consumer could assert against the creditor of the mortgage[12].

Congress enacted TILA to address predatory lending activities such as: aggressive pursuit of loan recipients, targeting of high-risk borrowers who cannot easily obtain or repay loans, misrepresentation of loan terms, charges, and fees and other forms of consumer fraud, discrimination, loan packing and loan flipping. TILA provides two forms of recovery, the statue state that a civil action may be brought against an assignee only for violations apparent from the disclosure statement "[e]xcept as otherwise specifically provided in this subchapter." 15 U.S.C. § 1641(a) & (e) (1). But § 1641(c) is such an exception: it specifically provides that a customer has the right to rescind against "*any* assignee of the obligation," § 1641(c) (emphasis added), and not just against the more limited set of assignees described in § 1641(a) and (e) (1).

In this instance the face of the March 15, 2019 disclosure is belied by the other documents assigned or disclosed (the Note). The qualified indorsement in blank on the face of the Note indicates the discharge of the debt as prescribed under UCC § 3-802. Moreover, Plaintiff is entitled to commence a civil action against Defendants for any claim against the mortgage a consumer could assert against the creditor of the mortgage. As such Plaintiff is entitled to commence an action against Defendants for CitiBank's failure to pay the indebtedness as promised see UCC § 3-413.

---

[12] CitiBank N.A. is the creditor for the November 7, 2002 credit transaction.

Defendants fail to prove that they or third-party beneficiaries, assignee's or transferee's. Moreover, the Court determined that the Defendants or neither assignee's or transferee's which precludes Defendant from enforcing title or payment. The fact that CitiMortgage admitted to fraudulently collecting payment for 17 years evidence damages incurred by Plaintiff and is entitled to all amounts paid plus statutory damages and punitive damages of at least 10 time to actual damages to deter Defendant's action. The statutory scheme of TILA intends for these damages to be severable to hold each servicer liable for its actions and inspire servicers to review and police themselves.

As such Plaintiff respectfully ask this court to amend its findings dismissing this complaint and grant Plaintiff's claims in its entirety or in the alternative order a new trail.

Respectfully.

Signed this 10th day of January, 2022.

Roger Rowe
Pro Se
20 Spruce rd
Amityville, NY 11701
Tel: (631) 767-6537
rroweny@gmail.com

# EXHIBIT A

FILED
CLERK

1:34 pm, Dec 29, 2021

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
ROGER ROWE,

      Plaintiffs,

  - against -

CENLAR LAB and CITIMORTGAGE, INC.,

      Defendant.
-------------------------------------------------------X

**JUDGMENT**
CV 19-7278 (JMA)(AYS)

   A Memorandum and Order of Honorable Joan M. Azrack, United States District Judge,
having been filed on December 22, 2021, granting defendant's motion to dismiss the first
amended complaint with respect to plaintiff's TILA and FDCPA claims for failure to state a
claim pursuant to Federal Rules of Civil Procedure 12(b)(6), the Court declines to retain
jurisdiction over plaintiff's remaining state law claims and dismisses those claims without
prejudice, denying plaintiff's request, in his opposition papers, for leave to "amend [his]
complaint a second time", denying *in forma pauperis* status for the purpose of any appeal, and
respectfully directing the Clerk of the Court to close this case, it is

   **ORDERED AND ADJUDGED** that plaintiff Roger Rowe take nothing of defendants
Cenlar Lab and CitiMortgage, Inc.; that defendants' motion to dismiss the first amended
complaint with respect to plaintiff's TILA and FDCPA claims are granted; that the Court
declines to retain jurisdiction over plaintiff's state law claims and dismisses those claims without
prejudice; that plaintiff's request for leave to amend his complaint for a second time is denied;
that *in forma pauperis* status for the purpose of any appeal is denied; and that this case is closed.

Dated: December 29, 2021
       Central Islip, New York

DOUGLAS C. PALMER
CLERK OF THE COURT

BY:   /s/ MARY ELLEN KIRCHNER
      DEPUTY CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

ROGER ROWE,

                 Plaintiff,

         -against-

CENLAR FSB, CITIMORTGAGE, INC.,

                 Defendants.
--------------------------------------------------------------X

<u>For Online Publication Only</u>

**<u>MEMORANDUM AND ORDER</u>**
19-CV-07278 (JMA) (AYS)

FILED
CLERK

3:18 pm, Dec 22, 2021

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**APPEARANCES:**

Roger Rowe
    *Pro Se Plaintiff*

Lijue T. Philip
Stradley Ronon Stevens & Young, LLP
100 Park Avenue, Suite 2000
New York, New York 10017
    *Attorney for Defendants Cenlar FSB and CitiMortgage, Inc.*

**AZRACK, United States District Judge:**

Plaintiff Roger Rowe ("plaintiff"), acting <u>pro se</u>, commenced this action against defendants Cenlar FSB ("Cenlar") and CitiMortgage, Inc. ("CitiMortgage") (together, the "defendants") for allegedly violating federal and state laws in connection with a home mortgage refinancing. Plaintiff's first amended complaint seeks to rescind the loan he received from non-party CitiMortgage N.A. and to terminate the lien on the property. (First Amended Complaint ("FAC"), ECF No. 19.) This Court has jurisdiction pursuant to 28 U.S.C. § 1331 over the plaintiff's federal claims under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 <u>et seq.</u>, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 <u>et seq.</u>

Before the Court is defendants' motion to dismiss the FAC for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Court

grants defendants' motion as to plaintiff's federal claims and dismisses those claims with prejudice. Additionally, because the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims, those claims are dismissed without prejudice.

# I. BACKGROUND

## A. Factual Background[1]

On November 7, 2002, plaintiff entered into a Consolidation Extension and Modification Agreement ("Modification Agreement") with Citibank, N.A. in the amount of $157,500.00 (the "Loan") with respect to refinancing a mortgage on the property located at 20 Spruce Avenue, Amityville, New York (the "Property"). (FAC ¶¶ 9, 14, Ex. B.) On that same date, plaintiff signed a Truth-in-Lending Disclosure Statement with regard to the Loan. (FAC, Ex. L.) Pursuant to a notice of servicing transfer dated March 15, 2019, effective April 1, 2019, Cenlar began servicing plaintiff's Loan on behalf of CitiMortgage. (FAC, Ex. F.) Plaintiff claims that he was informed of the transfer of servicing rights on or about July 12, 2019. (FAC ¶ 15.)

Plaintiff failed to make the June 2019 and July 2019 monthly payments on the Loan. (Ex. A.) At that time, Federal National Mortgage Administration ("FNMA") was the current owner of plaintiff's Loan. (FAC ¶ 10, Ex. A.) On October 21, 2019, claiming TILA violations, plaintiff purported to rescind the Loan by sending Cenlar a notice of rescission. (FAC, Ex. C.)

## B. Procedural Background

Plaintiff commenced an action against Cenlar on December 30, 2019 alleging violations of TILA, the FDCPA, the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., and various state law

---

[1] The following facts are taken from plaintiff's FAC and the exhibits attached thereto, and are undisputed, unless otherwise indicated. See Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004). The factual allegations in the FAC are presumed true for purposes of resolving the defendants' motion to dismiss. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 110-11 (2d Cir. 2010).

claims. (ECF No. 1.)  On April 28, 2020, Cenlar filed a motion to dismiss plaintiff's complaint. (ECF No. 11.)  After the motion was fully briefed by both parties (ECF Nos. 12, 13), on August 6, 2020, plaintiff filed a motion to amend the complaint.  (ECF No. 14.)  By docket entry order dated March 15, 2021, the Court granted plaintiff's motion to amend the complaint and denied Cenlar's motion to dismiss as moot.  (Electronic Order, March 15, 2021.)   On March 22, 2021, plaintiff filed his FAC alleging violations of TILA, as well as state law claims for conversion, breach of contract, breach of fiduciary duty and aiding and abetting fraud against Cenlar and CitiMortgage.  The FAC also alleges a FDCPA claim against Cenlar.  As relief, plaintiff requests that the Court declare the Loan void; and demands the return of monies paid, damages, costs and attorney fees.  On August 11, 2021, defendants filed a fully briefed motion to dismiss on behalf of all parties.  (ECF No. 24.)

## II. DISCUSSION

### A. <u>Standard of Review</u>

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Twombly</u>, 550 U.S. at 556).  Mere labels and legal conclusions will not suffice.  <u>Twombly</u>, 550 U.S. at 555.  In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  <u>Cleveland v. Caplaw Enters.</u>, 448 F.3d 518, 521 (2d Cir. 2006).  A court may also consider materials attached

3

to the complaint, materials integral to the complaint, and materials incorporated into the complaint by reference. Sira, 380 F.3d at 67.

While a court is required to read a plaintiff's pro se complaint liberally and interpret it as raising the strongest arguments it suggests, a pro se plaintiff must still plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

## B. Plaintiff's TILA Claims Against Both Defendants

Plaintiff alleges that defendants violated TILA and its implementing regulation, Regulation Z, by failing to provide adequate disclosures and seeks damages and rescission of the Loan. (FAC ¶¶ 28-35.)

Defendants contend that TILA is inapplicable to them as neither defendant is an owner or assignee of the Loan, and further argues that plaintiff's right to rescind is time-barred. (Defs. Br., ECF No. 24-1 at 7-9.)[2] The Court agrees.

### 1. Damages Claim

TILA provides that "not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer." 15 U.S.C. § 1641(g)(1) (emphasis added). Similarly, Regulation Z, which is the "regulatory vehicle through which TILA is implemented," McLean-Laprade v. HSBC, No. 12-CV-1774, 2013 WL 3930565, at *8 (W.D.N.Y. July 30, 2013), requires that a "covered person" —defined as any person "that becomes the owner of an existing mortgage loan by acquiring legal title to the debt obligation, whether through

---

[2] For ease of reference, the Court refers to the electronic document filing system ("ECF") pagination.

4

purchase, assignment or other transfer. . ." — is required to provide a disclosure regarding the transfer of the mortgage. 12 CFR 1026.39(a)(1), (b).

Here, plaintiff claims that defendants violated § 1641(g)(1) and Regulation Z when they allegedly failed to provide him with notice of the mortgage transfer and the requisite notice of rescission. (FAC ¶¶ 30-32; Pl. Opp. Br., ECF No. 24-4 at 10, 15-17.) However, as the servicer and subservicer of the Loan, CitiMortgage and Cenlar, respectively, had no ownership interest in the Loan itself. See § 1641(f) ("A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation.") The Loan Modification Agreement provides that Citibank N.A. was the original creditor of plaintiff's Loan. (FAC, Ex. B at 67.) Pursuant to the notice of servicing transfer, attached to plaintiff's complaint, effective April 1, 2019, CitiMortgage transferred its servicing rights to Cenlar as subservicer of the Loan. (FAC, Ex. F.) Therefore, §1641(g)(1) and its Regulation Z are inapplicable to Cenlar and CitiMortgage as they are loan servicers and not "owner[s] or assignee[s]" of the Loan. See Thrane v. Litton Loan Servicing LP, No. 08-CV-4149, 2009 WL 9121140, at *2 (E.D.N.Y. Oct. 27, 2009) (dismissing TILA claim against mortgage loan servicer when it was "not now and has never been an assignee of the [ ] loan"); Blaize–Sampeur v. McDowell, No. 05-CV-4275, 2006 WL 3903957, at *3 n. 4 (E.D.N.Y. Oct. 18, 2006) (finding TILA did not apply to loan servicing company).

In fact, according to plaintiff's own allegations, non-party, FNMA is the transferee of the Loan. (FAC ¶ 10.) Thus, only FNMA, as the "new owner or assignee," would have been obligated to notify plaintiff of the transfer of ownership. See § 1641(g)(1). As loan servicers, neither Cenlar nor CitiMortgage was required to disclose the transfer of the Loan to third party FNMA.

Therefore, plaintiff fails to state a TILA claim for damages against either defendant and his claim is dismissed.

### 2. **Rescission Claim**

Plaintiff claims that he rescinded the Loan on October 21, 2019 in accordance with TILA. (FAC ¶ 33, Ex. C.)

Defendants contend that plaintiff's claim for rescission is time-barred. (Defs. Br. at 7-8.) The Court agrees.

TILA provides that borrowers have until midnight of the third business day following the consummation of a loan transaction to rescind the transaction. 15 U.S.C. § 1635(a). A borrower's right of rescission is extended from three days to three years if the lender fails to provide notice of the borrower's right of rescission or fails to make a material disclosure. See § 1635(f) ("An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first."); Beach v. Ocwen Fed. Bank, 523 U.S. 410, 419 (1998).

Pursuant to plaintiff's FAC, the Loan transaction occurred on November 7, 2002. (FAC ¶ 9.). The fully executed Truth-in-Lending Disclosure Statement attached to plaintiff's complaint is also dated November 7, 2002. (FAC, Ex. L.) Therefore, plaintiff's right to rescind the Loan expired on November 10, 2002. See § 1635(a). However, even if, as plaintiff suggests, he was not provided with the Truth-in-Lending Disclosure Statement on November 7, 2002, plaintiff's right to rescission would have expired three years after the date of consummation of the Loan, on or about November 7, 2005 — fourteen years prior to plaintiff's alleged rescission on October 21, 2019. See § 1635(f).

Plaintiff refers to the April 1, 2019 loan servicing transfer to Cenlar as a "credit sale" and considers Cenlar "the new creditor" in this alleged "transfer of ownership of the debt." (Pl. Opp. Br. at 12, 15; see FAC ¶¶ 30, 45.) Therefore, plaintiff claims, his right to rescind was extended three years from April 1, 2019 to April 1, 2022 due to defendants' alleged failure to provide him with "the required disclosure and or notice of his right to rescind." (Pl. Opp. at 10, 19.) However, Plaintiff is incorrect.

As discussed above, the documents attached to plaintiff's FAC, specifically, the March 15, 2019 notice of servicing transfer, demonstrate that his loan was not transferred or assigned to defendants, but rather, the loan servicing rights were transferred from CitiMortgage to Cenlar as of April 1, 2019. (See Ex. F.) Plaintiff fails to properly plead that the ownership interest in plaintiff's Loan was assigned or transferred to either defendant. Thus, because plaintiff's right to rescind expired, at the latest, three years from the November 7, 2002 Loan consummation, plaintiff's claim of rescission is untimely.[3] Accordingly, as plaintiff fails to state a claim for rescission pursuant to TILA, his claim is dismissed.

## C. **Plaintiff's FDCPA Claim Against Cenlar**

The FDCPA was created to respond to the "use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). Under the FDCPA, "debt collectors" are persons engaged in "any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another." Id. § 1692a(6). The FDCPA explicitly excludes from the definition of "debt collector" "any person collecting or attempting to collect any debt owed or due or asserted

---

[3] Additionally, the Court notes that because TILA's statute of limitation for damages is one-year from the date of the alleged violation, 15 U.S.C. § 1640(e), any claim for damages with respect to an alleged Truth-in-Lending violation would also be time-barred.

7

to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person." Id. § 1692a(6)(F). Thus, "[a] mortgage servicer is a 'debt collector' within the meaning of the FDCPA if the mortgage was in default at the time the servicer began servicing the debt." Zirogiannis v. Seterus, Inc., 221 F. Supp. 3d 292, 302 (E.D.N.Y. 2016), aff'd, 707 F. App'x 724 (2d Cir. 2017); Diaz v. Residential Credit Sols., Inc., 297 F.R.D. 42, 49 (E.D.N.Y. 2014) (The actions of a mortgage servicer are only covered under the FDCPA "if the debt at issue was acquired after the customer or debtor defaulted on the loan in question."); Dolan v. Fairbanks Capital Corp., 930 F. Supp. 2d 396, 415-16 (E.D.N.Y. 2013) (holding that a mortgage servicer was not a "debt collector" because the plaintiff was not in default when the servicer began servicing the mortgage).

Plaintiff fails to sufficiently allege that Cenlar is a "debt collector" subject to liability under the FDCPA. The exhibits attached to plaintiff's complaint demonstrate that the Loan was not in default until June 2019, two months after Cenlar began servicing the Loan. (See Ex. A, F.) As plaintiff's allegations are insufficient to establish that Cenlar obtained the Loan when it was in default, plaintiff fails to allege that Cenlar was a debt collector within the meaning of the FDCPA. See Alibrandi v. Fin. Outsourcing Servs., Inc., 333 F.3d 82, 88 (2d Cir. 2003) ("[A]n entity cannot be a debt collector unless the debt it attempts to collect is in default.") (citing 15 U.S.C. § 1692a(6)(F)(iii)); Zirogiannis, 221 F. Supp. 3d at 302-03 (finding a complaint insufficient to survive dismissal where the plaintiff failed to plead that the alleged debt collector became a loan servicer after the disputed debt entered default). Therefore, plaintiff fails to state a claim against Cenlar arising under the FDCPA. Accordingly, plaintiff's FDCPA claim against Cenlar is dismissed.

**D. State Law Claims**

Plaintiff asserts state law claims against both defendants for conversion, breach of contract, breach of fiduciary duty and aiding and abetting fraud.

Where no federal claims remain in an action, and diversity jurisdiction is lacking, a district court is not required to retain jurisdiction of remaining state law claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction [ ] if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); see also United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) . . ., courts should 'abstain from exercising pendent jurisdiction.'" Birch v. Pioneer Credit Recovery, Inc., No. 06-CV-6497, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) (quoting Walker v. Time Life Films, Inc., 784 F.2d 44, 53 (2d Cir. 1986)).

Having determined that plaintiff's federal claims in this action do not survive defendants' motion to dismiss, the Court concludes that retaining jurisdiction over any state law claims is unwarranted. See § 1367(c)(3). Accordingly, the Court dismisses plaintiff's state law claims without prejudice.

**E. Leave to Amend**

In his opposition papers, plaintiff requests leave to "amend [his] complaint a second time." (See Pl. Affirmation in Opp. to Defs. Mot., ECF No. 24-6 at 7.)

"A pro se plaintiff should ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Shomo v. City of New York, 579 F.3d 176, 183 (2d Cir. 2009) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795-96 (2d Cir. 1999) (internal quotation marks omitted)). However, while "pro se

9

plaintiffs are generally given leave to amend a deficient complaint, a district court may deny leave to amend when amendment would be futile." Id. (citations omitted). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Lucente v. Int'l Bus. Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002) (citation omitted). Moreover, while amendments to pro se complaints should be granted "fairly freely," even pro se litigants are not entitled to unlimited opportunities to amend their pleadings. Holmes v. Goldin, 615 F.2d 83, 85 (2d Cir. 1980) (citation omitted); Best v. City of N.Y., No. 12-CV-7874, 2014 WL 163899, at *3 (S.D.N.Y. Jan. 15, 2014).

The Court has carefully considered whether leave to amend is warranted here. Notably, plaintiff has already amended his complaint once and was able to review defendants' motion to dismiss prior to filing his amended complaint. Thus, plaintiff already had an opportunity to address the deficiencies in his original complaint that Cenlar identified in its motion to dismiss. That alone is reason to deny leave to amend here. Additionally, even a liberal reading of the FAC does not give any indication that a valid claim might be stated by plaintiff. Accordingly, leave to amend the FAC is denied.

### III. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted with respect to plaintiff's TILA and FDCPA claims. The Court declines to retain jurisdiction over plaintiff's remaining state law claims and dismisses those claims without prejudice.

Although Plaintiff paid the filing fee to commence this action, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that, should he seek in forma pauperis status for the purpose of an appeal, any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

10

The Clerk of the Court is directed to send a copy of this Order to the <u>pro se</u> plaintiff and mark this case closed.

**SO ORDERED.**

Dated:  December 22, 2021
        Central Islip, New York

                               __/s/ (JMA)_____

                               JOAN M. AZRACK
                               UNITED STATES DISTRICT JUDGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

ROGER ROWE,

                Plaintiff,

      v.

CENLAR FSB; CITIMORTGAGE, INC.,

                Defendants.

Case No.: 2:19-cv-7278-JMA-AYS

---

## MOTION OF DEFENDANTS CENLAR FSB AND CITIMORTGAGE, INC. TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(6)

Defendants, Cenlar FSB and CitiMortgage, Inc., hereby move for the dismissal of the First Amended Complaint pursuant to Federal Rules of Civil Procedure Rule 12(b)(6). In support of this Motion, Defendants incorporate by reference the accompanying Memorandum of Law. A proposed Order is attached.

Dated: June 17, 2021  
New York, NY

STRADLEY RONON STEVENS & YOUNG, LLP

By:   /s/ *Lijue T. Philip*

Lijue T. Philip  
100 Park Avenue, Suite 2000  
New York, New York 10017  
Telephone: (212) 812-4124  
Facsimile: (646) 682-7180  
LPhilip@stradley.com

*Counsel for Cenlar FSB and CitiMortgage, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

ROGER ROWE,

              Plaintiff,

      v.

CENLAR FSB; CITIMORTGAGE, INC.,

             Defendants.

Case No.: 2:19-cv-7278-JMA-AYS

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(6)**

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ............................................................................................................. 1

II. FACTUAL BACKGROUND ........................................................................................... 1

III. ARGUMENT .................................................................................................................... 2

    A. Legal Standard ..................................................................................................... 2

    B. Plaintiff's Claim For Rescission Pursuant To TILA Is Time-Barred ............... 3

    C. Plaintiff Fails To State Claims Against Cenlar Or CitiMortgage under TILA .................................................................................................................. 4

    D. Plaintiff Fails To State A Claim For Breach of Contract .................................... 5

    E. Plaintiff Fails To State A Claim For Breach of Fiduciary Duty ......................... 7

    F. Plaintiff Fails To State A Claim For Conversion Against Cenlar Or CitiMortgage ....................................................................................................... 8

        1. Plaintiff Fails To State A Claim For Common Law Conversion ........... 8

        2. Plaintiff Fails To State A Claim For Conversion Pursuant To The UCC ....................................................................................................... 9

    G. Plaintiff's FDCPA Claim Fails Because Cenlar is not a Debt Collector .......... 10

    H. Plaintiff Fails To State A Claim For Aiding And Abetting ............................... 11

    I. Plaintiff Should Not Be Permitted To Amend His Complaint A Second Time Because Doing So Would Be Futile ......................................................... 12

IV. CONCLUSION ............................................................................................................... 13

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beach v. Ocwen Federal Bank,*
    523 U.S. 410, 118 S.Ct. 1408 (1998) ........................................................................ 3

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................................ 2

*Dougherty v. North Hempstead Bd. of Zoning Appeals,*
    282 F.3d 83 (2d Cir. 2002) .................................................................................... 12

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.,*
    837 F.Supp.2d 162 (2d Cir. 2011) ......................................................................... 7

*Fed. Deposit Ins, Corp. v. Wilson,*
    11-CV-0065, 2013 WL 1236864 (E.D. N.Y. Mar. 26, 2013) ................................. 11

*Hourani v. Wells Fargo Bank, N.A.,*
    158 F.Supp.3d 142 (E.D. N.Y. Feb. 1, 2016) ......................................................... 8

*Kapsis v. Am. Home Mortg. Servicing Inc.,*
    923 F.Supp.2d 430 (E.D. N.Y. Feb. 14, 2013) ....................................................... 6

*Prezzi v. Schelter,*
    469 F.2d 691 (2d Cir. 1972) .................................................................................. 3

*Qurashi v. Ocwen Loan Servicing, LLC,*
    760 Fed.Appx. 66 (2d Cir. 2019) .......................................................................... 10

*RCN Telecom Services, Inc. v. 202 Centre Street Realty LLC,*
    156 Fed.Appx. 349 (2d Cir. 2005) ........................................................................ 6

*Roth v. CitiMortgage, Inc.,*
    756 F.3d 178 (2d Dept. 2014) ............................................................................. 10

*Shoemaker v. State of Cal.,*
    101 F.3d 108 (2d Cir. 1996) .................................................................................. 3

*Thyroff v. Nationwide Mut. Ins. Co.,*
    360 Fed.Appx. 179 (2d Cir. 2010) ......................................................................... 8

*Vigiliant Ins. Co. of America v. Housing Authority of City of El Paso, Tex.,*
    87 N.Y.2d 36, 660 N.E.2d 1121 (1995) ................................................................. 8

ii

**Statutes**

15 U.S.C. § 1635(a) ....................................................................................................3, 4, 12

15 U.S.C. § 1635(f) ........................................................................................................3, 4

15 U.S.C. § 1640 ................................................................................................................4

15 U.S.C. § 1641(g) .......................................................................................................4, 5

FDCPA ....................................................................................................................1, 10, 11

NY UCC § 3-201(3) ....................................................................................................9, 11

NY UCC § 3-204(2) ....................................................................................................9, 11

NY UCC § 3-419 ...............................................................................................................9

TILA ...............................................................................................................................1, 3

UCC .....................................................................................................................8, 9, 10

**Other Authorities**

12 C.F.R. § 1026.39 ..........................................................................................................5

Federal Rules of Civil Procedure Rule 12(b)(6) ..........................................................1, 2, 12, 13

Federal Rules of Civil Procedure Rule 8 ..........................................................................3

Defendants, Cenlar FSB ("Cenlar") and CitiMortgage, Inc. ("CitiMortgage") (collectively referred to as "Defendants"), submit this Memorandum of Law in support of its Motion to Dismiss this action pursuant to Federal Rules of Civil Procedure Rule 12(b)(6).

## I.   **INTRODUCTION**

In response to Cenlar's motion to dismiss his complaint, Plaintiff sought and was granted leave to amend his complaint.  However, the complaint as amended does not resolve any of the issues Cenlar raised in its first motion to dismiss and dismissal remains appropriate.  Plaintiff reasserts her cause of action to rescind his mortgage loan pursuant to the Truth in Lending Act ("TILA"), but does so nearly fourteen years too late.  Plaintiff alleges that the defendants are guilty of breach of contract, but fail to allege the existence of a contract between the parties.  Plaintiff alleges that defendants "converted" a security agreement by not returning it upon demand, but demonstrates by his own complaint that he made no such demand.  Plaintiff alleges that the defendants violated the Fair Debt Collection Practices Act ("FDCPA"), but fails to allege that either Cenlar or CitiMortgage are debt collectors.  Indeed, he affirmatively proves the contrary by the allegations in his own complaint.  Accordingly, Plaintiff's First Amended Complaint fails to state a claim upon which relief can be granted and should be dismissed with prejudice.

## II.   **FACTUAL BACKGROUND**

On or about November 7, 2002, Plaintiff entered into a Consolidation Extension and Modification Agreement ("CEMA") with Citibank, N.A. (the "Loan"), which created a single lien in the amount of $157,500.00 on the property known as 20 Spruce Road, Amityville, New York 11701-1019 (the "Property").  *See* First Amended Compl. ("Compl."), Ex. B.  Plaintiff signed a Truth in Lending Disclosure Statement at the time he signed the CEMA on November 7, 2002. *See* Compl., Ex. L.

Effective April 1, 2019, Cenlar began subservicing the Loan on behalf of CitiMortgage. *See* Compl., Ex. F. A little more than three months after this service transfer, Plaintiff fell two months behind on his monthly payments on the Loan, with payments for both June 2019 and July 2019 due as of July 12, 2019. *See* Compl., Ex. A.

Plaintiff claims to have rescinded the Loan pursuant to TILA by correspondence dated October 21, 2019. *See* Compl., Ex. C. Notably, this was nearly twelve years after Plaintiff entered into the CEMA and signed the Truth in Lending Disclosure Statement. Likewise, Plaintiff makes no claim that he returned the proceeds from the Loan or transferred title to the Property to the holder of the CEMA.

For the reasons set forth below, Plaintiff's Complaint fails to state a claim and should be dismissed with prejudice.

## III.    ARGUMENT

### A.    Legal Standard.

A complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim if it does not contain "enough facts to state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. Further, a complaint must contain more than unsupported legal conclusions. *See id.* at 555. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.

"[A] complaint … must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 562 (internal citations and quotations omitted).

2

A pro se plaintiff is typically afforded liberal pleading standards, however a pro se plaintiff must still comply with Rule 8 in order to survive a motion to dismiss. *See Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972); *accord, Shoemaker v. State of Cal.*, 101 F.3d 108 (2d Cir. 1996).

Here, Plaintiff is unable to plead the elements of the three claims he asserts against Defendants, and Plaintiff's Complaint should therefore be dismissed with prejudice.

## B.  Plaintiff's Claim For Rescission Pursuant To TILA Is Time-Barred.

Plaintiff readily acknowledges that the Loan at issue in this action was originated nearly eighteen years ago. Plaintiff himself includes a copy of a Truth in Lending Disclosure Statement from eighteen years ago which bears his signature. Yet, Plaintiff claims that he rescinded the loan seventeen years after he signed the disclosure statement. Plaintiff's claim is not supported by either the facts as he alleges them or the law.

15 U.S.C. § 1635(a) provides that,

> in the case of any consumer credit transaction…in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with the regulations of the Bureau, of his intention to do so.

The time to rescind is governed by 15 U.S.C. § 1635(f), which states, "[a]n obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, *notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor…*" (emphasis added). *See also Beach v. Ocwen Federal Bank*, 523 U.S. 410, 410, 118 S.Ct. 1408, 1408 (1998). Generally, a cause of action pursuant to TILA seeking

3

damages must be brought "within one year from the date of the occurrence of the violation…" 15 U.S.C. § 1640.

In commencing this action, Plaintiff alleges that the Loan at issue originated on November 7, 2002. *See* Compl. ¶ 9. Further, Plaintiff himself annexes a copy of the Truth in Lending Disclosure Statement bearing his signature and dated November 7, 2002 to his First Amended Complaint. *See* Compl., Ex. L. Thus, Plaintiff had until November 10, 2002 to rescind the Loan and did not do so. By Plaintiff's inclusion of this signed disclosure form, he defeats his own claim for rescission as well as for damages for the failure to provide the disclosure. Assuming *in arguendo* that Plaintiff did not receive the Truth in Lending Disclosure Statement – which is inconceivable in light of Plaintiff's signature and his decision to annex the document to his First Amended Complaint – Plaintiff still had until November 6, 2005 to rescind the Loan pursuant to 15 U.S.C. § 1635(f). Yet, Plaintiff claims he exercised his right of rescission on October 21, 2019. *See* Compl. ¶ 33. This was nearly *fourteen years* too late. Plaintiff's election of rescission pursuant to 15 U.S.C. 1635(a) is untimely. Similarly, Plaintiff's cause of action for damages would have accrued on November 7, 2002, when he was entitled to said disclosures and would be time-barred on November 6, 2003, pursuant to 15 U.S.C. § 1640. Accordingly, Plaintiff's claims under TILA should be dismissed.

### C. Plaintiff Fails To State Claims Against Cenlar Or CitiMortgage under TILA.

Plaintiff alleges that Cenlar and CitiMortgage violated 15 U.S.C § 1641(g) of TILA when both allegedly failed to inform him of the transfer of the Loan to Federal National Mortgage Association ("FNMA"). However, both section 1641(g) of TILA and its corresponding regulatory section demonstrate that neither Cenlar nor CitiMortgage are guilty of any such violation.

15 U.S.C. 1641(g)(1) provides that, "not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, *the creditor that is the*

4

*new owner or assignee* of the debt shall notify the borrower in writing of such transfer…" (emphasis added).

Further, the related regulatory provision of TILA, 12 C.F.R. § 1026.39(a)(1), defines a "covered person" having such a disclosure obligation as any person "that becomes the *owner* of an existing mortgage loan by acquiring legal title to the debt obligation, whether through a purchase, assignment or other transfer…" (emphasis added). 12 C.F.R. § 1026.39(b) goes on to specify that any such covered person is required to provide a disclosure regarding the transfer of the mortgage loan.

Plaintiff's own complaint demonstrates that 15 U.S.C. § 1641(g) is not applicable to either Cenlar or CitiMortgage. Plaintiff asserts that CitiMortgage and Cenlar violated 15 U.S.C § 1641(g) when both allegedly failed to disclose that the Loan was transferred to FNMA. *See* Compl. ¶ 16. However, the statute on which Plaintiff relies places the onus not upon Defendants but rather upon "the creditor that is the new owner or assignee..." 15 U.S.C. § 1641(g)(1). Similarly, 12 C.F.R. § 1026.39(a)(1) places the requirement on the *transferee* of the mortgage loan. Taking Plaintiff's allegation as true for the purposes of this motion, FNMA – not Cenlar or CitiMortgage – would be the creditor and/or transferee under 15 U.S.C. § 1641(g)(1) and thus the "covered person" under 12 C.F.R. § 1026.39(a)(1). *See* Compl. ¶ 10.

Therefore, Plaintiff fails to state a claim pursuant to TILA against either Cenlar or CitiMortgage under 15 U.S.C. § 1641(g) where Plaintiff's own complaint establishes neither were the owner or assignee of the Loan or "covered persons" as contemplated under the regulation.

### D. **Plaintiff Fails To State A Claim For Breach of Contract.**

Plaintiff alleges that Cenlar and CitiMortgage have breached their contract with Plaintiff. However, Plaintiff himself demonstrates that there is no actual contract between the parties to this action. In the absence of this very first element, Plaintiff fails to state a claim for breach of contract.

5

"The elements of a breach of contract claim in New York are: (1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach." *RCN Telecom Services, Inc. v. 202 Centre Street Realty LLC*, 156 Fed.Appx. 349, 350 (2d Cir. 2005). Generally speaking, a loan servicer cannot be held liable for breach of contract in the absence of an independent contract with the plaintiff unless there is an allegation of an agency relationship. *See Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F.Supp.2d 430, 451 (E.D. N.Y. Feb. 14, 2013) (breach of contract action dismissed against loan servicer in the absence of an independent contractual relationship or an alleged agency relationship with a party in privity).

Plaintiff fails to set forth the existence of a contract as between CitiMortgage and/or Cenlar and himself. The "contract" Plaintiff points to is the note and mortgage between Plaintiff and Citibank, N.A. *See* Compl. ¶ 62. Plaintiff does not allege either Cenlar or CitiMortgage are parties to this contract and a review of the agreements fail to show any privity. Further, while Plaintiff alleges that, "[a]s evident by the indorsement on the Note, Citibank, N.A. materially changed the contract when it added CitiMortgage and Cenlar as a party's (sic)" (*Id.* at ¶ 68), a review of the indorsements fail to support such a claim. Neither note included in the complaint are indorsed in favor of either Cenlar or CitiMortgage. In the absence of an independent contractual relationship between Plaintiff and Cenlar and/or CitiMortgage and the allegation of any agency relationship, Plaintiff fails to state a claim for breach of contract.

Notwithstanding Defendants' lack of privity to the contract at issue, Plaintiff does not even allege a breach on Defendant's part. Plaintiff alleges, "Citibank N.A. breached the contract when they negligently altered the contract by means of an unauthorized signature which resulted in the sale of Plaintiff (sic) mortgage obligation. Citibank N.A. did not get Plaintiff's authorization to

6

sale (sic) Plaintiff's collateral or associated debt obligation." Compl. ¶ 65. Plaintiff's claims are clearly targeted at Citibank, N.A., which he readily admits is a "non party (sic) to this action". *See* Compl. ¶ 9. Plaintiff does not otherwise allege how Cenlar and/or CitiMortgage would be liable for actions which it alleges Citibank N.A. undertook. Therefore, Plaintiff fails to sufficiently allege that it was Defendants which breached the terms of the note or mortgage.

Finally, even if Cenlar and/or CitiMortgage were subject to claims that Plaintiff makes solely against Citibank, N.A., Plaintiff still does not establish a breach. As noted, Plaintiff claims that Citibank, N.A. indorsed and negotiated the note without his prior consent. *See* Compl. ¶ 65. However, the mortgage Plaintiff signed specifically stated, "[t]he Note or an interest in the Note, together with this Security Instrument, may be sold one or more times. I may not receive any prior notice of these sales." *See* Compl., Ex. B. Thus, indorsement and negotiation of the note without Plaintiff's prior consent was contemplated and agreed to by the parties to the mortgage. Plaintiff fails to establish the existence of a breach of the note or mortgage.

### E.     <u>Plaintiff Fails To State A Claim For Breach of Fiduciary Duty.</u>

Interwoven in his claim for breach of contract, Plaintiff alleges that Cenlar and CitiMortgage breached their respective fiduciary duties to Plaintiff. However, Plaintiff fails to demonstrate the existence of a contractual relationship amongst the parties and any other sort of relationship which could give rise to a fiduciary obligation. In the absence of any such relationship, there cannot be a breach of a fiduciary duty.

"To state a claim for breach of fiduciary duties under New York law, a plaintiff must establish: '(1) a fiduciary duty existing between the parties; (2) the defendant's breach of that duty; and (3) damages suffered by the plaintiff which were proximately caused by the breach.'" *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F.Supp.2d 162, 191 (2d Cir. 2011). Further, "[u]nder New York law, 'absent specific contractual language or circumstances

7

to the contrary, the ordinary relationship between a creditor and debtor does not rise to the level of imposing a fiduciary duty upon the creditor.'" *Hourani v. Wells Fargo Bank, N.A.*, 158 F.Supp.3d 142, 148 (E.D. N.Y. Feb. 1, 2016).

As noted above, Plaintiff relies upon the note and mortgage as the basis for his contractual claim. *See* Compl. ¶ 62. Neither Cenlar nor CitiMortgage are parties to either the note or mortgage. *See* Compl., Ex. B. Plaintiff does not allege any other relationship between Cenlar, CitiMortage and himself which would give rise to a fiduciary relationship. Accordingly, in the absence of a fiduciary relationship, there can be no claim for a breach of a fiduciary duty.

**F.    Plaintiff Fails To State A Claim For Conversion Against Cenlar Or CitiMortgage.**

Tied to his factually and legally incorrect claim that he rescinded the Loan, Plaintiff claims that Cenlar and CitiMortgage converted "the security instrument" by failing to return it upon demand. However, the very evidence Plaintiff includes in his complaint demonstrates (1) he did not rescind the Loan, (2) he did not demand return of a security instrument and (3) that the indorsement of a promissory note pursuant to the UCC does not amount to conversion.

**1.    Plaintiff Fails To State A Claim For Common Law Conversion.**

Under New York law, conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights. *See Vigiliant Ins. Co. of America v. Housing Authority of City of El Paso, Tex.*, 87 N.Y.2d 36, 660 N.E.2d 1121 (1995). Generally speaking, conversion does not occur until the defendant has refused to return property after demand or until he sooner disposes of it. *See Thyroff v. Nationwide Mut. Ins. Co.*, 360 Fed.Appx. 179, 180 (2d Cir. 2010).

By the First Amended Complaint, Plaintiff alleges that, "Cenlar's failure to return the security instrument on demand resulted in an act of conversion." Compl. ¶ 38. Plaintiff claims

8

that the demand occurred by virtue of the October 21, 2019 letter.  *See* Compl. ¶ 41.  Notably, this correspondence is the basis for Plaintiff's claim of rescission pursuant to TILA, which Defendants have already demonstrated to be ineffective.  Thus, Plaintiff had no authority to "demand" return of the security instrument to begin with.  Notwithstanding, a review of the October 21, 2019 correspondence fails to reveal any explicit demand for the return of a security instrument.  *See* Compl. Ex. C.  In the absence of a demand, Plaintiff fails to state a claim for conversion.

> **2.      Plaintiff Fails To State A Claim For Conversion Pursuant To The UCC.**

Pertinent to this action, NY UCC § 3-419(1)(b) – (1)(c) provides, "[a]n instrument is converted when…any person to whom it is delivered for payment refuses on demand either to pay or to return it; or it is paid on a forged indorsement."

Though it was not terribly clear in his original complaint, nor is it any clearer in his amended complaint, Plaintiff seemingly alleges that CitiBank, N.A. committed "forgery" when it endorsed the November 7, 2002 promissory note in blank.  *See* Compl. ¶¶ 23 – 24, Ex. F.  This claim fails as a matter of law.  NY UCC § 3-201(3) provides that a note may be transferred by indorsement and NY UCC § 3-204(2) specifically provides that whomever a note is made payable to may subsequently indorse the note in blank.  Plaintiff himself admits that the payee of the November 7, 2002 note was CitiBank, N.A., a fact clear on the face of the promissory note itself.  *See* Compl. ¶ 9, Ex. F.  Thus, CitiBank, N.A. was free to indorse the promissory note in blank pursuant to the UCC.  Further, Plaintiff does not allege that CitiBank, N.A. did not authorize the indorsement. Instead, Plaintiff alleges the indorsement is a forgery because Plaintiff's did not authorize CitiBank N.A. to indorse the promissory note.  *See* Compl. ¶ 50.  However, the UCC contains no requirement for a payor of an instrument to agree to negotiation.  Plaintiff fails to state a claim of conversion under the UCC for forgery.

Plaintiff's claim of failure to return an instrument upon demand fairs no better. Plaintiff claims that Cenlar failed to return "the security instrument" on demand, which resulted in conversion. *See* Compl. ¶ 38. Plaintiff claims that the return was demanded by way of his Notice of Rescission. *See* Compl., Ex. C. However, reviewing the Notice of Rescission in a light most favorable to Plaintiff, it only demands the "return of any money or property that has been given to anyone in connection with the transaction…" *Id.* Setting aside the utterly vague nature of this demand, there is no clear demand made for any negotiable instrument as contemplated under the UCC. Notably, the security instrument (in the case the mortgage) is not a negotiable instrument under the UCC. Regardless, in the absence of any such demand, Plaintiff's conversion claim pursuant to the UCC fails against both Cenlar and CitiMortgage.

### G.  Plaintiff's FDCPA Claim Fails Because Cenlar is not a Debt Collector.

Plaintiff's claim under the FDCPA, which is asserted solely as against Cenlar, fails because Plaintiff does not allege that Cenlar is a debt collector as defined by the FDCPA.

A loan servicer acting on behalf of the owner of a debt obligation is not a debt collector unless it began its servicing duties after the loan entered default status. *See Qurashi v. Ocwen Loan Servicing, LLC*, 760 Fed.Appx. 66, 68 (2d Cir. 2019) ("A loan servicer acting on behalf of the owner of a debt obligation is not a debt collector unless it began its servicing duties after the loan entered default status."). Moreover, a complaint that "does not allege that [a servicer] acquired [the plaintiff's] debt after it was in default…fails to plausibly allege that [the servicer] qualifies as a debt collector under FDCPA." *Roth v. CitiMortgage, Inc.*, 756 F.3d 178, 183 (2d Dept. 2014).

Plaintiff's Complaint identifies Cenlar as the sub-servicer of Plaintiff's loan. *See* Compl. ¶ 21. Plaintiff makes no claim that either CitiMortgage or Cenlar began servicing the debt after it fell into default. In fact, Plaintiff does not claim that the loan is in default. Further, Plaintiff

10

includes correspondence to the First Amended Complaint establishing that Cenlar began sub-servicing the loan effective April 1, 2019[1] (*See* Compl., Ex. F), a payment history confirming the loan was current at that time (*See* Compl., Ex. G) and correspondence supporting that it wasn't until after Cenlar began subservicing that Plaintiff fell behind (*See* Compl., Ex. A). Accordingly, Plaintiff cannot sustain a cause of action under the FDCPA against Cenlar because it is not a debt collector under the meaning of the statute and this cause of action should be dismissed.

**H.     Plaintiff Fails To State A Claim For Aiding And Abetting.**

Plaintiff claims that Cenlar and CitiMortgage aided and abetted in the fraudulent indorsement of the note. Plaintiff does not claim that the indorsement of the note was obtained fraudulently or that the signature was forged, but instead that the indorsement of the note itself is a fraudulent act and that Cenlar and CitiMortgage aided and abetted in it. Plaintiff is incorrect.

"The elements of a claim for aiding and abetting fraud are, 'the existence of a fraud, defendant's knowledge of the fraud, and that the defendant providing substantial assistance to advance the fraud's commission.'" *Fed. Deposit Ins, Corp. v. Wilson*, 11-CV-0065, 2013 WL 1236864 *5 (E.D. N.Y. Mar. 26, 2013).

Plaintiff seemingly alleges that the indorsement of a note in this Loan amounts to fraud. *See* Compl. ¶¶ 119 – 120. However, as noted above, NY UCC § 3-201(3) provides that a note may be transferred by indorsement and NY UCC § 3-204(2) specifically provides that whomever a note is made payable to may subsequently indorse the note in blank. Further, the mortgage Plaintiff signed specifically stated, "[t]he Note or an interest in the Note, together with this Security

---

[1] __While Plaintiff claims that this notice indicated that Cenlar was collecting its own debt (*See* Compl. ¶ 111), in fact the notice specifically states that Cenlar has entered into an agreement with CitiMortgage "to perform various functions" and that the servicing of the loan is transferring to Cenlar. *See* Compl., Ex F.

5025132v.2

Instrument, may be sold one or more times. I may not receive any prior notice of these sales." *See* Compl., Ex. B. Thus, beyond the statutory authority to negotiate the note, Plaintiff explicitly assented to a sale of the obligation and agreed that he need not be consulted. CitiBank, N.A. exercising this contractual right cannot be viewed as fraudulent.

Thus, where the indorsement and negotiation of the note is not itself fraudulent, there can be no cause of action against either Cenlar or CitiMortgage for aiding and abetting.

## I.     Plaintiff Should Not Be Permitted To Amend His Complaint A Second Time Because Doing So Would Be Futile.

Plaintiff should not be permitted to amend the Complaint a second time because the deficiencies in Plaintiff's Complaint cannot be remedied by an amendment. This is evident because Plaintiff was already granted one amendment and asserted a complaint containing the exact same deficiencies as before.

Plaintiff's attempt to rescind the Loan was almost seventeen years after origination and was not coupled with any return of the loan proceeds. No amendment could ever change that reality. *See* 15 U.S.C. § 1635(a). Further, each of the remaining causes of action relate to an alleged rescission which was significantly untimely. A proposed amended complaint that would not withstand a Rule 12(b)(6) motion to dismiss would be considered futile. *See Dougherty v. North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002). Therefore, the Court should dismiss the Complaint with prejudice against Defendant.

## IV.   **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiff's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) with prejudice and grant such other and further relief as it deems appropriate.

Dated:   June 17, 2021          STRADLEY RONON STEVENS & YOUNG, LLP
         New York, NY           A Pennsylvania Limited Liability Company

                                By:   /s/ *Lijue T. Philip*_____
                                      Lijue T. Philip
                                      100 Park Avenue, Suite 2000
                                      New York, New York  10017
                                      Telephone:  (212) 812-4124
                                      Facsimile:  (646) 682-7180
                                      LPhilip@stradley.com

                                      *Counsel for Cenlar FSB & CitiMortgage, Inc.*

5025132v.2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

ROGER ROWE,

               Plaintiff,

     v.

CENLAR FSB; CITIMORTGAGE, INC.,

               Defendants.

Case No.: 2:19-cv-7278-JMA-AYS

### ORDER

AND NOW, on this _____ day of _____, 2021, upon consideration of the Motion of Defendants, Cenlar FSB and CitiMortgage, Inc., to dismiss this action pursuant to Federal Rules of Civil Procedure Rule 12(b)(6), the Brief in support thereof, any response thereto, and any argument thereon, it is hereby ORDERED, ADJUDGED, and DECREED that the Motion is GRANTED.

It is further ORDERED that the Complaint in this action is DISMISSED WITH PREJUDICE.

BY THE COURT:

_____

Honorable Joan M. Azrack

5025132v.2

## CERTIFICATE OF SERVICE

I, hereby certify that on June 17, 2021, I caused the foregoing document to be served on

the below by First Class Mail:

Roger Rowe
20 Spruce Rd
Amityville, New York 11701

s/ *Lijue T Philip* _____
Lijue T. Philip

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

Roger Rowe

        Plaintiff(s)                    2:19-cv-07278-JMA-AYS

    -v-

Cenlar FSB

        Defendant(s)

---

**MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANT'S MOTION TO
DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(6)**

1

I. BACKGROUND     1

II. LEGAL STANDARD     2

III. TILA DISCLOSURE VIOLATION     4

     1.   RIGHT OF RESCISSION AS TO CERTAIN TRANSACTION     4

     2.   RIGHTS TO RESCISSION     8

     3.   NOTICE OF MORTGAGE TRANSFER     9

     4.   REQUIREMENTS FOR CERTAIN MORTGAGE     10

     5.   PARTIAL INTEREST     11

IV. DAMAGES RELATED TO TILA VIOLATIONS     17

V. NEW YORK BANKING LAW HIGH-COST LOAN VIOLATION     23

VI. FDCPA VIOLATION     24

CONLUSION     25

**Cases**

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)     2

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)     2

Bleich v. Revenue Maximization Grp., Inc., 233 F. Supp. 2d 496, 498 (E.D.N.Y. 2002)     25

Cf. Astoria Fed. Sav. & Loan Assn. v. Solimino, 501 U. S. 104, 108–109 (1991)     9

Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007)     3

Flemister v. Citibank, 2012 WL 6675273, (C.D. Cal. Dec. 20, 2012)     17

Fowler v. U.S. Bank,  F. Supp. 2d, 2014 WL 850527, (S.D. Tex. Mar. 4, 2014)     17

Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)     3

Jesinoski et ux. v. Countrywide Home Loans Inc., et al., 574 U.S. 259 2015     9

Lynn M. Lopucki, The Death of Liability, 106 Yale L.J. 1, 23-30 (1996)     5

Miguel v. Country Funding Corp., 309 F.3d 1161, 1163 (9th Cir. 2002)     8

Net Com Data Corp. of New York v. Brunetti, 2010 N.Y. Misc. LEXIS 1436 (Sup. Ct. Nassau Co.
2/4/10) (Driscoll, J.)     3

Olivera v. Am. Home Mortg. Servicing, Inc., 689 F. Supp. 2d 1218 (N.D. Cal. 2010)     11

Pezhman v. City of New York, 29 A.D.3d 164, 168, 812 N.Y.S.2d 14, 18 (1st Dep't 2006)     3

Polanco v. NCO Portfolio Mgmt., Inc., 132 F. Supp. 3d 567, 578 (S.D.N.Y. 2015)     24

Schuh v. Druckman & Sinel, L.L.P., 751 F. Supp. 2d, 542, 548 (S.D.N.Y. 2010)     24

Turner v. Beneficial Corp., 242 F.3d 1023, 1028 (11th Cir. 2001) (en banc)     4

Washington v. James, 782 F.2d 1134, 1138 (2nd Cir. 1986)     3

Williams v. Public Fin. Corp., 598 F.2d 349, 356 (5th Cir. 1979)     4

Williams v. Public Finance Corp. 598 F.2d 349 (1979)                17

**Statutes**

§ 1602(h)                                                           7, 18

§ 1635                                                              passim

§ 1635(a)                                                           1, 4

§ 1639                                                              passim

§ 1640(a)(2)(iv)                                                    23

§ 1640(e)                                                           4

§ 1641                                                              passim

§ 1641(a)                                                           7, 10

§ 1641(g)(1)                                                        1, 9

§1635(b)                                                            9

12 U.S. § 504                                                       2

12 U.S. § 505                                                       2

15 U.S.C. § 1601(a)                                                 3

15 U.S.C. § 1602(f)                                                 18

15 U.S.C. § 1602(g)                                                 15

15 U.S.C. § 1611                                                    3

15 U.S.C. § 1635                                                    passim

15 U.S.C. § 1639(a)(1)(B)                                           18

15 U.S.C. § 1640                                                    4, 8

15 U.S.C. § 1640(a)(2)(A)(iv)                                        4

15 U.S.C. § 1692                                                    2

15 U.S.C. § 1692e                                                  25

15 USC Chapter 41 Subchapter I Part B                              5

1692e(10)                                                          25

1692e(14)                                                          25

1692e(2)(A)                                                        25

Belini v. Wash. Mut. Bank, 412 F.3d 17, 25 (1st Cir. 2005)        6

Fed R Civ 12(b) (6)                                                2

Fed. R. Civ. P. 8(a)                                               2

NY GBS § 349                                                       2

UCC § 3-301                                                        15

**Regulations**

12 C.F.R. § 1026                                                   1

12 CFR Part § 1026.2(a)(25)(6)                                    16

12 CFR Part 1026                                            7, 8, 10, 11

12 CFR Part 1026.2                                                 8

12 CFR Part 1026.39                                          7, 10, 11

12 U.S.C. § 2605(i)(2)                                            15

12 U.S.C. § 2605(i)(3)                                            15

# I. BACKGROUND

Plaintiff Roger Rowe filed a three-count Complaint (Doc. No. 2) against defendant, Cenlar FSB in this District Court. Plaintiff allege that he executed a real estate mortgage with nonparty Citibank, on November 7, 2002, and that Federal National Mortgage Administration (FNMA) was the current owner of the first mortgage lien and that as of April 1, 2019 Cenlar FSB was assigned, transferred or sold security interest in Plaintiff's mortgage(s). Plaintiff further alleges that Cenlar failed to provide adequate disclosures and the disclosures provided are generally misleading, incomplete, inaccurate and ambiguous. Plaintiff claimed that Defendant failed to provide a notice of mortgage transfer as required by the Truth in Lending Act, 15 U.S.C. (TILA).

As a new creditor, § 1641(g)(1) requires Defendant to provide a disclosure of the sale of a mortgage loan " not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer,"

The Plaintiff also alleges that Defendant failed to rescind the loan pursuant to 15 U.S.C. § 1635. Under 15 U.S.C. § 1635 the Plaintiff has the right to rescind a consumer credit transaction and void the Defendant's security interest in the Plaintiff's home, and to recover statutory damages, reasonable attorney's fees and costs by reason of the Defendant's violations of the Act and Regulation Z, 12 C.F.R. § 1026 [formerly § 226] (hereinafter called "Regulation Z"). § 1635(a) requires a creditor to disclose clearly and conspicuously an obligor's right to rescind. Defendant

1

failed to provide the request disclosures and or the disclosures provided were incomplete, inaccurate and ambiguous.

Plaintiff also seeks damages for Defendant's violations of 12 U.S. § 504 and 12 U.S. § 505, FDCPA 15 U.S.C. § 1692, NY GBS § 349. Plaintiff alleges that the Defendant made statements when they claimed $107,239.00 was owed to various credit reporting agencies (CRA). Plaintiff's own payment history shows a principal balance of zero as of March 30, 2019 see (Exhibit G). Plaintiff also alleges that Defendant inaccurately stated the character, status and amount of the debt obligation. The actions noted were willful, deceptive and a violation of NY GBS § 349.

Defendants also violated BNK 6-l when the lender exceeded one or more of the thresholds as defined in paragraph (g) of this subdivision. Defendants violated BNK 6-l(m) Financing of points and fees. In making a high-cost home loan, a lender shall not, directly or indirectly, finance any points and fees as defined in paragraph (f) of subdivision one of this section, in an amount that exceeds three percent of the principal amount of the loan. As well as BNK 6-l(q) No points and fees when a lender refinances its own high-cost home loan with a new high-cost home loan. A lender shall not charge a borrower points and fees in connection with a high-cost home loan if the proceeds of the high-cost home loan are used to refinance an existing high-cost home loan held by the lender or an affiliate of the lender.

## II. LEGAL STANDARD

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Fed R Civ 12(b) (6) motion to dismiss does not need detailed factual allegations, a

2

plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.". Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss.". When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

When a plaintiff is pro se, the Court must apply a liberal reading to the complaint and hold pro se litigants to a less stringent pleading standard. Pezhman v. City of New York, 29 A.D.3d 164, 168, 812 N.Y.S.2d 14, 18 (1st Dep't 2006) (a "pro se complaint should be construed liberally in favor of the pleader). Net Com Data Corp. of New York v. Brunetti, 2010 N.Y. Misc. LEXIS 1436 (Sup. Ct. Nassau Co. 2/4/10) (Driscoll, J.) (answer stating that defendant "does not waive any right to challenge jurisdiction . . . at any point during this proceeding even upon final determination" is "precisely the sort of drafting leniency the law permits for a pro se litigant"). Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007) ( pro se pleadings "however in artfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers").

3

Washington v. James, 782 F.2d 1134, 1138 (2nd Cir. 1986) (complaint not to be dismissed unless "frivolous on its face or wholly unsubstantial").

### III. TILA DISCLOSURE VIOLATION

TILA is a consumer protection statute that seeks to "avoid the uninformed use of credit" through the "meaningful disclosure of credit terms," thereby enabling consumers to become informed about the cost of credit. 15 U.S.C. § 1601(a). Besides imposing criminal liability, TILA creates a private cause of action for actual and statutory damages for certain disclosure violations. 15 U.S.C. § 1611 (criminal liability), 1640(a)1 (civil liability).

TILA's remedial scheme was designed to deter and prevent disclosure violations by creditors. See Williams v. Public Fin. Corp., 598 F.2d 349, 356 (5th Cir. 1979). Rather than relying solely on government enforcement efforts, Congress deliberately provided consumers that right to privately enforce TILA's disclosure requirements. Thus, for example, TILA entitles consumers to collect statutory damage awards, even when they suffered no actual damages. Under TILA a consumer has more protection against deceptive creditors than is provided by non statutory law.

### 1.   RIGHT OF RESCISSION AS TO CERTAIN TRANSACTION

TILA's extended right of rescission also encourages consumers to police lender conduct. Rescission is uniquely important and central to TILA's deterrent scheme because it serves a function not replicated by other TILA remedies.

Recovery of actual damages under TILA generally requires proof of detrimental reliance, a difficult showing for consumers to establish see, e.g., Turner v. Beneficial Corp., 242 F.3d 1023, 1028 (11th Cir. 2001) (en banc). Although statutory damages are available without proof of reliance, TILA caps statutory damages awards to only $4,000 for credit transactions secured by a

4

consumer's home—a relatively low amount that limits consumer incentives to enforce TILA. See 15 U.S.C. § 1640(a)(2)(A)(iv).

TILA requires damage claims be brought within 3 year of a creditor's violation of any provisions under § 1635 and subsection (f) or (g) of § 1641. TILA also allows an obligor to bring an action before the end of the 3 years period for violations of section § 1639., see § 1640(e). In this instance Defendant violated § 1635(a) when they failed to provide notice of the April 1, 2019 credit transaction. As such Plaintiff brought this action when Defendant failed to return money and property following Plaintiffs October 21, 2019 notice of rescission.

§ 1635(a) gives an obligor the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or delivery of the information and rescission forms required under 15 USC Chapter 41 Subchapter I Part B. The Defendant failed to clearly and conspicuously disclose Plaintiff's right to rescission which extends Plaintiff right to rescind until Defendant provide clear and conspicuous disclosures or the 3 year statute expiration.

Defendant obtained interest in Plaintiff's loan on April 1, 2019 as evidenced in the joint Notice of Servicing Transfer (see Exhibit F). The Defendant failed to provide Plaintiff with notice of his right to rescission. The Plaintiff failure to provide rescission forms extended Plaintiff's right to rescind until Defendant provides appropriate disclosure forms or 3 years after consummation. As such Plaintiff right to rescission is not time barred. The Defendant obtained the debt obligation on April 1, 2019 which gives Plaintiff until April 1, 2022 to commence an action against Defendant.    Rescission is particularly important as a means for deterring TILA violations. Because many mortgage loans are sold on the secondary market or securitized, effectively absolving the loans from consumer damages claims. TILA attempts to inform the consumer of a

5

transfer of their mortgage loan or any security interest in said loan. TILA is structured to hold Assignees liable for original creditor's violations that are apparent on the face of loan disclosure statements.

Indeed, one of the very purposes of securitization is to insulate parties from responsibility for the liability producing conduct of the original lender by taking advantage of assignee liability limitations. See, e.g., Lynn M. Lopucki, The Death of Liability, 106 Yale L.J. 1, 23-30 (1996). Congress specified, however, that consumers may exercise TILA rescission rights "against any assignee," 15 U.S.C. § 1641(c), thus ensuring that rescission would remain as a deterrent even if a mortgage loan is sold or securitized. The potential for rescission also gives the secondary mortgage market strong incentives to police loan originators to prevent threshold TILA violations.

The accessibility of TILA's rescission remedy to consumers was enacted to make rescission a private, out of court process and give the consumer the power to incentivize due diligence on the part of lenders. See, e.g., Belini v. Wash. Mut. Bank, 412 F.3d 17, 25 (1st Cir. 2005). In the course of this consumer credit transaction, Defendant's CitiMortgage and Cenlar committed among other violations; violated 15 U.S.C. § 1635(a) and Regulation Z § 1026.23(b) [formerly § 226.23(b)] by failing to deliver to the Plaintiff two copies of a notice of the right to rescind that:

a. Identified the transaction.

b. Clearly and conspicuously disclosed the security interest in the Plaintiff's home.

c. Clearly and conspicuously disclosed the Plaintiff's right to rescind the transaction.

d. Clearly and conspicuously disclosed the effects of rescission.

e. Clearly and conspicuously disclosed the date the rescission period expired.

6

The Truth in Lending Act provides rescission as a remedy for obligors subject to lender loan disclosure violations. Under 15 U.S.C. §1635(a), the right is available until midnight of the third day after closing or after delivery of the lending documents and rescission forms required under TILA; at the latest, the right expires after three years. Unlike common law rescission, where tender is required, the obligor need only notify the creditor of rescission and it is automatically effectuated under TILA.

The Defendant's contention that Plaintiff's TILA claim is somehow "Time - Barred" is a misrepresentation of the law. On April 1, 2019 the Defendant was part of a credit sale relative to Plaintiffs mortgage. § 1602(h) refers to credit sales as any sale in which the seller is a creditor. The term includes any contract in the form of a bailment or lease if the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the property and services involved and it is agreed that the bailee or lessee will become, or for no other or a nominal consideration has the option to become, the owner of the property upon full compliance with his obligations under the contract.

As the new creditor the Defendant was required to provide various disclosures to the person who is obligated on the consumer credit transaction see § 1639(a)(1)(B). The disclosure were to have conspicuous type size noting the following. "If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan.".

The disclosure provided by Defendant's as Exhibit 1 is immaterial due to the fact that said credit transaction is not related to the subject matter of this litigation. Defendants claim that the Notice of Servicing Transfer somehow provided sufficient notice is patently false. It is apparent

7

on the face of the Notice of Servicing Transfer that it fails to meet the requirements of a Notice of Mortgage Transfer pursuant to § 1641(g) and 12 CFR Part 1026.39. Under § 1641(a) a violation apparent on the face of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter.

In this instance it is apparent on the face of the Notice of Servicing Transfer that the notice is incomplete, inaccurate and ambiguous. The notice fails to provide information related to § 1641(g)(D) the location of the place where transfer of ownership of the debt is recorded. The disclosure does not include § 1639(a)(1)(B) language stating "If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan.".

## 2.     RIGHTS TO RESCISSION

Under TILA, a borrower has two remedies for a loan disclosure violation: civil damages and rescission. 15 U.S.C. § 1640, 1635. With regard to rescission, TILA provides that borrowers have until midnight of the third business day following the consummation of a loan transaction to rescind the transaction. 15 U.S.C. § 1635(a). A borrower's right of rescission is extended from three days to three years if the lender (1) fails to provide notice of the borrower's right of rescission or (2) fails to make a material disclosure. See Miguel v. Country Funding Corp., 309 F.3d 1161, 1163 (9th Cir. 2002) (citing 15 U.S.C. § 1635(f) and 12 C.F.R. § 226.23(a)(3)). Here, Plaintiffs seek rescission and damages for the Defendants failure to provide adequate disclosure.

(Regulation Z) 12 CFR Part 1026.2 Definitions and Rules of Construction 2(a)(11)(2)-

Rescission rules. For purposes of rescission under §§ 1026.15 and 1026.23, a consumer includes any natural person whose ownership interest in his or her principal dwelling is subject to the risk of loss. Thus, if a security interest is taken in A's ownership interest in a house and that house is A's principal dwelling, A is a consumer for purposes of rescission, even if A is not liable, either primarily or secondarily, on the underlying consumer credit transaction. An ownership interest does not include, for example, leaseholds or inchoate rights, such as dower.

In Jesinoski et ux. v. Countrywide Home Loans Inc., et al., 574 U.S. 259 2015 Justice Scalia opinion noted that "Nothing in our jurisprudence, and no tool of statutory interpretation, requires that a congressional Act must be construed as implementing its closest common-law analogue. Cf. Astoria Fed. Sav. & Loan Assn. v. Solimino, 501 U. S. 104, 108–109 (1991). The clear import of §1635(a) is that a borrower need only provide written notice to a lender in order to exercise his right to rescind. To the extent §1635(b) alters the traditional process for unwinding such a unilaterally rescinded transaction, this is simply a case in which statutory law modifies common-law practice."

As such Plaintiff is only required to provide written notice of rescission to exercise his right to rescind. The Defendants failure to return money given and reflect the termination of any security interest in Plaintiff's home is a direct violation of §1635(b). As such the Plaintiff is entitled to rescission and statutory damages as proscribed under TILA.

## 3.   NOTICE OF MORTGAGE TRANSFER

Defendant's contention that their March 15, 2019 Notice of Service Transfer satisfied their notice provisions required under 15 U.S.C. § 1641(g)(1) is incorrect. The provisions under 15 U.S.C. § 1641(g)(1) relates to the transfer or assignment of mortgage not the transfer of servicing.

9

15 U.S.C. § 1641(g)(1) states that a creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including-

(A) the identity, address, telephone number of the new creditor;

(B) the date of transfer;

(C) how to reach an agent or party having authority to act on behalf of the new creditor;

(D) the location of the place where transfer of ownership of the debt is recorded; and

(E) any other relevant information regarding the new creditor.

Even if the court were to consider the notice of service transfer as a combined disclosure permitted under 12 CFR Part 1026.39(b)(1), said disclosure would be inadequate, incomplete, misleading and ambiguous therefore the Notice of Service Transfer is inadequate and would be in violation of 15 U.S.C. § 1641(a). The statute requires a violation to be apparent on the face of a disclosure statement includes but not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter. Here the Notice of Servicing Transfer is incomplete and therefore a violation of 15 U.S.C. § 1641(a).

## 4.    REQUIREMENTS FOR CERTAIN MORTGAGE

Based on 15 U.S.C. § 1641 and (Regulation Z) 12 CFR Part 1026 the Defendant failed to provide adequate notice of mortgage transfer with disclosure relative to a rescission notice which requires a general statement "Your home is the security for the new transaction". Pursuant to 15 U.S.C. § 1639(a)(1)(B), a creditor shall provide a statement in conspicuous type size that they can lose their home. Furthermore Cenlar failed to provide information as to where transfer of ownership of the debt to the covered person is or may be recorded in public records, or,

10

alternatively, that the transfer of ownership has not been recorded in public records at the time the disclosure is provided.

(Regulation Z) 12 CFR Part 1026.39 requires disclosures of mortgage transfer when a covered person obtains ownership of an existing mortgage. Paragraph 39(a)(1) of 12 CFR Part 1026.39 defines a covered person as Covered persons.-The disclosure requirements of this section apply to any "covered person" that becomes the legal owner of an existing mortgage loan, whether through a purchase, or other transfer or assignment, regardless of whether the person also meets the definition of a "creditor" in Regulation Z. The fact that a person purchases or acquires mortgage loans and provides the disclosures under this section does not by itself make that person a "creditor" as defined in the regulation.

## 5.    PARTIAL INTEREST

Transfer or assignment to servicer other than for administrative convenience. A loan servicer could be liable under TILA where borrowers sufficiently alleged that servicer was also owner of obligation at issue under 15 USCS § 1641(f)(1). Olivera v. Am. Home Mortg. Servicing, Inc., 689 F. Supp. 2d 1218 (N.D. Cal. 2010).

In this instance Cenlar became a covered person when they obtained partial interest in Plaintiff's loan. Paragraph 39(a)(2)(i) of 12 CFR Part 1026.39 defines a covered person to include a person whom obtained Partial interest. A person may become a covered person by acquiring a partial interest in the mortgage loan. If the original creditor transfers a partial interest in the loan to one or more persons, all such transferees are covered persons under this section.

Pursuant to Paragraph 39(c)(3)(1) of 12 CFR Part 1026.39 the acquisition of partial interest of a loan and the change in agent or party authorized to receive notice and resolve issues

11

concerning the consumer's payments is a covered person and requires the new creditor to provide a disclosure. Paragraph 39(c)(3)(1) Acquisition of partial interests states. This exception applies if the covered person acquires only a partial interest in the loan, and there is no change in the agent or person authorized to receive notice of the right to rescind and resolve issues concerning the consumer's payments. If, as a result of the transfer of a partial interest in the loan, a different agent or party is authorized to receive notice of the right to rescind and resolve issues concerning the consumer's payments, the disclosures under this section must be provided.

The examples indicated under Paragraph 39(c)(3)(2)(iii) confirms Cenlars status as a covered person which required Cenlar to provide a mortgage transfer disclosure as well as the requisite notice of rescission with a conspicuous type size indicating "You could lose your home". The example given in Paragraph 39(c)(3)(2)(iii) provides examples that state "The original creditor transfers fifty percent of its interest in the loan to covered person A and also authorizes party X as its agent to receive notice of the right to rescind and resolve issues concerning the consumer's payments on the loan. Since there is a change in an agent or party authorized to receive notice of the right to rescind and resolve issues concerning the consumer's payments, person A is required to provide the disclosures under this section. Person A then transfers all of its interest in the loan to covered person B. Person B is not required to provide the disclosures under this section if the original creditor retains a partial interest in the loan and party X retains the same authority.

Based on the information provided in Defendant July 12, 2019 response to Plaintiff's Qualified Written Request (QWR) Defendant appears to suggest that multiple covered persons have interest in Plaintiff's loan.  Paragraph 39(c)(1)(2) Transfer of partial interests indicates that "A covered person that subsequently transfers a partial interest in the loan is required to provide

12

the disclosures required by this section if the covered person retains a partial interest in the loan on the 30th calendar day after it acquired the loan, unless an exception in § 1026.39(c) applies. For example, if covered person A acquires the loan on March 15 and subsequently transfers fifty percent of its interest in the loan to covered person B on April 1, person A is required to provide the disclosures under this section if it retains a partial interest in the loan on April 14. Person B in this example must also provide the disclosures required under this section unless an exception in § 1026.39(c) applies. Either person A or person B could provide the disclosure on behalf of both of them if the disclosure satisfies the timing and content requirements applicable to each of them. In this example, a single disclosure for both covered persons would have to be provided on or before April 14 to satisfy the timing requirements for person A's acquisition of the loan on March 15. See comment 39(b)(4)-1 regarding a single disclosure for multiple transfers". Based on Defendant's statement, CitiMortgage is a covered person and is also required to provide a notice of mortgage transfer and relevant disclosures.

It is clear from the face of the "Notice of Servicing Transfer" that the original creditor nor the new creditor disclosed where transfer of ownership of the debt to a covered person (new servicer) is or may be recorded in public records, or, alternatively, that the transfer of ownership has not been recorded in the public records at the time the disclosure is provided as required by 15 U.S.C. § 1641(g)(D). The disclosure was also required to have in conspicuous type "You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan" see 15 U.S.C. § 1639(a)(1)(B).

The Defendant is a new creditor and a covered person as described under 15 U.S.C. § 1602 Definitions and rules of construction and 12 CFR Part § 1026.39 Mortgage transfer disclosures

13

respectively. A "covered person" means any person, as defined in § 1026.2(a)(22), that becomes the owner of an existing mortgage loan by acquiring legal title to the debt obligation, whether through a purchase, assignment or other transfer, and who acquires more than one mortgage loan in any twelve-month period. For purposes of this section, a servicer of a mortgage loan shall not be treated as the owner of the obligation if the servicer holds title to the loan, or title is assigned to the servicer, solely for the administrative convenience of the servicer in servicing the obligation. In this instance the Defendant became a covered person when they acquired security interest in Defendants mortgage.

Pursuant to § 1026.39(c)(3) a covered person is not required to provide a disclosure if the covered person acquires only a partial interest in the loan and the party authorized to receive the consumer's notice of the right to rescind and resolve issues concerning the consumer's payments on the loan does not change as a result of the transfer of the partial interest. Here the party authorized to resolve issues concerning the payments of the loan changed which required notification of Defendants acquisition of the debt obligation related to Plaintiff's mortgage see Exhibit F joint correspondence from previous creditor and Defendant. Paragraph 6 of the correspondence clearly indicates a change in party authorized to resolve issues and other details concerning the loan. However the disclosure failed to identify the location of the place where transfer of ownership of the debt is recorded or include conspicuous type size stating "You could lose your home, and any money you have put into it, if you do not meet your obligation under the loan".

The Notice of Servicing Transfer further confirms a transfer of ownership of the debt obligation from one servicer to another servicer. The term servicer is defined as the person

responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan). The key term here is " including the person who makes or holds a loan if such person also services the loan" In this instance the loan was transferred from a servicer who was also the holder of the debt obligation to a servicer who currently holds the debt obligation. Defendants partial ownership is evident by the change in loan number, name of payee and address of payee. Furthermore UCC § 3-301 Rights of a Holder indicates "The holder of an instrument whether or not he is the owner may transfer or negotiate it and, except as otherwise provided in Section 3-603 on payment or satisfaction, discharge it or enforce payment in his own name." In this instance the Defendant is not only servicing the loan as described in 12 U.S.C. § 2605(i)(3) but is also the servicer 12 U.S.C. § 2605(i)(2) and is enforcing payment in his own name.

The Defendant is also a creditor as defined under 15 U.S.C. § 1602(g) The term "creditor" refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement. Notwithstanding the preceding sentence, in the case of an open-end credit plan involving a credit card, the card issuer and any person who honors the credit card and offers a discount which is a finance charge are creditors. For the purpose of the requirements imposed under part D of this subchapter and sections 1637(a)(5), 1637(a)(6), 1637(a)(7), 1637(b)(1), 1637(b)(2), 1637(b)(3), 1637(b)(8), and 1637(b)(10) of this title, the term "creditor" shall also include card issuers whether or not the amount due is payable by agreement in more than four installments or the payment of a

15

finance charge is or may be required, and the Bureau shall, by regulation, apply these requirements to such card issuers, to the extent appropriate, even though the requirements are by their terms applicable only to creditors offering open-end credit plans. Any person who originates 2 or more mortgages referred to in subsection (aa) in any 12-month period or any person who originates 1 or more such mortgages through a mortgage broker shall be considered to be a creditor for purposes of this subchapter. The term "creditor" includes a private educational lender (as that term is defined in section 1650 of this title) for purposes of this subchapter.

Nevertheless 12 CFR Part § 1026.2(a)(25)(6) Security Interest, Specificity of disclosure. A creditor need not separately disclose multiple security interests that it may hold in the same collateral. The creditor need only disclose that the transaction is secured by the collateral, even when security interests from prior transactions remain of record and a new security interest is taken in connection with the transaction. In disclosing the fact that the transaction is secured by the collateral, the creditor also need not disclose how the security interest arose. For example, in a closed-end credit transaction, a rescission notice need not specifically state that a new security interest is "acquired" or an existing security interest is "retained" in the transaction. The acquisition or retention of a security interest in the consumer's principal dwelling instead may be disclosed in a rescission notice with a general statement such as the following: "Your home is the security for the new transaction." Here the previous creditor was required to disclose "Your home is the security for the new transaction". The failure of such disclosure is apparent on the face of the Notice of Servicing Transfer and therefore Defendants violated TILA in relation to the April 1, 2019 credit transaction.

It is clear from the statutory language that Congress intended for mortgage loans sold or

16

otherwise transferred or assigned to a third party to be held liable as "creditors" for their violations of 15 U.S.C. § 1641(g). See Fowler v. U.S. Bank,  F. Supp. 2d, 2014 WL 850527, (S.D. Tex. Mar. 4, 2014); Flemister v. Citibank, 2012 WL 6675273, (C.D. Cal. Dec. 20, 2012) (finding "Congress broadened the definition of 'creditor' in [TILA] through the passage of § 1641(g)" to include new owners or assignees of debt; even if trustee for securitized loans not liable as owner of debt, still liable as assignee).

BNK 6-l violation provided Plaintiff with a rescission type effect. BNK 6-l states that "In any action by an assignee to enforce a loan against a borrower in default more than sixty days or in foreclosure, a borrower may assert any claims in recoupment and defenses to payment under the provisions of this section and with respect to the loan, without time limitations, that the borrower could assert against the original lender of the loan".

BNK 6-l provides that "Any person found by a preponderance of the evidence to have violated this section shall be liable to the borrower for the following statutory damages as follows (i) all of the interest, earned or unearned, points and fees, and closing costs charged on the loan shall be forfeited and any amounts paid shall be refunded".

As such both Defendant should be penalized for violation New York banking laws. The law provides that each Defendants is responsible for their own violation.  As such both Defendants are subject to statutory damages required plus the return of all monies paid. Defendant is also subject to actual damages in excess of amount paid, statutory damages and punitive damages.

### IV. DAMAGES RELATED TO TILA VIOLATIONS

The purpose of making creditors civilly liable is to force disclosure of various transactions and afford borrowers more control over their credit and the terms related to those credit

transactions. The purpose of affording a borrower the right of rescission is broader; not only is it designed to compel disclosure, but it also serves to blunt unscrupulous sales tactics by giving homeowners a means to unburden themselves of security interests exacted by such tactics. See Williams v. Public Finance Corp. 598 F.2d 349 (1979). In addition to damages, TILA also grants consumers rescission rights when they enter into credit transactions that pledge their "principal dwelling" as security.

15 U.S.C. § 1635(a). Creditors are responsible for "clearly and conspicuously" disclosing a consumer's right to rescind and for providing "appropriate [rescission] forms" to the consumer. In this instance the Defendant is a creditor who grants credit to the Plaintiff see 15 U.S.C. § 1602(f) The term "credit" means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment. Defendant Cenlar obtained legal title of Plaintiff's debt obligation as of April 1, 2019 as evidence by information provided in the Notice of Servicing Transfer. Pursuant to 15 U.S.C. § 1639(a)(1) the creditor shall provide disclosure in a conspicuous type with the verbiage noted in 15 U.S.C. § 1639(a)(1)(B) "If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan.". Here neither creditor CitiMortgage (transferer) nor the New creditor Cenlar (transferee) provide such verbiage in its disclosure of the credit transfer (credit sale). 15 U.S.C. § 1602(h) defines "credit sale" refers to any sale in which the seller is a creditor. The term includes any contract in the form of a bailment or lease if the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the property and services involved and it is agreed that the bailee or lessee will become, or for no other or a nominal consideration has the option to become, the owner of the

18

property upon full compliance with his obligations under the contract. As such both the original and new creditor was required to disclose the transfer of mortgage. The face of the disclosure clearly shows that the creditors both old and new failed to conspicuously disclose the obligors right to rescind or inform obligor that pursuant to 15 U.S.C. § 1639(a)(1)(B) "If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan.".

TILA allows for a creditor whom commits a single violation of the Act to be penalizing twice for violating two separate laws. Secondly, the statute allows for multiple remedies. § 1640(g) and § 1639(g) are mutually exclusive remedies in traditional common law and contract law. Congress did not imply that the Section 1640 remedy should defer to a related remedy in the same Act for the same violation, Congress instead inferred that additional relief can be sought under a different title. As such Plaintiff is entitled to damages even if it relates to the violation of two separate laws.

As a result of the aforesaid violations of the Act and Regulation Z, pursuant to 15 U.S.C. §§ 1635(a), 1640(a), and 1641(c), Defendants is liable to Plaintiff for:

a. Rescission of this transaction. Pursuant to 15 U.S.C. § 1635(a) the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later. Here the Defendant failed to provide the requisite disclosures. The March 15, 2019 Notice of Servicing Transfer does not include the required disclosure and or notice of right to rescind. By statute Plaintiff has up to three year after the date of the April 1, 2019 consummation

19

of the debt obligation sale of Plaintiff's mortgage as such Plaintiff is entitled to rescind said transaction until April 1, 2022 if appropriate disclosures were never provided.

b. Termination of any security interest in Plaintiff's property created under the transaction. Pursuant to 15 U.S.C. § 1635(b) when an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. The statutory requirement of TILA provides that a consumer can exercise his rights to rescind the contract without first tendering the consideration that he received. Nevertheless even if the court were to require proof of obligors ability to tender payment to creditor open satisfaction of creditors obligation the obligor would easily be in a position to pay the creditor $157,000.00 from the $244,115.08 principle and interest paid to prior creditor which is due from the new creditor.

c. Return of any money or property given by the Plaintiff to anyone, including the Defendants, in connection with this transaction. Pursuant to 15 U.S.C. § 1635(b)  Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. As such Defendant is required to return approximately $244,115.08 paid against a $349,115.08 principle and interest loan with a balance of $105,000.00 remaining.

20

d. Statutory damages of $4,000 for each creditor relative to rescission disclosure violation § 1635. As a creditor Defendant failed to provide the requisite disclosure notice relative to the obligors right to rescind. The Defendant is also responsible for prior creditors violation evident on the face of the disclosure. In this instance the disclosure was incomplete, inaccurate and ambiguous on its face. Plaintiff is therefore entitled to a statutory award of $8,000.00 in damages.

e. Statutory damages of $4,000 for Notice of Mortgage Transfer violation § 1641(f). As a creditor Defendant failed to provide the requisite disclosure notice relative to the notice of mortgage transfer. The Defendant is also responsible for prior creditors violations evident on the face of the disclosure. In this instance the disclosure provided by the prior and new creditor was incomplete, inaccurate and ambiguous on its face. Plaintiff is therefore is entitled to a statutory award of $8,000.00 in damages.

f. Statutory damages of $4,000 for Notice of Mortgage Transfer violation § 1641(g). As a creditor Defendant failed to provide the requisite disclosure notice relative to the notice of mortgage transfer. Pursuant to § 1641(g) not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer. The Defendant failed to provide the location of the place where transfer of ownership of the debt is recorded. The Defendant is liable for statutory damages of $4,000.00 for said failure.

g. Statutory damages of $4,000 for Defendants' failure to respond properly to Plaintiff's October 21, 2019 rescission notice and Plaintiff's November 11, 2019 follow up rescission notice pursuant to § 1641(g). Defendant is also liable for statutory damages for failure to rescind transaction pursuant to § 1641(c) which states that any consumer who has the right to rescind a transaction

21

under section 1635 of this title may rescind the transaction as against any assignee of the obligation. That fact that the Defendant failed to provide notice of the transfer of the debt obligation with in the 30 day period allotted under § 1641(g) triggers Plaintiff's right to rescind the April 1, 2019 credit sale.

h. Forfeiture of return of loan proceeds pursuant to § 1635(b). Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The creditors failure to perform its obligation renders the return of the property impracticable and therefore forfeiture of obligors tender is appropriate.

i. Actual damages (court fees and other cost of action)in an amount to be determined at trial cost of action § 1640 Civil Liability, § 1635, § 1641(f) and § 1641(g).

New action court cost $400.00

Paper and office supplies $850.00

Hours spent preparing complaint and motion 320 hr @ $200 = $64,000.00

Lost revenue could not work on construction projects 320 hr @ $200 = $64,000.00

j. Double the finance charge $374,008.68 § 1640(a)(2)(i). in the case of an individual action twice the amount of any finance charge in connection with the transaction (see Exhibit L finance charge).

k. Statutory damage in the amount of $4,000.00 pursuant to § 1640(a)(2)(iv) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $400 or greater than $4,000.

l. All finances charges and fees paid by the consumer. Pursuant to § 1640(a)(4) in the case of a failure to comply with any requirement under section 1639 of this title, paragraph (1) or (2) of section 1639b(c) of this title, or section 1639c(a) of this title, an amount equal to the sum of all finance charges and fees paid by the consumer, unless the creditor demonstrates that the failure to comply is not material. The sum of all finance charges is approximately $142,822.32.

m. Award such other further relief as the Court deems just and proper.

## V. NEW YORK BANKING LAW HIGH-COST LOAN VIOLATION

BNK 6-l and BNK 6-m mirrors TILA violations. Pursuant to BNK 6-l "any person found by a preponderance of the evidence to have violated this section shall be liable to the borrower for the following actual damages, including consequential and incidental damages; and statutory damages as follows (i) all of the interest, earned or unearned, points and fees, and closing costs charged on the loan shall be forfeited and any amounts paid shall be refunded; except that this element of statutory damages shall not be awarded for violations of:"

BNK 6-m(13) provides a Defense to foreclosure. In any action by a lender or assignee to enforce a loan against a borrower in default more than sixty days or in foreclosure, a borrower may assert as a defense, any violation of this section.

Damages for said violation are covered in BNK 6-m(9), (10) and (11) where a consumer is entitled to damages BNK 6-m(9) Damages. Any person found by a preponderance of the evidence to have violated this section shall be liable to the borrower of a subprime home loan for

actual damages. BNK 6-m(10) Attorneys fees. A court may also award reasonable attorneys' fees to a prevailing borrower in a foreclosure action. BNK 6-m(11) Equitable relief. A borrower may be granted injunctive, declaratory and such other equitable relief as the court deems appropriate in an action to enforce compliance with this section.

As such Plaintiff is entitled to damages for violations related to BNK 6-l(m) and (q) as well as Defendant's violation of BNK 6-m(e) and (l).

## VI. FDCPA VIOLATION

Under the FDCPA, "any debt collector who fails to comply with any provision of [§ 1692] with respect to any person is liable to such person[.]" 15 U.S.C. § 1692k(a). The act "imposes civil liability on 'debt collector[s]' for certain prohibited debt collection practices." Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 573, 130 S. Ct. 1605, 1606, 176 L. Ed. 2d 519 (2010).

In order to successfully state a claim under the FDCPA, "(1) the plaintiff must be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the debt is considered a 'debt collector,' and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements." Schuh v. Druckman & Sinel, L.L.P., 751 F. Supp. 2d, 542, 548 (S.D.N.Y. 2010) (internal citations omitted); accord Polanco v. NCO Portfolio Mgmt., Inc., 132 F. Supp. 3d 567, 578 (S.D.N.Y. 2015) (same). Here the Plaintiff is a consumer and the Defendant Cenlar is acting in its own capacity as well as acting on behalf of FNMA and is attempting to collect a debt in a name other than its own as such violating 15 U.S.C. § 1692e.

The Defendant falsely represented itself in this action giving the appearance of a third person collecting a debt, rather than its "true name," such an action is a violation of 15 U.S.C. § 1692e, 1692e(2)(A), 1692e(10) and 1692e(14). "Each of these sections make it unlawful to make certain false representations in connection with the collection of a debt." Bleich v. Revenue Maximization Grp., Inc., 233 F. Supp. 2d 496, 498 (E.D.N.Y. 2002).

Section 803(6) of the FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

Creditors who collect their own debts may see that definition and stop reading. Big mistake – because Section 803(6) goes on to say "the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." In other words, if a creditor collects its own debts but uses a different name that suggests it's a third-party debt collector, the statute views the company as a debt collector subject to the FDCPA.

## CONLUSION

For the reasons cited in this Memorandum and in the attached Affidavit of Roger Rowe, I ask the court to dismiss Defendant's motion with prejudice and grant Plaintiff summary judgment pursuant to Fed. R. 56(e)(4) and Fed. R. 56(f)(1).

The Defendant failed to properly support their affirmative defense that Plaintiff was in default of his loan. Defendant cannot be in default of a loan in which Defendant Citibank promised the subsequent holder the he (Citibank) would pay if Plaintiff failed to pay.

25

Defendant provided no evidence in admissible form to support his claim that Plaintiff is in default. The Defendant failed to provide affidavits from someone with personal knowledge. Moreover in order to support a motion for summary judgment the Defendant was required to submit a statement of undisputed fact. This court has long held that failure to submit a statement of undisputed facts as prescribed under Local Rule 56.1 is grounds for dismissal. Moreover, Defendant failed to provide notice to pro se litigant as prescribed under Local Rule 56.2.

This court has consistently ruled that a party moving for summary judgment under Rule 56 must submit a "separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Antwi v. Health & Human Sys. (Ctrs.) F.E.G.S., 13-CV-835, 2014 WL 4548619, at *4 (S.D.N.Y. Sept. 15,2014) (Ramos, J.) (denying pro se plaintiff's motion seeking summary judgment for failing to comply with Local Rule56.1). In this instance the moving party

As such Plaintiff respectively ask this court to grant Plaintiff's claim in its entirety.

July 26, 2021

Roger Rowe
Pro Se
20 Spruce rd
Amityville, NY 11701
Tel: (631) 767-6537
rroweny@gmail.com

26

# United States District Court
# Eastern District of New York

The Honorable Joan M. Azrack

Case No. 2:19-cv-07278-JMA-AYS

_____

Roger Rowe

           Plaintiff(s)

      -v-

Cenlar FSB

           Defendant(s)

_____

STATEMENT OF MATERIAL FACTS
Pursuant to Local Civil Rule 56.1

1.      On November 7, 2002 Plaintiff entered into a $157,500.00 credit transaction with Citibank,.N.A a non-party to this action (**see Exhibit B**).

2.      On or about July 12, 2019, Defendant Cenlar FSB, informed Plaintiff that his original  Citibank, N.A  loan was currently owned by Federal National Mortgage Administration (FNMA) a non-party to this action located at MidTown Center 1100 15th Street NW Washington, DC 20005) (**see Exhibit A**).

3.      As part of this consumer credit transaction, Citibank, N.A. retained a security interest in a collateral debt obligation for 20 Spruce rd Amityville, NY 11701 which is Plaintiff's home (see Exhibit A page 19)[1].

4.      The security interest was not created to finance the acquisition or initial construction of Plaintiff's home.

---

[1] The indorsements on the face of the November 7, 2002 contract identifies the parties with privity to enforce said contract. In contract law, privity is a doctrine that imposes rights and obligations to parties of a contract and restricts non-contractual parties from enforcing the contract.

5.      On or about July 12, 2019 Plaintiff was notified that Defendant CitiMortgage transferred servicing to Cenlar and that Cenlar was the New Servicer (see Exhibit F page 2).

6.      As defined by 12 CFR Part 1024(Regulation X) a "Servicer" means a person responsible for the servicing of a federally related mortgage loan (including the person who makes or holds such loan if such person also services the loan). As evidenced on the face of the "NOTICE OF SERVICING TRANSFER" CitiMortgage transferred both the servicing rights the rights as a holder.

7.      As prescribed under UCC § 3-301 "The holder of an instrument whether or not he is the owner may transfer or negotiate it and, except as otherwise provided in Section 3-603 on payment or satisfaction, discharge it or enforce payment in his own name". Here Cenlar is a holder of the instrument and is accepting payment in his own name (**see Exhibit F page 5**).

8.      Defendant's Cenlar FSB and CitiMortgage failed disclose or provide notice of mortgage transfer or right of rescission as required under 15 U.S.C. 1641(g) (particularly the location of the place where transfer of ownership of the debt is recorded).

9.      Defendant's failed to respond properly to Plaintiff's notice of rescission (**see Exhibit C**).

10.     In response to my complaint Defendant Cenlar filed a Rule 12(b)(6) motion which included matters outside the pleadings thus converting their Rule 12 motion to a summary judgment motion (**see ECF Doc. 11**).

11.     Cenlar failed to provide a separate statement of undisputed facts as required under Local Rule 56.1 which is grounds for dismissal of their summary judgment motion.

12.     Cenlar failed to provide Notice to Pro Se Litigant as required under Local Rule

56.2 which is grounds for dismissal of their summary judgment motion.

13.     Plaintiff objected to Defendants Rule 12 motion which included matters outside

the pleading. The matters outside the pleadings were not supported by admissible evidence

nor did it include an affidavit made on personal knowledge.

14.     Defendant Cenlar's claim that Plaintiff defaulted under the terms of the Loan on

or about June 1, 2019 [sic] (**see ECF Doc. 11-2 page 2**) is inadmissible hearsay and is not

supported by affidavit made on personal knowledge.

15.     Moreover BNK 6-l(11) states that "Upon a judicial finding that a high-cost home

loan violates any provision of this section, whether such violation is raised as an affirmative

claim or as a defense, the loan transaction may be rescinded. Such remedy of rescission shall

be available as a defense without time limitation". Here Plaintiff's asserts an affirmative

claim and defenses against Defendants for violations of BNK 6-l.

16.     Furthermore, in any action by an assignee to enforce a loan against a borrower in

default more than sixty days or in foreclosure, a borrower may assert any claims in

recoupment and defenses to payment under the provisions of this section and with respect to

the loan, without time limitations, that the borrower could assert against the original lender of

the loan. Here Plaintiff asserts his defenses to payment as it relates to Defendant's violation

of BNK 6-l.

17.     Plaintiff now submits this amended complaint Pursuant to Rule 15(b)(1) and Rule

15(c)(C). The amendment includes objections to Defendant Cenlar's contention that Plaintiff

is in default as well as the inclusion of Defendant CitiMortgage.

18.     Plaintiff includes CitiMortgage in this action based on the Notice of Servicing Transfer and the transfer of the rights to collect the debt to the new servicer Cenlar. Based on the joint notice provided by Defendants CitiMortgage and Cenlar. CitiMortgage is the assignee of the mortgage who in turn transferred the mortgage to Cenlar. Evidence of the assignment can be seen in the CitiMortgage indorsement (**see Exhibit F page 7& 10**) as evidenced by the CitiMortgage conditional and qualified indorsement in blank and evidence of the transfer to Cenlar is noted in the Notice of Servicing Transfer (**see Exhibit F page 2**).

19.     The November 7, 2002 credit transaction between Plaintiff and Citibank involved the refinancing of a high-cost mortgage. The face of the October 23, 1989 Note shows a 10.625% interest rate (**see Exhibit B page 8**). As such the consolidated loan is considered a high-cost loan.

20.     A "High-cost home loan" means a home loan in which the terms of the loan exceed one or more of the thresholds as defined in paragraph (g) of BNK 6-l. As noted in BNK 6-l(g)(i) "For a first lien mortgage loan, the annual percentage rate of the home loan at consummation of the transaction exceeded eight percentage points over the yield on the treasury securities having comparable periods of maturity to the loan maturity measured as of the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the lender. In this instance the delta between the first lien interest rate of 10.625 and the December 16, 2002 treasury yield of 1.5 is 9.125 (**see Exhibit K page 6**). As such the loan exceeded the 8% threshold.

21.     The total points and fees also exceed five percent of the total loan amount of a loan fifty thousand dollars or more. The November 7, 2002 contract consolidated the balance

on the first lien of $37,606.56 and the second lien of $119,893.44 for a total of $157,500.00 (**see Exhibit B page 17**).

22.      As indicated on the face of the "Anticipated Settlement" dated September 16, 2002 (**see Exhibit N**). Plaintiff paid 33.266% in closing cost. Pursuant to BNK 6-l(2)(q) No points and fees when a lender refinances its own high-cost home loan with a new high-cost home loan. A lender shall not charge a borrower points and fees in connection with a high-cost home loan if the proceeds of the high-cost home loan are used to refinance an existing high-cost home loan held by the lender or an affiliate of the lender. Here the lender refinanced his own high-cost home loan which was held by its affiliate CitiMortgage (**see Exhibit H**).

23.      As such the Defendant's are liable to Plaintiff for actual damages, including consequential, incidental damages and statutory damages as follows (i) all of the interest, earned or unearned, points and fees, and closing costs charged on the loan shall be forfeited and any amounts paid shall be refunded (see BNK 6-l(7). As such Plaintiff is entitled to rescission.

24.      Nevertheless, the party Plaintiff pledged collateral to made available through a securitization transaction without Plaintiff's knowledge or consent and purportedly negotiated the security evidenced by the Note/Mortgage lien which Plaintiff pledged to Citibank, N.A. exclusively and said pleaded document was apparently used to secure these receivables in this transaction as well.

25.      Pursuant to UCC § 3-404 any unauthorized signature is wholly inoperative as to that of the person whose name is signed unless he ratifies it or is precluded from denying it. As such Citibank N.A. and CitiMortgage ("the indorser") is negligent as it relates to altering and producing an unauthorized signature (see Exhibit F page 7 & 10).

26.     Pursuant to UCC § 3-406 Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business.

27.     Not only was CitiMortgage negligent as it relates to the production of an unauthorized signature. Both CitiMortgage and Citibank N.A. altered the instrument when it made material changes to the contract. UCC § 3-407(a) indicates that an alteration by the holder which is both fraudulent and material discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense. As defined by UCC 1-201 an "Unauthorized signature means a signature made without actual, implied, or apparent authority. The term includes a forgery" as such Defendant CitiMortgage forged Plaintiff's signature discharging Plaintiff from any liability.

28.     Moreover UCC 3-802 states that "Unless otherwise agreed where an instrument is taken for an underlying obligation the obligation is pro tanto discharged if a bank is drawer, maker or acceptor of the instrument and there is no recourse on the instrument against the underlying obligor".

29.     In this instance the indorser is a bank and the instrument has no recourse on it as evidenced by the words "without recourse" (**see Exhibit F page 7 & 10**).

30.     As such Plaintiff is not in default and was in fact discharged form his obligation when the holder CitiMortgage intentionally cancelled the instrument by indorsing the instrument with the words "without recourse".

31.     As a third party answerable to Plaintiff if he is sued under Article 3 Citibank NA and CitiRetail Services LLC is placed on notice as prescribed under UCC 3-803 and must come and defend Plaintiff.

32.     As indicated in Defendant's disclosure statement (see ECF Doc. 21) Citibank, NA and Citi Retail Services LLC holds ownership in CitiMortgage and is liable for their actions. Moreover, the fact that Citibank charged Plaintiff closing cost on a refinance in which a lender and it affiliates are holder is a clear violation of BNK 6-l(q) and as such is liable to damages under BNK 6-l.

Dated: July 26, 2021

Roger Rowe
Pro Se
20 Spruce rd
Amityville, NY 11701
Tel: (631) 767-6537
rroweny@gmail.com

7

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Roger Rowe | |
| Plaintiff(s) | 2:19-cv-07278-JMA-AYS |
| -v- | |
| Cenlar FSB | |
| Defendant(s) | |

## AFFIRMATION/DECLARATION
## OPPOSITION TO DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS

I, Roger Rowe, declare under penalty of perjury that the following facts are made on personal knowledge and are true and correct as required by Rule 56 of the Federal Rules of Civil Procedure.

## RESPONSE TO FACTUAL BACKGROUND

1.  On November 7, 2002, Plaintiff entered a Consolidated Extension and Modification Agreement ("CEMA") with Citibank NA a non-party to this action.

2.  On April 19, 2019 Plaintiff was informed that a third Defendant Cenlar was transferred servicing and was now the "New Servicer" of Plaintiff's loan.

3.  On October 21, 2019 Plaintiff sent Defendant's his notice of rights to rescission (see Exhibit C). Defendant's contention that Plaintiff claim is based on a nearly twelve-year CEMA transaction is a clear misunderstanding of the statutes. Plaintiff's rescission notice is based on the April 1, 2019 transaction in which Cenlar transferred the rights of a holder (see Exhibit F).

4.  Pursuant to 15 USC 1641(g) "In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer". In this instance Defendant's failed to provide said notice

1

with in the time period prescribed. Although the law allows the notice of servicing to be combined with the notice of mortgage transfer. The Notice of Service Transfer was insufficient to provide Plaintiff notice as to the location of the place where transfer of ownership of the debt is recorded.

5.   In addition to Defendant's failure to provide adequate notice any person who purchases or is otherwise assigned a mortgage referred to in section 1602(aa) of this title shall be subject to all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage. Here Defendant Cenlar is a new creditor (see Exhibit D[1]) who is subject to all claims and defenses related to purchase or assignment of a mortgage referred to in section 1602(aa).

6.   Furthermore, this mortgage is also subject to BNK 6-l which prohibits the lender form financing any point and fee in excess of 3% (see BNK 6-l(m). The Lender is also prohibited from refinancing its' own high-cost loan with a new high-cost loan (see BNK 6-l(q).

## ARGUMENTS

### A. Legal Standing

7.   The Defendant is attempting to submit an improper pre-answer motion. Defendant asserts an affirmative claim which he states Plaintiff is in default (see ECF Doc. 11-2 page 2). However by the offering an affirmative defense Defendant actually affirms the existence of a cause of action.

### B. Plaintiff claim is not time barred

8.    Defendant's contention that Plaintiff's claims are time barred is belied by the evidence in front this court. As prescribed under UCC 3-606(1)(b) The holder discharges any party to the instrument to the extent that without such party's consent the holder unjustifiably impairs any

---

[1] Cenlar reported to the Credit Reporting Agencies that he was the New Creditor.

collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.

9.   In this instance Plaintiff give his collateral to Citibank for the benefit of the November 7, 2002 contract. CitiMortgage was never authorized to transfer title. As indicated on the face of the first lien note, Citibank transferred its rights to Federal Home Loan Mortgage Corporation ("FNMA") On December 13, 1989. However, FNMA never transferred the instrument back to Citibank or CitiMortgage.

10.   As such CitiMortgage indorsement in blank show that the indorsement is not in the chain of title and there by provides notice of it accommodation character (see UCC 3-415(4)). As an accommodation party Plaintiff is not responsible to the accommodated party and if you pays the instrument has recourse against the instrument (see UCC 3-415(5)).

11. Nevertheless. Plaintiff is not time barred under TILA or BNK 6-l as it related to bringing an action against an assigner, assignee, transferer or transferee.

### C.  Plaintiff Stated Claim Against CitiMortgage & Cenlar

12. Defendant's misunderstands the post commencement disclosure requirements under 15 USC 1641(g). Plaintiff is not alleging that Defendants were required to disclose the transfer of the loan to FNMA. Plaintiff claim specifically refers to The April 1, 2019 credit transaction. As a new creditor Cenlar was required to disclose the assignment of mortgage (security interest) from CitiMortgage.

13. Moreover, Defendants claim that Plaintiff failed to state claim pursuant to TILA against Cenlar or CitiMortgage under 15 U.S.C. § 1641(g) where "Plaintiff's own complaint establishes neither were owner or assigner of the Loan or "covered persons" as contemplated under the regulations. [sic] page 5 of Defendants memorandum of law. Is utterly inconsistent with the fact

3

presented. The signature on the face of the note confirms CitiMortgage indorsement as an assigner of the note. The transfer on April 1, 2019 confirms CitiMortgage transfer to Cenlar. As such Plaintiff claims correctly identifies CitiMortgage as the assigner and Cenlar purchaser/transferee.

**D.  Plaintiff Properly States Breach of Contract Claim**

14. Defendant once again is attempting to misrepresent the statues or character of the November 7, 2002 contract (between Plaintiff and Citibank) with subsequent contracts between Citibank its affiliates and third parties.

15. The fact that Defendants asserted rights as a third-party beneficiary confirms Defendant's belief of the existence of a valid contract. Under New York law, a party asserting rights as a third-party beneficiary must establish that "(1) a valid and binding contract existed, (2) the contract was intended for the plaintiff's benefit, and (3) the benefit to the plaintiff is immediate (rather than incidental), indicating that the contracting parties intended to compensate the plaintiff."

16. For Defendant to claim "that there is no actual contract between the parties to this action" [sic] page 5 Defendants Memorandum of law, shows utter disdain to the court and the rule of law. Defendant not only presents himself as a third-party beneficiary with rights to enforce Plaintiff's loan (see Exhibit F), Defendant also asserts that Plaintiff is in default of a contract in which he has the right to enforce.

17. Here there is no question of (1) the existence of the November 7, 2002 contract. (2) the contract was not intended for the benefit of the Defendants (3) the benefit is incidental. As such Plaintiff as a holder of an incidental security instrument Defendant owes Plaintiff a duty of care and by law is required to return the instrument on demand (see UCC 3-419(1)(a), (b)).

**E.  Plaintiff Stated Breach of Fiduciary Duty Claim**

4

18.  As a holder of the instrument Defendants owed Plaintiff a duty of care as prescribed under UCC 9-207(a) "Duty of care when secured party in possession.   Except as otherwise provided in subsection (d), a secured party shall use reasonable care in the custody and preservation of collateral in the secured party's possession. In the case of chattel paper or an instrument, reasonable care includes taking necessary steps to preserve rights against prior parties unless otherwise agreed".

19. In this instance Defendant's failed to preserve Plaintiff's rights as a prior party to the November 7, 2002 contract. As evidenced by CitiMortgage blank indorsement, CitiMortgage promised to pay the instrument according to its tenor at the time of his engagement or as completed pursuant to Section 3-115 on incomplete instruments.

20. Here the conditional and qualified indorsement precludes the presumption that the transferee is the owner. Pursuant to UCC 3-201(3) "Unless otherwise agreed any transfer for value of an instrument not then payable to bearer gives the transferee the specifically enforceable right to have the unqualified indorsement of the transferor. Negotiation takes effect only when the indorsement is made and until that time there is no presumption that the transferee is the owner".

21. As such the conditional and qualified indorsement is insufficient proof as to who is the actual owner of the note.

**F.  Plaintiff Stated Conversion Claim**

22. Plaintiff appropriately stated his conversion claim. Defendants claim that Plaintiff did not rescind the loan conflates the issue of the November 7, 2002 credit transaction and the April 1, 2019 credit transaction.

23. Plaintiff is not seeking to rescind the November 7, 2002 credit transaction. The subject of this action is the April 1, 2019 credit transaction. Proof of Plaintiff's right to rescind the April 1,

5

2019 credit transaction is codified under USC 1641(g). As a new creditor, § 1641(g)(1) requires Defendant to provide a disclosure of the sale of a mortgage loan " not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer," Defendant failed to provide such notice after acquiring a security interest in Plaintiff's loan.

24. In addition to Defendant's violations of TILA, Defendants also violated BNK 6-l which provides the same effects as rescission[2].  BNK 6-l states that "In any action by an assignee to enforce a loan against a borrower in default more than sixty days or in foreclosure, a borrower may assert any claims in recoupment and defenses to payment under the provisions of this section and with respect to the loan, without time limitations, that the borrower could assert against the original lender of the loan".

25. Here Defendant's clearly violated state and federal predatory lending laws and as such is responsible for actual, statutory and punitive damages.

### G.  Defendant Cenlar is a Debt Collector

26. As indicated in Plaintiff's amended complaint (see ¶ 110 of amended complaint) Section 803(6) goes on to say "the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." In other words, if a creditor collects its own debts but uses a different name that suggests it's a third-party debt collector, the statute views the company as a debt collector subject to the FDCPA.

---

[2] Rescission rights under TILA is not the same as traditional rescission, under TILA the plaintiff is not require the return funds which then triggers rescission rights. Under TILA the action is punitive to prevent the banks from unscrupulous behavior and as such the bank is required to first return what it received from the consumer.

27. Here Cenlar is clearly a creditor and identifies himself as a creditor (see Exhibit D Plaintiff's credit report). Defendant Cenlar reported to the credit agency that they are in fact the creditor of the subject mortgage account. As such Defendant Cenlar is in violation of FDCPA.

**H. Plaintiff Stated Claim for Aiding and Abetting**

28. Defendant properly stated the elements of an aiding and abetting claim (see Defendants Memorandum of law page 11). Here Defendants counsel has actual knowledge of the existence of a fraud. The face of the note clearly states "without recourse" preclude the presumption that the holder is the owner. For Counsel to make such a false claim without evidence or an affidavit from a person with knowledge provides assistance to advance a fraud.

29. Ignorance is no excuse to the law and the negligence of an attorney to understand the law does not exempt him from an aiding and abetting cause of action.

**I. Plaintiff Should Be Permitted to Amend His Complaint**

30. Defendant's contention that "Plaintiff should not be allowed to amend the Complaint a second time because the deficiencies in the Plaintiff's Complaint cannot be remedied by amendment" [sic] page 12 of memorandum of law, is contrary to the rule of law and is an attempt to deprive Plaintiff of due process.

31. Plaintiff provided evidence of (1) the existence of a contract, (2) Plaintiff's performance, (3) Defendant's breach, (4) Defendant's violation of TILA, BNK and UCC. As such the only remaining issue is Defendant's liability. It is preposterous for Defendant's to claim an affirmative defenses while stating that no cause of action exist. If no cause of action exist Defendant should not be claiming that I am in default or that I owe them money.

**CONCLUSION**

7

32. As such I ask the court to dismiss Defendant's Rule 12(6) motion and grant all Plaintiff's claims. Not only is Defendants motion an improper pre-answer motion, Defendants and their counsel continues to mislead this court as to the status and character of the note and the Defendants ability to enforce the instrument as a third-party beneficiary.

33. Furthermore, Defendant's predatory activities should not go unpunished. Defendant assigned and transferred Plaintiff's loan for their own benefit and charged excessive fees in the process. As such this court should penalize Defendants to the maximum extent of the law.

Dated: July 26, 2021

Roger Rowe
Pro Se
20 Spruce rd
Amityville, NY 11701
Tel: (631) 767-6537
rroweny@gmail.com

8

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

ROGER ROWE,

                Plaintiff,

       v.

CENLAR FSB; CITIMORTGAGE, INC.,

                Defendants.

Case No.: 2:19-cv-7278-JMA-AYS

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(6)**

# TABLE OF CONTENTS

I.     ARGUMENT ..................................................................................1

      A.     Plaintiff's Claim For Rescission Pursuant To TILA Is Time-Barred ...............1

      B.     Plaintiff Fails To State Claims Against Cenlar Or CitiMortgage under TILA ................................................................................................2

      C.     Plaintiff's Still Fails To Sufficiently Allege Cenlar is a Debt Collector ...........3

      D.     Plaintiff Has Abandoned The Remainder Of His Claims .................................4

      E.     Plaintiff Cannot Amend His Complaint Through His Opposition....................5

II.    CONCLUSION ..............................................................................6

5164351v.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. Lynch*,
    16-CV-3502, 2016 WL 8786874 (E.D. N.Y. Dec. 15, 2016) .................................................3

*Beach v. Ocwen Federal Bank*,
    523 U.S. 410, 118 S.Ct. 1408 (1998) ......................................................................................1

*Dins v. Nationstar Mortg., LLC*,
    16-CV-2943, 2017 WL 570941 (S.D. N.Y. Feb. 13, 2017) .......................................................2

*Dougherty v. North Hempstead Bd. of Zoning Appeals*,
    282 F.3d 83 (2d Cir. 2002) .....................................................................................................6

*Jain v. McGraw-Hill Cos., Inc.*,
    827 F. Supp. 2d 272 (S.D.N.Y. 2011) .....................................................................................4

*Lipton v. Cty. of Orange, N.Y.*,
    315 F.Supp.2d 434 (S.D.N.Y. 2004) .......................................................................................4

*Qurashi v. Ocwen Loan Servicing, LLC*,
    *760 Fed.Appx. 66 (2d Cir. 2019)* ...........................................................................................3

*Rogers v. Hines*,
    No. 16-cv-457, 2016 WL 7378988 (D. Conn. 2016) ...............................................................5

*Tyus v. Newton*,
    13–cv–1486, 2015 WL 1471643 (D. Conn. 2015) ..................................................................5

*Wright v. Ernst & Young LLP*,
    152 F.3d 169 (2d Cir. 1998) ...................................................................................................5

**Statutes**

15 U.S.C. § 1635 ...........................................................................................................................1, 2

15 U.S.C. § 1641 ...........................................................................................................................2, 3

FDCPA ......................................................................................................................................3, 4, 6

New York Banking Law § 6-l .............................................................................................................5

TILA ..................................................................................................................................................1

5164351v.1

**Other Authorities**

12 C.F.R. § 1026.39(a)(1) ................................................................................................3

Fed. R. Civ. P. 12(b)(6) .........................................................................................1, 3, 6

Fed. R. Civ. P. 56 .............................................................................................................1

Defendants, Cenlar FSB ("Cenlar") and CitiMortgage, Inc. ("CitiMortgage") (collectively referred to as "Defendants"), submit this Memorandum of Law[1] in further support of its Motion to Dismiss this action pursuant to Federal Rules of Civil Procedure Rule 12(b)(6).

## I.   ARGUMENT

### A.   Plaintiff's Claim For Rescission Pursuant To TILA Is Time-Barred.

Plaintiff readily acknowledges that the Loan at issue in this action was originated nearly eighteen years ago.  Plaintiff himself includes a copy of a Truth in Lending Disclosure Statement from eighteen years ago which bears his signature.  Yet, Plaintiff claims that he rescinded the loan seventeen years after he signed the disclosure statement.  Plaintiff's claim is not supported by either the facts as he alleges them or the law.

In moving for dismissal of Plaintiff's claim of rescission pursuant to TILA, Defendants noted that the Loan at issue originated on November 7, 2002, that Plaintiff himself annexed a copy of the signed TILA Disclosure Statement to his First Amended Complaint, and that at best, Plaintiff had three years from origination to rescind the Loan pursuant to TILA.  *See* 15 U.S.C. § 1635(f); *Beach v. Ocwen Federal Bank*, 523 U.S. 410, 410, 118 S.Ct. 1408, 1408 (1998).  Thus, Plaintiff's claimed rescission in October of 2019 was at least *fourteen years* too late.  Plaintiff responds by ignoring the actual language of 15 U.S.C. § 1635(a) and makes the illogical claim that the sub-servicing of the Loan by Cenlar on behalf of CitiMortgage somehow amounted to a "consumer

---

[1] In support of his opposition to Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff submitted a Statement of Material Facts pursuant to Local Civil Rule 56.1.  However, the Eastern District of New York's Local Civil Rule 56.1 requires that a statement of material facts be submitted upon a motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Neither Defendants nor Plaintiff have moved for summary judgment.  In fact, Defendants have not submitted an answer to the First Amended Complaint, as the instant motion is made pre-answer.  As a statement of material facts is not required for the instant motion, Defendants will not be responding to the one submitted by Plaintiff.

credit transaction" as defined by TILA and so Plaintiff's time to rescind the Loan began anew seventeen years after the Loan was originated.

*Dins v. Nationstar Mortg., LLC*, 16-CV-2943, 2017 WL 570941 (S.D. N.Y. Feb. 13, 2017) is instructive. In that case, the plaintiff took out a mortgage loan in June of 2006. The mortgage was assigned to the defendant in 2011 and the plaintiff was not notified. The mortgage was further assigned in 2015 and the plaintiff again was not notified. The plaintiff commenced an action in 2016 alleging, *inter alia*, that he was entitled to rescind the mortgage loan because he was not otherwise informed of these transfers. The defendant moved to dismiss the complaint. *Id.* at *1. In addressing his request for rescission, the District Court rejected the plaintiff's theory and held, "TILA contains a three-year statute of limitations for rescission claims. 15 U.S.C. § 1635(f)…Dins alleges that the loan transaction occurred on or about June 30, 2006…The right of rescission therefore expired on or about June 30, 2009. Plaintiff filed this lawsuit in 2016, over six years after the right of rescission expired. Accordingly, Dins's rescission claim is dismissed." *Id.* at *6.

Plainly put, Plaintiff is mistaken as to the accrual of his time to seek rescission pursuant to TILA. The consumer credit transaction at issue here occurred on November 7, 2002, when the subject Loan was originated. *See* Compl. ¶ 9. Setting aside the fact that Plaintiff himself annexed a copy of the TILA Disclosure Statement bearing his signature to the First Amended Complaint, Plaintiff had until November 6, 2005 *at the latest* to rescind the Loan pursuant to 15 U.S.C. § 1635(f). Yet, Plaintiff claims he exercised his right of rescission on October 21, 2019. *See* Compl. ¶ 33. This was nearly *fourteen years* too late. Plaintiff's election of rescission pursuant to 15 U.S.C. 1635(a) is untimely and Plaintiff's demand for rescission must be dismissed with prejudice.

### B.   Plaintiff Fails To State Claims Against Cenlar Or CitiMortgage under TILA.

Defendants moved to dismiss Plaintiff's causes of action under 15 U.S.C § 1641(g) as that section of TILA is applicable to the creditor of a debt, not the servicer. *See* 15 U.S.C. § 1641(g)(1);

2

12 C.F.R. § 1026.39(a)(1). In response to this, Plaintiff alleges that Cenlar obtained a "partial interest" in the Loan. However, the sole document Plaintiff uses in support of this position actually refutes Plaintiff's point[2].

Plaintiff alleges that, "[b]ased on the information provided in Defendant (sic) July 12, 2009 response to Plaintiff's Qualified Written Request (QWR) Defendant appears to suggest that multiple covered persons have interest in Plaintiff's loan." Memorandum of Law in Opposition, p. 12. However, the July 12, 2019 response could not be clearer: "The Loan was originated by CitiBank, N.A. dba CitiMortgage Inc. and is currently owned by Federal National Mortgage Administration (FNMA)…CitiMortgage, Inc.…is the servicer of the Loan. Cenlar FSB subservices the loan on behalf of CitiMortgage, Inc., effective April 1, 2019." Comp. Ex. A. Plaintiff relies on this document for his position that Cenlar obtained a "partial interest" in the Loan. In fact, this document is clear that the only owner of the Loan is FNMA.

Defendants are not creditors or covered person as contemplated under TILA and are not subject to the requirements of 15 U.S.C. § 1641. Accordingly, the corresponding allegations in Plaintiff's complaint must be dismissed with prejudice.

## C. Plaintiff's Still Fails To Sufficiently Allege Cenlar is a Debt Collector.

Defendants moved to dismiss Plaintiff's cause of action pursuant to the FDCPA, which is asserted solely as against Cenlar, because Cenlar is not a debt collector as defined by the FDCPA. Particularly, Cenlar began servicing the debt before it fell into default and so is not considered a debt collector as a matter of law. *See Qurashi v. Ocwen Loan Servicing, LLC*, 760 Fed.Appx. 66,

---

[2] In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court may rely upon documents which have been attached to the complaint as exhibits. *See Abraham v. Lynch*, 16-CV-3502, 2016 WL 8786874 (E.D. N.Y. Dec. 15, 2016).

68 (2d Cir. 2019). Plaintiff's own Complaint includes a Notice of Servicing Transfer demonstrating that Cenlar began servicing the loan effective April 1, 2019 (*See* Compl., Ex. F) and a payment history demonstrating the Loan was current at that time (*See* Compl., Ex. G.). Cenlar is not a debt collector under the FDCPA.

Plaintiff does not address this claim at all, but instead states that Cenlar is not collecting a debt on behalf of FNMA, but on its own behalf. Plaintiff proceeds upon the very same mistaken premise as his TILA claim: Plaintiff alleges that Cenlar is the owner of his Loan. However, the documents which Plaintiff himself attaches to his Complaint demonstrate FNMA, not Cenlar, is the owner of the Loan and Cenlar merely subservices the Loan on behalf of CitiMortgage. Plaintiff cannot sustain a cause of action under the FDCPA against Cenlar because it is not a debt collector under the meaning of the statute and this cause of action should be dismissed with prejudice.

### D. __Plaintiff Has Abandoned The Remainder Of His Claims.__

Defendants moved to dismiss seven claims asserted in Plaintiff's First Amended Complaint: (1) Rescission pursuant to TILA; (2) Damages pursuant to TILA; (3) Breach of Contract; (4) Breach of Fiduciary Duty; (5) Conversion; (6) Violation of the FDCPA; and (7) Aiding and Abetting Fraud. In opposing Defendant's motion, Plaintiff only addresses the claims related to TILA and the FDCPA. Plaintiff has effectively abandoned the remainder of his First Amended Complaint.

It is well-settled that a court may deem a claim abandoned based on a plaintiff's failure to respond to an argument raised by a defendant in a dispositive motion. *See Jain v. McGraw-Hill Cos., Inc.*, 827 F. Supp. 2d 272, 280 (S.D.N.Y. 2011) (holding that the plaintiff abandoned six claims when her brief failed to respond to the defendants' arguments on those claims); *Lipton v. Cty. of Orange, N.Y.*, 315 F.Supp.2d 434, 446 (S.D.N.Y. 2004) ("[A court] may, and generally

will, deem a claim abandoned when a plaintiff fails to respond to a defendant's argument that the claim should be dismissed.").

Plaintiff does not argue that his causes of action for Breach of Contract, Breach of Fiduciary Duty, Conversion, and Aiding and Abetting Fraud should survive Defendants' motion to dismiss. As such, these causes of action should be dismissed with prejudice.

### E. Plaintiff Cannot Amend His Complaint Through His Opposition.

In opposing Defendant's motion, Plaintiff asserts for the first time that an unspecified defendant violated New York Banking Law §§ 6-l and/or 6-m. *See* Memorandum in Opposition pp. 23 – 24. Such a claim is not asserted anywhere in Plaintiff's First Amended Complaint and cannot be asserted now.

Plaintiff cannot inject new factual allegations or legal theories into the case through an opposition to a motion to dismiss. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (noting that a plaintiff cannot amended a complaint to add new factual allegations in opposition to a motion to dismiss); *Rogers v. Hines*, No. 16-cv-457, 2016 WL 7378988, at *4 (D. Conn. 2016) ("As this distinction was not included in the amended complaint and the plaintiff cannot amend his complaint through a memorandum, the defendants' motion to dismiss is granted...."); *Tyus v. Newton*, 13–cv–1486, 2015 WL 1471643, at *5 (D. Conn. 2015) ("The plaintiff may not ... amend the amended complaint in a memorandum in opposition to a motion to dismiss"). The Court should therefore disregard these new legal theories entirely.

Setting aside the fact that Plaintiff cannot simply assert these claims, Plaintiff does not in fact allege a violation of either Banking Law §§ 6-l or 6-m. Instead, Plaintiff claims that the unspecified violation entitles him to damages pursuant to the Banking Law. Even if Plaintiff could assert a claim in opposition, which he cannot, Plaintiff does not actually do so. These allegations should be disregarded.

5

For the very same reason, Plaintiff should not be permitted to amend his complaint a second time. Defendants have demonstrated that Plaintiff's TILA claim is time-barred and otherwise misdirected at Defendants and that Plaintiff cannot demonstrate that Defendants are debt collectors for the purposes of the FDCPA. These issues formed the basis for Cenlar's first motion to dismiss and Plaintiff did not resolve them in his first amendment, nor could he. Thus, any further amendment should be denied as futile. *See Dougherty v. North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002).

## II.  **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiff's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) with prejudice and grant such other and further relief as it deems appropriate.

Dated:   August 11, 2021          STRADLEY RONON STEVENS & YOUNG, LLP
             New York, NY              A Pennsylvania Limited Liability Company

                                By:    /s/ *Lijue T. Philip*
                                       Lijue T. Philip
                                       100 Park Avenue, Suite 2000
                                       New York, New York  10017
                                       Telephone:  (212) 812-4124
                                       Facsimile:  (646) 682-7180
                                       LPhilip@stradley.com

                                       *Counsel for Cenlar FSB & CitiMortgage, Inc.*

5164351v.1

## CERTIFICATE OF SERVICE

I, hereby certify that on August 11, 2021, I caused the foregoing document to be be served

on the below by First Class Mail.

Roger Rowe
20 Spruce Rd
Amityville, New York 11701

_s/ Lijue T Philip_ _____
Lijue T. Philip